UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                          Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, pursuant to Fed.R. Civ. P. 23, hereby move this Court to certify this case as a class action. As shown in the attached memorandum, plaintiffs have satisfied all of the requirements of Civil Rule 23.

The proposed class is as stated in ¶ 65 of the complaint:

"all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."


June 15, 2015

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23, plaintiffs submit this Memorandum of Points and Authorities in support of their motion for class certification. The Court should certify this case as a class action because plaintiffs have satisfied all the requirements of Civil Rule 23(a) and 23(b).

INTRODUCTION

The DHS has a policy and practice of never providing the reasonably segregable portions of Assessments written by asylum officers, in response to FOIA requests by asylum applicants. The DHS has the policy and practice of not even *attempting* to determine if there are segregable portions. ¶ 25 of the complaint.  This violates 5 U.S.C. § 552(b). The DHS answers requests for Assessments with boilerplate: each letter is almost identical.  Each letter is signed by the same person: Jill A. Eggleston; and each letter contains this sentence: "In

our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information." Not only that, this sentence in the fifth sentence in most of the 41 letters that the plaintiffs are aware of.

The persistent use of computerized boilerplate indicates the agency is making only a perfunctory attempt at compliance with the law. It indicates the agency does not give individualized attention to requests.

One federal judge has ruled that segregable portions of Assessments are "easily" segregable. *Abtew v. DHS,* 47 F.Supp. 3d 98, 114 (D.D.C. 2014). The DHS is violating the spirit and intent of the FOIA. The Court should certify this case as a class action.

FACTS CONCERNING THE JILL A. EGGLESTON LETTERS

Attached to the complaint, as Exhibit 1, is a letter dated October 21, 2014 from an employee of the DHS, Jill A. Eggleston, which has as its fifth sentence the following:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

This 19-word sentence is repeated verbatim for each of the class members. As stated in the complaint, at ¶ 16-18, Jill A. Eggleston has written 25 identical letters to other asylum applicants who requested their Assessment. These letters are in possession of the DHS, and are found at ECF #16-2 and ECF # 22-1 of *Bayala*

*v. DHS,* Case No. 14-0007 (D.D.C. 2014). There is no evidence of record that these 25 letters are any different from the letter attached hereto as Exhibit 1.

Attached to this memorandum, as Exhibit 1, is a Declaration of David L. Cleveland, dated June 13, 2015. Attached to that Declaration, are letters concerning 20 more asylum applicants who requested their Assessment:

   -on June 2, 2015, Mr. Abdallah received a letter from Jill Eggleston, which has the same 19-word sentence, as its fifth sentence;

   -on June 12, 2015, the DHS orally told Mr. Cleveland that Assessments were exempt from disclosure;

   -on October 21, 2014, Mr. Demissie received a letter from Jill Eggleston, which has the same 19-word sentence, as its fifth sentence;

   -on August 8, 2012, Mr. Hemed received a letter from Jill Eggleston, which has the same 19-word sentence, as its fifth sentence;

   -on April 29, 2013; Mr. Iwuji received the same sentence as the fifth sentence;

The following asylum applicants each received a letter from Jill Eggleston, which has the same 19-word sentence as its fifth sentence:

   Mr. Joksimovic

   Ms. Marquez

   Ms. Mulangu

    Ms. Ngassa

    Ms. Vasilev

= = = =

The computer at the desk of Jill A. Eggleston has been spitting out the same boilerplate for years. At least from September 2011 to June 2015, letters with her signature are sent out, refusing to disclose any part of the Assessments. This shows that the DHS has a policy and practice of refusing to disclose; it also shows the DHS has the policy and practice of not even *attempting* to determine if there are reasonably segregable portions of an Assessment, as stated in ¶ 25 of the complaint. Furthermore, as stated in ¶ 25 of the complaint, "This policy is uniform. It is a blanket policy."

FACTS CONCERNING ASSESSMENTS OF ASYLUM OFFICERS

    Attached to the complaint, as Exhibit 2, is a declaration from David L. Cleveland, labeled "Ten Assessments." Mr. Cleveland asserts that he has read the ten assessments attached to his declaration, and that it "is very easy to segregate the facts in each Assessment." Attached to the declaration are ten assessments. Anyone who reads them will agree: "it is very easy to segregate the facts in each Assessment." There is no evidence of record that these ten assessments are any different from the assessments of the class members in this case.

¶ 28 of the complaint alleges that the assessment written by Ms. Gatore's asylum officer is quite similar to the above referenced ten assessments.

¶ 29 of the complaint alleges that Ms. Gatore's assessment is quite similar to the assessment considered by Judge Jackson in *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014).

