## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICA GATORE, et. al.** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) **Civil No. 15-cv-00459-RGW** |
| **HOMELAND SECURITY,** | ) |
| | ) |
| **Defendant** | ) |
| | ) |
| ———————————————————— | ) |

## <u>DECLARATION OF JILL A. EGGLESTON</u>

1    I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare:

2    1. I am the Assistant Center Director in the Freedom of Information and Privacy Act
3       (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and
4       Immigration Services (USCIS), within the United States Department of Homeland
5       Security (DHS), in Lees Summit, Missouri. I have held the position of Assistant
6       Center Director since February 4, 2008. I am also an attorney, licensed to practice
7       law by the State of Kansas in 1983. Prior to joining DHS, I served for 19 ½ years as
8       Associate General Counsel for the Defense Finance and Accounting Service (DFAS)
9       of the United States Department of Defense (DoD). As part of my duties with the
10      DFAS, among other things, I provided legal advice to the agency on the release of
11      information sought under the FOIA and PA.
12

13    2. As the USCIS FOIA Officer, I supervise over 150 information access professionals
14      who are responsible for the orderly processing of all public, congressional, judicial,
15      and inter-/intra-agency requests or demands for access to USCIS records and
16      information pursuant to the FOIA, Privacy Act, Executive Orders, departmental
17      directives, regulations and compulsory legal process.
18

19    3. Through the exercise of my official duties, I am generally familiar with the USCIS's
20      procedures for processing requests for access to agency records and information.

21  More specifically, I am familiar with the Plaintiffs' FOIA requests at dispute in the
22  above-captioned civil action. I make the following statements based upon my
23  personal knowledge and upon information made available to me in my official
24  capacity.
25
26  4.  This Declaration is submitted in support of DHS's defense in this matter.   This
27  Declaration describes, generally, agency procedures for processing FOIA requests for
28  access to agency records and, more specifically, agency action taken in response to
29  the Plaintiff's FOIA request.
30
31
32  5.  In an effort to process FOIA requests in a manner designed to be fair and expeditious,
33  USCIS has adopted a policy of processing such requests on a first-in/first-out basis.
34  This process is further enhanced by the implementation of a regulation providing for
35  expedited processing of requests under given circumstances, and the adoption of a
36  multi-track system of processing which not only allows the agency to process
37  requests on a first-in/first-out basis within each track, but also permits USCIS to
38  respond to relatively simple requests more quickly than requests involving complex
39  and/or voluminous records.   USCIS's first-in/first-out and multi-track processing is
40  consistent with the requirements set forth in <u>Open America v. Watergate Special</u>
41  <u>Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976) and <u>Exner v. FBI</u>, 612 F.2d 1202,
42  1980 U.S. App. LEXIS 20856, February 4, 1980.
43

44  **<u>USCIS'S STANDARD FOIA OPERATING PROCEDURES</u>**

45  6.  USCIS routinely and consistently processes FOIA requests in compliance
46  with DHS implementing regulations found at 6 C.F.R. Part 5 and
47  Management Directive No. 0460.1: [1]
48
49      a) after determining the nature, scope, and contours of a valid
50      FOIA request, a preliminary search is conducted to locate
51      potentially responsive records;
52

---

[1]  DHS requirements for submitting a FOIA request for an individual's records include the following:

1.  All FOIA requests must be submitted in writing and signed by the requester. 6 C.F.R. §
    5.3(a).

2.  If the requester seeks records about him/herself the requester must verify identity by
    submitting, in writing, a statement containing his/her full name, current address, date of birth
    and place of birth. This statement must be signed and the signature must either be notarized
    or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature). This
    signature must be submitted along with the FOIA request. 6 C.F.R. §§ 5.3(a), 5.21(d).

3.  The FOIA request must reasonably describe the records that are being sought. 6 C.F.R. §
    5.3(b).

2

b) because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;

e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) at that time;

f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

7. During FY 2013, the ninety-nine federal agencies subject to the FOIA collectively received 704,394 requests. See foia.gov. Of that total, USCIS received 132,797 total requests. This represents over 18 percent of the total FOIA requests that were received government wide in FY13. During FY 2012, the federal government collectively received 651,254 requests. Of that total, USCIS received 117,787 requests, again, over 18 percent of the total FOIA requests that were received government wide. USCIS receives, by a significant margin, the most FOIA requests of any federal Agency in the federal government. As reflected above, USCIS is only one of ninety-nine federal agencies subject to the FOIA, but it receives nearly one/fifth of the total requests received.

