**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICA GATORE, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil No. 1:15-cv-459 (RBW) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF HOMELAND SECURITY | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY CLASS, AND OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, United States Department of Homeland Security ("Defendant"), by and

through undersigned counsel, respectfully moves for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure, as no genuine issue of material fact exists and Defendant has

satisfied all of its obligations pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§552, in response to Plaintiffs request for information.   As demonstrated by the attached

Memorandum of Points and Authorities, Defendant is entitled to judgment as a matter of law as

Defendant properly withheld documents pursuant to FOIA exemptions (b)(5).   Defendant,

accordingly, now seeks summary judgment.

\*       \*       \*

Dated:  July 28, 2015,
          Washington, DC

                              Respectfully Submitted,

                              VINCENT   H. COHEN, JR. D.C. Bar #471489
                              Acting United States Attorney
                              for the District of Columbia

                              DANIEL F. VAN HORN, D.C. Bar #924092
                              Civil Chief

                              By: */s/ Carl E. Ross*_____  __ _____
                              CARL EZEKIEL ROSS, D.C. Bar #492441
                              Assistant United States Attorney
                              Civil Division
                              555 4th Street, N.W.
                              Washington, D.C. 20530
                              Tel:   (202) 252-2533
                              Fax:   (202) 252-2505
                              Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICA GATORE, *et al.*       ) | |
|             ) | |
| Plaintiffs,       ) | |
|             ) | Civil No. 1:15-cv-459 (RBW) |
| v.       ) | |
|             ) | |
| UNITED STATES DEPARTMENT       ) | |
| OF HOMELAND SECURITY       ) | |
|             ) | |
| Defendant.       ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Rule 56 of the Rules of Civil Procedure and Local Rule 7(h), United States Department of Homeland Security ("Defendant"), respectfully submits the following statement of material facts not in dispute:

1.      In the instant action, Plaintiffs challenge Defendant's processing of asylum officer's assessments to refer. *See generally* Pl's Compl.

2.      "In an effort to process FOIA requests in a manner designed to be fair and expeditious, [Defendant] has adopted a policy of processing such requests on a first-in/first-out basis. *See* July 21, 2015 Declaration of Jill Eggleston ("Eggleston Decl.") at ¶ 5.

3.      In the instant case, Defendant notified "plaintiff/requester Catholic Charities that because of 'unusual circumstances' USCIS 'may not be able to process [Catholic Charities'] request within the statutory time limit . . .'" *Id*. at ¶ 8; Exhibit H to Eggleston Decl.

4.      Assessments to refer are documents created by asylum officers containing their opinion whether an applicant should receive asylum or, instead, be referred to an immigration judge for removal proceedings. *See* Eggleston Decl. at ¶ 17 (the assessments at issue "predate[] USCIS's decision not to grant asylum," and that the "document forms the basis for the decision not

to grant [] asylum and instead refer [an applicant] to an immigration judge for removal proceedings."

5.      "The assessments to refer [are] prepared by an Asylum Officer subject to approval [by] a Supervisory Asylum Officer (SAO)."   *Id.*

6.      "The assessments to refer are prepared by the Asylum Officers in narrative form, and explain the officers concerns, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court."   *Id.*

7.      Ms. Eggleston has explained that "[i]t is in the interest of USCIS to protect the manner in which asylum officers prioritize and analyze factual information obtain from asylum applicants during the interview, and included in the assessments prepared for decision makers." *Id.*

8.      Ms. Eggleston further explained that the "factual portions of the assessment to refer cannot be severed or segregated from its context and thus must remain exempt from disclosure." Eggleston Decl. at ¶ 17.

9.      Indeed, "factual distillation in the assessment to refer does not purport to be verbatim transcript of the plaintiffs' asylum interview.   Rather, they reflect a selective recording of information the USCIS asylum officers deemed particularly pertinent to plaintiffs' requests for asylum."   *Id.*

10.     Furthermore "[a]ll responsive documents were reviewed with an eye toward providing the fullest possible disclosure and, in furtherance of this goal, received a line-by-line examination in an effort to identify all reasonable segerable, unprivileged, nonexempt portions for release to the requester."   *Id.* at ¶ 20.

