UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                            Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' REPLY TO DHS OPPPOSITION TO MOTION FOR CLASS CERTIFICATION

Plaintiffs filed a motion for class certification, ECF #15.  The DHS filed an Opposition, ECF # 23, wherein it discusses class certification at pages 17-21. Plaintiffs' motion should be granted, because the DHS does not meaningfully challenge the assertions in plaintiffs' motion.

INTRODUCTION

Plaintiffs seek the "segregable" portions of their asylum officer Assessments.  The FOIA requires an agency to provide "any reasonably segregable portion of a record" to the requester. 5 U.S.C. § 552(b).  The Court in *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014) read Mr. Abtew's Assessment, *in camera,* and found that the first six paragraphs of the Assessment were "easily" segregable. The Court in *Gosen v. United States Citizenship and Immigration*

*Services,* 2015 WL 4576 578 (D.D.C. 2015), examined an asylum officer Assessment *in camera* and found "that there is at least some factual material that may not expose the deliberative process. For example, both assessments begin with factual introductory information….The documents also include a paragraph that is (mostly) just a chronological list of what the applicant testified." *Id.* at *8. The Court then ordered the agency to re-assess the documents, and disclose all reasonably segregable portions of non-exempt material. *Id.* at *9. Mr. Cleveland was given ten other Assessments, and he also found that the first several paragraphs of each Assessment, were easily segregable. *See* Exhibit 2, attached to the complaint. This Court can read the ten Assessments as well. Thus, this Court, the Court in *Abtew,* the Court in *Gosen,* and Mr. Cleveland are "eye-witnesses" to the contents of Assessments. They are better witnesses than an agency employee who writes boilerplate letters, and who does not claim to have personally read anything.

   The Complaint, ¶ 28, alleges that the Assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the above ten Assessments. ¶ 29 of the complaint alleges that the Ms. Gatore Assessment is quite similar to the Assessment considered by the Court in *Abtew v. DHS*. ¶ 30 and 31 allege that all of the Assessments are similar to each other. That all Assessments are similar to each other is not surprising, since asylum officers are taught to write them "according to

a template. The DHS instructs its officers to begin each assessment with a statement of facts, according to the applicant." ¶ 3 of the complaint. A lesson plan dated June 21, 2004 so instructs the officers. "This lesson plan is still followed today. It instructs the officer about the 'standard format' for writing an Assessment." ¶ 3a of the complaint.  In response to these allegations, the DHS says that there is "material used at basic training for Asylum Officers," and "The Court is referred to these materials, which are the best evidence of their contents." ¶ 3a of the Answer of DHS, ECF # 16, at page 2.

In other words, the DHS agrees with the plaintiffs: all Assessments are similar to each other.  Therefore, if the *Abtew* assessment has easily segregable portions, and if the ten Assessments given to Mr. Cleveland have easily segregable portions, then so do all Assessments.

¶ 14 of the complaint states that the DHS "has a policy and practice of never providing any part of an Assessment to a FOIA requester. This policy is uniform. It is a blanket policy. There is a probability that this illegal conduct will recur in the future."  How much of this policy is in writing?  Plaintiff Catholic Charities made this FOIA request in February 2015, to find out:

> "Documents relating to the processing, answering, and responding to FOIA requests for assessments of asylum officers. This would include, but is not limited to: instructions given to staff; policy statements; rules, and memoranda."

Ninth Cause of Action; ¶ 61 of the complaint.  The DHS so far has provided nothing in response. [Plaintiffs have filed a motion for summary judgment, ECF #17, as to their Ninth Cause of Action.]

¶ 25 of the complaint alleges that the DHS has the policy and practice of not even *attempting* to determine if there are segregable portions of an Assessment. Evidence of the existence of these policies and practices is the fact that "During the past six years, more than 100 asylum applicants have made a FOIA request for their assessment. The defendant has not provided any portion of any assessment in response." ¶ 23 of the complaint. In response to this allegation, the DHS states it "lacks knowledge or information sufficient to form a belief as to the truth of the averment." ¶ 23 of Answer, ECF #16, at page 4. Why does the DHS say it lacks knowledge about its own practices? Civil Rule 11(b) requires a party to make an "inquiry reasonable under the circumstances," before it denies an allegation in a pleading. What sort of inquiry did the DHS make in this case?

The DHS does admit to some of its practices, however. Plaintiffs allege that at least 25 times, a DHS employee named Jill A. Eggleston responded to FOIA requesters with a letter that a] does not mention the word "assessment," and b] has as its fifth sentence, the same 19 words:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

¶ 18 of the complaint. The DHS admits these facts are true. ¶ 18 of its Answer, ECF # 16, at page 3.

