## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' OPPOSITION TO DHS MOTION
##  FOR SUMMARY JUDGMENT


The DHS filed a Motion for Summary Judgment, ECF # 22 and # 23. [ECF #22 is exactly the same as #23].  The Plaintiffs have filed a Motion to Certify Class, ECF # 15, and have requested the Court to rule upon that motion, before considering the DHS Motion for Summary Judgment.

The Plaintiffs have also filed a Motion for Summary Judgment as to the Ninth Cause of Action, ECF #17.  That motion refers to the FOIA request made by Catholic Charities, for all documents relating to "the processing, answering, and responding to FOIA requests for assessments of asylum officers."  Plaintiffs are alleging in this case that the DHS has a policy of never releasing any portion of any assessment. Plaintiffs believe this policy is in writing; they hope to find out soon. If the Court grants the Motion as to the Ninth Cause of Action, and the DHS

responds with documents, those documents could inform the Court and the Plaintiffs as to the truth of Plaintiffs' allegation in ¶ 25 of the complaint: "Defendant has a policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment."

The Plaintiffs now request the Court to delay ruling upon the DHS motion for summary judgment until after the Court rules upon Plaintiffs' Motion as to the Ninth cause of action.

However, in the event these requests are denied, Plaintiffs now respond to the DHS motion for summary judgment.

SUMMARY OF ARGUMENT

The DHS motion for summary judgment should be denied, because two federal courts have examined asylum officer assessments, *in camera,* and found that the facts can be segregated and disclosed.  The DHS counters with a declaration from Ms. Eggleston, an employee who does not claim personal knowledge of any particular assessment. The DHS does not explain why judges can segregate, while the DHS employee cannot. In *Gosen v. U.S. CIS,* 2015 WL 4576 578 (D.D.C. 2015) the DHS admitted in writing that it could segregate some facts out of an assessment. [ECF # 42, August 14, 2015].  If the DHS can segregate facts out of the *Gosen* assessment, it can do so with the assessment of Ms. Gatore and the other named plaintiffs.

FACTUAL BACKGROUND AS TO MS. GATORE

Ms. Gatore, the lead plaintiff, applied for asylum and appeared for an interview before an asylum officer. An Assessment, which may contain errors, was written. It may be used against her later in immigration court.

¶29 of the complaint alleges: "The assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the assessment considered by Judge Jackson in *Abtew v. DHS* [D.D.C. 2014]." The DHS has in its possession both of these assessments. If the allegation in ¶ 29 is false, the DHS presumably could prove it. Yet, the Eggleston declaration is silent. She does not claim to have read the Abtew assessment; nor does she claim to have personally read *any* assessment. The silence of Ms. Eggleston should lead this Court to conclude that the Abtew assessment is indeed quite similar to the Gatore assessment. If facts can be segregated from the Abtew assessment, they can be segregated from the Gatore assessment.

The DHS has admitted it can segregate facts from the assessment in the *Gosen* case. [See Exhibit #1, attached hereto]. There is no evidence of record that the Gatore assessment is any different from the Gosen assessment. If the DHS can segregate from one, it can also segregate from the other.

¶26 of the complaint refers to an attachment, Exhibit 2, which is a Declaration from Mr. Cleveland. Attached to Exhibit 2 are ten assessments, which

are the results of his FOIA requests. Mr. Cleveland asserts that it is "very easy" to segregate the facts in each of the Assessments. The DHS answered by saying it had "lack of knowledge" about this. [¶ 26 of its Answer].

¶ 28 of the complaint alleges: "The assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the above referenced ten assessments." The DHS has these 11 assessments in its possession. If the allegation in ¶ 28 of the complaint is wrong, the DHS presumably could prove it. Yet, the declaration submitted in support of the DHS motion for summary judgment, submitted by Jill A. Eggleston [ECF # 23-1] does not discuss this.  Ms. Eggleston does not claim she read the above referenced ten assessments. She does not claim that she personally read the Gatore assessment. The silence of Ms. Eggleston should lead this Court to conclude that the "ten assessments" are quite similar to the Gatore assessment.  The Court can read the ten assessments, and hopefully agree with undersigned counsel that the facts therein are easily segregable. If the facts in the ten assessments are segregable, then the Gatore assessment is likewise segregable.

