# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' REPLY TO DHS "RESPONSE"

Plaintiffs now file this Reply to ECF # 37, "Defendant's Response to

Plaintiffs' Supplemental Memoranda."

Plaintiffs filed a motion for summary judgment as to the Ninth Cause of

Action, ECF # 17.  This motion should be granted, because the DHS has now

provided documents, without objection, after this lawsuit was filed.

Plaintiffs filed a motion for class certification, ECF #15.  This should be

granted, because the DHS has admitted that it has a written policy to withhold all

parts of assessments, and to disclose no part.  Plaintiffs allege this policy is illegal;

therefore, a "common question" exists, affecting all class members.

The DHS has filed a motion for summary judgment, ECT #22, [ECF #22 is

the same as ECF #23] claiming that the facts in an assessment cannot be

segregated. This motion should be denied, because two federal courts have found

to the contrary. The DHS does not mention, let alone distinguish, two recent

decisions finding that factual portions of asylum officer assessment were

segregable: *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014), and *Gosen v. US*

*CIS,* 118 F. Supp. 3d 232, 243  (D.D.C. 2015).

1. **Plaintiffs' motion for summary judgment as to the Ninth Cause of
   Action should be granted.**

   Plaintiff Catholic Charities filed a FOIA request in February 2015.  The

DHS furnished nothing in response; so, after 30 days, Catholic Charities filed its

lawsuit. The Ninth Cause of Action in the Complaint, at ¶ 61, states that Catholic

Charities submitted its own FOIA request on February 12, 2015 and asked for:

> "Documents relating to the processing, answering, and responding to FOIA
> requests for assessments of asylum officers. This would include, but is not
> limited to: instructions given to staff; policy statements; rules, and
> memoranda."

   Plaintiffs filed a motion for summary judgment as to the Ninth Cause of

Action, ECF # 17; the DHS filed an Opposition, ECF #22, at pages 21-22.  [ECF

#22 is the same as #23]. Plaintiffs filed a Reply, ECF # 25.  Plaintiffs then filed a

Supplemental Memorandum, ECF #32.  Finally, in October 2015, the DHS

responded to plaintiffs' February 2015 request by providing three pages, which

state in essence, that asylum officer assessments should be withheld "in full." *See*

ECF # 32, Plaintiffs' Supplemental Memorandum, at 2, which refer to attached

Exhibit A.

The DHS responded to the FOIA request of Catholic Charities only after a lawsuit was filed, and after Catholic Charities filed a motion for summary judgment. The DHS Response, ECF #37, mentions the Ninth Cause of Action at page 1, but does not really discuss it. Instead, the Response deals with other subjects. For example, the Response states that "more than 1,800 pages of documents have been released." It is true that the DHS gave documents to the individual plaintiffs in this case, but the Ninth Cause of Action deals with the zero documents given to plaintiff Catholic Charities. Therefore, summary judgment in favor of Catholic Charities on the Ninth Cause of Action is proper.

**2, Plaintiffs' motion for class certification should be granted.**

Plaintiffs filed a motion for class certification, ECF #15. The DHS filed an Opposition, ECF # 22. Plaintiffs filed a Reply, ECF #26. Plaintiffs filed a Supplement, ECF # 33; the DHS filed a Response, ECF #37. Plaintiffs' motion should be granted, because the DHS does not meaningfully challenge the assertions in plaintiffs' motion.

Class actions can "conserve judicial resources." *Amgen Inc. v. Connecticut Retirement Plans,* 133 S. Ct. 1184, 1201 (2013). The trial court should follow Civil Rule 23( c) (1)(A) and "certify at an early practicable time." If class certification is denied, nonnamed class members "would not be bound by the determination," and they "would be free to renew the fray, perhaps in another forum,...." *Id.* The

Advisory Committee Note on Rule 23(c )(1)  provides that: "In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained."

As stated in ¶ 25 of the Complaint, the DHS "has the policy and practice of not even *attempting* to determine if there are segregable portions [of any assessment].  The DHS has basically admitted this. As revealed by the DHS disclosure of documents in October 2015, the DHS staff is instructed to "withhold in full" any and all assessments. *See* ECF #33, Plaintiffs' Supplemental Memorandum, at page 1. Where a defendant has a policy or practice of doing something that affects a large number of persons, a class action is proper. *Civil Rule 23 helps those who are too ignorant or poor to file individual law suits*.

