## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR CLASS CERTIFICATION

### PROCEDURAL HISTORY

Plaintiffs filed a motion for class certification, ECF #15.  This should be granted, because the DHS has admitted that it has a policy to withhold all parts of all assessments, and to disclose no parts.  Plaintiffs allege this policy is illegal; therefore, a "common question" exists, affecting all class members.

.   The DHS filed an Opposition, ECF # 23; Plaintiffs filed a Reply, ECF #26; Plaintiffs filed a Supplemental Memorandum, ECF # 33; the DHS filed a Response, ECF #37.

The Court should rule on the class issue as soon as practical. Local Civil Rule 23.1(b) requires plaintiffs to file a class motion within 90 days of filing the complaint. Presumably, the Court should also rule promptly upon such a motion.

Civil Rule 23(c) (1)(A) provides that:

> At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

The Advisory Committee comment on the 2003 Amendment states that while some delays may be justified, "active management may be necessary to ensure that the certification decision is not unjustifiably delayed."  The Supreme Court, in *Amgen Inc. v. Connecticut Retirement Plans,* 133 S. Ct. 1184, 1201 (2013), encouraged prompt resolution of class issues, and cautioned against "considerable expenditures of judicial time and resources" on other subjects, noting that they are "costs scarcely anticipated by" Civil Rule 23 (c )(1)(A).

## The Memorandum Opinion of April 6, 2016

ECF # 41, the Memorandum Opinion of the Court, discusses the July 2015 Declaration of Jill Eggleston, ECF # 23-1.  The Court criticized the Declaration for discussing "the segregability of the assessments in a categorical fashion." [Memorandum at 7.]  The Court noted that the Declaration discussed assessments "in general." [*Id.*] The Court further noted that there "appears to be the defendant's blanket policy not to release any portion of an assessment, irrespective of its contents, see Pls.' Suppl. Partial Summ. J. Mem., Ex. A at 1, 2 (indicating that assessments should be withheld in full)." [*Id.* at 8].

The Court then stated at page 8 that it "believes that the possibility that the defendant now simply refuses to release assessments, as a whole, regardless of their specific contents…"

*The May 2016 declaration of Jill Eggleston*

ECF #44-1 is a Declaration by Jill A. Eggleston, dated 5/27/16.  She gives very little new information.  At ¶ 12, line 130, Ms. Eggleston states that "Gatore's assessment to refer contains three sections, an introduction, an analysis section, and a conclusion/recommendation section."  However, she states no further facts. Ms. Eggleston does not even state that she herself read the assessment!

At line 182, Ms. Eggleston states that "Mr. Al Timemy's assessment to refer contains three sections, an introduction, an analysis section, and a conclusion/recommendation section." Thereafter, she states no facts. Ms. Eggleston treats all assessments the same. She has a blanket policy: nothing can be segregated out of them! She has confirmed the belief of the Court "that the defendant now simply refuses to release assessments, as a whole, regardless of their specific contents…"

Ms. Eggleston does not claim the *Abtew* and the *Gosen* assessments are different from the assessments of the seven plaintiffs. The courts in *Gosen v. US CIS,* 118 F. Supp. 3d 232, and *Abtew v. DHS,* 47 F. Supp. 3d 98 determined, after

*in camera* review, that the assessments had some portions that were reasonably

segregable. Ms. Eggleston does not mention *Gosen* or *Abtew* in her Declaration.

*Asylum officers are instructed to use computer "template" documents to write assessments, and are trained to write assessments according to a "standard format."*

As stated in the Complaint, ¶ 3, "The DHS instructs its asylum officers to

write Assessments according to a template."  ¶ 3a of the complaint states that "The

DHS published a lesson plan for its asylum officers entitled "Decision Writing Part

I: Overview and Components, Focusing on 1st Three Components," dated June 21,

2004. This lesson plan is still followed today. It instructs the officer about the

"standard format" for writing an Assessment."

ECF #16, the Answer of the DHS, responds by in part by stating "material

used at basic training of Asylum Officers….The Court is referred to these

materials, which are the best evidence of their contents."  The DHS, in essence,

agrees with ¶ 3 of the Complaint.

As noted in Exhibit 1, attached hereto, "Declaration of David Cleveland,

June 2, 2016:" the Lesson Plan dated June 21, 2004 is available on line, and states

at page 1 that the lesson introduces the officer "to the standard format for written

asylum decisions."  "Computer 'template' documents for assessments and NOIDs

are installed on asylum officers' computers so that asylum officers can quickly and

easily access and use these documents." [*Id.* at 2].

The Complaint, ¶ 15, states: "During the past six years, more than 100 asylum applicants have made a FOIA request for their assessment. The defendant has not provided even one assessment in response."

[¶15 of the Answer of DHS states that DHS "lacks knowledge or information sufficient to form a belief as to the truth of the averment."  Why does the DHS lack knowledge about itself?

*Jill Eggleston continues to use the same boilerplate in the year 2016*

¶ 18 of the complaint states that "These 25 "Jill A. Eggleston" letters are practically identical. Not one of those letters mentions the word "assessment." Each letter contains this sentence: "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."  This sentence is the fifth sentence in each and every one of the 25 letters mentioned above.

Ms. Eggleston continues to issue identical boilerplate letters in the year 2016. As indicated in Exhibit 2, Declaration of David Cleveland, June 4, 2016, there are three more letters written in 2016, which have the same 19-word, fifth sentence. *See* Attachments A, B, and C. The letter dated January 12, 2016 has as its 5th sentence the same 19 words. The letter dated March 29, 2016 has the same 19 words. The letter dated May 10, 2016 has the same 19 words.

*The DHS administrative appeal process yields only boilerplate, and do not mention the word "segregability."*

As stated in Exhibit 3, "Declaration of David Cleveland, June 5, 2016," two 2016 appeals result only in boilerplate: the fourth paragraph of each decision is exactly the same. Neither decision mentions the word "segregable." *See* Attachments A-B.

*Plaintiffs' class now has 53 identified members*

Rule 23(a)(1) requires a showing that the class is "so numerous that joinder of all members is impracticable." As of March 2016, Plaintiffs had identified 49 members of the class by name. Now, plaintiffs have identified four more. *See* Exhibit 4, attached hereto.

CONCLUSION

The Court should grant plaintiffs' Motion for Class Certification, because certification will advance the broad remedial purposes of FOIA. The Court should certify the following class: "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

June 8, 2016

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com