UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                              Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

# PLAINTIFFS' DECEMBER 2016 SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

A large number of FOIA requesters have been treated the same way, pursuant to a government policy.  Plaintiffs allege this policy is illegal; therefore, a "common question" exists, affecting all class members. Certification as a class is therefore appropriate.

Earlier, plaintiffs filed a Motion for class certification [ECF #15]; a Reply, [ECF #26]; a Supplemental Memorandum [ECF #33]; another Reply {ECF #38]; and another Supplemental Memorandum [ECF #47].

This memorandum addresses some newly-discovered facts.

## NEWLY-DISCOVERED FACTS FROM PROFESSOR STEVENS

1.  In May 2016, Professor Jacqueline Stevens made a FOIA request of defendant "for all materials used for guidance in managing USCIS FOIA requests….." The USCIS responded by furnishing 4,321 pages. *See* Attachment #1, Declaration of David L. Cleveland. *See Request* for Admissions, #1 and #2, which is Exhibit F, part of Attachment #1.

2.  Page 3939 of the 4,321 pages is entitled FINAL ACTION LETTER TEMPLATE

has as its fifth sentence:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

This sentence has a total of 19 words in it. *See Attachment* #1, ¶ 5; *see* Exhibit B, a part of Attachment #1. This is the letter that is sent to all FOIA requesters.

3.  FOIA clerks are instructed twice on page 4158 of the 4,321 pages to "withhold in full" asylum flowcharts; they are instructed four times at page 4168 to "fully withhold" asylum refugee notes; and they are instructed once at page 420 to "Withhold in full" assessments. *See* ¶6-8 of Attachment #1. The clerks are *never* instructed to "partially" withhold assessments.

4.  The word "segregate" appears nowhere in the 4,321 pages; the word "segregable" appears only once, on page 3939. There are no instructions in the 4,321 pages dealing with the duty to segregate. *See* ¶ 9 of Attachment #1.

5.  From January 1, 2010 to the present, employees at US CIS who respond to FOIA requests are mandated to use said FINAL ACTION LETTER TEMPLATE. *See* Request for Admission #5, in Exhibit F, part of Attachment #1.

## NEWLY-DISCOVERED FACTS FROM CATHOLIC CHARITIES

1.  In August 2016, Catholic Charities made a FOIA request of defendant for "the FOIA Processing Guide." Defendant responded by furnishing 250 pages. *See* Attachment #2, *see* Exhibit A, and *see* Request for Admissions, #12, 12a, and 12b, which are, part of Exhibit B, which is part of Attachment #2.

2.  Page 154 of the 250 pages instructs the FOIA employee to "Withhold in full" asylum assessments. *See* ¶ 8 of Attachment #2; *see* Requests for Admissions #15; which is part of Exhibit B, of *Attachment* #2.

3. The 250-page FOIA Processing Guide is silent as to when, or under what

circumstances, a portion of an asylum officer assessment may be disclosed to a requester. The Guide does not suggest, instruct, or contemplate any circumstances under which a portion of an assessment may be disclosed. *See* Requests for Admissions #16, Exhibit B, part of Attachment #2.

4. The word "segregable" appears only on two pages of the Guide: at Page 47 and page 153. The word "segregable" appears nowhere else in the 250 pages. *See* Requests for Admissions #13, Exhibit B, *supra.*

5. The word "segregate" appears only one page: Page 47. The word "segregate" appears nowhere else in the 250 pages. *See* Requests for Admissions #13a, Exhibit B, *supra.*

6. The Guide, at page "47," defines *inextricably intertwined* as "material which, if redacted, would make no sense at all." *See* Requests for Admissions #17, Exhibit B, *supra.*  The Guide provides no further instruction as to how to determine if something is "inextricably intertwined." *See* ¶ 5 of Attachment #1.

6a. At page 74 of the Guide, it says, "Asylum interviews are never supposed to have opinion or deliberation intermingled." *See* ¶ 6 of Attachment #2.

7. The Guide, updated on March 10, 2016, at Page "47" refers to "Recent court decisions;" however, no mention is made of *Abtew v. DHS,* decided in 2014, or of *Gosen v. US CIS,* decided in 2015.  *See* Requests for Admissions #18, Exhibit B, *supra.*

8. Page 132 of the Guide instructs the FOIA clerk to "prepare a Final Action Letter in FIPS."

9. Page 132-a of the Guide states:

"The letters generated by FIPS contain almost all the information you need, except for the exemption phrases."

