# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICA GATORE
9826 Matzon Road
Middle River, MD 21220

and

ISAM AL TIMEMY
9095 Andromeda Drive
Burke VA 22015
[Insert address]

and

GEORGINE LUMONIKA
12303 Connecticut Avenue
Silver Spring, MD 20906

and

INNOCENT KABANO SHYAKA
8504 Towne Manor Court
Alexandria VA 22309

and

CHARLY MINTH AYESSA
11402 Horse Soldier Place
Beltsville, MD 20705

and

AMINATA OUEDRAOGO
8515 Greenwood Avenue
Takoma Park, MD 20912

and

HERVE SHYAKA
8504 Towne Manor Court
Alexandria VA 22309

and

CATHOLIC CHARITIES
924 G Street NW
Washington, DC 20001

And

VERONICA LEMUS-MIRANDA
2417 Sheridan Street
Hyattsville, MD 20782

Plaintiffs

v.                                    Civil Action No. 15-cv-459 (RBW)

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Office of the General Counsel
20 Massachusetts Avenue, NW
Washington DC 20528

Defendant

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. In this FOIA case, Plaintiffs seek the reasonably segregable portions of a document that may be used against them later in immigration court. Defendant has a policy and practice of not providing such portions. Defendant has a policy and practice of not even attempting to determine if there are segregable portions. The document in question is an "Assessment" written by an asylum officer. The first several paragraphs of an Assessment contain facts. This portion of the document is not only reasonably segregable, it is easily segregable. Defendant is violating 5 U.S.C. § 552 (b), last paragraph, which provides that "Any reasonably segregable portion of a record shall be provided to any person requesting such record…."

## THE ASYLUM PROCESS

2. The asylum applicant is interviewed by an asylum officer, who then writes an Assessment. When the applicant has a hearing in immigration court, the DHS at times will use the entire assessment as evidence against the applicant. *Ido v. U.S. Att'y Gen.,* 480 Fed. Appx. 972 (11th Cir. 2012). Assessments may contain mistakes or citation to unreliable sources; therefore, the applicant needs to read the it before his immigration court hearing, so that he may gather evidence to rebut it. The applicant seeks to avoid surprise and ambush in the immigration court. Asylum claims "are among the hardest cases faced by our courts. They are not games…We should not forget, after all, what is at stake. "*Xue v. Board of Immigration Appeals,* 439 F. 3d 111, 113-14 (2d Cir. 2006). The "stakes in asylum proceedings are high." *Ren v. Holder,* 648 F.3d 1079, 1086 (9th Cir. 2011). Upon deportation, "the client and his family might well be killed due to circumstances in the client's home country…." *Padilla v. Kentucky,* 559 U.S. 356, 371, n. 11 (2010).

3. The DHS instructs its asylum officers to write Assessments according to a template. The DHS instructs its officers to begin each assessment with a statement of facts, according to the applicant. These officers follow their instructions. Assessments are uniform. The first several paragraphs of each assessment are a simple recitation of the facts presented to the officer.

3a. The DHS published a lesson plan for its asylum officers entitled "Decision Writing Part I: Overview and Components, Focusing on 1st Three Components," dated June 21, 2004. This lesson plan is still followed today. It instructs the officer about the "standard format" for writing an Assessment. It states at page 5 that the asylum applicant "may submit a Freedom of Information Act (FOIA) request to obtain a copy of an assessment…." This means the *entire* Assessment, not just portions of it.  It also states at page 5 that many people will have access to the entire assessment, including "the immigration judge," the BIA, and "federal courts."

3b. Said lesson plan states at page 8 that the first three parts of an assessment shall be "biographic/entry information;" "basis of claim;" and "testimony." The fourth part is "credibility determination."  The lesson plan provides an example of "testimony" at page 9-10. In this example, the asylum officer writes several sentences, all of them facts, according to the applicant.

## JURISDICTION

4. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a) (4) (B) and 28 U.S.C. § 1331. This Court has jurisdiction to grant declaratory and other necessary relief pursuant to 28 U.S.C. § 2201-02.

## VENUE

5. Venue is appropriate under 5 U.S.C. § 552(a) (4) (B), and 28 U.S.C. § 1391, because defendant is located in the District of Columbia.

## PARTIES

6. Each individually named plaintiff is an asylum applicant who seeks the Assessment, or at least the reasonably segregable portions of it, of the asylum officer for his or her case.

7. Plaintiff Catholic Charities is an organization in Washington DC which assists asylum applicants. This plaintiff has made FOIA requests in the past for Assessments, and will continue to do so in the future.

