# EXHIBIT #1

September 10, 2014


FOIA Officer for US-CIS
Lee's Summit, MO 64064-8010      Fax: [816] 350-5785

        FOIA  Request  for  Rica  Chanice  Gatore      A#206-814-065

    Dear Sir or Madam:

Catholic  Charities  of  Washington  is  a  "third  party"  making  a
request  for  records  of  the  individual  named  above. This  individual
agrees  that  his/her  records  may  be  released  to  us.

Catholic  Charities  hereby  requests:
    - a copy of the notes written by the Asylum Officer
    - a copy of the Assessment of the Asylum Officer:
    - a copy of any material used by the Asylum Officer, but not
given  to  him  by  the  individual  named  above.

Please expedite, as she has a hearing in Immigration Court.

Catholic Charities of Washington
c/o Yleana Roman
924 G Street NW
Washington, DC 20001    [202] 772-4345


= = = = = = = = = = = = = =  = = = = = = = = = = = = = == =

I, Rica C. Gatore, hereby declare under penalty of perjury:

    - I agree that my records may be released to:
        *Catholic Charities of Washington,* 924 G Street NW, Wash.
DC 20001;
    - I was born on 07/20/1994 in Bujumbura, Burundi.
    -My address is: 9826 Matzon Road, Middle River, MD MD 21220
    -my A# is 206-814-065;

I hereby declare under penalty of perjury, as per 28 U.S.C. §
1746, that the foregoing is true and correct.

Executed on September 10, 2014 Signature: _____

                        Page 1 of 2

September 10, 2014


FOIA Officer for US-CIS
Lee's Summit, MO 64064-8010        Fax: [816] 350-5785

        FOIA  Request  for  Rica  Chanice  Gatore        A#206-814-065

    Dear Sir or Madam:

Catholic  Charities  of  Washington  is  a  "third  party"  making  a
request  for  records  of  the  individual  named  above.  This  individual
agrees  that  his/her  records  may  be  released  to  us.

Catholic Charities hereby requests:
        - a copy of the notes written by the Asylum Officer
        - a copy of the Assessment of the Asylum Officer:
        - a copy of any material used by the Asylum Officer, but not
given to him by the individual named above.

Please expedite, as she has a hearing in Immigration Court.

Catholic Charities of Washington
c/o Yleana Roman
924 G Street NW
Washington, DC 20001    [202] 772-4345


= = = = = = = = = = = = = = =  = = = = = = = = = = = = = == =

I, Rica C. Gatore, hereby declare under penalty of perjury:

        - I agree that my records may be released to:
            *Catholic Charities of Washington,* 924 G Street NW, Wash.
DC 20001;
        - I was born on 07/20/1994 in Bujumbura, Burundi.
        -My address is: 9826 Matzon Road, Middle River, MD MD 21220
        -my A# is 206-814-065;

I hereby declare under penalty of perjury, as per 28 U.S.C. §
1746, that the foregoing is true and correct.

Executed on September 10, 2014 Signature: _____

                    Page 1 of 2

U.  Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

October 21, 2014                                                    **NRC2014106004**

Yleana Roman
Catholic Charities
924 G Street NW
Washington, DC  20001

Dear Yleana Roman:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office on September 24, 2014 regarding Rica C. Gatore.

We have completed the review of all documents and have identified 297 pages that are responsive to your request. Enclosed are 246 pages released in their entirety and 22 pages released in part. We are withholding 12 pages in full. In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information. Additionally, we have referred 5 pages in their entirety to the U.S. Department of State for their direct response to you. We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.

During our review, USCIS located a potentially responsive document(s) that may have originated from U.S. Immigration and Customs Enforcement (ICE). USCIS has sent the document(s) and a copy of your FOIA request to the ICE FOIA Office for consideration and direct response to you. Should you wish to contact ICE concerning the status of the processing of the document(s), please contact the ICE FOIA Office via phone at (866) 633-1182 or via e-mail at ICE-FOIA@dhs.gov.  The ICE FOIA Office mailing address is 500 12th Street, S.W., MS 5009, Washington, D.C. 20536-5009.