All of the assessments are the same, because the DHS gives standard instructions to its asylum officers, as to how to write assessments. "The DHS instructs its officers to begin each assessment with a statement of facts, according to the applicant. These officers follow their instructions. Assessments are uniform. The first several paragraphs of each assessment are a simple recitation of the facts presented to the officer." ¶ 3 of the complaint.

"The DHS published a lesson plan for its asylum officers entitled 'Decision Writing Part I: Overview and Components, Focusing on 1st Three Components,' dated June 21, 2004." ¶ 3a of the complaint.  "This lesson plan is still followed today." *Id.* "It instructs the officer about the 'standard format'…" *Id.*

The DHS has a policy and practice of instructing its asylum officers to write assessments in a standard way. Therefore, it is reasonable to conclude that assessments are quite similar to each other.

BACKGROUND: ASYLUM PROCEEDINGS AND ASSESSMENTS

A person from a foreign country who arrives in the United States may be granted asylum if he can show he has suffered harm on account of a protected ground, such as expressing his political opinion about a dictator.  The "stakes in asylum proceedings are high." *Ren v. Holder,* 648 F.3d 1079, 1086 (9th Cir. 2011). Upon deportation, "the client and his family might well be killed due to circumstances in the client's home country…." *Padilla v. Kentucky,* 559 U.S. 356, 371, n. 11 (2010).

As stated in ¶ 2 of the complaint: "The asylum applicant is interviewed by an asylum officer, who then writes an Assessment. When the applicant has a hearing in immigration court, the DHS at times will use the entire assessment as evidence against the applicant. *Ido v. U.S. Att'y Gen.,* 480 Fed. Appx. 972 (11th Cir. 2012).  Assessments may contain mistakes or citation to unreliable sources; therefore, the applicant needs to read it before his immigration court hearing, so that he may gather evidence to rebut it. The applicant seeks to avoid surprise and ambush in the immigration court. "

## FOIA REQUIRES THE AGENCY TO PROVIDE ANY REASONABLY SEGREGABLE PORTION OF THE DOCUMENT

"Any reasonably segregable portion of the record shall be provided to any person requesting such record ….."  5 U.S.C. § 552(b).

The first several paragraphs of an asylum officer's Assessment are not only reasonably segregable, they are "easily" segregable. *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014). Those paragraphs simply recite and summarize the facts that plaintiff presented to the asylum officer during the asylum application interview.

The *Abtew* court looked at the Assessment *in camera,* and then determined that the first several paragraphs should be disclosed to the requester.  It is true that in *Anguimate v. DHS,* 918 F. Supp. 2d 13 (D.D.C. 2013), the court ruled to the contrary. However, in that case, the court did not read the Assessment; the court relied upon a declaration from the agency.

The DHS has a policy and practice of never providing any part of an Assessment to a FOIA requester.  This policy is uniform. It is a blanket policy. There is a probability that this illegal conduct will recur in the future. *See* ¶ 14 of the complaint.

## THE REMEDIAL PURPOSES OF CLASS ACTIONS

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. Without class actions, many claims would go unaddressed. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. The Court can take judicial notice that such persons are not wealthy, are not knowledgeable about their rights, and will often be reluctant to sue a government that they hope will give them asylum. They are not seeking money damages; most of them do not have English as a native language; most fear all governments. Very few lawyers have experience in asylum and also in FOIA. Without a class action, most of these asylum applicants will not see justice.

This class action is simple: asylum applicants were wrongly denied a portion of their Assessments. Courts have certified far more complex class actions:

In *Thorpe v. District of Columbia,* 303 F.R.D. 120, 143 (D.D.C. 2014), a class was certified of disabled persons in nursing homes who claimed they were unnecessarily segregated and isolated from their communities by being confined to nursing facilities. The Court stated that a "principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner."

In *DL v. District of Columbia,* 302 F.R.D. 1 (D.D.C. November 8, 2013), a class was certified of children with various disabilities, who were not provided with "free appropriate public education." Four sub-classes were certified: 1] children who were not "identified" as needing special education; 2] children who did not receive a timely "initial evaluation;" 3] children who did not receive a timely "determination of eligibility;" and 4] children in "early intervention programs" who did not have a "smooth and effective" transition to a preschool program. Each of the above phrases in quotation marks had a special meaning. The *DL* court recognized that where many class members were indigent and unable to obtain legal services, there is "the economic reality that petitioner's suit must proceed as a class action or not at all." *Id.* at 11 (punctuation, alterations, citations omitted).