## PLAINTIFFS' FOIA REQUESTS

8. The eight individual FOIA requests that are relevant to the plaintiffs named in the instant *Complaint* are described below:

3

**Rica Gatore** filed a request dated September 10, 2014, and received by USCIS on September 24, 2014.  This request sought the notes, assessment prepared by a USCIS asylum officer, and materials used by the asylum officer but not provided to Gatore.   USCIS responded on October 21, 2014, informing the requester that there were 297 pages responsive to the request. The requester was provided with 246 pages released in full, and twenty-two (22) pages released in part.    The requester was informed that twelve (12) pages were being withheld in full.  USCIS referred five (5) pages to the Department of State for direct response.  On December 11, 2014, in response to plaintiff's administrative appeal, USCIS released an additional seven (7) pages in part, and one (1) page in full.  See Exhibit A.

**Isam Al Timeny** filed a request dated July 16, 2014, and received by USCIS on August 6, 2014.  This request sought the notes, assessment prepared by a USCIS asylum officer, and materials used by the asylum officer but not provided to Al Timeny.  USCIS responded on September 2, 2014, informing the requester that there were 724 pages responsive to the request.    The requester was provided with 672 pages released in full, and twenty-five (25) pages released in part.    The requester was informed that fourteen (14) pages were being withheld in full.  USCIS referred ten (10) pages to the Department of State for direct response.  On November 4, 2014, in response to plaintiff's administrative appeal, USCIS released an additional three (3) pages in part, and ten (10) pages in full.  See Exhibit B.

**Georgine Luminoka** filed a request dated August 8, 2014, and received by USCIS on August 18, 2014.   This request sought the notes, assessment prepared by a USCIS asylum officer, and materials used by the asylum officer but not provided to Ms. Luminoka.  USCIS responded on September 23, 2014, informing the requester that there were 289 pages responsive to the request. The requester was provided with 260 pages released in full, and thirteen (13) pages released in part.    The requester was informed that seven (7) pages were being withheld in full.  USCIS referred ten (10) pages to the Department of State for direct response.  On October 13, 2014, in response to plaintiff's administrative appeal, USCIS released an additional six (6) pages in part.  See Exhibit C.

**Innocent Kabano Shyaka** filed a request dated November 8, 2012, and received by USCIS on November 15, 2012.  This request sought the notes and assessment prepared by a USCIS asylum officer.   USCIS responded on December 20, 2012, informing the requester that there were 101 pages responsive to the request.  The requester was provided with sixty-seven (67) pages released in full, and three (3) pages released in part.    The requester was informed that eleven (11) pages were being withheld in full.  USCIS referred ten (10) pages to the Department of State, and three (3) pages to US-VISIT for direct response.  On March 11, 2013, in response to plaintiff's administrative

appeal, USCIS released an additional nine (9) pages in part, and one (1) page in full.  See Exhibit D.

**Charly Minth Ayessa** filed a request dated July 14, 2014, and received by USCIS on July 21, 2014.  This request sought the notes, assessment prepared by a USCIS asylum officer and materials used by the asylum officer but not provided to Ayessa.  USCIS responded on August 19, 2014, informing the requester that there were 373 pages responsive to the request.  The requester was provided with 309 pages released in full, and twenty-one (21) pages released in part. The requester was informed that thirty-four (34) pages were being withheld in full.  USCIS referred seven (7) pages to the Department of State for direct response.  On October 7, 2014, in response to plaintiff's administrative appeal, USCIS released an additional eighteen (18) pages in part.  See Exhibit E.

**Aminata Ouedraogo** filed a request dated July 7, 2014, and received by USCIS on July 15, 2014.  This request sought a copy of the assessment prepared by a USCIS asylum.  USCIS responded on August 15, 2014, informing the requester that there were 155 pages responsive to the request. The requester was provided with 112 pages released in full, and eleven (11) pages released in part. The requester was informed that thirty-four (34) pages were being withheld in full.  USCIS referred twelve (12) pages to the Department of State for direct response.  On September 18, 2014, in response to plaintiff's administrative appeal, USCIS released an additional eight (8) pages in part.  See Exhibit F.