11.     As a result more than 100 pages of documents were released for each Plaintiff, with

2

some Plaintiffs receiving as many as 700 pages, but no portions of the asylum officer's assessment were released. *See generally id.*

  12. Plaintiffs now challenge the decision not to release the asylum assessment. *See* Compl.

\*  \*  \*

Dated: July 28, 2015,
   Washington, DC

       Respectfully Submitted,

       VINCENT  H. COHEN, JR. D.C. Bar #471489
       Acting United States Attorney
       for the District of Columbia

       DANIEL F. VAN HORN, D.C. Bar #924092
       Civil Chief

       By: */s/ Carl E. Ross*        
       CARL EZEKIEL ROSS, D.C. Bar #492441
       Assistant United States Attorney
       Civil Division
       555 4th Street, N.W.
       Washington, D.C. 20530
       Tel: (202) 252-2533
       Fax: (202) 252-2505
       Attorneys for Defendant

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RICA GATORE, *et al.*                 ) | |
|                           ) | |
|             Plaintiffs,       ) | |
|                           ) | Civil No. 1:15-cv-459 (RBW) |
|             v.                 ) | |
|                           ) | |
| UNITED STATES DEPARTMENT    ) | |
| OF HOMELAND SECURITY        ) | |
|                           ) | |
|             Defendant.       ) | |

**DEFENDANT'S MEORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS, AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, United States Department of Homeland Security ("Defendant") files this

Memorandum of Points and Authorities in support of its Motion for Summary Judgment and

Opposition to Plaintiffs' Motion to Certify Class and Opposition to Plaintiffs' Motion for

Summary Judgment with respect to Count IX of Plaintiff's Complaint.   Defendant is entitled to

judgment as a matter of law with respect to Plaintiffs' Complaint challenging disclosures pursuant

to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552.   As demonstrated below, Defendant

properly withheld documents pursuant to FOIA exemption (b)(5).   Defendant, accordingly, now

moves for summary judgment.

On March 31, 2015, Plaintiffs filed a Complaint challenging Defendant's withholding of

asylum officer assessments in numerous cases.   On June 15, 2015, Plaintiffs filed a Motion to

Certify a Class in the instant Freedom of Information Act ("FOIA") matter.   In their motion,

Plaintiffs argue that a class should be certified, pursuant to Federal Rules of Civil Procedure 23,

because Defendants have held that there were "no segregable portions of the asylum officer

Assessment," in numerous FOIA actions seeking such an assessment.   *See generally* Pls' Mt. to

Certify Class.   On June 24, 2015 Plaintiffs filed a Motion for Summary Judgment as to the Ninth

Cause of Action, with respect to Plaintiff's Class Action Count requesting summary judgment on

Plaintiff's class action count – regarding alleged segregablity of the asylum officer's assessment.

*See generally* Pl's Mt. for Partial Summ. Judg.

In presenting both Plaintiffs' pending motions, Plaintiffs neglect to inform the Court of the

fact that Defendant released hundreds of pages, per Plaintiff, of material, that Defendant

conducted a line-by-line review of material for segerable portions to be released, nor the bases for

Defendant's withholding of the asylum officer's assessment.   Indeed, this Court has repeatedly

upheld Defendant's assertion of Exemption 5 to withhold an asylum officer's assessment, and,

indeed, has held that the Agency's determination that the assessment was not segerable valid under

the same factual circumstances.   In that Defendant has properly applied Exemption 5 to withhold

information regarding the asylum officer's assessment, Defendant now moves for summary

judgment and Plaintiffs' Motions are without merit.[1]

## FACTUAL BACKGROUND

In the instant action, Plaintiffs challenge Defendant's processing of asylum officer's

assessments to refer.   *See generally* Pl's Compl.   "In an effort to process FOIA requests in a

manner designed to be fair and expeditious, [Defendant] has adopted a policy of processing such

requests on a first-in/first-out basis.   *See* July 21, 2015 Declaration of Jill Eggleston ("Eggleston

---

[1] Defendant also applied Exemption 6, Exemption 7(C), and Exemption 7(E), to withhold or redact numerous documents in response to the individual Plaintiff's FOIA requests.   Plaintiffs' however, do not appear to challenge Defendant's withholdings or the adequacy of the search with respect to individual FOIA requests but attempt to bring a class action challenging the Agency's withholdings of asylum officer assessments pursuant to Exemption 5.   Defendant, accordingly, addresses that issue in the instant motion.