Concerning these 25 letters, plaintiffs further allege that they "do not contain any facts about the assessments. These 25 letters do not contain any facts about 'portions' and about what can or cannot be segregated." ¶ 19 of complaint.  The DHS admits these facts are true. ¶ 19 of its Answer.

The persistent use of computerized boilerplate indicates the agency is making only a perfunctory attempt at compliance with the law. It indicates the agency does not give individualized attention to requests. The Ninth Circuit disapproved of boilerplate in *Khudaverdyan v. Holder,* 778 F.3d 1101, 1109, note 6 (9th Cir. 2015)("boilerplate opinions" that "are devoid of statements that evidence an individualized review of the issue must be remanded." [citations and quotations omitted.]

Further evidence of the existence of a DHS policy to never release the segregable portion of an Assessment is found in ¶ 22 of the Answer of DHS.  In that paragraph, the DHS admits that in six administrative appeals, the DHS did not even use the word "segregable" in its denials.

In June 2015, plaintiffs sent Requests for Admissions, as per Civil Rule 36, to the DHS, and asked the DHS to admit that:

"#5. From 2008 to the present, DHS has a policy and practice of not attempting to determine if there are reasonable segregable portions of an asylum officer's assessment requested by a FOIA requester.

#6. From 2008 to the present, the DHS has instructed, and still instructs its asylum officers to begin each assessment with a statement of facts.

#7. More than 100 asylum applicants made a FOIA request for the Assessment of their asylum officer, from March 2009 to the present, and not one Assessment, or any part of an Assessment, was disclosed."

The DHS has not yet responded to these Requests for Admissions.

FOIA REQUIRES THE AGENCY TO PROVIDE ANY REASONABLY SEGREGABLE PORTION OF THE DOCUMENT

"Any reasonably segregable portion of the record shall be provided to any person requesting such record ….." 5 U.S.C. § 552(b). An agency must "fully explain its decisions on segregability." *AIC v. DHS,* 950 F. Supp. 2d 221, 248 (D.D.C. 2013). The Court criticized the Declaration of Jill A. Eggleston in *Am.Immigr. Laws. Ass'n. v. DHS,* 852 F. Supp. 2d 66, 80-81 (D.D.C. 2012), where she wrote "after a line-by-line review," there was nothing that could be segregated. The Court said an agency must "describe what proportion of the information in the documents, if any, is non-exempt and how that material is dispersed through the documents," citing *Mead Data Cent., Inc., v. Dep't of Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977). Where an agency uses "boilerplate segregability language," and failed to document any "inability on its part to parse records, such that incomplete segments of records would be rendered meaningless if disclosed," the

Court refused to rule in favor of the agency. *Center for Biological Diversity v. OMB*, 2008 WL 5129 417 (N.D. Cal. 2008).

An agency must "prove" there is no reasonably segregable material in the withheld documents. *STS Energy Partners v. F.E.R.C.* 2015 WL 1000 037 (D.D.C. 2015). (The Tao Declaration stated at ¶ 13 that "[f]actual portions of the withheld documents are inextricably intertwined with the deliberative matter," Tao Decl. at 13, and that "[t]here is no additional segregable factual information that could be released without revealing protected information," *id.* at 15. The Court ruled that this Declaration was "without any real detail." 2015 WL 1000 037 at *8. The Court ruled the Declaration was inadequate because it was "wholly conclusory (that is to say, they come with no additional detail or factual support)" *Id.* , and because it only discussed *factual* information [emphasis in original]. "Indeed, some opinion information remains subject to release under FOIA." *Id.*

THE REMEDIAL PURPOSES OF CLASS ACTIONS

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. Without class actions, many claims would go unaddressed. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. They are deserving of the relief that Rule 23 provides.

Class actions can "achieve economies or time, effort, and expense…

*Amchem Products v. Windsor,* 521 U.S. 591, 615 (1997). Where "the amounts at stake for individuals may be so small that separate suits would be impracticable" a class action provides a useful remedy. *Id.* at 616. Class actions save the resources "of both the courts and the parties" by litigating issues potentially affecting every class member "in an economical fashion." *Califano v. Yamasaki,* 442 U.S. 682, 701 (1979).

*Amgen Inc. v. Connecticut Retirement Plans,* 133 S. Ct. 1184 (2013) was a securities fraud case, where a class was certified. The Court stated that a class is proper where there are "common" questions. A plaintiff need not prove he will prevail; his only burden is to show a common question. *Id.* at 1196. *Accord*: *In re Deepwater Horizon,* 739 F.3d 790, 811-12 (5th Cir. 2014)(class certified where millions of barrels of oil spilled into the Gulf of Mexico); *Coleman through Bunn v. District of Columbia,* 306 F.R.D. 68, 78 (D.D.C. 2015)(homeowner class action certified; "the point of Rule 23 is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently. [citations and quotations omitted]).