FACTUAL BACKGROUND AS TO MR. AL TIMEMY

¶ 37 of the complaint, in the Second Cause of Action, alleges that plaintiff Mr. Al Timemy applied for asylum, and that an officer wrote an Assessment.

¶ 31 of the complaint alleges: "The assessment written by the asylum officer for each plaintiff in this case is quite similar to the assessment considered by Judge

Jackson in *Abtew v. DHS.* [D.D.C. 2014]. The DHS has the assessment of Abtew in its possession; it also has the assessment of Mr. Al Timemy. If they are different, the DHS could so argue. Yet, there is no evidence of record that Ms. Eggleston read the Abtew assessment. This lack of evidence strongly suggests that the Al Timemy assessment is quite similar to the Abtew assessment.

The DHS has admitted it can segregate facts from the assessment in the *Gosen* case. [See Exhibit #1, attached hereto]. There is no evidence of record that the Al Timemy assessment is any different from the Gosen assessment. If the DHS can segregate from one, it can also segregate from the other.

¶ 30 of the complaint alleges: "The Assessment written by the asylum officer for each plaintiff in this case is quite similar to the above referenced ten assessments." The DHS has these 11 assessments. If the allegation in ¶ 30 is false, it would be easy for the DHS to prove that. However, the Eggleston declaration does not discuss the Al Timemy assessment. There is no evidence of record that *anyone* has actually read it. This lack of evidence should lead this Court to conclude that the Al Timemy assessment is quite similar to the "ten assessments."

FACTUAL BACKGROUND AS TO PLAINTIFFS MS. LUMONIKA, MR. INNOCENT SHYAKA, MR. AYESSA, MS. OUEDRAOGO, MR. HERVE SHYAKA.

The complaint, at ¶ 40, discusses the assessment of Ms. Lumonika. There is no evidence of record that her assessment is different from the others.

The complaint, at ¶ 43, discusses the assessment of Innocent Shyaka. There is no evidence of record that his assessment is different from the others.

The complaint, at ¶ 46, discusses the assessment of Mr. Ayessa. There is no evidence of record that his assessment is different from the others.

The complaint, at ¶ 49, discusses the assessment of Ms. Ouedraogo. There is no evidence of record that her assessment is different from the others.

The complaint, at ¶ 52, discusses the assessment of Herve Shyaka. There is no evidence of record that his assessment is different from the others.

The DHS did not individually discuss the assessments of these plaintiffs. The DHS just lumped them all together, and segregated nothing.  The DHS has not even tried to segregate any facts.

THE DHS HAS DISCLOSED ENTIRE ASSESSMENTS FOR THE PAST TWENTY YEARS

The DHS has admitted that "for the past 20 years, defendant has been providing immigration judges copies of entire assessments, from time to time." ¶ 32 of Complaint; ¶ 32 of Answer. Is it fair for an agency to resist disclosure of a document in FOIA litigation, but then ambush the applicant with that same document in immigration court? The DHS does not discuss this issue.

¶26 of the complaint alleges that the DHS disclosed assessments in response to FOIA requests on a regular basis from 1998 to 2007.  The DHS denied this

allegation.  Mr. Cleveland asserts at ¶ 5 of his Declaration, Exhibit 2, that from

1998-2007, he frequently made FOIA requests for assessments, and that

assessments were "always provided." Mr. Cleveland asserts he obtained at least 50

assessments during this time period. *Id.*  The DHS does not challenge this

assertion.

During this time period, the DHS did not claim it suffered any harm when it

furnished the assessments. Now, however, it claims it would suffer harm.

Therefore, the DHS is inconsistent. Statements from an inconsistent agency should

be viewed with skepticism by the court.

The D.C. Circuit ruled against an agency which had earlier released

documents, but then stated it would suffer harm if such documents were released.

In *Army Times Publishing Co. v. Dep't of Air Force,* 998 F.2d 1067, 1070

(D.C.Cir. 1993) (the Air Force proffered a "conclusory assertion" of harm, which

is "interesting, given that the Air Force on its own initiative, selectively releases

aggregate survey results to the public from time to time.).