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. They are deserving of the relief that Rule 23 provides. In *Coleman v. District of Columbia,* 306 F.R.D. 68, 99 (D.D.C. 2015), the court certified a class of 34 homeowners, who lost their homes in foreclosure proceedings, prompted by property tax liens. The court noted the "vulnerability" of the class members, and declared that Rule 23 "embodies a principle of protection for weaker plaintiffs." *Id.* at 80 (citations

and quotations omitted).  Vulnerable plaintiffs could include those with lack of

"English language skills, and knowledge of the legal system." *Id.*at 81 (citations

and quotations omitted).

In *Mullins v. Direct Digital,* 795 F.3d 654, 658 (7th Cir. 2015), the court

affirmed class certification by the lower court, in a consumer class action, noting

that consumers are unlikely to have documentary proof of purchase. These are

cases where the class device is often essential "to overcome the problem that small

recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights."  The class action may be "the only viable way" for

persons to pursue claims. *Id.* at 662. The alternative, that "wrongdoing will go

unpunished," should be avoided. *Id.* at 664. *Accord: Rikos v. Procter&Gamble*

*Company,* 799 F.3d 497, 525-26 (6th Cir. 2015) (consumer class action certified,

arising out of systemic failures of defendant).

The immigrant class members in this case are probably unaware of

their rights under the FOIA. This is another factor, favoring class certification.

*Thomas v. FTS USA,* 2016 WL 94136 at *17 (E.D. Va. 2016).

The U.S. Supreme Court has issued two decisions in 2016, allowing class actions to go forward: *Campbell-Ewald v. Gomez,* 136 S. Ct. 663 (2016) (an unaccepted settlement offer does not moot a plaintiff's case; a defendant may not prevent class certification by buying off the plaintiff) and *Tyson Foods v. Bouaphakeo,* ___ S.Ct. ___, 2016 WL 1092 414 (2016).

In *Tyson Foods,* employees seeking to be paid for time spent donning and doffing protective  equipment were allowed to proceed as a class, despite concerns of many individual differences. The Court, noting the "remedial nature of [the FLSA] and the great public policy which it embodies," declined to erect "an impossible hurdle for the employee." The Court said the employee should not be punished and denied "any recovery;" therefore, it was fair for the case to proceed as a class action, using "representational evidence." *Id.*at *10. (citations and quotations omitted).

In the instant case, immigrants fleeing persecution seek relief under the FOIA, an act promoting disclosure. The Court should construe the evidence in favor of the immigrants, and find a just remedy for them.

*This class has at least 49 members*

Rule 23(a)(1) requires a showing that the class is "so numerous that joinder of all members is impracticable." As of December 2015, Plaintiffs had identified 45 members of the class by name. Now, plaintiffs have identified four more. *See* Exhibit 2, attached hereto. The DHS has in its possession the FOIA requests that each of these 49 persons made. If anyone of the 49 is not a member of the class, presumably the DHS could prove it easily and quickly.

The DHS argues that the numerosity requirement can be satisfied "so long as there is a reasonable basis for the estimate provided." ECF #37, at 7.  Plaintiffs agree: plaintiffs need only furnish a "reasonable basis for [an] estimate."  Plainitffs have done much more: they have provided the *names* of the class members, together with evidence of their FOIA requests. The DHS does not claim there are *less* than 49 members in the class. The DHS does not claim their joinder is practicable.

a.  The DHS has admitted numerosity in its Answer to the Complaint.

The Complaint, at ¶ 16-17, states that Jill A. Eggleston wrote 25 letters in response to "FOIA requests for assessments." The Answer of DHS states it has "lack of knowledge" for ¶ 16 and 17.  The Complaint, at ¶ 18-19, alleges that "these 25 letters" have some identical language, and that the letters do not contain "any facts about the assessments."  The DHS admitted these allegations in its

Answer.  The DHS has admitted that at least 25 asylum applicants made FOIA requests for their assessments.

    b.  There are 49 named class members

ECF # 15-1 is a Declaration of Mr. Cleveland, which lists 41 members of the class by name. That Declaration states: "More than 40 asylum applicants have recently made FOIA requests for their asylum officer assessments."  The Declaration continues, by stating that in *Bayala v. DHS,* Case No. 14-0007, inside ECF 16-2 therein, there are "11 more members," who are listed by name. The Court can take judicial notice of the contents of the *Bayala* case.  The DHS was the defendant in that case: the DHS has the documents itself. Attached hereto, as Exhibit 16-2, are documents concerning these asylum applicants and their FOIA requests. *See* Exhibit 1, "Declaration of David L. Cleveland," dated March 22, 2016.  Attached hereto as Exhibit 2, are four more class members. *See* "Declaration of David L. Cleveland, March 24, 2016."