### The July 2015 declaration of Jill Eggleston

The July 2015 Declaration of Jill Eggleston is found at ECF #23-1. In that document, Ms. Eggleston does not use the phrase "inextricably intertwined." Instead, she states that the factual portions of the Assessment "cannot be severed," because it is a "selective recording of information." The phrase, "selective recording of information" is not found in the 4,321 pages given to Professor Stevens, nor is it found in the Processing Guide. Where does it come from? Apparently the DHS has still more documents it has yet to reveal to Professor Stevens, Catholic Charities, and the plaintiffs in this case.

### The Memorandum Opinion of April 6, 2016

ECF # 41, the Memorandum Opinion of the Court, discusses the July 2015 Declaration of Jill Eggleston, ECF # 23-1. The Court criticized the Declaration for discussing "the segregability of the assessments in a categorical fashion." [Memorandum at 7.] The Court noted that the Declaration discussed assessments "in general." [*Id.*] The Court further noted that there "appears to be the defendant's blanket policy not to release any portion of an assessment, irrespective of its contents, see Pls.' Suppl. Partial Summ. J. Mem., Ex. A at 1, 2 (indicating that assessments should be withheld in full)." [*Id.* at 8].

The Court then stated at page 8 that it "believes that the possibility that the defendant now simply refuses to release assessments, as a whole, regardless of their specific contents…"

### The May 2016 declaration of Jill Eggleston

ECF #44-1 is a Declaration by Jill A. Eggleston, dated 5/27/16. She gives very little new information. Despite the warnings given by the Court in its April 2016 Order, Ms. Eggleston stated very few further facts. Ms. Eggleston does not even state that she herself read the

assessment!  She does not state any facts, enabling the Court or plaintiffs to evaluate her conclusions.  "[T]he government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements." *McAtee v. US DHS*, 2016 WL 3079 693, at *4 (D. Mont. 2016)(citations and quotations omitted).  "These conclusory and boilerplate explanations are insufficient." *Id.*

The DHS claims that the facts in the assessment "cannot" be severed. But what is the factual basis for this claim? Even if some deference must be given to agency claims, "deference does not mean blind acceptance." *Mudge Rose Guthrie v. U.S. Int'l Trade Comm'n.,* 846 F.2d 1527, 1532 (D.C.Cir. 1988).  Affidavits that "do nothing more than make conclusory statements" are insufficient. *Id.*

Jill Eggleston has been criticized by other courts. For example, in *Muchnick v. DHS,* 2016 WL 730291, at *3 (N.D. Cal.), Ms. Eggleston gave "boilerplate recitations of FOIA exemption law."  "Boilerplate explanations for withholdings—like those provided by DHS here—are improper, and efforts must be "made to tailor the explanation to the specific document withheld." *Id.* [citations and quotations omitted].  Ms. Eggleston was further criticized for making "categorical exemptions."  The Court found at page *4 that "[C]ategorical exemptions are rarely proper under the FOIA," citing *Yonemoto v.Dep't of Veterans Affairs,* 686 F.3d, 681, 695 (9th Cir. 2012), and stated that "this court, like the plaintiff, must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings."[citations and quotations omitted;].  *Id.* at *4.

"It is insufficient for agency to merely conclude that the document contains no segregable information without explaining the basis for such a conclusion." *McCash v. Central Intelligence Agency,* 2016 WL 6650 389, at *13 (N.D. Cal. 2016). In *McCash,* the agency submitted a

declaration from David M. Hardy, which said that RIDS conducted a "segregability review" and that no information "could reasonably be segregated."  "Plaintiff argues that the FBI fails to explain why [nothing is] segregable….The Court agrees with Plaintiff. The FBI's explanation falls short of the specificity required to justify its action in this case." *Id.* at \*14.  "First, the FBI does not identify any specific facts or bases for its conclusion that there is no non-exempt and reasonably segregable material in the withheld pages, much less describe how information is dispersed or why segregability would be impractical or unduly burdensome." *Id.* at \*14.

In *Neufeld v. IRS,* 646 F.2d 661, 666 (D.C.Cir. 1981), the Court ruled that an agency need not segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." However, in the instant case, the DHS does not claim that excision of exempt information would impose "significant costs."  Assessments in the instant case are only three pages long. Excising information out of them would be easy. At times, agencies are faced with requests for thousands of pages. For example, in *EPIC v. US DHS,* 2016 WL 6879 251, at \*3, (D.D.C. 2016), the agency identified 10,000 pages of responsive materials. Here, in the instant case, there are very few pages.

In *Berard v. Federal Bureau of Prisons,* 2016 WL 3962797, at \*9, (D.D.C. 2016) the Court ruled that an agency also has the burden of detailing "what proportion of the information in a document is nonexempt and how that material is dispersed throughout the document," citing *Mead Data Cent. Inc. v. U.S Dep't of Air Force,* 566 F.2d 242, 261 (D.C.Cir.1977).  In the instant case, the DHS has said nothing about what proportion is exempt, and nothing as to how the material is dispersed in the assessment.