8. Defendant United States Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. § 552(e) and 701(b) (1), and is in possession and/or control of the records requested by Plaintiffs, and all similarly situated individuals, which are the subject of this action.

## FIRST CAUSE OF ACTION

9. Plaintiffs repeat, allege, and incorporate the allegations contained in all paragraphs set forth above.

10. Plaintiff Ms. Rica Gatore, a native and citizen of Burundi, is seeking asylum. She was interviewed by an asylum officer, who wrote an Assessment. The first several paragraphs of that Assessment contain facts.

11. Those first several paragraphs are reasonably segregable. Those paragraphs are "easily" segregable. *Abtew v. DHS,* 2014 WL 2620982, at * 12 (D.D.C. 2014). Those paragraphs simply recite and summarize the facts that plaintiff presented to the asylum officer during the asylum application interview.

12. In September 2014, Ms. Gatore asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer. Catholic Charities made that request. In response, Defendant provided no portion of the Assessment. Ms. Gatore, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 1, attached hereto. The word "segregable" is not used in that denial. Ms. Gatore has exhausted all of her administrative remedies.

13. "Any reasonably segregable portion of the record shall be provided to any person requesting such record ….." 5 U.S.C. § 552(b).  Defendant has violated this statute.

14. Defendant has a policy and practice of never providing any part of an Assessment to a FOIA requester.  This policy is uniform. It is a blanket policy. There is a probability that this illegal conduct will recur in the future.

15. During the past six years, more than 100 asylum applicants have made a FOIA request for their assessment. The defendant has not provided even one assessment in response.

16. Between September 2011 and April 2014, Jill A. Eggleston, an agent for DHS, wrote at least 17 letters in response to FOIA requests for assessments. Those letters are found at ECF #16-2 in *Bayala v. DHS,* Case No. 14-0007, (D.D.C. 2014.)

17. Between July 2014 and September 2014, Jill A. Eggleston, an agent for DHS, wrote at least 8 more letters in response to FOIA requests for assessments. Those letters are found at ECF #22-1, *Id.*

18. These 25 "Jill A. Eggleston" letters are practically identical. Not one of those letters mentions the word "assessment."  Each letter contains this sentence: "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."  This sentence is the fifth sentence in each and every one of the 25 letters mentioned above.

19. These 25 letters do not contain any facts about the assessments. These 25 letters do not contain any facts about "portions" and about what can or cannot be segregated.

20. An agency that responds using computerized boilerplate is an agency that is making only a perfunctory attempt at compliance with the law. "Such boilerplate will not do." *C.R.E.W. v. US DOJ,* 746 F.3d 1082, 1101 (D.C. Cir. 2014). Where an agency uses the same, "precise

language" over and over again, it is using "boilerplate language." *Chen v. Holder,* 742 F.3d 171, 181, note 4. (4th Cir. 2014). Boilerplate language is "insufficient to demonstrate that the agency gave it more than perfunctory consideration." *Id.* at 181.

21. Use of boilerplate indicates the agency has already made up its mind and mails out robo-letters in an effort to do the minimum necessary to squeak by judicial review. It indicates the agency does not give individualized attention to requests.

22. Between December 2011 and August 2013, Alan D. Hughes, an agent for DHS, wrote at least six denials of administrative appeals taken by asylum applicants who requested the assessment of the asylum officer in their case. Those six denials are found at ECF #16-4, *Id.*. Not one of those denials mentions the word "assessment." Not one of those denials mentions the word "segregable." There are no facts in any of the six denials. No factual record was created.

23. During the past six years, more than 100 asylum applicants have made a FOIA request for their assessment. The defendant has not provided any portion of any assessment in response.

24. Defendant has the duty to attempt to determine if there are reasonably segregable portions of the Assessment. Defendant made no such attempt.

25. Defendant has a policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment. This policy is uniform. It is a blanket policy.

26. During the years 1998-2007, defendant provided not only the reasonably segregable portions of assessments to FOIA requesters, defendant provided *entire* assessments. Defendant changed this practice in 2008. Counsel for plaintiffs wrote a Declaration dated March 5, 2015, which attests to these facts, and which is attached hereto as Exhibit 2. All of the facts in that Exhibit are true, and are incorporated herein by reference.

27. Concerning the ten assessments attached to Exhibit 2, the first three were voluntarily given to immigration judges by defendant. Concerning the next seven assessments attached to Exhibit 2, they were furnished to undersigned counsel pursuant to a FOIA request.

28. The assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the above referenced ten assessments.

29. The assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the assessment considered by Judge Jackson in *Abtew v. DHS.* [D.D.C. 2014].