Exemption (b)(5) provides protection for inter-agency or intra-agency memoranda or letters, which would not be available by law to a party other than an agency in litigation with the agency. The types of documents and/or information we have withheld under this exemption may consist of documents containing pre-decisional information, documents or other memoranda prepared in contemplation of litigation, or confidential communications between attorney and client.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. The types of documents and/or information we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

NRC2014106004
Page 2

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld information relating to third-party individuals. The types of documents and/or information we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Exemption (b)(7)(E) provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The types of documents and/or information we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

As a matter of administrative discretion, we are releasing computer codes found on system screen prints previously withheld under exemption b(2). There may be additional documents that contain discretionary releases of exempt information. We will identify discretionary releases within the record. These discretionary releases do not waive our ability to invoke applicable FOIA exemptions for similar or related information in the future.

The enclosed record consists of the best reproducible copies available. Certain pages may contain marks that appear to be blacked-out information. Such black marks would have been present prior to our receipt of the file and are not information we have withheld under the provisions of the FOIA or PA.

If you wish to appeal this determination, you may write to the USCIS FOIA/PA Appeals Office, 150 Space Center Loop, Suite 500, Lee's Summit, MO 64064-2139, within 60 days of the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

The National Records Center does not process petitions, applications or any other type of benefit under the Immigration and Nationality Act. If you have questions or wish to submit documentation relating to a matter pending with the bureau, you must address these issues with your nearest District Office.

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester. Please include the NRC number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, or sent by fax to 816-350-5785. You may also submit FOIA/PA related requests to our e-mail address at uscis.foia@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)



U.S. Department of Homeland Security
DIA/PA Appeals
150 Space Center Loop, Suite 500
Lee's Summit, MO 64064-2139

**U.S. Citizenship
and Immigration
Services**

December 11, 2014                                                          **APP2014001706**

Yleana Roman
Catholic Charities
924 G Street NW
Washington, DC 20001

Dear Mr. Roman:

Re: NRC2014106004

You appealed the action of the National Records Center regarding your request for access to records pertaining to Rica C. Gatore, dated September 24, 2014. The original determination of the National Records Center was to withhold 22 pages in part and 12 in full.

After careful consideration of your appeal, and as a result of discussions with the National Records Center, we have decided to release 8 additional pages to you, copies of which are enclosed. We are releasing 7 pages in part and 1 in full. We have redacted information pursuant to 5 U.S.C. §§ 552 (b)(5) and (b)(6).

On the remaining pages, we found that the National Records Center properly withheld certain information that is protected from disclosure. We have determined that this information is not appropriate for discretionary release. An asylum officer's written assessment is exempt from disclosure. *See Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013) (finding that USCIS properly withheld an asylum officer's assessment under the deliberative process privilege).

In your appeal letter, you requested a Vaughn index; however, at this stage a Vaughn index is not given or required. *See Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973). Your request that we itemize and justify each item of the information withheld is denied. You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. *See Judicial Watch v. Clinton*, 880 F.Supp. 1,11 (D.C. Cir. 1995).

The National Records Center located potentially responsive documents that may have originated from the U.S. Department of State and Immigration and Customs Enforcement. The National Records Center has sent the document(s) and a copy of your FOIA request to their respective FOIA Offices for consideration and direct response to you. This is consistent with departmental regulations (See 6 C.F.R. 5.4(c)). Questions concerning the status of the processing of the document(s) should be directed to the individual agencies. Please visit their websites for current contact information.

APP2014001706
Page 2

If you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Alan D. Hughes, Associate Counsel
Commercial and Administrative Law Division
Department of Homeland Security
Citizenship and Immigration Services

ECF #1-2

# EXHIBIT 2

# Declaration of David L. Cleveland

# March 5, 2015

## "TEN ASSESSMENTS"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICA GATORE, et al.,<br>              Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY,<br>              Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 15-cv-___

## DECLARATION OF DAVID L. CLEVELAND dated March 5, 2015

I, David L. Cleveland, pursuant to 28 U.S. C. § 1746, declare under penalty of perjury:

1. I am an attorney licensed to practice in the District of Columbia, and I am Counsel for plaintiff in this action.

2. I have read the attached ten Assessments, and what follows is my summary of what each contains.

3. It is very easy to "segregate" the facts in each Assessment.

4. At times, several paragraphs in a row are nothing but facts.

= = = = =

*The Assessment published by the Ninth Circuit*

5. I have read the Assessment that is attached to *Singh v. Gonzales,* 403 F.3d 1081 (9th Cir. 2005). It is 80% factual; it is easy to segregate the facts. It has nine paragraphs:

¶ 1-3 state that applicant is from India, that he entered the United States on a certain date, and that he fears harm.

2

¶ 4 has six sentences: applicant testifies as to the dates of his arrests.

¶ 5 is one sentence long: the officer says the applicant was not consistent, and was not detailed; therefore, he was not credible.

¶ 6. Sets forth an inconsistency between his declaration and his testimony concerning arrest dates.  ¶ 6 also states that applicant gave inconsistent answers as to his third arrest.

¶ 7 says that applicant was asked to describe his arrests and activities, but the applicant "was unable" to do so.

¶ 8-9 contain three sentences: applicant is not eligible for asylum.

*The Assessment given to the Arlington Immigration Court*

6. The Assessment dated July 31, 2001 is two pages long. It was filed with the Arlington Immigration Court in November 2001. I believe it is 90% factual.  It is easy to segregate the facts.

7. The first three paragraphs are 100% facts: applicant is 49 years old, she arrived in the United States on February 5, 2001; she fears "Indonesia-Malay" citizens; her beauty shop was burned down in 1998; in 1999, she was robbed and a knife was held to her throat.

¶ 4 contains six sentences: the first three are commentary by the officer; the next three describe an email dated March 28, 2001 about crimes against Chinese.

¶ 5 states that a government "team" concluded that the 1998 riots were "orchestrated by pro-government "forces.

¶ 6 states there was a free and fair election in Indonesia.

¶ 7 is a long quotation from a Department of State report.

¶ 8, perhaps, is a commentary by the officer.

¶ 9 states that certain conflicts were "primarily in the Moluccan islands.

¶ 10 and 11 conclude that applicant should be denied asylum.

*The Assessment filed with the Baltimore Immigration Court*

8. The Assessment dated 9/12/05 is two pages long, and was filed with the
Baltimore Immigration Court in May 2007.   It is over 50% factual; it is easy to segregate
the facts.

¶ 1-2 state that applicant indicated she is from the Democratic Republic of Congo,
and that she arrived on May 6, 2005.

¶ 3 states that applicant did not demonstrate that she arrived in the United States
on or after a certain date. It also states that her testimony about being rape was "found not
credible." [the Assessment does not state what the testimony was, or why it was not
credible].

¶ 4 repeats testimony about her escape from her country, and her travels, but
states there were no documents to prove her story.

¶ 5-7 states that her country of origin has not had any changed circumstances, and
cites an article from news.bbc.co.uk. It contains what appears to be quotation, but there
are no quote marks.  ¶ 8-9 cites a Freedom in the World article, and appears to quote it.

*The assessment dated February 7, 2007*

The Assessment dated February 7, 2007 has ten paragraphs.  It is 90% factual. It
is easy to segregate the facts.

¶ 1-4 state background facts. ¶ 5 is a long paragraph, and contains nothing but
facts, such as "applicant became pregnant in 2001;" "in 2005, she was told of an arranged

marriage;" "in 2006, she was brought to the United States;" and she "testified that her father has friends in the police department."

¶ 6 states that applicant was six weeks pregnant when beaten, that she was in the hospital for three days, and "She has also left your [sic] child in the care of her parents."

¶ 7 states that "applicant did not openly refuse to marry Mr. Ekoman," she told only her mother about her feelings, and her father "was not aware of her opposition to forced marriages."

*The Assessment dated July 16, 1998*

The Assessment dated July 16, 1998 is two pages long, with 11 paragraphs. It is perhaps 50% factual. The facts are easy to segregate.