Nursing homes, and nursing home residents, will of course be quite different from one another. Disabled children, in different programs, will of course be different from one another. If such can be certified under Rule 23, then all the more should asylum applicants, who made the same request to the same office, who answered with boilerplate, be certified under Rule 23.

## THE PREREQUISITES OF RULE 23(a) ARE SATISFIED

To justify class certification, the plaintiffs must satisfy the four requirements in FRCP 23(a): 1) the class is so numerous that joinder of all members is impracticable 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

### A. Numerosity : Rule 23(a)(1)

If the class is so large that joinder of all parties is impracticable, the prerequisite of numerosity is satisfied. "This element does not require plaintiffs to prove the exact number of potential class members; rather, they need only provide a reasonable basis for their estimate of the putative class size." *Bynum v. District of Columbia,* 214 F.R.D. 27, 33 (D.D.C. 2003). Numerosity "is presumed at a level of 40 members." *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. 2013)(citing *Bynum,* supra.)

*This class has at least 40 members*

There are seven plaintiffs individually named in the complaint; there are 11 listed in ECF # 16-2 of *Bayala v. DHS;* there are three listed in ECF #22, *Id.,* and 20 more are identified in Exhibit #1, attached hereto.  7+11+3+20 = 41.

¶ 66 of the complaint states that there are more than 100 members of the class. On May 8, 2015, more than 30 days ago, plaintiffs submitted 8 interrogatories to the DHS, as per Civil Rule 33, asking the DHS how many members were in the class. On May 9, 2015, more than 30 days ago, plaintiffs submitted eight Requests for Admissions to the DHS, as per Civil Rule 36, asking the DHS to admit that more than 100 members were in the class. The DHS has still not answered these requests.

The Court can take judicial notice that the DHS has received over 100,000 FOIA requests each year, from 2009 to 2015.  Therefore, for those six years, which are the years relevant to this lawsuit, the DHS received over 600,000 FOIA requests.  Not all of them were requests from asylum applicants, admittedly.

In fiscal year 2012, the USCIS processed 145,278 FOIA requests. U.S. DEP'T OF HOMELAND SEC., 2012 FREEDOM OF INFORMATION ACT REPORT TO THE ATTORNEY GENERAL 4 (2013) [hereinafter DHS 2012 FOIA REPORT], *available*

*at* http://www.dhs.gov/sites/default/files/publications/foia/privacy-foia-annual-report-fy-2012-dhs.pdf.  USCIS received 117,787 new FOIA requests in fiscal year 2012 and had 43,568 requests pending at the start of the year. *Id.* at 3. Note that while DHS is composed of eighteen distinct agencies, USCIS processed 70% of DHS's total FOIA requests (145,278 out of 205,895 total). *Id.*

In FY 2012, USCIS granted partial disclosure in 86,270 cases. *Id.* 42,453 requests were denied. *Id.*

These numbers support the allegation in the complaint that there are more than 100 members of the class.

*It is impracticable to join all the members of this class*

"Several of the relevant factors to impracticability—'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members,' Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir.1993)—are present here." *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. November 8, 2013)( on remand after the Court of Appeals decision dated April 12, 2013 , reported at 713 F.3d 120).

Moreover, the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join. *See, e.g.,* Olson v. Brown, 284 F.R.D. 398, 408 (N.D.Ind.2012) ("[F]uture members make joinder inherently impracticable because there is no way to know who they

will be" and "the inherently transitory nature of the class members makes their joinder in a single, non-class suit impossible, since only a portion of the class will have standing to bring their claims at at any one time.").

### B. Commonality : Rule 23(a)(2)

Commonality requires that a plaintiff raise claims which rest on questions of law or fact common to the class. *Taylor v. D.C. Water & Sewer Auth,* 241 F.R.D. 33, 37 (D.D.C. 2007).

As stated in ¶ 1 of the complaint, the DHS "has a policy and practice of not providing" any segregable portions of the asylum officer Assessment. "Defendant has a policy and practice of not even attempting to determine if there are segregable portions. " *Id.*

During the past six years, more than 100 asylum applicants have made a FOIA request for their assessment. "The defendant has not provided even one assessment in response." *¶ 15* of complaint. Instead, the DHS answers with computerized boilerplate. Plaintiffs have identified 25 letters from the DHS that contain exactly the same sentence: "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information." ¶ 16-19 of the complaint. As the D.C. Circuit recently explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members." *DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013)

There are no factual variations of the members of this class. Even if there were, "…[F]actual variations among the class members will not defeat the commonality requirements." *Bynum v. District of Columbia,* 217 F.R.D. 43, 46. (D.D.C. August 11, 2013)(inmates challenged the District's policy of conducting suspicionless strip searches of inmates returning from judicial proceedings.) Where a common policy or practice is identified, "[f]actual variations among the class members will not defeat the commonality requirement." *Moore v. Napolitano*, 926 F. Supp. 2d 8, 29 (D.D.C. 2013) (citation omitted). "Even a single common question will do" to support a commonality finding. *Wal-Mart Stores v. Dukes,* 131 S. Ct. 2556, 2566 (internal formatting and citations omitted).