**Herve Shyaka** filed a request dated January 16, 2013, and received by USCIS on July 24, 2014.  This request sought a copy of the notes and assessment prepared by a USCIS asylum.  USCIS responded on February 20, 2013, informing the requester that there were 101 pages responsive to the request. The requester was provided with seventy-seven (77) pages released in full, and three (3) pages released in part. The requester was informed that ten (10) pages were being withheld in full.  USCIS referred three (3) pages to US-VISIT, and eight (8) to the Department of State for direct response.  On April 21, 2013, in response to plaintiff's administrative appeal, USCIS released an additional seven (7) pages in part.  See Exhibit G.

**Catholic Charities** filed a request dated February 13, 2015.  This request sought

> Documents relating to the processing, answering, and responding to FOIA requests for assessments of asylum officers.  This would include, but is not limited to: instructions given to staff; policy statements; rules, and memoranda.

5

USCIS responded on February 18, 2015.  In its response, USCIS notified the plaintiff/requester Catholic Charities that because of "unusual circumstances USCIS "may not be able to process [Catholic Charities'] request within the statutory time limit . . ."  And, because of the unusual nature of the request that "it will be necessary to extend the time limit for processing beyond the ten working day extension period due to the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." USCIS informed the plaintiff/requester Catholic Charities that it may wish to modify its request in order to hasten processing. See Exhibit H.

## PROCESSING PLAINTIFFS' FOIA REQUESTS

9.  When the Plaintiffs' FOIA requests, as relating to the individual clients of Catholic Charities named in the instant *Complaint* were ready for processing, USCIS staff reviewed all responsive documents pursuant to the FOIA requests.

10. The letter further advised the requestor that the USCIS records that were withheld were withheld pursuant to 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.  This *Complaint*, however, implicates only 5 U.S.C. § 552 (b)(5).

   Exemption (b)(5) provides protection for inter-agency or intra-agency
   memorandums or letters, which would not be available by law to a
   party other than an agency in litigation with the agency.  The types of
   documents and/or information that we have withheld under this
   exemption may consist of documents containing pre-decisional
   information, documents or other memoranda prepared in
   contemplation of litigation, or confidential communications between
   attorney and client.

11. Plaintiff then filed the instant FOIA complaint.  In the complaint, as with his administrative appeal, the only issue raised by the Plaintiff was the Agency's withholding of the factual paragraphs included in the assessments to refer. The only documents that still remain at dispute in this matter are the assessments to refer.

6

**FOIA EXEMPTION APPLICABLE TO THE**
**USCIS ASSESSMENTS TO REFER**

16. Exemption 5 incorporates all of the normal civil discovery privileges including the attorney-client, work product and executive privileges. Grand Central Partnership v. Cuomo, 166 F.3d 473, 481 (2nd Cir.1999). The specific privilege covered by Exemption 5 applicable to the Assessment to Refer document is the deliberative process privilege which is an aspect of the executive privilege. Id. The deliberative process privilege is intended to "protect the decision-making process of government agencies" and "encourage the frank discussion of legal and policy issues." Wolfe v. Department of Health & Human Services, 839 F.2d 768, 773 (D.C. Cir.1988). The scope of the privilege "covers documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001).

17. To qualify for the deliberative process privilege, the government must show that the documents are both "pre-decisional" and "deliberative." Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 186, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Documents are pre-decisional when they precede an agency decision and are prepared in order to assist an agency in arriving at its decision. Grand Central Partnership, 166 F.3d at 482. Documents are deliberative when they comprise part of the process by which government decisions are made. Id.

The assessments to refer were prepared by an Asylum Officer subject to approval a Supervisory Asylum Officer (SAO), and it predates USCIS's decision to not grant asylum to the Plaintiff. The document forms the basis for the decision to not grant the Plaintiff asylum and instead refer him to an immigration judge for removal proceedings.

In this case, the assessments to refer are prepared by the Asylum Officers in narrative form, and explain the officers concerns, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court. The Assessment to Refer serves as a basis for USCIS' final decision, as reflected in the Referral Notice which is provided to the applicant. The Agency's final decision is the Referral Notice, which is signed by the SAO for the Director of the Asylum Office.

It is in the interest of USCIS to protect the manner in which asylum officers prioritize and analyze factual information obtained from asylum applicants during the interview, and included in the assessments prepared for decision makers. The deliberative process agency asylum officers apply during and after interviews with subjects, and detailed in the assessments to refer reports is the type of material FOIA exemption (b)(5)'s deliberative process privilege is designed to protect from disclosure.