Decl.") at ¶ 5.   In the instant case, Defendant notified "plaintiff/requester Catholic Charities that because of 'unusual circumstances' USCIS 'may not be able to process [Catholic Charities'] request within the statutory time limit . . .'"   *Id.* at ¶ 8.

Assessments to refer are documents created by asylum officers containing their opinion whether an applicant should receive asylum or, instead, be referred to an immigration judge for removal proceedings.   *See* Eggleston Decl. at ¶ 17 (the assessments at issue "predate[] USCIS's decision not to grant asylum," and that the "document forms the basis for the decision not to grant [] asylum and instead refer [an applicant] to an immigration judge for removal proceedings." "The assessments to refer [are] prepared by an Asylum Officer subject to approval [by] a Supervisory Asylum Officer (SAO)."   *Id.*   "The assessments to refer are prepared by the Asylum Officers in narrative form, and explain the officers concerns, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court."   *Id.*   Ms. Eggleston has explained that "[i]t is in the interest of USCIS to protect the manner in which asylum officers prioritize and analyze factual information obtain from asylum applicants during the interview, and included in the assessments prepared for decision makers."   *Id.*

Ms. Eggleston further explained that the "factual portions of the assessment to refer cannot be severed or segregated from its context and thus must remain exempt from disclosure." Eggleston Decl. at ¶ 17.   Indeed, "factual distillation in the assessment to refer does not purport to be verbatim transcript of the plaintiffs' asylum interview.   Rather, they reflect a selective recording of information the USCIS asylum officers deemed particularly pertinent to plaintiffs' requests for asylum."   *Id.*   Furthermore "[a]ll responsive documents were reviewed with an eye toward providing the fullest possible disclosure and, in furtherance of this goal, received a

3

line-by-line examination in an effort to identify all reasonable segerable, unprivileged, nonexempt portions for release to the requester." *Id.* at ¶ 20. As a result more than 100 pages of documents were released for each Plaintiff, with some Plaintiffs receiving as many as 700 pages, but no portions of the asylum officer's assessment were released. *See generally id.*

Plaintiffs now challenge the decision not to release the asylum assessment. *See* Compl.

## ARGUMENT

I. **STANDARD OF REVIEW**

A. **Summary Judgment Generally**

Where no genuine dispute exists as to any material fact, summary judgment is required. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *See id.* "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiffs must present some objective evidence that would enable the Court to find they are entitled to relief. In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In *Anderson*, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's

4

position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (establishing that the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).   In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"   477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B.   Summary Judgment in FOIA Cases

The summary judgment standards set forth above also apply to FOIA cases, which "typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).   In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute when viewing the facts in the light most favorable to the non-moving party.   *See Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979). The moving party must show that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.   *See Exxon Corp. v. F. T. C.,* 663 F.2d 120, 126 (D.C. Cir. 1980) (holding that an index of documents and two affidavits describing the search as well as which documents were produced and which were exempt was sufficient for the Commission to prevail on a summary judgment motion).

An agency satisfies the summary judgment requirements in a FOIA case by demonstrating that it conducted a reasonable search and providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are

exempt from disclosure.   *See Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 353 (D.C. Cir.

1978) (holding that an affidavit that provides "detailed descriptions of the searches undertaken,

and a detailed explanation of why further searches would be unreasonably burdensome" is

sufficient for the Agency to win on a motion for summary judgment); *McGehee v. C.I.A.*, 697 F.2d

1095, 1102 (D.C. Cir. 1983) (affirming that the district court may "rely upon affidavits submitted

by the agency, describing its search procedures and explaining why a more thorough investigation

would have been unduly burdensome"); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C.

2001) (reiterating that summary judgment in FOIA cases may be awarded solely on the basis of

agency affidavits "when the affidavits describe 'the documents and the justifications for

non-disclosure with reasonably specific detail, demonstrate that the information withheld logically

falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d

724, 738 (D.C. Cir. 1981)).