Class actions can "conserve judicial resources." *Amgen Inc. v. Connecticut Retirement Plans,* 133 S. Ct. 1184, 1201 (2013). The trial court should follow Civil Rule 23( c) (1)(A) and "certify at an early practicable time." If class certification is

denied, nonnamed class members "would not be bound by the determination," and they "would be free to renew the fray, perhaps in another forum,…." *Id*. The Advisory Committee Note on Rule 23(c )(1) provides that: "In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained."

## THE PREREQUISITES OF RULE 23(a) ARE SATISFIED

### Numerosity : Rule 23(a)(1)

*This class has at least 41 members*

ECF # 15-1 is a Declaration of Mr. Cleveland, which lists 41 members of the class by name. The DHS says not one word about these people in its Opposition.

In May 2015, plaintiffs submitted 8 interrogatories to the DHS, as per Civil Rule 33, asking the DHS how many members were in the class. Plaintiffs also submitted eight Requests for Admissions to the DHS, as per Civil Rule 36, asking the DHS to admit that more than 100 members were in the class. The DHS has still not answered these requests. *See* ECF #18.

*It is impracticable to join all the members of this class*

"Several of the relevant factors to impracticability—'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members,' *Robidoux*

*v. Celani,* 987 F.2d 931, 936 (2d Cir.1993)—are present here." *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. 2013)

**Commonality : Rule 23(a)(2)**

Commonality requires that a plaintiff raise claims which rest on questions of law or fact common to the class. *Taylor v. D.C. Water & Sewer Auth,* 241 F.R.D. 33, 37 (D.D.C. 2007).

As stated in ¶ 1 of the complaint, the DHS "has a policy and practice of not providing" any segregable portions of the asylum officer Assessment. "Defendant has a policy and practice of not even attempting to determine if there are segregable portions. " *Id.*

There is just one DHS employee who writes responses to asylum applicants who request Assessments, or portions of them: Jill A. Eggleston. The DHS has admitted that she has issued at least 25 letters with the same exact words:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

*See* ¶ 18 of the DHS Answer, ECF # 16, at page 3.

Where a letter is a "standard template," a class can be certified. *Jenkins v. Pech,* 2015 WL 3658261 (D. Neb. 2015)(debt collection class was certified, where class members all received the same letter).

The instant case is much more simple than other cases which have been certified: *see Brown v. Nucor Corporation,* 785 F.3d 895 (4th Cir. 2015)(class of black employees certified, despite the fact that employer had six different departments, some of which made promotion decisions by just one person, while others used a committee, where some departments made decisions based on interviews, while others used scores on aptitude tests).

ECF # 23, the DHS Opposition, does not mention Rule 23(a)(2).

### A. Typicality : Rule 23(a)(3)

Typicality requires that a plaintiff must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Jill A. Eggleston treats all asylum applicants in the same way. ECF #23, the DHS Opposition, does not mention Rule 23(a)(3).

### Adequacy of Representation: Rule 23(a)(4)

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 625-26 (1997). There are no conflicts here. The DHS does not mention Rule 23(a)(4) in its Opposition.

### CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(2)

Rule 23(b)(2) authorizes class certification where the party opposing the class has acted on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole. *In re DC Water & Sewer Authority,* 561 F.3d 494, 495, n. 1 (D.C. Cir. 2009). Jill A. Eggleston treats all asylum applicants in the same way. She answers with boilerplate. There is no evidence of record that the DHS has *ever,* in the past six years, released *any* portion of *any* Assessment.

The DHS answers FOIA requests with boilerplate. "Use of boilerplate will not do. " *C.R.E.W. v. US DOJ,* 746 F.3d 1082, 1101 (D.C. Cir. 2012).  Where an agency uses the same, "precise language," over and over again, it is using "boilerplate language." *Chen v. Holder,* 7442 F.3d 171, 181, note 4. Boilerplate language is "insufficient to demonstrate that the agency gave it more than perfunctory consideration." *Id.* at 181.  The Court should stop this practice.

The DHS makes no argument to the contrary in its Opposition.

CONCLUSION

Certification of the proposed class will advance the broad remedial purposes of FOIA. The Court should certify the following class:

"all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

Civil Rule 23(c )(1)(A) provides that the Court should certify "as an early practicable time." Because the plaintiffs have satisfied all of the requirements of Civil Rule 23, the Court should certify the class now.

August 3, 2015

Respectfully submitted,

Attorney for Plaintiffs


David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com