THE DHS HAS PROVIDED STEADY BOILERPLATE RESPONSES
 TO FOIA REQUESTERS

The Complaint, ¶ 16-17, states that Jill Eggleston wrote 25 letters to FOIA

requesters, between 2011-2014.   The DHS states it has lack of knowledge about

the "precise numbers" of letters Ms. Eggleston wrote.

The first sentence of ¶ 18 of the complaint states: "These 25 'Jill A.

Eggleston' letters are practically identical."  The DHS states that "no response is

required." ECF # 16, ¶ 18.  The remainder of ¶ 18 of the complaint states:

> Not one of those letters mentions the word "assessment."  Each letter
> contains this sentence: "In our review of these pages, we have determined
> that they contain no reasonably segregable portion(s) of non-exempt
> information."  This sentence is the fifth sentence in each and every one of
> the 25 letters mentioned above.

> The DHS admits these allegations. ECF # 16, ¶ 18.

> ¶19 of the complaint states: "These 25 letters do not contain any facts about

the assessments. These 25 letters do not contain any facts about 'portions' and

about what can or cannot be segregated. The DHS admits this. ECF # 16, ¶ 19.

This behavior by the DHS shows that the DHS has pre-determined that

nothing shall ever be segregated out of an assessment. It shows the agency is only

making a perfunctory attempt at compliance with the law. It uses computerized

boilerplate, rather than personal attention to the FOIA request. "Such boilerplate

will not do.' *C.R.E.W. v. US Dep't of Justice,* 746 F.3d 1082, 1101 (D.C. Cir.

2014). When an agency uses the same, "precise language" over and over again, a

court may infer the agency is not making a good faith attempt to comply with the

law. *Chen v. Holder,* 742 F.3d 171, 181, note 4 (4th Cir. 2014). Use of boilerplate

indicates the agency has already made up its mind and mails out robo-letters in an

attempt to do as little as possible and at the same time pretend to comply with the

law. The use of boilerplate shows the agency does not give individualized attention to FOIA requests.

FACTS IN ASSESSMENTS ARE EASILY SEGREGATED

The Court in *Abtew v. DHS,* 98 F. Supp. 2d 98, 114 (D.D.C. 2014) found, after an *in camera* inspection, that the first six paragraphs of an assessment were "easily" segregable.

The Court in *Gosen v. U.S. CIS,* 2015 WL 4576 578  at *7 (D.D.C. 2015) examined, *in camera,* a four-page "Asylum Officer Assessment" dated February 11, 2013, and an Assessment dated "both September 2010 and September 2012." The Court noted that facts in Assessments have been protected in the past, citing *Abramyan v. U.S. CIS,* 6 F. Supp. 3d, 61, 65 (D.D.C. 2013), but pointed out that in that case, the Court had not conducted an *in camera* review.  The *Gosen* Court  found that "there is at least some factual material that may not expose the deliberative process. For example, both assessments begin with factual introductory information." 2015 WL 4576 578 at *8.  The Court then ordered the agency to disclose all reasonably-segregable portions to the requester.

The Court also noted that the "documents also include a paragraph that is (mostly) just a chronological list of what the applicant testified. *See Schnapp Vaughn* Index Bates No. 1. And there are several long quotes from various published reports. *See Gosen Vaughn* Index Bates Nos. 259–61; *Schnapp Vaughn*

Index Bates Nos. 2–3. It is not entirely clear to the Court why the factual and quoted material in those reports would provide meaningful insight into the decisionmaker's judgment or the deliberative process." *Id.*

On August 14, 2015, the agency submitted a status report [attached hereto as Exhibit 1, which was ECF #42 in the *Gosen* case]. In that status report, "USCIS determined it *can* release additional information…This information consists of factual material that was provided as an introduction in the Asylum Officer's Assessment for each case." [ECF #42 at 2, emphasis added].

If the DHS can segregate facts from the *Gosen* assessment, it can do so for the Gatore, Al Timemy, and the other five plaintiffs in this case.

**ARGUMENT**

I.   **STANDARD OF REVIEW**

A. **Summary Judgment generally**

In assessing a motion for summary judgment, "underlying facts and inferences are analyzed in the light most favorable to the nonmoving party." *N.S. ex rel. Stein v. District of Columbia,* 709 F. Supp. 2d 57, 65 (D.D.C. 2010).