ECF # 15-1 states at ¶ 5: "Attached hereto are 20 more FOIA requests from asylum applicants. Each one requests the Assessment."

ECF #33, at page 19, is a Declaration of David L. Cleveland, dated December 6, 2015, which states: "Catholic Charities has made FOIA requests for asylum officer assessments for over 40 applicants since March 2009, and will continue to make such requests in the future."  The Declaration continues by listing

"41 class members" by name.  And then, the Declaration lists four more class

members, attaching documents.

The DHS, in its Response, ECF # 37, at page 7, states that "Plaintiffs have

now submitted a declaration blanketly stating that [there are 45 individuals in the

class]. …Plaintiffs do not explain whether each of the individuals listed have filed

identical FOIA requests…"   The DHS objections are without merit. The DHS

does NOT challenge any one of the 49 individuals named.  Plaintiffs have averred

that each of the 49 persons is an asylum applicant who submitted a FOIA request

for the assessment.  The DHS has its own documents concerning these persons and

their FOIA requests. The DHS does not claim that any of the 49 persons is not

asylum applicant; the DHS does not claim that any one of the 49 did not file a

FOIA request for his assessment. Plaintiffs have certainly established a "reasonable

basis" for their claim that at least 49 persons are in the class.

¶ 66 of the complaint states that there are more than 100 members of the

class. On May 8, 2015, plaintiffs submitted 8 interrogatories to the DHS, as per

Civil Rule 33, asking the DHS how many members were in the class. On May 9,

2015, plaintiffs submitted eight Requests for Admissions to the DHS, as per Civil

Rule 36, asking the DHS to admit that more than 100 members were in the class.

The DHS has still not answered these requests.  The plaintiffs have satisfied the

"numerosity" requirement of Civil Rule 23.

*It is impracticable to join all the members of this class*

More members will join the class, as the case proceeds. *See* Exhibit 2, which adds four new members. Where there are future class members, there is increased impracticability. *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. 2013).

*Plaintiffs raise claims which rest on questions of law or fact common to the class.*

Civil Rule 23(a)(2) requires the plaintiffs to show that the class has common "questions of law or fact." As stated in ¶ 1 of the complaint, the DHS "has a policy and practice of not providing" any segregable portions of the asylum officer Assessment. "Defendant has a policy and practice of not even attempting to determine if there are segregable portions. " *Id.*    The DHS has basically admitted this is true.

There is just one DHS employee who writes responses to asylum applicants who request Assessments, or portions of them: Jill A. Eggleston. The DHS has admitted that she has issued at least 25 letters with the same exact words:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

*See* ¶ 18 of the DHS Answer, ECF # 16, at page 3.

The persistent use of computerized boilerplate indicates the agency is making only a perfunctory attempt at compliance with the law. It indicates the agency does not give individualized attention to requests. The Ninth Circuit disapproved of boilerplate in *Khudaverdyan v. Holder,* 778 F.3d 1101, 1109, note 6 (9th Cir. 2015)("boilerplate opinions" that "are devoid of statements that evidence an individualized review of the issue must be remanded." [citations and quotations omitted.]

The DHS's policy is in writing: *see* the DHS response to the FOIA request of Catholic Charities, ECF #32.  In that response, the DHS provided three pages, which state in essence, that asylum officer assessments should be withheld "in full."

In its Response, ECF # 37, the DHS says at page 8 that "Plaintiffs have failed to establish that each FOIA request is identical."  False. Plaintiffs have shown that 49 asylum applicants have requested their Assessments. The DHS has the FOIA request of each person in its possession. If one of the 49 is not an asylum applicant, or did not request his assessment, the DHS could show that in a jiffy. The DHS has not challenged even one of the 49 individuals.

*There are no individual differences among the class members*

The DHS suggests, ECF #37, at page 8, that each case might require "separate analysis" and there must be "case-by-case assessment;" therefore, there

is no commonality.  The DHS does NOT claim that the circumstances of Ms.

Gatore, Plaintiff #1, varies from the circumstances of Mr. Al Timemy, Plaintiff #2.