In *Berard,* the agency withheld in full page one of a document. However, after an *in camera* inspection, the Court found that "the letterhead, date, and the first three words of the subject line, [could have been disclosed] without publicizing non-exempt information." 2016 WL 3962797 at *9. *Berard* stands for the proposition that an agency must actually closely examine each document, looking at each line, each phrase, and each date, to determine whether parts could be segregated and released. The agency in that case at bar has obviously not performed that task.

The DHS has not yet carefully examined the assessments of plaintiffs. As stated in *Andrus v. US DOE,* 2016 WL 4186 917, at *5 (D. Idaho 2016): "Ultimately, judicial resources are best conserved when an agency conscientiously reviews its own documentation for privileged information."  The agency should do this first, at the administrative level, before a federal lawsuit is filed. The agency in *Andrus* was criticized for not giving information, resulting in the Court's conclusion that "there is no way to determine whether the redacted information is 'deliberative' or may be considered more 'factual' in nature." *Id.* at *9.  The Court further criticized the agency because it "merely gave…boilerplate…." *Id.*  There were a large number of lengthy documents, dealing with dangerous nuclear waste, in *Andrus:* the agency searched five of its own offices, 41 documents were released initially, followed by 38 more, and then by 8 more. Some were emails sent to four or more recipients.  An email dated January 15, 2015 was sent to "more than ten different recipients."  *Id.*  The Court nonetheless required the agency to carefully describe and elucidate its claims.  In contrast, in the instant case, at issue are three-page assessments. If an agency must "conscientiously review its own [extensive] documentation for privileged information," in a complex case such as *Andrus,* then all the more an agency must review short simple documents, as in the instant case.

*An agency must actually examine a document, describe its sections, and explain what is in each section, and why it can or cannot be segregated.*

An agency must actually examine a document, and explain its component parts. The declaration from the agency should describe the results of that examination. In *Trentadue v. Integrity Committee,* 501 F.3d 1215, 1230 (10th Cir. 2007), at issue was a ten-page letter written by Mr. Ken Fine. Were portions of that letter segregable? The district court found that the facts were "inextricably intertwined," but the Tenth Circuit reversed.

The letter from Mr. Fine was written after these events: a federal prisoner was found hanging his cell; an investigation was done by the FBI; and then there was a review of the investigation by Ken Fine, Inspector General of the OIG, who then wrote a ten-page letter to the Integrity Committee [IC]. Much of that letter reflected opinions and recommendations of Mr. Fine, however, "a significant portion of the letter—almost all of page two—does not reflect Fine's opinions at all; it merely states historical facts about the OIG's investigation into [the prisoner's] death. This portion of the letter is not inextricably intertwined with exempt material—the two or three sentences in which Fine expresses an opinion are easily severed and would not shed any light on Fine's unrelated factual statements. Nor would disclosing this purely factual information expose the deliberative process in any meaningful way." *Id.* at 1230.

The Court further found that the first seven pages of the letter was "general background information" on the death, investigations, and lawsuits, and that "disclosing this purely factual content would not reveal any deliberative material by inference." *Id.* at 1231.

The Court found that pages 8-10 were deliberative, but, "at the end of the letter, are Fine's "substantive responses to allegations. This too is largely factual. His factual responses do not shed light on any internal deliberations."   *Id.* at 1232.

The Court in *Trentadue* analyzed, and commented upon, each page of the Ken Fine letter, and found many portions to be segregable.  The same should be done for each assessment in the instant case: what is in the document must be described, and if a portion is deemed non-segregable, the agency must explain why. Jill Eggleston has failed to do this, despite being warned by the Court.

Where an agency official "carefully outlines, on a document-by-document basis, the process by which the Department conducted its segregability determinations… and [refers] to each piece of withheld information, " a Court may feel confident the agency has performed a genuine segregabiilty analysis. *Beltanene v. U.S. Dep't of State.*  821 F. Supp. 2d 167, 178 (D.D.C. 2011).  In the instant case, the materials provided to Professor Stevens and to Catholic Charities, [4,321 pages and a 250-page Guide] indicate that the DHS clerks who process FOIA requests are using the wrong standards, and are instructed to use boilerplate. The Court should NOT feel confident that DHS has performed a "genuine" segregability analysis, in the instant case.

An agency must actually examine, and "carefully review" the document. *Chesapeake Bay Foundation v. U.S. Army,* 677 F. Supp. 2d 101, 109 (D.D.C. 2009).  A Court should not "take on faith" that an agency has fulfilled its obligation; the agency "must supply the Court with the necessary tools to perform a review of segregability." *Id.*  If an agency does this,

and also includes a "detailed justification" for withholding information, the Court may feel satisfied. In the instant case, the DHS has been cursory and glib.