30. The assessment written by the asylum officer for each plaintiff in this case is quite similar to the above referenced ten assessments.

31. The assessment written by the asylum officer for each plaintiff in this case is quite similar to the assessment considered by Judge Jackson in *Abtew v. DHS.* [D.D.C. 2014].

32. For the past 20 years, defendant has been providing immigration judges copies of *entire* assessments, from time to time.

33. For the past 20 years, defendant has argued to immigration courts and to federal appellate courts that *entire* assessments should be considered by the court, because an assessment is a reliable and trustworthy document, and because an assessment can be probative evidence showing that the claim of an asylum applicant should be denied.

34. Plaintiff has the legal right under FOIA to obtain the reasonably segregable portions of the Assessment, and no legal basis exists for defendant's failure to provide such portions.

35. Defendant has violated the FOIA, 5 U.S.C. § 552 in the several ways as indicated above.

**SECOND CAUSE OF ACTION**

36. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

37. Plaintiff Mr. Isam Al Timemy is a native and citizen of Iraq, who seeks asylum in the United States. Mr. Al Timemy asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer. Catholic Charities made that request. In response, Defendant provided no portion of the Assessment. Mr. Al Timemy, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 3, attached hereto. The word "segregable" is not used in that denial. Mr. Al Timemy has exhausted all of his administrative remedies.

38. The facts concerning this plaintiff are in essence the same as the facts for plaintiff Gatore.

**THIRD CAUSE OF ACTION**

39. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

40. Plaintiff Ms. Lumonika is a native and citizen of the Democratic Republic of Congo, who seeks asylum in the United States. Ms. Lumonika asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer. Catholic Charities made that request. In response, Defendant provided no portion of the Assessment. Ms. Lumonika, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 4, attached hereto. The word "segregable" is not used in that denial. Ms. Lumonika has exhausted all of her administrative remedies.

41. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

## FOURTH CAUSE OF ACTION

42. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

43. Plaintiff Mr. Innocent Shyaka is a native and citizen of Rwanda, who seeks asylum in the United States.  He asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer.  Catholic Charities made that request.  In response, Defendant provided no portion of the Assessment.  Mr. Shyaka, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 5, attached hereto. The word "segregable" is not used in that denial.  Mr. Shyaka has exhausted all of his administrative remedies.

44. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

## FIFTH CAUSE OF ACTION

45. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

46. Plaintiff Mr. Ayessa is a native and citizen of the Republic of Congo, who seeks asylum in the United States. He asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer.  Catholic Charities made that request.  In response, Defendant provided no portion of the Assessment.  Mr. Ayessa, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See*

Exhibit 6, attached hereto. The word "segregable" is not used in that denial. Mr. Ayessa has exhausted all of his administrative remedies.

47. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

**SIXTH CAUSE OF ACTION**

48. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

49. Plaintiff Ms. Ouedraogo is a native Cote D'Ivoire, who seeks asylum in the United States. She asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer. Catholic Charities made that request. In response, Defendant provided no portion of the Assessment. Ms. Ouedraogo, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 7, attached hereto. The word "segregable" is not used in that denial. Ms. Ouedraogo has exhausted all of her administrative remedies.

50. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

**SEVENTH CAUSE OF ACTION**

51. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

52. Plaintiff Mr. Herve Shyaka is a native and citizen of Rwanda, who seeks asylum in the United States. He asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer. Catholic Charities made that request. In response, Defendant provided no portion of the Assessment. Mr. Shyaka, through Catholic Charities,

made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 8, attached hereto. The word "segregable" is not used in that denial.  Mr. Shyaka has exhausted all of his administrative remedies.

53. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

54. Each of the above named plaintiffs has exhausted any and all administrative remedies with defendant.

## EIGHTH CAUSE OF ACTION

55. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

56. Plaintiff Catholic Charities is a religious organization that helps asylum applicants. Catholic Charities has made many FOIA requests for Assessments of asylum applicants in the past, and will continue to do so in the future. Catholic Charities is the social ministry outreach of the Archdiocese of Washington. It seeks to serve the poor and most vulnerable. It can serve as representative of the class.

57. Catholic Charities conducts trainings and seminars for lawyers representing asylum applicants, and assists other organizations, such as the American Immigration Lawyers Association, in their trainings. Lawyers at Catholic Charities speak at conferences and write articles for other lawyers and the public.

58. Catholic Charities wants to monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice, to ensure that the officers are doing their job properly, that their training and internal quality control mechanisms are sufficient. Catholic Charities wants to assist Congress and the advocacy community in the implementation and

improvement of the asylum system; it wants to increase public awareness and to facilitate public oversight of the asylum system; and it wants to preserve the integrity of immigration court and asylum office proceedings.