Paragraphs 1-4 are entirely factual: they state that the applicant testified he is 39 years old, he entered the United States on June 30, 1993; he was a banker; he obtained a degree in economics, he joined a credit union, he was arrested on October 10, 1992; he was detained for one week, hit with a big stick, he was stabbed on January 16, 1990; he woke up in the hospital; he reported it to the police

The officer then commented on the law. The officer quoted from a Department of State document; a short quote from *Freedom in the World.*

*The Assessment dated August 11, 1999*

The Assessment dated August 11, 1999 is two pages long, and has 10 paragraphs. The entire first page is facts. It states that applicant testified she was 32 years old, she arrived in the United States on July 7, 1998, she worked for the election of Mr. Aristide; her brother was arrested; she was arrested, both were beaten with rifle butts, she was sexually molested, three days without food or water; a nurse helped her escape, she went to her

sister's home, in November 1997 two men were arrested for the murder of her brother; she completed school, she adopted two children, gunmen in a car tried to harm her.

### The Assessment dated April 13, 2000

The Assessment dated April 13, 2000 is two pages long, with 12 paragraphs. The first page is entirely factual. It states that applicant testified she is 24 years old, she entered the United States on January 3, 1998; her father owned a small music school, mother lives in Australia, she is Christian, in May 1998 her uncle's shop and home were looted by rioters, there was no damage to her church, in June 1995 three boys insulted her and demanded money, she spit on one boy, who then slapped her, in December 1995, a taxi driver attempted to rape her, she was picked up by a passerby, she reported it to the police, she attended a Christian elementary school.

The second page is about 90% factual. It states facts, as gleaned from various sources, such as the Department of State and the Jakarta Post.

### The Assessment dated January 10, 2000

The Assessment dated January 10, 2000 is three pages long, with ten paragraphs. The first page and one-half are entirely factual. It states that applicant testified he is 42 years old, he arrived in the United States on September 13, 1999, his girlfriend [later wife] is Christian, he went to church with her often, she gave him a book to read about Christianity, he bought and sold used cars with his uncle, his father warned him not to marry his girlfriend, he went to a revival meeting, he converted, he declared his Christianity to his parents, he moved away to not cause his parents shame, he ceased working with his uncle, in July 1998 friends from his mosque came and threatened him,

6

later six men came and hit him on the head and made him bleed on the nose, he married girlfriend in August 1999.

### The Assessment dated 12 April 2000

The Assessment dated 12 April 2000 is two pages long, and has 11 paragraphs. The first five paragraphs are entirely factual. It states that applicant testified he is 31 years old, he entered the United States on February 12, 1999, his father was a Christian evangelist, in November 1998, youths came into their church and started smashing things, some parishioners ran out the back door, the mob destroyed the church, police were outside but did nothing, some people were cut with knives.

### The Assessment dated January 4, 2000

The Assessment dated January 4, 2000 is three pages long, with ten paragraphs. The first four paragraphs, which extend to page two, are 100% factual. It states that applicant testified he is 32 years old, he was a Chin from Burma, and a Seventh Day Adventist, he was compelled to perform forced labor, he gave a speech, a guard beat him, his father, and his brother. The brother and father died from the beating. He was active in the pro-democracy movement in the United States.

= = = = =

5. I have worked at Catholic Charities since 1998. From 1998-2007, I frequently made FOIA requests for asylum officer assessments.  During this time period, defendant always provided me with the entire assessment. Defendant did not assert any FOIA exemption or privilege; defendant did not claim that nothing was reasonably segregable; defendant simply furnished the entire assessment to me.  During this time period, I believe I obtained at least 50 assessments, via FOIA. The first three assessments attached

7

hereto were filed in court, by defendant.  The next seven assessments, attached hereto, were obtained by me, from defendant, pursuant to a FOIA request.

I declare under penalty of perjury under the laws of the District of Columbia that foregoing is true and accurate.  Dated: March 5, 2015.

Respectfully submitted,

/s/ David L. Cleveland
DAVID L. CLEVELAND
DC Bar # 424209
Catholic Charities of Washington

8

## APPENDIX

### ASSESSMENT TO REFER

Applicant is a 33-year-old male native of India and citizen of India.