Commonality has been found in cases far more complex than the instant case: *See, e.g., Parsons v. Ryan,* 289 F.R.D. 513, 521 (D.Ariz.2013) (finding commonality in class of state inmates alleging deliberate indifference to medical needs "where all inmates are subjected to Defendant's actions or lack thereof, because they have the sole responsibility for health care policy"); *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg,* 290 F.R.D. 409 (S.D.N.Y.2012) (finding commonality for a class challenging a "City-wide policy and [the city's] alleged failure to take into account the needs of disabled citizens" despite the fact "the class members have diverse disabilities and will not all be affected by the alleged omissions in ... the same way"). *Lyon v. U.S. Immigration*

*and Customs Enforcement,* 300 F.R.D. 628, 643 (N.D. Cal. 2014) (finding commonality where detainees challenged restrictive telephone policies of three different detention facilities, despite the fact that the facilities had different rules).

### C. Typicality : Rule 23(a)(3)

Typicality requires that a plaintiff must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class.

The named plaintiffs are asylum applicants whose claims were adjudicated by a group of trained asylum officers. Each applicant wants the segregable portions of his assessment. There is no evidence that any of the applicants are different from one another. Each was injured in the same way. Typicality is easily satisfied.

There are no important factual variations between the class members. Even if there were, "… factual variations between the claims of class representatives and the claims of other class members do not negate typicality." *Bynum v. District of Columbia, v. District of Columbia,* 217 F.R.D., 43, 47. Typicality "is generally satisfied when the plaintiff's claims arise from the same course of conduct, series of events, or legal theories as the claims of other class members." *In re XM Satellite Radio Holdings,* 237 FRD 13, 18 (D.D.C. 2006).

**Adequacy of Representation: Rule 23(a)(4)**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *TAmchem Prods. v. Windsor,* 521 U.S. 591, 625-26 (1997). There are no conflicts here.

In determining whether the named plaintiffs will fairly and adequately protect the interests of the class members, the court should consider two requirements: 1) the named representative must not have antagonistic or conflicting interests with unnamed members of the class; and 2) the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel. *National Ass'n for Mental Health v. Califano,* 717 F.2d 1451, 1458 (D.C. Cir. 1983).

In the case at bar, the named representatives do not have an antagonistic or conflicting interests with the class members. Undersigned counsel is vigorously prosecuting this case. Plaintiffs have satisfied all the requirements of Rule 23(a)(4).

**CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(2)**

Rule 23(b)(2) authorizes class certification where the party opposing the class has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *In re DC Water & Sewer Authority,* 561 F.3d 494, 495, n. 1 (D.C. Cir. 2009).

The plaintiff need not establish that a class action would be superior to individual actions or that common legal and factual questions predominate. *Richards v. Delta Airlines,* 453 F.3d 525, 530 (D.C. Cir. 2006).

As stated in ¶ 25 of the complaint, the DHS "has a policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment. This policy is uniform. It is a blanket policy." There is no evidence of record that the DHS has *ever,* in the past six years, released a portion of an asylum officer Assessment. The DHS answers FOIA requests with boilerplate. "Use of boilerplate will not do. " *C.R.E.W. v. US DOJ,* 746 F.3d 1082, 1101 (D.C. Cir. 2012). Where an agency uses the same, "precise language," over and over again, it is using "boilerplate language." *Chen v. Holder,* 7442 F.3d 171, 181, note 4. Boilerplate language is "insufficient to demonstrate that the agency gave it more than perfunctory consideration." *Id.* at 181. The Court should stop this practice.

Plaintiffs assert that the DHS has failed to meet its statutory obligations under the FOIA, to disclose what is "reasonably segregable." Plaintiffs aim to rectify the systemic failure of the DHS to comply with 5 U.S.C. § 552(b). Therefore, final injunctive relief is appropriate respecting the class as a whole. The requirements of Civil Rule 23(b)(2) have been met.

CONCLUSION

Certification of the proposed class will advance the broad remedial purposes of FOIA. The Court should certify the following class:

"all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

June 15, 2015

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com