7

275    The decision making process documented by the USCIS asylum officer in the
276    assessments to refer report are an essential part of the USCIS deliberative process that
277    leads to the ultimate determination to deny an alien's application for asylum, and
278    refer the alien for removal proceedings in immigration court.

279    The factual portions of the assessment to refer cannot be severed or segregated from
280    its context and thus must remain exempt from disclosure. The factual distillation in
281    the assessment to refer does not purport to be a verbatim transcript of the plaintiffs'
282    asylum interviews.  Rather, they reflect a selective recording of information the
283    USCIS asylum officers deemed particularly pertinent to plaintiffs' requests for
284    asylum. As such, the assessment to refer document contains factual matter that cannot
285    be severed from its context and is exempt from disclosure pursuant to Exemption 5 of
286    the FOIA. See Abramyan v U.S. Department of Homeland Security, 2013
287    WL6247338 11, 12 (D.C.Cir. December 4, 2013 ) (Assessment to Refer prepared by
288    Asylum Officer is properly withheld under Exemption 5); Anguimate v. U.S.
289    Department of Homeland Security, 918, 19 F.Supp.2d 13 (D.C.Cir. January 24, 2013)
290    (Assessment to Refer prepared by an asylum officer for the Department of Homeland
291    Security is an intra-agency memorandum protected by the deliberative-process
292    privilege, and is exempt from disclosure under FOIA exemption for inter-agency or
293    intra-agency ).

294    Once the Assessment to Refer is reviewed for legal sufficiency, and initialed by the
295    Asylum's Officer's Supervisor (SAO) it is placed in the applicant's A-file, and an
296    agency decision, known as a "referral notice," is issued by the USCIS Asylum office
297    to the asylum applicant and his or her counsel.  The applicant's A-file is then
298    forwarded to Immigration and Custom's Enforcement, for docketing and litigation.

299    Referral Notices are issued by the USCIS Asylum Office to asylum applicants (and/or
300    their attorneys) subsequent to the completion of the asylum officer's assessment to
301    refer, informs the applicant that he is being referred to an immigration judge for a
302    final decision, and explains, in narrative form, the basis for the referral of the
303    plaintiffs' asylum applications.

304

305    19.  It is in the interests of USCIS to protect the manner in which asylum officers, such as
306         those that interviewed the plaintiffs, prioritize then analyze information gleaned from
307         asylum applicants during interviews.  The deliberative process such agency asylum
308         officers apply during and after interviews with subjects and is contained within their
309         assessment to refer report is just the type of material Exemption 5's deliberative
310         process privilege is designed to protect from disclosure. The factual distillation
311         in the assessments to refer do not purport to be a verbatim transcript of the
312         Plaintiff's asylum interview.   Rather, it reflects a selective recording of
313         information the USCIS asylum officer deemed particularly pertinent to
314         plaintiff's request for asylum. As such, the assessment to refer document
315         contains factual matter that cannot be severed from its context and is exempt
316         from disclosure pursuant to Exemption 5 of the FOIA. Judicial Watch, Inc. v.
317         Reno, 2001 WL 1902811, at *4 (D. D.C. 2001) (notes of interview with

8

318   asylum subject's grandmother is properly withheld under Exemption 5);
319   Mapothis v. Dep't of Justice, 3 F.3d 1533, 1539 (D.C.Cir.1993) (notes of
320   interview in asylum case protected because release could reveal how
321   interviewer prioritized different facts in deliberating).

322

323   20. The documents at issue in this litigation, the asylum officers' assessments to refer, are
324   fully described in this Declaration.  I am familiar with the matters described in this
325   Declaration and attest to the accuracy of the document descriptions and applicability
326   of the FOIA exemptions asserted.  All responsive documents were reviewed with an
327   eye toward providing the fullest possible disclosure and, in furtherance of this goal,
328   received a line-by-line examination in an effort to identify all reasonably segregable,
329   unprivileged, nonexempt portions for release to the requester.

330

331   I declare under the penalty of perjury that the foregoing is true and accurate to the best of my
332   knowledge and belief.

333

334   Executed in Lee's Summit, Missouri, on this 21st day of July, 2015.

335
336
337
338
339   JILL EGGLESTON
340   Assistant Center Director
341   Freedom of Information Act & Privacy Act Unit
342   USCIS National Records Center

343
344
345
346
347
348
349

350

9