      With respect to an agency's non-disclosure decisions in a FOIA action, the court may rely

on affidavits or declarations if they describe "the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith."   *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *SafeCard

Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (affidavits and declarations are

"accorded a presumption of good faith, which cannot be rebutted by purely speculative claims

about the existence and discoverability of other documents").

      "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it

appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)

(quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).   In assessing the logic and

plausibility of an agency assertion of an exemption, "reviewing courts [should] respect the

expertise of an agency" and avoid "overstep[ping] the proper limits of the judicial role in FOIA

review."   *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## II.   <u>APPLICATION OF EXEMPTION 5</u>

In the instant case, Defendant properly asserted Exemption 5 to the asylum assessment and,

therefore, is entitled to summary judgment.   FOIA "recognizes limitations that compete with the

general interest in disclosure, and that, in appropriate cases, can overcome it."   *Nat'l Archive &*

*Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).   "Thus, while 'disclosure, not secrecy, is the

dominant objective of FOIA,' there are [nine] exemptions from the statute's broad reach[.]"   *U.S.*

*Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S.

352, 361 (1976).   "These exemptions stem from Congress's recognition that the release of certain

information may harm legitimate governmental or private interests."   *Summers v. DOJ*, 140 F.3d

1077, 1080 (D.C. Cir. 1998).   "Ultimately, an agency's justification for invoking a FOIA

exemption is sufficient if it appears 'logical' or 'plausible.'"   *Wolf v. CIA*, 473 F.3d 370, 374-75

(D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

<u>Deliberative Process Privilege</u>

In the instant case, Defendant properly asserted Exemption 5 to protect documents based

upon the deliberative process privilege.   Exemption 5 protects "inter-agency or intra-gaency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency."   5 U.S.C. § 552(b)(5).   The U.S. Supreme Court has explained that

the general purpose of the deliberative process privilege is to "prevent injury to the quality of

agency decisions."   *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).   The D.C. Circuit

has also explained that the deliberative process privilege serves (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.   *See Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *McKinley v. Bd. Of Gov. of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011) (emphasis in original) ([Congress] determined that disclosure of material that is both predecisional and deliberative does *harm* [to] an agency's decisionmaking process."); *Coastal States Gas Corp v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Exemption 5 extends to intra- and inter-agency documents that are both "predecisional and deliberative" in nature.   *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Information is "predecisional" if it is "antecedent to the adoption of an agency policy."   *See Jordan*, 591 F.2d at 774.   Furthermore, information is "deliberative" if it is "a direct part of the deliberative process in that it makes recommendations or expresses opinion on legal or policy matters."   *See Vaughn v. Rosen*, 523 F.2d 1136, 1143 – 44 (D.C. Cir. 1975).   This category of documents includes "advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated."   *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

Finally, Exemption 5 also applies to the deliberative process itself, in addition to specific documents.   *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative process – not to protect specific materials."); *Greenberg v. U.S. Dep't of Treasury*, 10 F.Supp. 2d 3, 16 n.19

(D.D.C. 1998) (Exemption 5 "is not limited to preventing embarrassment or 'chilling' of the individual authors of deliberative documents' but is designing to prevent chilling of agency deliberations).

In the instant case, Defendant asserted Exemption 5 to protect "pre-decisional" and deliberative assessments of asylum officers.   On July 21, 2015, Jill Eggleston, Assistant Center Director of the National Records Center's FOIA unit explained that the assessments at issue "predate[] USCIS's decision not to grant asylum," and that the "document forms the basis for the decision not to grant [] asylum and instead refer [an applicant] to an immigration judge for removal proceedings."   July 21, 2015 Declaration of Jill Eggleston ("Eggleston Decl.") at ¶ 17.

Ms. Eggleston further explained that "the assessments to refer are prepared by the Asylum Officers in narrative form, and explain the officers concerns, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court."   *Id*.   Ms. Eggleston further explained that "[i]t is in the interest of USCIS to protect the manner in which asylum officers prioritize and analyze factual information obtained from asylum applicants during the interview, and included in the assessments prepared for decision makers."   *Id*.