Fed. R. Civ. P. 56(c )(4) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." In *Association of Flight Attendants v. U.S. Dep't of Transportation,* 564 F.3d 462, 465 (D.C. Cir. 2009), the court stated that an affidavit in support of summary judgment "must be made on personal knowledge." (citations and quotations omitted).  In the instant case, the declaration submitted by the DHS violates Rule 56(c)(4), as will be discussed below.

### B. Summary Judgment in FOIA cases

The requester in a FOIA case is at a distinct disadvantage: he does not have the document. How can the requester rebut the declaration of the agency employee? The requester is "helpless to counter agency claims that there is no non-exempt and reasonably segregable material within a withheld document." *Mead Data Central v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir. 1977).  The Court should bear this reality in mind as it considers the arguments of the DHS.

There is a "strong presumption in favor of disclosure." *Dep't of State v. Ray,* 502 U.S. 164, 173 (1991).  All exemptions to disclosure "must be narrowly construed." *Id.* at 361.

## II.   THE DHS HAS NOT INDIVIDUALLY CONSIDERED THE NINE CAUSES OF ACTION IN THE COMPLAINT.

Plaintiffs' Complaint has nine causes of action: the first through seventh are for Plaintiffs Gatore, Al Timemy, Lumonika, Innocent Shyaka, Ayessa, Ouedraogo, and Herve Shyaka.  The Eighth Cause of Action states that Plaintiff Catholic Charities is an organization that helps asylum applicants, and that *it* is being injured. The Ninth Cause of Action states that Plaintiff Catholic Charities submitted its own FOIA request months ago, and that it received nothing in response.

The DHS motion for summary judgment does not mention any of these particular causes of action. Therefore, the motion should be denied for its lack of particularity.  The DHS did not read Plaintiffs' Complaint "line-by-line," let alone paragraph by paragraph.  The Court should bear this in mind when it considers the claim that someone in DHS reviewed each assessment "line-by-line."

## III.   THE DHS HAS FAILED TO JUSTIFY ITS FAILURE TO SEGREGATE THE FACTS FROM THE SEVEN ASSESSMENTS.

A. *The declaration of Jill Eggleston is deficient on its face.*

Jill Eggleston states in ¶ 3 of her Declaration, ECF 23-1, at page 2, that she makes her statements "based upon my personal knowledge and upon information

made available to me in my official capacity." She does not say what information

came from her personal knowledge, and what information came from somewhere

else.

Ms. Eggleston does NOT say many things:

-that she personally read the Gatore assessment, the Al Timemy assessment, or

any assessment;

-that she talked to any person, such as a paralegal who told her that he or she

read a particular assessment and performed a "line-by-line examination" of it;

-that she talked even once, to an asylum officer, to a supervisory asylum officer,

or to anyone who ever worked at an asylum office;

-that she talked, even once, to a government lawyer who gave an assessment to

an immigration judge or to an appellate court;

-that she took even one hour of training about asylum law, or about Lesson

Plans that asylum officers study.

To be sure, this Court rejected these arguments in *Anguimate v. U.S. DHS,* 918

F. Supp. 2d 13, 19 (D.D.C. 2013), stating that "the extent of Eggleston's

knowledge of the asylum process is largely irrelevant." The Court noted that

"plaintiff has cited no authority to the contrary." Plaintiffs have now found some

authority: *Evan v. Technologies Application and Serv. Co.,* 80 F.3d 954, 962 (4th

Cir. 1996)(noting that an affidavit filed in opposition to a motion for summary

judgment must present evidence in substantially the same form as if the affiant were testifying in court in that the affidavit must contain admissible evidence and be based on personal knowledge.)

Fed. R. Civ. P. 56(c )(4) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

In *Association of Flight Attendants v. U.S. Dep't of Transportation,* 564 F.3d 462, 465 (D.C. Cir. 2009), the court stated that an affidavit in support of summary judgment "must be made on personal knowledge." (citations and quotations omitted).

In *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 369 (D.C. Cir. 1980), the court stated the FBI agent's affidavit

> asserted no personal knowledge that the [record] really was discarded, so [one permissible inference is that [the agent] is incorrect in his belief and that the [record] remains somewhere in the FBI's domain. A factual question thus persists, and it was inappropriate for the District Court to undertake to resolve it at the stage of summary judgment.