The DHS does not give any examples of how any of the 49 individuals are, or

might be different from each other.

The DHS had admitted that the seven named plaintiffs in this case have no

individual differences among themselves, by filing a Motion for Summary

Judgment [ECF #23] that does not distinguish among the seven. The Complaint,

ECF #1, has nine causes of action; the DHS motion does not acknowledge that.

*Commonality is established where each class member receives the same document.*

Each class member received the same letter from Jill Eggleston, which

contained the same exact 19 words:

> "In our review of these pages, we have determined that they contain no
> reasonably segregable portion(s) of non-exempt information."

Therefore, there is commonality.  Numerous cases hold that where each

class member receives the same document, commonality is established:

*Hart v. Colvin,* 310 F.R.D. 427 (N. D. Cal. 2015) involved a Dr. Frank

Chen, who wrote individual letters [cited in ECF #33] evaluating persons seeking

disability benefits. Of course, all patients are different: plaintiff Hart had diabetes

and pain after a car accident; plaintiff Silva-Collins had anemia caused by heavy

and prolonged menstrual bleeding; plaintiff Harris walked with a cane and had leg

and foot pain.  The Social Security Administration [SSA] removed Dr. Chen from the list of doctors conducting disability reviews, but continued to consider his letters. The SSA noted that plaintiffs did not allege that the evaluations of Dr. Chen were uniformly deficient: it was possible that some patients were given favorable evaluations by Dr. Chen. Hence, those patients would be adverse to the plaintiff patients.  So what: the case was certified: "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* at 439, citing *Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir. 2010).

   *In re: APA Assessment Fee litigation,* 311 F.R.D. 8, 15 (D.D.C. 2015), the Court approved of a class certification and settlement, where the defendant organization misled its members about their dues. "Because all class members received the same statements, the answer to this question will be common to the class. Rule 23(a)(2) is therefore satisfied. *Cf .Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) (holding Rule 23(a)(2) was satisfied where defendants "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents").

   In Thomas *v. FTS USA,* 2016 WL 94136, at \*7 (E.D. Va. 2016), the court certified a class under the Fair Credit Reporting Act.  Because Defendants used the same Employment Release Statement throughout the class period, and because

neither Defendants nor BGC ever sent any FCRA-mandated pre-adverse action information to any job applicants, "Thomas' claims are clearly typical of the class." "In fact, Thomas alleges that his claims are <u>identical</u> to those of the remainder of the class, even though this degree of unanimity is not required by the Rule." <u>Id.</u> at *9 [emphasis in original]. *Accord: Milbourne v. JRK Residential America,* 2016 WL 1071571 (E.D. Va. 2016)(use of "Standard Disclosure Form" and "Standalone Disclosure Form.")

*Even if the circumstances of each particular class member vary, commonality may exist*

"Factual variations among the class members will not defeat the commonality requirements." *Bynum v. District of Columbia,* 217 F.R.D. 43, 46 (D.D.C. 2013). The DHS does not mention this truism in its Response.

Courts have certified class actions where the members had many individual differences:

*R.I.L-R v. Jeh Johnson, Sec'y of DHS,* 80 F. Supp. 3d 164 (D.D.C. 2015) involved Central American mothers with children who were allegedly wrongfully detained, pursuant to an illegal policy. A class was certified, over objections by DHS that there was no document memorializing the challenged policy. The court found that an unwritten policy was reviewable; otherwise, an agency could "shield its decisions from judicial review simply by refusing to put those decisions in

writing." *Id.* at 184. (citations and quotations omitted). The court also found the policy was not uniformly applied; there were exceptions. *Id.*at 174. The DHS argued that the decision to detain a family rested upon many factors; and that each family was unique. The DHS pointed out that all of the ten named plaintiffs had been released. The Court held, nonetheless, that the case was not moot.*Id.* at 178, and that there was sufficient "commonality." *Id.*at 181-82.

In *Unknown Parties v. Jeh Johnson, Secretary of DHS,* 2016 WL 267009 (D. Arizona 2016), the court certified a class of immigration detainees, held at eight different stations in four counties in Arizona. The detainees claimed they were deprived of sleep, water, adequate health care, and other things. The DHS argued there was no "commonality" because the detainees were held for different lengths of time, at different hours, at different facilities. The DHS further argued that many of the class members in fact were provided with adequate sleep facilities, water, and health care; and that a criminal adult might be shackled, whereas an unaccompanied child would be in a room with an open door.