*Asylum officers are instructed to "Withhold in full" assessments in the FOIA Processing Guide.*

Page 154 of the 250- page FOIA Processing Guide s instructs the FOIA employee to "Withhold in full" asylum assessments. *See* Requests for Admissions #15; which is part of Exhibit B, of *Attachment* #2.

The 250-page FOIA Processing Guide is silent as to when, or under what circumstances, a portion of an asylum officer assessment may be disclosed to a requester. The Guide does not suggest, instruct, or contemplate any circumstances under which a portion of an assessment may be disclosed. *See* Requests for Admissions #16, Exhibit B, part of Attachment #2.

*Asylum officers are instructed to use the same 19-word sentence as the fifth sentence in their letters to requesters, and this sentence says that nothing can be segregated.*

Professor Jacqueline Stevens recently received 4,321 pages in response to her FOIA request concerning the management of FOIA requests. *See* Attachment #1, Declaration of David L. Cleveland. *See Request* for Admissions, #1 and #2, which is Exhibit F, part of Attachment #1.

Page 3939 of the 4,321 pages is entitled "FINAL ACTION LETTER TEMPLATE," and has as its fifth sentence:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

This sentence has a total of 19 words in it. *See* Exhibit B, a part of Attachment #1.

From January 1, 2010 to the present, employees at US CIS who

respond to FOIA requests are mandated to use said FINAL ACTION LETTER TEMPLATE. *See* Request for Admission #5, in Exhibit F, part of Attachment #1.

    DHS uses the FIPS computer system to prepare response letters.  Computer-generated boilerplate shows that the DHS is not making a good faith attempt to comply with the mandate of the statute.  "[T]he government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements." *McAtee v. US DHS,* 2016 WL 3079 693, at *4 (D. Mont. 2016)(citations and quotations omitted).

    Thus, the fact that DHS has a policy and practice of never segregating anything out of any assessment is clearly established.

*The legal and factual issues are common to the class*

    This case easily satisfies Civil Rule 23(a)(2)'s requirement of "questions of law or fact common to the class." One common question is: does the DHS instruct its FOIA clerks to never release any portion of any asylum officer assessment, and to use a form letter, with the same 19 words as its fifth sentence?  Another question: have the FOIA clerks obeyed their instructions, and over the past several years, never disclosed any portion of any assessment to any requester?  Another question: does this policy and practice violate the FOIA?

      Where there is a "same course of conduct," class certification is proper. *Roy v. County of Los Angeles,* 2016 WL 5219468 at *11(C.D. Cal. 2016) (class of pre-trial detainees, denied bail because of immigration hold, was certified).  "Commonality, like numerosity, is a prerequisite which plaintiffs generally …satisfy very easily."  *Id.* [Citation omitted].

"Even a single common question will do." *Torres v. Mercer Canyons,* 835 F.3d 1125, 1133 (9th Cir. 2016) (class certified for farm workers not paid $12 per hour) [citations and quotations omitted]. In *Steele v. USA,* 2016 WL 4197577, at *7-8, (D.D.C. 2016), a case concerning the improper collection of fees by the Internal Revenue Service, a class was certified, despite the fact that class members were different: some were attorneys, some were enrolled agents, some were unlicensed tax return preparers. The Court held that this class was sufficiently cohesive for class certification. The instant case involves asylum seekers who were sent a form letter. This putative class is much simpler than the classes certified above.

*The DHS has acted on grounds generally applicable to the class*

The DHS treats all FOIA requesters the same: each one gets a form letter; no one gets any portion of the assessment; the DHS segregates and discloses nothing. "Rule 23(b)(2) permits class actions for declaratory relief or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997).

People seeking asylum, who file FOIA requests, are not educated and wealthy. They need protection. The Court "should give due consideration to the reality that many departed aliens are poor, uneducated, unskilled in the English language, and effectively unable to follow developments in the American legal system—much less read and digest complicated legal decisions. *Lugo-Resendez v. Lynch,* 831 F.3d 337, 345 (5th Cir. 2016) (considering the appropriate deadline for filing a motion to re-open in immigration court)

Most of the class members in this case will not be able "to undertake the expense, burden, and risk of instituting their own litigation—barriers that in many cases will be prohibitive." *Gayle v. Warden, Monmouth County Correctional Institution,* 838 F.3d 297, 311 (3d Cir. 2016)(class action treatment can be appropriate for aliens held in mandatory detention). Without a class action, these persons will have no relief.

CONCLUSION

The Court should grant plaintiffs' Motion for Class Certification, because certification will advance the broad remedial purposes of FOIA. The Court should certify the following class: "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

December 1, 2016

Respectfully submitted,

Attorney for Plaintiffs


David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com