59. Catholic Charities is being injured by the above policies, practices, and acts of the defendant. Its ability to effectuate its above-stated goals is being adversely affected. It relies heavily and frequently on FOIA to conduct work that is essential to the performance of certain of their primary institutional activities. The acts of defendant hinder and prejudice this plaintiff in achieving its goals.

## NINTH CAUSE OF ACTION

60. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

61. Plaintiff Catholic Charities submitted its own FOIA request on February 12, 2015, seeking documents relating to the processing of requests for assessments. *See* Exhibit 9 attached hereto.  Defendant received this request on 2/12/15 at 17:52.

62. Defendant has provided nothing in response. Catholic Charities has exhausted all of its administrative remedies.

## CLASS ACTION ALLEGATIONS

63. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

64. This action is brought by the named plaintiffs on their own behalf and on behalf of the class of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b).

65. The class so represented by the above named Plaintiffs consists of all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment.

66. The exact number of members of the class, as hereinabove identified and described, is not known, but it is reasonable to believe the class is so numerous that joinder of individual members is impracticable. The class meets the requirements of Fed. R. Civ. P. 23(a)(1). More than 100 individuals are members of this class. Very few of the class members have English as their native language. The class members are dispersed throughout the United States.

67. The relief sought is common to the entire class, and there are common questions of law and fact that relate to and affect the rights of each member of the class. These common questions include and involve whether the Assessments contain reasonably segregable portions which must be provided to the plaintiffs, and whether the agency's continued policy and/or pattern and practice of not making an attempt to determine whether there are portions that are reasonable segregable is unlawful. The class meets the requirements of Fed. R. Civ. P. 23(a)(2).

68. The claims of the named plaintiffs are typical of the claims of the proposed class: the plaintiffs have not been provided with the reasonably segregable portions of their Assessments. The class meets the requirements of Fed. R. Civ. P. 23(a)(3).

69. The representative parties will fairly and adequately protect the interests of the class. All requirements of Fed. R. Civ. P. 23 (a)(4) have been met. The named plaintiffs seek the same relief as is sought by the class members. The named plaintiffs have no interests adverse to other class members. Counsel for plaintiff has the skills and experience necessary to litigate this case.

70. Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Defendant has a policy and practice of not providing reasonably segregable portions of assessments to FOIA requesters. Defendant has a policy and practice of not attempting to determine if an assessment has reasonably segregable portions. All requirements of Fed. R. Civ. P. 23(b)(2) have been met.

71. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  All requirements of Fed. R. Civ. P. 23(b)(3) have been met.

### TENTH CAUSE OF ACTION

72. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

73. Plaintiff Veronica Lemus-Miranda is a native and citizen of El Salvador, who seeks asylum in the United States. She asked plaintiff Catholic Charities to make a "third party" FOIA request for the Assessment of the asylum officer.  Catholic Charities made that request.  In response, Defendant provided no portion of the Assessment.  Ms. Lemus-Miranda, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibits 10 and 11, attached hereto. The word "segregable" is not used in that denial.  Ms. Lemus-Miranda has exhausted all of her administrative remedies.

74. The facts concerning this plaintiff are in essence the same as the facts for the above plaintiffs.

75. Each of the above named plaintiffs has exhausted any and all administrative remedies with defendant.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Court certify this matter as a class action, appoint the named plaintiffs as class representatives, and appoint undersigned counsel as class counsel;

And also: plaintiff Catholic Charities prays that judgment be entered in its favor as to its own FOIA request, submitted in February 2015;

And also: plaintiffs, and each of them, pray that judgment be entered in his or her favor against defendant and that the court:

a) Order defendant to disclose the reasonably segregable portions of the Assessment to each plaintiff forthwith;
b) Declare that defendant's failure to provide such portions violates FOIA;
c) Declare that the policy and practice of defendant of refusing to disclose such portions violates FOIA;
d) Declare that the policy and practice of defendant of refusing to attempt to determine if there are reasonably segregable portions in assessments violates FOIA;
e) Order defendant to discontinue all of the above unlawful policies and practices;
g) Enjoin defendant from failing to disclose such portions in the future;
h) Award plaintiffs reasonable attorney fees and costs pursuant to 5 U.S. C. §552(a) (4) (E) and 28 U.S.C. § 2412; and
i) Grant all other such relief to plaintiffs as the Court deems proper and equitable.

Respectfully submitted,

Attorney for Plaintiffs


David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com