Applicant credibly testified he entered the United States without inspection on June 8, 1994, at San Ysidro, CA, and was admitted as a [sic] and showed by clear and convincing evidence that he timely filed.

Applicant fears that he will be harmed on account of his political opinion.

Applicant testified that he was a member of the All India Sikh Student Federation (Federation). As a member of the Federation, Applicant collected funds and pasted posters. He was arrested four times. He was arrested April 3, 1990; March 10, 1991; December 1991; and December 29, 1993. After each arrested [sic] Applicant was detained for various lengths of time and was beaten and tortured by the police.

Applicant presented testimony which was [**31] not consistent or sufficiently detailed. Therefore, he was not found to be credible.

Applicant presented testimony which was not consistent. Applicant's declaration indicates that his second and third arrest were in June 1991 and January 1992; not as he testified on March 10, 1991 and December 1991. Applicant's testimony regarding his third arrest was also inconsistent, he testified that his third arrest was in December 1991, then January 1992, then December 1993 back to December 1991 and then January 15, 1992. Applicant determined that his third arrest was on January 15, 1992 after it was pointed out that he could not have been detained for one month was [sic] December 1991 to January 1992 and be released after the February 1992 elections as he had testified. Applicant also testified that he left India on June 2, 1994, however, he also testified that after his last arrest in December 1993 he was detained for one month and upon his release, he left India within a few days time. This information is material to Applicant's claim because he testified that he was [sic] left India due to these arrests.

Applicant presented testimony which was not detailed. Applicant [**32] was repeatedly asked to describe his arrests and his political activities. However, he was unable to provide any information beyond a short declarative sentence that the event happened. This information is material to Applicant's claim because he testified that he left India due to these arrests which occurred after he engaged in political activity.

Applicant has not shown there is a reasonable possibility of suffering the persecution that he fears.

For the foregoing reasons, the applicant is not eligible for asylum status in the United States. Assessment is to refer to the Immigration Judge.

**CONCUR BY:** Edward Leavy

**CONCUR**



LEAVY, Circuit Judge, concurring:

I concur in the result. The adverse credibility determination is not supported by substantial evidence.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
ARLINGTON, VIRGINIA

In the Matter of:                    )
    TJEW, Nget Jui           )        IN REMOVAL PROCEEDINGS
    A79-476-365              )
                              )

## GOVERNMENT'S SUBMISSION OF DOCUMENTS

    The Government intends to introduce the following documents into evidence at

the merits hearing for this case.  Copies of the document are attached hereto.

    1.   State Department Country Report for Indonesia, dated February, 2001;

    2.   Asylum Office Referral Assessment, dated July 31, 2001.


                                      Respectfully Submitted,

                                        Michael M. Metzgar
                                        Assistant District Counsel
                                        U.S. Immigration and
                                        Naturalization Service
                                        4420 N. Fairfax Drive
                                        Room 500
                                        Arlington, VA  22203

mailed  11-7-01



## REFERRAL ASSESSMENT

**Alien Number: 79 476 365**                     **Date: 07/31/01**

**Name:** Nget Kui Tjew                          **Asylum Officer: Laurie O'Bryon, ZAR164**

**Country: Indonesia**                           **Reviewing Officer:  Ellen Johnsen**

**Location:  ZAR**

The applicant indicated that she is a 49 year-old female, native and citizen of Indonesia who entered the United States at New York on February 5, 2001 and was admitted as a B2 visitor and applied for asylum on June 5, 2001.  Applicant filed within the one-year filing deadline.

The applicant fears that she will be harmed by the Indonesia-Malay citizens of Indonesia on account of her Chinese ethnicity.

The applicant testified that during the May 1998 riots, her beauty salon was burned down.  On February 5, 1999, applicant and a friend were traveling in a pedicab when they were ordered to get out.  Two native Indonesians robbed them of all of their money and valuables and held a knife to applicant's throat.