Ms. Eggleston further explained that the "factual portions of the assessment to refer cannot be severed or segregated from its context and thus must remain exempt from disclosure." Eggleston Decl. at ¶ 17.   Ms. Eggleston further explained that the "factual distillation in the assessment to refer does not purport to be verbatim transcript of the plaintiffs' asylum interview. Rather, they reflect a selective recording of information the USCIS asylum officers deemed particularly pertinent to plaintiffs' requests for asylum."   *Id*.   Ms. Eggleston further explained that "[a]ll responsive documents were reviewed with an eye toward providing the fullest possible

9

disclosure and, in furtherance of this goal, received a line-by-line examination in an effort to identify all reasonable segerable, unprivileged, nonexempt portions for release to the requester." *Id*. at ¶ 20.   As a result more than 100 pages of documents were released for each Plaintiff, with some Plaintiffs receiving as many as 700 pages, but no portions of the asylum officer's assessment were released.   *See generally id*.

For these very reasons, this Court has held that assessments to refer are properly withheld under Exemption 5 and that there is no reasonably segergable material because even the factual portion of the assessment is based upon a "distillation" and disclosing the "asylum officer's particular selection of facts may reveal USCIS's deliberative process."   *See Abramyan v. U.S. Department of Homeland Security*, 6 F.Supp.3d 57, 65 – 66 (D.D.C. 2013) (explaining that the same "[a]ssessments of credibility and recommendations" at issues in the instant case "are 'quintessential deliberative information'" and also rejecting the argument that "any deliberative portion [of the Assessment to Refer] can be severed from the factual findings and record of proceedings" and holding that "USCIS's description of the document leaves no non-exempt material to segregate."); *Anguimate v. U.S. Department of Homeland Security*, 918 F.Supp.2d 13, 18 – 19 (D.D.C. 2013) (Walton, J.) ("The Court finds that the Eggleston declaration logically links the elements of the deliberative process privilege to the Assessment.   The 'predecisional' nature of the Assessment is clear, given that it predated and formed the basis for Immigration's decision to deny the plaintiff's asylum application.   So too is the 'deliberative' element satisfied.   Indeed, with respect to the Assessment's factual summary of the Asylum Officer's interview with the plaintiff, the Eggleston declaration describes this as a 'distillation' that 'does not purport to be a verbatim transcript of the [p]laintiff's asylum interview,' but rather is "a selective recording of information the [Immigration] asylum officer deemed particularly pertinent to [the p]laintiff's

10

request for asylum.'   Such factual recitations qualify as deliberative.") (citing *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 – 14 (D.C. Cir. 2011)); *id* at 22 ("The Court concludes that the defendant has provided an adequate justification for the non-segregability of the Assessment. As the Circuit has recognized, an agency affidavit that (1) describes 'each document withheld,' (2) notes 'the exemption under which it was withheld,' and (3) states that an agency official 'personally conducted a line-by-line review of each document withheld in full and determined that no documents contained releasable information which could be reasonably segregated from the nonreleasable portion' is 'sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document [could not] be further segregated.' . . .   Thus, the Court finds the plaintiff's segregability challenges unavailing, and deems the Eggleston declaration sufficient to discharge the agency's segregability obligations.").

The instant case mirrors the Court's decisions in *Abramyan* and *Anguimate* and Plaintiffs present no new factual or legal arguments as to why Defendant's application of Exemption 5 was improper.   Defendant is, therefore, entitled to summary judgment.[2]   Likewise, in that Defendant