B. *Ms. Eggleston merely repeats language from a district court judge.*

Ms. Eggleston states in ¶ 19 of her declaration [ECF #23-1, at page 8]:

> The factual distillation in the assessments to refer do[sic] not purport
> to be a verbatim transcript of the Plaintiff's asylum interview. Rather,
> it reflects a selective recording of information the USCIS asylum
> officer deemed particularly pertinent to plaintiff's request for asylum.
> As such, the assessment to refer contains factual matter that cannot be
> severed from its context and is exempt from disclosure pursuant to
> Exemption 5 of the FOIA.

This paragraph is almost identical to what the court stated in *Phillips v.*

*Immigration and Customs Enforcement,* 385 F. Supp. 2d 96, 303 (S.D.N.Y.

2005):

> The asylum interview notes in the present case do not purport to be a
> verbatim transcript. Rather they appear to reflect a selective recording
> of information particularly pertinent to Garcia's request for asylum. As
> such, they "contain factual matter that can[not] be severed from its
> context" and are exempt from disclosure.

An agency should not parrot language from a case. An agency should give

individualized attention to the request of the FOIA requester.

C. *Any presumption of good faith has been rebutted by the facts in this case.*

At times, agencies are "entitled to a presumption that they complied with the

obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals*

*Service,* 494 F.3d 1106, 1117 (D.C. Cir. 2007)([relying upon *Boyd v. Crim. Div*

475 F.3d 381, 391 (D.C.Cir. 2007)).

But *Boyd* did not give reasons; it just cited *U.S. Postal Service v. Gregory,*

534 U.S. 1, 10 (2001).  But, *U.S. Postal Service* was not a FOIA case- it was an

employment case, where a letter carrier was disciplined for leaving work early to

take her daughter to the doctor.

*Sussman* also cited *National Archives v. Favish, 541* U.S. 157, 174 (2004)

for the proposition that "given FOIA's pro-disclosure purpose, a less stringent

standard" may apply to requester who seeks to overcome a presumption.  494 F.

3d. at 1117.

In the instant case, the DHS has responded only with boilerplate and

parroting of statutory language. The DHS was put on notice by the *Abtew* case that

at least one court found that the first six paragraphs of an assessment could be

"easily" segregated. Yet, the DHS does not even attempt to explain how the Abtew

assessment was any different from the assessments of any of the seven named

plaintiffs. To accept the argument of DHS would constitute an abandonment of the

trial court's obligation under the FOIA to conduct a de novo review. If a court "has

any suspicion of bad faith on the part of the agency, some form of in camera

examination will be 'necessary and appropriate.'" *Ray v. Turner,* 587 F.2d 1187,

1214 (D.C.Cir. 1978).

In *Chesapeake Bay Foundation v. U.S. Army Corps of Engineers,* 677 F. Supp. 2d 101, 109 (D.D.C. 2009), the agency claimed it "carefully reviewed the information and confirms that all reasonably segregable, non-exempt material has been released.," However, the agency provided "no evidence to support this assertion." *Id.* The Court then phrased the issue as follows: "The Corps, then, asks the Court to take on faith that it has fulfilled this obligation."

In response, the Court did not accept the statement of the agency "on faith." Instead, "The Court declines to do so. The Corps must supply the Court with the necessary tools to perform a review of segregability—this includes not only a detailed justification of the reasons for withholding information, but also a description of the document from which the information was redacted."

In the instant case, the Court should rule that any presumption of good faith by DHS has been rebutted.

D. *The Anguimate case was decided without an in camera inspection.*

In *Anguimate v. U.S. Dep't of Homeland Security,* 918 F. Supp. 2d 13, 19 (D.D.C. 2013), the court found that the DHS had provided an adequate justification of the non-segregability of the assessment, relying on *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 513 (D.C.Cir. 2011)("factual summaries culled from a much larger universe of facts reflects an exercise in judgment"). However, the facts in an asylum officer assessment are not culled

from a "large" universe of facts. The facts come from a small universe: from the mouth of the interpreter of the applicant.  In the instant case, the DHS has not identified the "large" universe of facts. Rather, as determined by the *Abtew* court, the first several paragraphs "simply recite and summarize the facts that plaintiff presented to the asylum officer." *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014).