The court nonetheless certified the class, ruling that the plaintiffs "need not demonstrate that all class members have been or will be subjected to identical harms. Even if specific injuries among members of the proposed class differ, 'commonality is satisfied where the lawsuit challenges a system-wide practice or

policy that affects all of the putative class members.'" *Id.* at *4 (citations and quotations omitted).

The DHS in the instant case has not identified any possible or potential differences among the class. Plaintiffs have therefore satisfied the "commonality" requirement of Civil Rule 23.

**2. The DHS motion for summary judgment should be denied.**

The DHS filed a motion for summary judgment, ECF #22. [ECF #22 is the same as #23]  Plaintiffs filed an Opposition, ECF #29.  The DHS motion should be denied, because two federal courts have examined asylum officer assessments, *in camera,* and found that the facts can be segregated and disclosed:  *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014) and *Gosen v. U.S. CIS,* 118 F. Supp. 3d 232, 243 (D.D.C. 2015).

ECF # 37, the Response of DHS, does not mention these cases.

The DHS admitted to the *Gosen* court that it could segregate facts out of an assessment. *See* ECF #42 in that case. [ECF #42 is Document 29-1 in the instant case].  The DHS does not mention that admission in its Response.

*A. It is insufficient to merely assert that a "line-by-line" examination was done.*

The DHS Response quotes the declaration of Jill A. Eggleston, that "after a line-by-line examination," nothing could be segregated. ECF #37, at page 2.  This is insufficient. Another Court criticized the same language in a Declaration of Jill

A. Eggleston in *Am.Immigr. Laws. Ass'n. v. DHS,* 852 F. Supp. 2d 66, 80-81

(D.D.C. 2012), where she wrote "after a line-by-line review," there was nothing

that could be segregated. The Court said an agency must "describe what proportion

of the information in the documents, if any, is non-exempt and how that material is

dispersed through the documents," citing *Mead Data Cent., Inc., v. Dep't of Air

Force,* 566 F.2d 242, 261 (D.C. Cir. 1977).  Ms. Eggleston should have followed

the suggestion of the Court in *Am.Immigr. Laws. Ass'n. v. DHS,* and not repeat her

boilerplate in the instant case. The Court should repeat and re-affirm the instruction

given in *Am. Immigr. Laws. Ass'n.*

Ms. Eggleston was criticized again, in *Gahagan v. US Citizenship and

Immigration Services,* 2015 WL 7777 982 (E.D. La. 2015), where she filed two

declarations.   The Court stated that both of her declarations:

> contain an identical, one-sentence explanation of the agency's segregability
> analysis: "It has been determined that no further segregation of meaningful
> information in the withheld documents is possible without disclosing
> information that warrants protection under the law." Because that statement
> is generalized and conclusory, the declarations alone do not prove that
> USCIS's analysis was adequate. *See Animal Legal Def. Fund, Inc. v. Dep't of
> Air Force*, 44 F.Supp.2d 295, 301 (D.D.C.1999) (finding that an agency's
> declaration was "patently insufficient" when it merely parroted FOIA's
> statutory language).

> *Id.* at *10.

In *Muchnick v. DHS,* 2016 WL 730 291, at *3 (N.D. Cal. 2016), Ms.

Eggleston was criticized yet again for putting forth "boilerplate recitations of FOIA

exemption law."  "Boilerplate explanations for withholdings- like those provided by DHS here- are improper, and efforts must be made to tailor the explanation to the specific document withheld." (citations and quotations omitted)." *Id.* In *Muchnick, the* DHS claimed that none of the information in the 40 documents "contained <u>any</u> information that is reasonably segregable." *Id.* at *4 [emphasis in original].  The court, like the plaintiff, "must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings." *Id.*  (citations and quotations omitted).

The DHS Response in the instant case quotes Ms. Eggleston as claiming that an unnamed person in the agency performed a "line-by-line examination" of each requested document, in "an effort" to identify segregable material. ECF # 37, at page 2. Ms. Eggleston apparently did not perform a line-by-line examination of her own Declaration. At the end of her July 21, 2015 Declaration, ECF # 23-1, at page 9, these words appear: "<u>Mapothis v. Dep't of Justice,</u> 3 F.3d 1533, 1539 (D.D.Cir. 1993) (notes of interview in asylum case protected because release could reveal how interviewer prioritize different facts in deliberating)."