Applicant presented testimony that was believable, consistent, and sufficiently detailed and therefore the applicant is found to be credible. The events the applicant described and the harm the applicant fears are not found to have been on account of one of the five protected grounds. The robbery described by the applicant seems to be generalized street crime, and while applicant may have been chosen as a victim because of her Chinese ethnicity, there is no indication that the police or government were unwilling to assist her.  Applicant chose not to file a report with the police because she was afraid to do so.   The RIC received information from ICANET (Indonesian Chinese and American Network) in an e-mail dated March 28, 2001 (ICANET can be contacted through their website, http://www.icanet.org/), in response to a question about "Other everyday crimes against CI? [Chinese Indonesians], A: In general crimes are increasing everyday against anybody. Extortions against the ethnic Chinese Indonesian are commonplace and generally unreported."

As to the May 1998 riots, media reports indicate that a government-appointed investigative team concluded on November 4, 2000, that the May riots were orchestrated by pro-government militants, including rogue elements within the armed forces, aimed at justifying the imposition of emergency rule and keeping Suharto in power.  (Keith B. Richburg, *Broken Lives, Washington Post Foreign Service,* December 23, 1998).   Those affected were primarily, but not entirely, Chinese.

As of October 1999, a free and fair election installed a new government in Indonesia, and country conditions reports state that official policies towards the Indonesian Chinese have



actually improved.

> In January President Wahid issued Presidential Decree No. 6, which repealed the ban (passed in 1967) on the practice of Chinese religion (Confucianism), beliefs, and customs. Ethnic Chinese celebrated New Year's openly for the first time in over 30 years. … The Government restricts the import of Chinese-language publications and music. There are seven locally-published Chinese language newspapers. In November a new independent television station, Metro TV, began broadcasting 2 hours of news in Mandarin per day. The program was the first Chinese-language television broadcast in the country since 1965. … The Chinese language now may be taught, spoken, and printed, and private instruction in Chinese no longer is prohibited. Some universities, including the University of Indonesia, offer Chinese-language instruction. A number of private institutions openly offer courses as well. Chinese-language publications in the country no longer are banned. … Authorities no longer are required to note a special code on the national identification card for citizens of Chinese extraction. However, some Sino-Indonesians have claimed that this practice continues. *See* U.S. Department of State, "Indonesia," *Country Reports on Human Rights Practices for 2000,* http://www.state.gov/g/drl/rls/hrrpt/2000/eap, accessed 8/1/01.

Given the recent change in government, it is not possible to say in which direction the official policy is heading, nor whether the new government will be able to control the crime rate. There is no indication at this date that the official policies will change.

There have been ongoing conflicts between Muslims and Christians in Indonesia, but these seem to be primarily in the Moluccan islands, and in general haven't worsened since the time of applicant's departure from Indonesia. Human Rights Watch. *World Report 2001* (New York: Human Rights Watch, December 2000), p. 203.

The applicant also claims to have a fear of future persecution. However, as explained above, the applicant has failed to show that the harm she fears is on account of one of the five protected grounds and that the government is unable or unwilling to protect him.

For the foregoing reasons, applicant is not eligible for asylum status in the United States. Assessment is to refer to Immigration Judge.



# EXHIBIT #5



U.S. Department of Homeland Security
HQ FOIA/PA Appeals
150 Space Center Loop, Suite 500
Lee's Summit, MO  64064-2139

**U.S. Citizenship
and Immigration
Services**

March 11, 2013                                                    APP2013000261

David L. Cleveland
Catholic Charities
924 G Street, NW
Washington, DC  20001

Dear Mr. Cleveland:

Re: NRC2012104695

You appealed the action of the National Records Center regarding your request for access to records pertaining to Innocent Kabano Shyaka, dated November 15, 2012. The original determination of the National Records Center was to withhold 3 pages in part and 11 in full.

After careful consideration of your appeal, and as a result of discussions with the National Records Center, we have decided to release 10 additional pages to you, copies of which are enclosed. We are releasing 9 pages in part and 1 in full. We have redacted information pursuant to 5 U.S.C. §§ 552 (b)(5), (b)(7)(C) and (b)(7)(E).