---

[2]  Plaintiff cites to *Abtew v. United States Department of Homeland Security*, 13-cv-1566 (ABJ) for the proposition that the factual portion of an assessment to refer can be segregable.   In *Abtew*, the Court undertook an "*in camera*" review of the assessment at issue and determined that the factual portion of that particular assessment was segregable.   *See id*.   To the extent the Court in *Abtew* determined that the factual portions of an assessment to refer is not exemption from disclosure, such a finding stands at odds with both the D.C. Circuit's decision in *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011), and several holdings of this Court.   *See Ancient Coin*, 641 F.3d at 513 – 14 ("The Guilds' claim that State improperly withheld factual summaries contained in CPAC reports is also without merit.   Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an 'exercise of discretion and judgment calls.'   Thus the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." (internal citations omitted)).   To the extent the Court determined that the factual assessment in *Abtew* was not a "distillation" that the asylum officer "deemed particularly pertinent," that case is factually distinct from the instant matter at hand.   *See* Eggleston Decl. at ¶¶ 17 – 20.   In any event, "[a]ll

is entitled to summary judgment, the Court need not address Plaintiff's questions of class

certification and may simply grant Defendant's Motion for Summary Judgment mooting any class

certification issues.

## II.   PLAINTIFF HAS FAILED TO MEET THE REQUIREMENTS FOR CLASS CERTIFICATION

In the event the Court does take up Plaintiffs' class certification request, Plaintiffs' motions

should be denied because Plaintiffs have failed to meet the requirements for class certification.

Federal Rule of Civil Procedure 23 "states that '[a] class action may be maintained' if two

conditions are met: The suit must satisfy the criteria set forth in subdivision (a) ( *i.e.,* numerosity,

commonality, typicality, and adequacy of representation), and it also must fit into one of the three

categories described in subdivision (b)."   *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

*Co.,*, 559 U.S. 393 (2010).   "[A] class plaintiff has the burden of showing that the requirements of

Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions."

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006).

In its entirety, Rule 23(a) provides that "[o]ne or more members of a class may sue or be

sued as representative parties on behalf of all members only if: (1) the class is so numerous that

joinder of all members is impracticable, (2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed.R.Civ.P. 23(a).

---

responsive documents [in the instant case] were reviewed with an eye toward providing the fullest
possible disclosure and, in furtherance of this goal, received a line-by-line examination in an effort
to identify all reasonable segerable, unprivileged, nonexempt portions for release to the requester,"
so any portions of the assessments that were verbatim facts would have been released.   *Id*. at ¶ 20.

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole...." Fed.R.Civ.P. 23(b)(2).   This provision "permits class actions seeking final injunctions or corresponding declaratory relief for the entire class," and "[u]nlike class actions for monetary relief under Rule 23(b)(3), there are no additional requirements of notice and opt-out rights, and the plaintiff need not establish that a class action would be superior to individual actions or that common legal and factual questions predominate." *Richards*, 453 F.3d at 530 (citation omitted).

While this Court has recently held that it has not found "any decision granting certification of a class of FOIA plaintiffs who alleged the improper withholding of information," it also explained that it "has not located any authority suggesting that such certification is categorically impermissible."   *Feinman v. F.B.I.*, 269 F.R.D. 44, 49 - 52 (D.D. C. 2010).   Accordingly, while the issue of whether class certification is ever appropriate for a FOIA case has not been resolved in this jurisdiction, the Court need not address that issue because Plaintiff has failed to meet the requirements of Rule 23(a).

## A.   <u>Plaintiff is Unable to Show Numerosity</u>

Under Rule 23(a), a plaintiff must first show that "the class is so numerous that joinder of all members is impracticable . . . ."   Fed.R.Civ.P. 23(a).   "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."   *Gen. Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330.   "Generally speaking, courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement. The general rule is that a plaintiff need not provide the exact number of potential class members in order to satisfy this requirement."   *Bynum v. District of Columbia*, 214 F.R.D. 27, 32-33 (D.D.C.

13

2003).   The numerosity requirement can be satisfied "[s]o long as there is a *reasonable basis* for the estimate provided," *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (emphasis added), but "[m]ere conjecture, without more, is insufficient to establish numerosity...." *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998); *see also Bynum*, 214 F.R.D. at 31 ("[T]he legal standard is whether the evidence presented by plaintiffs establishes a 'reasonable basis for crediting [plaintiffs'] assertion[s].' ") (quoting *Wagner v. Taylor*, 836 F.2d 578, 587 n.57 (D.C. Cir. 1987).