Therefore, as stated in *Paisley v. CIA,* 712 F.2d 686, 700 (D.C.Cir. 1983), while it is true that at times the selection of facts could reveal the deliberative process, "this exception cannot be read so broadly as to undermine the basic rule; in most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed. *See, e.g., ITT World Communications, Inc. v. FCC,*699 F.2d 1219, 1239 (D.C.Cir.1983); *Playboy Enterprises, Inc. v. Dep't of Justice,* 677 F.2d 931 (D.C.Cir.1982).* "

In *Playboy Enterprises,* at issue was a report about an FBI agent who had infiltrated the Ku Klux Klan. The agency argued that the entire report reflected the "choice, weighing and analysis of facts," so that therefore, nothing could be segregated. The district court, after an in camera inspection, disagreed. The Court of Appeals agreed with the district court, stating, 677 F.2d at 935:

> We are not persuaded by the Department's argument. Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those

facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.

E. *The Abramyan case was decided without an in camera inspection.*

In *Abramyan v. U.S. Dep't of Homeland Security,* 6 F.Supp. 3d 57 (D.D.C. 2013), the requester sought not only the assessment of the asylum officer, but also the notes of the officer. The agency alleged that "none of the information in the records at issue can be reasonably segregated" because "[t]he factual portions of the Assessment to Refer and in the handwritten notes cannot be severed from their context." *Id* at 62. The agency also stated that "[t]he factual distillation in the Assessment to Refer record and in the handwritten notes does not purport to be a verbatim transcript of the Plaintiff's asylum interview," but rather reflected the asylum officer's selection of pertinent facts." *Id.*  The Court, relying also on *Ancient Coin,* ruled that both the assessment and the notes were exempt entirely from disclosure. The Court made its ruling without an in camera inspection.

The Court in *Gosen v. U.S. CIS,* 2015 WL 4576 578 at *7 (D.D.C. 2015) conducted an in camera review of the asylum officer assessment and disagreed with the findings of *Abramyan,* finding that some facts could very probably be disclosed.

The ruling in *Abramyan* is furthered weakened by the concession of the DHS that asylum officer notes, in their entirety, are not exempt under the deliberative process privilege.  *See Martins v. U.S. CIS,* 962 F.Supp. 2d 1106 (N.D. Calif. July

3, 2013) and 2103 WL 8284498 (Settlement Agreement dated November 19, 2013).

In *Abramyan,* the agency asserted that asylum officer notes and assessments are similar, in that in each, the officer "selects" facts. Plaintiffs in the instant case agree: notes and assessments are similar. If the facts in notes are not exempted, then neither are the facts in assessments. In *Martins,* the agency stipulated that the notes are fully disclosable. Therefore, so too the facts in assessments.

F. *The DHS has not satisfied the requirements of the Mead Data and other cases.*

"Any reasonably segregable portion of the record shall be provided to any person requesting such record ….." 5 U.S.C. § 552(b). In *Mead Data Central, Inc., v. U.S. Dep't of Air Force,* 566 F.2d 242, 247 (D.C.Cir. 1977), the Court held that the Air Force had not adequately justified its claim that nothing could be segregated, and ordered that "agency segregability decisions be accompanied by adequate descriptions of the documents' content and articulate the reasons behind the agency's conclusion."   The Court noted that "the requesting party is helpless to counter agency claims that there is no non-exempt and reasonably segregable material within a withheld document. It is no adequate answer to say that the courts are free to review the agency's conclusion after a full in camera inspection of the documents." *Id.* at 260.

The Court further instructed that the agency must provide a "detailed justification," not conclusory statements, that nothing can be segregated. This "requirement presents problems for the agency…." *Id.* at 261.

> "Nevertheless, unless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Id.*

> "In addition to a statement of reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.*

The Court, at FN 54 stated that a document may have "logically divisible sections" which could be different; that document should be described "by section rather than as a whole."