The correct spelling of the plaintiff in that case is "Mapother." John R. Mapother was not interviewed in an asylum case; he was a retired intelligence officer. He made a FOIA request for a report about the former President of Austria, Mr. Kurt Waldheim. The Court in that case found that part of the Waldheim Report

was indeed segregable. A section entitled "Chronology of Mr. Waldheim's Military Service" was deemed to be "too attenuated to be protected by the deliberative process privilege. Therefore…. this information is 'reasonably segregable.'" 3 F.3d at 1540.  Thus, *Mapother* stands for the proposition that even if a report is largely exempt from disclosure, there could well be sections of it that are reasonably segregable. The DHS and Ms. Eggleston do not acknowledge this possibility in their Response and Declaration. The fact that Ms. Eggleston did not read her own Declaration line-by-line casts doubt on the DHS claim that each assessment in this case was read "line-by-line."

   B. *Any presumption of good faith has been rebutted by the facts in this case.*

      The DHS Response, at page 2, states that agencies are entitled to a presumption that they complied with the duty to disclose segregable material. To be sure, at times, agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Service,* 494 F.3d 1106, 1117 (D.C. Cir. 2007)([relying upon *Boyd v. Crim. Div*  475 F.3d 381, 391 (D.C.Cir. 2007)). But *Boyd* did not give reasons; it just cited *U.S. Postal Service v. Gregory,* 534 U.S. 1, 10 (2001).  But, *U.S. Postal Service* was not a FOIA case- it was an employment case, where a letter carrier was disciplined for leaving work early to take her daughter to the doctor.  Thus, whatever presumption exists is a weak one. Why should an agency be given any

presumption of compliance? The purpose of the FOIA is full disclosure. The agency should have the burden of proof at all times that it complied.

Plaintiffs have rebutted whatever presumption that *Sussman* may afford. Two federal judges, after *in camera* inspections, declared that facts can be segregated out of assessments. In response, the DHS proffers the declaration of Jill Eggleston, who does not claim any personal knowledge! She does not claim she actually read any assessment. The DHS Response still does not explain why judges can segregate, while Ms. Eggleston cannot. There is another, un-named DHS employee, who was able, after Court encouragement,  to segregate in *Gosen*. *See* ECF #42 in that case. [ECF #42 is Document 29-1 in the instant case]. The DHS Response does not explain why that employee can segregate, but Ms. Eggleston cannot. Thus, the plaintiffs have overcome any presumption in favor of the DHS.

C. *The agency did not undertake "multiple levels of segregability review."*

The DHS asserts, ECF #37, at page 3, that it "undertook multiple levels of segregability review that at times resulted in additional releases of information." This is false, concerning the asylum officer assessment. No part of any assessment has been released to any of the class members in this case. Rather, the DHS policy, that assessments shall be withheld "in full," is in writing: *see* the DHS response to the FOIA request of Catholic Charities, ECF #32.  In that response, the DHS

provided three pages, which state in essence, that asylum officer assessments

should be withheld "in full." The DHS does not claim that policy was ever

deviated from; the DHS does not claim the policy was ever violated.

> D. *Jill Eggleston does not explain why factual portions cannot be severed or*
>
> *segregated.*

The DHS Response, ECF #37 at page 3, quotes Ms. Eggleston at the bottom

of page, saying that the factual portions "cannot" be segregated. Why not? Ms.

Eggleston does not set forth any facts justifying her conclusion. She just says it:

*ipse dixit. Ipse dixit* is a Latin phrase: "he himself said it."  Merriam Webster

defines the phrase as meaning: "an assertion made but not proved."

http://www.merriam-webster.com/dictionary/ipse%20dixit.

As noted in *Electronic Privacy Information Center v. Dep't of Justice,* 2016

WL 447426 (D.D.C. 2016) at FN 4:

> The government's current *ipse dixit* that it is not able to segregate any of the
> nonexempt legal analyses in the semiannual reports from exempt
> information, *see* 3d Bradley Decl. ¶ 9, without more, is manifestly
> insufficient to satisfy the government's obligation to demonstrate that this is
> so. Moreover, in light of the fact that classified information appears to have
> been successfully segregated from legal analysis in a similar context—*see In
> Re Sealed Case* (FISA Ct. July 14, 2004)…._, makes it all the more
> imperative that DOJ describe with specificity its inability to segregate the
> material at issue here.