On the remaining pages, we found that the National Records Center properly withheld certain information that is protected from disclosure. We have determined that this information is not appropriate for discretionary release. Records related to asylum determinations are appropriately withheld pursuant to 5 U.S.C. § 552(b)(5).  *See Phillips v. Immigration and Customs Enforcement*, 385 F.Supp.2d 296, 302-03 (S.D.N.Y. 2005).

In your appeal letter, you requested a Vaughn index; however, at this stage a Vaughn index is not given or required.  *See Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973).  Your request that we itemize and justify each item of the information withheld is denied.  You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals.  *See Judicial Watch v. Clinton*, 880 F.Supp. 1,11 (D.C. Cir. 1995).

The National Records Center located potentially responsive documents that may have originated from U.S. Visit, the Department of State and Immigration and Customs Enforcement. The National Records Center has sent the document(s) and a copy of your FOIA request to the U.S. Visit, the Department of State and Immigration and Customs Enforcement FOIA Offices for consideration and direct response to you. This is consistent with departmental regulations (See 6 C.F.R. 5.4(c)). Questions concerning the status of the processing of the document(s) should be directed to the individual agencies. Please visit their websites for current contact information.

APP2013000261
Page 2

If you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Alan D. Hughes, Associate Counsel
Commercial and Administrative Law Division
Department of Homeland Security
Citizenship and Immigration Services

# EXHIBIT #6



Department of Homeland Security
HQ FOIA/PA Appeals
150 Space Center Loop, Suite 500
Lee's Summit, MO 64064-2139

**U.S. Citizenship
and Immigration
Services**

October 7, 2014                                                    **APP2014001378**

David L. Cleveland
Catholic Charities
924 G Street, NW, Suite 225
Washington, DC  20001


Dear Mr. Cleveland:

Re: NRC2014079637

You appealed the action of the National Records Center regarding your request for access to records pertaining to Charly Minth Ayessa, dated July 21, 2014. The original determination of the National Records Center was to withhold 21 pages in part and 34 in full.

After careful consideration of your appeal, and as a result of discussions with the National Records Center, we have decided to release 18 additional pages to you, copies of which are enclosed. We are releasing these pages in part. We have redacted information pursuant to 5 U.S.C. §§ 552 (b)(5) and (b)(6).

On the remaining pages, we found that the National Records Center properly withheld certain information that is protected from disclosure. We have determined that this information is not appropriate for discretionary release. An asylum officer's written assessment is exempt from disclosure. *See Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013) (finding that USCIS properly withheld an asylum officer's assessment under the deliberative process privilege).

The National Records Center located potentially responsive documents that may have originated from the U.S. Department of State and Immigration and Customs Enforcement. The National Records Center has sent the document(s) and a copy of your FOIA request to their respective FOIA Offices for consideration and direct response to you. This is consistent with departmental regulations (See 6 C.F.R. 5.4(c)). Questions concerning the status of the processing of the document(s) should be directed to the individual agencies. Please visit their websites for current contact information.

In your appeal letter, you requested a Vaughn index; however, at this stage a Vaughn index is not given or required. *See Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973).  Your request that we itemize and justify each item of the information withheld is denied.  You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. *See Judicial Watch v. Clinton*, 880 F.Supp. 1,11 (D.C. Cir. 1995).

www.uscis.gov

APP2014001378
Page 2

If you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Alan D. Hughes, Associate Counsel
Commercial and Administrative Law Division
Department of Homeland Security
Citizenship and Immigration Services

# EXHIBIT #7



U.S. Department of Homeland Security
OIA/PA Appeals
150 Space Center Loop, Suite 500
Lee's Summit, MO  64064-2139

**U.S. Citizenship
and Immigration
Services**

September 18, 2014

**APP2014001333**

David L. Cleveland
Catholic Charities
924 G Street NW, Suite 225
Washington, DC  20001

Dear Mr. Cleveland:

Re: NRC2014076096

You appealed the action of the National Records Center regarding your request for access to records pertaining to Aminata Ouedraogo, dated July 15, 2014. The original determination of the National Records Center was to withhold 13 pages in part and 11 in full.

After careful consideration of your appeal, and as a result of discussions with the National Records Center, we have decided to release 8 additional pages to you, copies of which are enclosed. We are releasing these pages in part. We have redacted information pursuant to 5 U.S.C. §§ 552 (b)(5) and (b)(6).