In the instant case, Plaintiffs simply cites to the total number of FOIA requests the Department of Homeland Security has received, in total for fiscal year 2012, and attempts to extrapolate a prospective number of class members.   *See* Pl's Mt. at 13 – 14.   Plaintiffs present such numbers without information regarding exactly how many of the FOIA requests were associated with asylum applications or whether each FOIA request was submitted by different FOIA requestors.   *See id*.   This Court in *Feinman v. F.B.I.*, 269 F.R.D. 44, 49 - 52 (D.D. C. 2010) has expressly held that attempts to certify a FOIA class based upon such assumptions that lack a reasonable basis fail as a matter of law.   *Feinman*, 269 F.R.D. at 50 - 52 ("Plaintiff's class size estimate of 200 lacks a reasonable basis. Although he cites to agency data regarding the total number of FOIA requests made and the total number of requests that were denied under Exemption 6, it does not follow from these numbers that there are at least 200 potential class members.") *id.* at n.4 ("Plaintiff's argument also assumes incorrectly that the total number of FOIA *requests* (or Exemption 6 denials) necessarily represents an equivalent number of FOIA *requesters.* One person can make multiple requests, just as plaintiff himself has done (albeit to two different agencies)."); *see also Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (concluding that district court did not abuse discretion in finding that plaintiffs failed to prove

14

numerosity, because there was inadequate support for their numerical assumptions); *Davis*, 250 F.R.D. at 486 (plaintiff failed to show numerosity of putative class of mentally disabled Social Security recipients who sought "substantial gainful work activity," because—despite evidence of nearly 2 million mentally disabled beneficiaries under Social Security Disability Insurance program—"the court has no evidence regarding what percentage of" those 2 million beneficiaries "have attempted or are attempting to work"); *Lyon v. United States*, 94 F.R.D. 69, 73 – 74 (W.D. Oka. 1982) (plaintiff failed to show numerosity of putative class of claimants for worker's compensation whose requests under Privacy Act were not given proper consideration,*51 because evidence regarding number of Privacy Act requesters did not specify how many requesters were also worker's compensation claimants); *Campbell v. Minneapolis Pub. Housing Auth.*, 175 F.R.D. 531, 538 (D.Minn. 1997) (plaintiff failed to show numerosity of putative class of housing applicants who were disabled due to drug or alcohol addiction, where he offered statistics showing 141 of 9000 applications were from disabled individuals but "offered [no] indication" of how many of them "were disabled due to drug or alcohol addiction"), *vac'd on other grounds,* 168 F.3d 1069 (8th Cir. 1999); *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (affirming denial of certification motion where plaintiff failed to show numerosity of putative class of city's tenants "whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness," because plaintiff relied only upon "unrefined measure" of city's "total tenant population").

The Court in *Feinman*, ultimately held that "plaintiff has failed to show numerosity, and since '[f]ailure to adequately demonstrate any of the four [prerequisites of Rule 23 (a)] is fatal to class certification,' plaintiff's motion will be denied." *Feinman*, 269 F.R.D. at 52 (quoting *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).   Likewise, Plaintiffs have failed to meet their

burden with respect to their class certification request in the instant case and, therefore, their request should be denied.[3]

## III.    PLAINTIFF'S REQUEST FOR ALLEGED DELAYS IS WITHOUT MERIT

Finally, Plaintiff's request for relief for alleged delays in processing Plaintiff, Catholic Charities' FOIA request is without merit.   Plaintiff requests that Defendant be assessed fees because it failed to process Plaintiff's FOIA request within twenty (20) days.   Simple failure to process FOIA requests within the statutory time-limit alone, however, does not justify costs.   *See Bricker v FBI*, 54 F.Supp.2d 1, 4 (D.D.C. 1999) ("The Court of Appeals and, more recently, the Congress have recognized the problem of administrative backlog in the processing of FOIA requests, and they have to a large degree validated the 'first in, first out' system used by most, if

---

[3] Plaintiff notes that it has not received discovery responses from Defendant.   However, on June 15, 2015, Defendant sent Plaintiffs written objections to Plaintiffs' discovery requests.   In its objections, Defendant noted that discovery in FOIA actions is generally restricted.   *See Public Citizen Health Research Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions."); *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F.Supp. 2d 19, 25 (D.D.C. 2000).   Accordingly, discovery is the exception, not the rule, in FOIA cases.   *See Wheeler v. CIA*, 271 F.Supp. 2d 132, 139 (D.D.C. 2003).   Thus, as a general matter, Plaintiffs' requests for discovery in this FOIA action should not be allowed.