In the instant case, the DHS has proffered a conclusory declaration from Ms. Eggleston, who does not claim that she herself, or any named person, actually read any of the assessments. Her declaration does not provide reasons or facts behind her conclusions. Her declaration does not describe what proportion of the information is non-exempt; not does it describe any "logically divisible sections." She does not describe the assessment "by section." Her declaration has less detail that the declaration found insufficient in *Stolt-Nielsen Transportation Group v. United States,* 534 F.3d 728, 734 (D.C. Cir. 2008).  In the *Stolt* case, the government's only justification for withholding the agreements in the face of the

redaction of identifying information is a conclusory affidavit by a Division official declaring that a Division paralegal had "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act." The Court held that this self-serving conclusion was insufficient.  This Court should make the same finding concerning the Eggleston declaration.

The Court criticized the Declaration of Jill A. Eggleston in *Am.Immigr. Laws. Ass'n. v. DHS,* 852 F. Supp. 2d 66, 80-81 (D.D.C. 2012), where she wrote "after a line-by-line review," there was nothing that could be segregated. The Court said an agency must "describe what proportion of the information in the documents, if any, is non-exempt and how that material is dispersed through the documents," citing *Mead Data Cent., Inc., v. Dep't of Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977).  Where an agency uses "boilerplate segregability language," and failed to document any "inability on its part to parse records, such that incomplete segments of records would be rendered meaningless if disclosed," the Court refused to rule in favor of the agency. *Center for Biological Diversity v. OMB,* 2008 WL 5129 417 (N.D. Cal. 2008).

An agency must "prove" there is no reasonably segregable material in the withheld documents. *STS Energy Partners v. F.E.R.C.* 2015 WL 1000 037 (D.D.C. 2015). (The Tao Declaration stated at ¶ 13 that "[f]actual portions of the withheld documents are inextricably intertwined with the deliberative matter," Tao Decl. at

13, and that "[t]here is no additional segregable factual information that could be released without revealing protected information," *id.* at 15.  The Court ruled that this Declaration was "without any real detail." 2015 WL 1000 037 at *8. The Court ruled the Declaration was inadequate because it was "wholly conclusory (that is to say, they come with no additional detail or factual support)" *Id.* , and because it only discussed *factual* information [emphasis in original].  "Indeed, some opinion information remains subject to release under FOIA." *Id.*

    *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 777 (D.C.Cir. 2002) was a case involving three detailed affidavits. There, the agency defended its "non-segregability" conclusion, first with two affidavits from employees, Mr. Gay and Ms. Davis. Second, Ms. Davis submitted another affidavit, wherein she stated, "she personally conducted a line-by-line review of each document" and determined that nothing could be segregated.  The requester in *Johnson* did not offer any evidence to the contrary, as to segregabililty. The single declaration in this case is far less detailed than the three affidavits in *Johnson.*  Additionally, in this case, the plaintiffs have offered evidence to the contrary: two courts have been able to segregate, after *in camera* inspections.

    In *Sciacca v. FBI,* 23 F.Supp. 3d 17, 28 (D.D.C. 2015) the agency asserted that information was "inextricably intertwined" with other information. However,

the agency "must demonstrate" it cannot segregate. [citations and quotations omitted]. A mere conclusory statement of inability to segregate is insufficient. A "blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." *Id.* [citations and quotations omitted]. The agency produced a lengthy declaration from Mr. Hardy, but it merely contained "conclusory statements." *Id.* at 29.

The agency must give the court "some basis on which to evaluate their claim that no reasonably segregable information exists in those documents." *Id.*

In the instant case, Ms. Eggleston states that "The factual portions of the assessment cannot be severed or segregated from its context and thus remain exempt from disclosure." ¶ 17, of ECF #23-1. She repeats that sentence in ¶ 19 of her declaration. However, she does not explain why nothing can be severed. She does not give the reader any facts. She does not give any reasons. She did not "demonstrate" that nothing can be segregated [as required by the *Sciacca* court]; she did not "prove" that nothing can be segregated [as required by the *STS Energy Partners* case].

CONCLUSION

*In camera* inspections by two federal judges outweigh the conclusions of

Ms. Eggleston, who does not say she personally read any particular assessment.

The DHS admitted in the *Gosen* case that it could segregate some facts. The DHS

motion for summary judgment as to all nine causes of action should be denied.

September 8, 2015

Respectfully submitted,

Attorney for Plaintiffs


David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com