Many courts have criticized agencies which put forth conclusory declarations: *Bagwell v. US Dep't of Justice,* 2015 WL 9272 836 at *5 (D.D.C. 2015) (DOJ contends that it has fulfilled its segregability obligation because one of its employees "attested that no reasonably segregable information has been withheld." This is insufficient). *Rugiero v. US Dep't of Justice,* 257 F.3d 534, 553 (6th Cir. 2001) ("The Vaughn index indicates that the EOUSA's decision to withhold many documents in their entirety consists solely of a conclusory statement that they do not contain segregable material." "The affidavit in support of the DEA's motion for summary judgment simply asserts that none of the withheld material is reasonably segregable. None of the attached supporting exhibits offers any additional explanation regarding segregability. Nor does the extensive Vaughn index suggest that the agency even considered the issue." *Id.* at 554.  This is insufficient.)

   *E.  All reports select facts; this alone does not expose the deliberative process.*

   The DHS Response, at page 4, states that the "particular selection of facts *may* reveal [the] deliberative process." [emphasis added].  To be sure, in *Ancient Coin Collectors Guild v. U.S. Department of State,* 641 F.3d 504, 513 (D.C. Cir. 2011), the Court noted that if "factual summaries" were culled from a "much larger universe of facts," the material could be exempt from disclosure. In *Montrose*

*Chemical Corp. v. Train,* 491 F.2d 63, 68-71 (1974), a summary drawn from a 9,200-page record was deemed deliberative.

But in the instant case, the asylum officer writes an assessment, stating the facts as told to him by the applicant. The facts garnered by the officer are not from a "large universe of facts;" they are drawn from a single short interview.  As found by the Court in *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014), after reviewing the Assessment *in camera,* the Court concluded that "the first six paragraphs simply recite and summarize the facts that plaintiff presented to the AO during his asylum application interview. Those paragraphs do not include any analysis or impressions, and they do not reflect the AO's deliberative process: although the document does not purport to be a verbatim rendition of the interview, and there may have been some streamlining involved, the summary does not involve the sort of culling of facts from a large universe that could be characterized as deliberative…. The paragraphs are therefore not protected by Exemption 5, and they are *easily* segregated from the privileged portions of the Assessment that follow." [emphasis added].

The Court in *Gosen v. US CIS,* 118 F. Supp. 3d 232, 243 (D.D.C. 2015), came to the same conclusion, after an *in camera* inspection: "there is at least some factual material that may not expose the deliberative process. For example, both assessments begin with factual introductory information…. The documents also

include a paragraph that is (mostly) just a chronological list of what the applicant testified."

All reports contain a selection of facts. Otherwise, it would not be a report. In *Playboy Enterprises, Inc. v. Dep't of Justice,* 677 F.2d 931 (D.C.Cir.1982), the court held that the Department of Justice could not withhold a report on the activities of a former FBI informant. The report was 302 pages long, resulting from reviewing 800 volumes of FBI records located in four different cities, and resulting from 64 interviews of agents, attorneys, and Ku Klux Klan members. While the government had asserted that the entire report "reflect [ed] the choice, weighing and analysis of facts" from over 800 volumes of materials, the court noted that "[a]nyone making a report must of necessity select the facts to be mentioned in it" and that "a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material." *Id.* at 935. Indeed, "[i]f this were not so, every factual report would be protected as a part of the deliberative process." *Id.*

A simple recital of facts does not involve the deliberative process, and can be easily segregated.

CONCLUSION

The Court should grant plaintiffs' motion for summary judgment as to the Ninth Cause of Action, because the DHS provided documents to plaintiff Catholic Charities only after this lawsuit was filed.

The Court should grant plaintiffs' Motion for Class Certification, because certification will advance the broad remedial purposes of FOIA. The Court should certify the following class: "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

The Court should deny the DHS motion for summary judgment, because two federal judges have declared that factual portions of asylum officer assessments can indeed be segregated.

 "The **FOIA** mandates broad disclosure of government records to the public, subject to nine enumerated exemptions. Given the **FOIA's** broad disclosure policy, the United States Supreme Court has consistently stated that **FOIA** exemptions are to be narrowly construed." *Wolf v. CIA, 473 F.3d 370, 374 (D.C.Cir.2007)* (internal citations and quotation marks omitted).

The plaintiffs are immigrants fleeing persecution abroad. The DHS has not demonstrated it has complied with its obligations under the FOIA.

March 28, 2016

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com