On the remaining pages, we found that the National Records Center properly withheld certain information that is protected from disclosure. We have determined that this information is not appropriate for discretionary release. An asylum officer's written assessment is exempt from disclosure. *See Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013) (finding that USCIS properly withheld an asylum officer's assessment under the deliberative process privilege).

In your appeal letter, you requested a Vaughn index; however, at this stage a Vaughn index is not given or required. *See Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973). Your request that we itemize and justify each item of the information withheld is denied. You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. *See Judicial Watch v. Clinton*, 880 F.Supp. 1,11 (D.C. Cir. 1995).

The National Records Center located potentially responsive documents that may have originated from the U.S. Department of State and Immigration and Customs Enforcement. The National Records Center has sent the document(s) and a copy of your FOIA request to their respective FOIA Offices for consideration and direct response to you. This is consistent with departmental regulations (See 6 C.F.R. 5.4(c)). Questions concerning the status of the processing of the document(s) should be directed to the individual agencies. Please visit their websites for current contact information.

APP2014001333
Page 2

If you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Alan D. Hughes, Associate Counsel
Commercial and Administrative Law Division
Department of Homeland Security
Citizenship and Immigration Services

# EXHIBIT #8

U.S. Department of Homeland Security
HQ FOIA/PA Appeals
1? ?ace Center Loop, Suite 500
Lee's Summit, MO 64064-2139



**U.S. Citizenship
and Immigration
Services**

April 21, 2013                                                    APP2013000432

David L. Cleveland
Catholic Charities
924 G Street, NW
Washington, DC 20001


Dear Mr. Cleveland:

Re: NRC2013007226

You appealed the action of the National Records Center regarding your request for access to records pertaining to Herve Ndole Shyaka, dated January 24, 2013. The original determination of the National Records Center was to withhold 3 pages in part and 10 in full.

After careful consideration of your appeal, and as a result of discussions with the National Records Center, we have decided to release 7 additional pages to you, copies of which are enclosed. We are releasing these pages in part. We have redacted information pursuant to 5 U.S.C. §§ 552 (b)(5).

On the remaining pages, we found that the National Records Center properly withheld certain information that is protected from disclosure. We have determined that this information is not appropriate for discretionary release. Records related to asylum determinations are appropriately withheld pursuant to 5 U.S.C. § 552(b)(5). *See Phillips v. Immigration and Customs Enforcement*, 385 F.Supp.2d 296, 302-03 (S.D.N.Y. 2005).

In your appeal letter, you requested a Vaughn index; however, at this stage a Vaughn index is not given or required. *See Vaughn v. Rosen*, 484 F. 2d 820 (D.C. Cir. 1973). Your request that we itemize and justify each item of the information withheld is denied. You are not entitled to such a listing at the administrative stage of processing FOIA requests and appeals. *See Judicial Watch v. Clinton*, 880 F.Supp. 1, 11 (D.C. Cir. 1995).

APP2013000432
Page 2

If you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Alan D. Hughes, Associate Counsel
Commercial and Administrative Law Division
Department of Homeland Security
Citizenship and Immigration Services

# EXHIBIT #9

February 13, 2015

FOIA Officer for US-CIS
Lee's Summit, MO 64064-8010        Fax: [816] 350-5785

Dear FOIA officer:

This is a request filed under the Freedom of Information Act.

Date range of request: January 1, 2010 through February 13, 2015

Description of request:

Catholic Charities of Washington hereby requests copies of:

Documents relating to the processing, answering, and
responding to FOIA requests for assessments of asylum
officers. This would include, but is not limited to:
instructions given to staff; policy statements; rules, and
memoranda.

Catholic Charities is willing to pay up to $100 for the processing
of this request. Please inform us if the estimated fees will
exceed this limit before processing my request.

Catholic Charities is seeking information not for commercial use,
but for its personal use.


Sincerely,

Catholic Charities of Washington
c/o David L. Cleveland
924 G Street NW
Washington, DC 20001    [202] 772-4345