Defendant further noted that "although limited discovery may sometimes be allowed regarding the scope of an agency's search, *see Tax Analysts v. IRS*, 214 F.3d 179, 185 (D.C. Cir. 2000), a trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.   *Meeropol v. Meese,* 790 F.2d 942, 960-61 (D.C. Cir. 1986); *Petrus v. Brown*, 833 F.2d 581, 583 (5th Cir. 1987).   Permissible discovery should take place, *if at all*, only *after* the government moves for summary judgment and submits its supporting affidavits and memorandums of law, which contain its evidentiary proof in the case. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)(finding plaintiff's early attempt to take discovery depositions inappropriate until the government first had a chance to provide the court with the information necessary to make a decision on applicable exemptions); *Farese v. United States Dept. of Justice,* No. 86-5528, slip op. at 6 (D.C. Cir. Aug. 12, 1987)(affirming denial of discovery filed prior to the government's affidavits and supporting documentation). Defendant proposed that the issue of discovery be re-visited after the Court rules on any dispositive motions.   To date, Plaintiff has not provided a written response to Defendant's objections.

not all, of the agencies. While the agencies should not be allowed to hide behind the FOIA

backlog, in cases such as this one where the agency is reasonably responsive to inquiries about the

status of the request and processes the request fairly according to the 'first in, first out' protocol,

the courts should require some showing of improper conduct or purpose before awarding fees and

costs against the agency on the basis of delay alone. Although such allegations have been hinted at

here, there has been no demonstration by the plaintiffs that the delay in disclosure was the result of

anything other than ordinary administrative backlog.").

       In the instant case, Defendant utilized a first-in/first-out process for handling FOIA matters

and Plaintiff is unable to proffer any facts supporting improper conduct in the instant case.   *See*

Eggleston Decl. at ¶¶ 5 – 9 ("In an effort to process FOIA requests in a manner designed to be fair

and expeditious, [Defendant] has adopted a policy of processing such requests on a

first-in/first-out basis.").   Furthermore, Defendant notified "plaintiff/requester Catholic Charities

that because of 'unusual circumstances' USCIS 'may not be able to process [Catholic Charities']

request within the statutory time limit . . .'"   *Id*. at ¶ 8; *see also* Ex H. to Eggleston Decl.

Defendant was forced to seek clarification from Plaintiff, Catholic Charities, in processing the

subject FOIA request, leading to additional delays in processing Plaintiff's request and Defendant

acted in good faith in processing Plaintiff's FOIA request expeditiously.   Defendant is,

accordingly, entitled to summary judgment on Plaintiff's claim.

**<u>CONCLUSION</u>**

       In the end, Plaintiffs request nothing more than that the Court revisit its Exemption 5

jurisprudence and hold assertion of Exemption 5 to protect asylum officer assessments improper

without providing legal or factual reasons for doing so.   Plaintiffs attempt to mask their request

through use of a class action but the Court need not address their request to certify class and can

17

simply choose to uphold its previous rulings mooting any class issues.   Finally, in that Plaintiffs

have failed to make the showing necessary to support their request for class certification, their

motions should be denied.

WHEREFORE, Defendant respectfully requests that the Court deny Plaintiff's Motions

and grant Defendant's Motion for Summary Judgment.


*       *       *

Dated: July 28, 2015,
          Washington, DC

                                        Respectfully Submitted,

                                        VINCENT   H. COHEN, JR. D.C. Bar #471489
                                        Acting United States Attorney
                                        for the District of Columbia

                                        DANIEL F. VAN HORN, D.C. Bar #924092
                                        Civil Chief

                                        By: /s/ Carl E. Ross
                                        CARL EZEKIEL ROSS, D.C. Bar #492441
                                        Assistant United States Attorney
                                        Civil Division
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        Tel:   (202) 252-2533
                                        Fax:   (202) 252-2505
                                        Attorneys for Defendant

18