# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICA GATORE, *et al.*,

        *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

        *Defendant*.

Case 1:15-cv-00459-RBW

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

CHANNING D. PHILLIPS
United States Attorney

DANIEL F. VAN HORN
Chief, Civil Division

JOHNNY H. WALKER
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

Dated: June 9, 2017

# CONTENTS

*Table of Authorities*...........................................................................................................ii

BACKGROUND .............................................................................................................1

    A.    Plaintiffs' Claims ...............................................................................................1

    B.    Procedural History ...........................................................................................2

STANDARD.....................................................................................................................6

ARGUMENT ...................................................................................................................7

I.    Defendant Properly Withheld Deliberative Information under Exemption 5......................8

    A.    Assessments to Refer Are Covered by the Deliberative-Process Privilege...........10

    B.    Defendant Released All Reasonably Segregable Information..............................11

II.    Catholic Charities' Policy-or-Practice Claim Fails.........................................................15

    A.    Catholic Charities Lacks Standing for Prospective Relief....................................16

    B.    Defendant's Policy Is to Review Assessments for Segregability ..........................17

CONCLUSION.................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Abramyan v. U.S. Dep't of Homeland Sec.*,
    6 F. Supp. 3d 57 (D.D.C. 2013) ...................................................................... 11, 12

*Abtew v. U.S. Dep't of Homeland Sec.*,
    47 F. Supp. 3d 98 (D.D.C. 2014) ..................................................................... 11, 13

*Allen v. Wright*,
    468 U.S. 737 (1984) .............................................................................................. 16

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
    641 F.3d 504 (D.C. Cir. 2011) ................................................................. 10, 12, 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 6

*Anguimate v. U.S. Dep't of Homeland Sec.*,
    918 F. Supp. 2d 13 (D.D.C. 2013) ............................................................ 10, 11, 12

*Brayton v. Office of U.S. Trade,*
    *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ..................................................................... 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 6

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) ....................................................................... 10, 12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................ 16

*Coastal States Gas Corp v. DOE*,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................................... 9

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir.  2011) .............................................................................. 16

*Defenders of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009) ......................................................................... 6

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976) ................................................................................................ 8

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) .................................................................................................. 10

*Fainman v. F.B.I.*,
    269 F.R.D. 44 (D.D.C. 2010) ................................................................................ 2

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ........................................................................... 8

*Gatore v. U.S. Dep't of Homeland Sec.*,
    177 F. Supp. 3d 46 (D.D.C. 2016) .................................................... 3, 8, 11, 14

*Gosen v. U.S. Citizenship & Immigration Servs.*,
    118 F. Supp. 3d 232 (D.D.C. 2015) ........................................................... 11, 12

*Ground Saucer Watch, Inc. v. CIA*,
    692 F.2d 770 (D.C. Cir. 1981) ............................................................................. 7

*Jordan v. U.S. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) ............................................................................. 9

*Judicial Watch, Inc. v. Dep't of Justice*,
    365 F.3d 1108 (D.C. Cir. 2004) ........................................................................... 9

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................................. 7

*Loving v. Dep't of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) ............................................................................. 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 16

*Mapother v. DOJ*,
    3 F.3d 1533 (D.C. Cir. 1993) ......................................................................... 9, 10

*McGehee v. C.I.A.*,
    697 F.2d 1095 (D.C. Cir. 1983) ........................................................................... 6

*McKinley v. Bd. of Gov. of Fed. Reserve Sys.*,
    647 F.3d 331 (D.C. Cir. 2011) ............................................................................. 9

*Media Research Ctr. v. U.S. Dep't of Justice*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................. 6, 7

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ............................................................................. 7

*Montrose Chem. Corp. of California v. Train*,
    491 F.2d 63 (D.C. Cir. 1974) ............................................................................. 10

*Muhammad v. U.S. Customs & Border Prot.*,
   559 F. Supp. 2d 5 (D.D.C. 2008) ........................................................................ 7

*Muttitt v. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013) .................................................................. 16

*Nat'l Archive & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ............................................................................................ 8

*Nat'l Sec. Counselors v. C.I.A.*
   931 F. Supp. 2d 77 (D.D.C. 2013) .................................................................... 17

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ...................................................................................... 9, 10

*Payne Enters., Inc. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988) .......................................................................... 16

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ............................................................................ 7

*Rockwell Intern. Corp. v. DOJ*,
   235 F.3d 598 (D.C. Cir. 2001) ............................................................................ 9

*Russell v. Dep't of the Air Force*,
   682 F.2d 1045 (D.C. Cir. 1982) .......................................................................... 9

*SafeCard Servs., Inc. v. S.E.C.*,
   926 F.2d 1197 (D.C. Cir. 1991) .......................................................................... 7

*Summers v. DOJ*,
   140 F.3d 1077 (D.C. Cir. 1998) .......................................................................... 8

*Tao v. Freeh*,
   27 F.3d 635 (D.C. Cir. 1994) .............................................................................. 6

*Tipograph v. Dep't of Justice*
   146 F. Supp. 3d 169 (D.D.C. 2015) .................................................................. 17

*U.S. Dep't of Def. v. FLRA*,
   510 U.S. 487 (1994) ............................................................................................ 8

*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1975) ...................................................................... 9, 10

*Washington v. U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ...................................................................... 7

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ................................................................. 8

**Statutes**

5 U.S.C. § 552 ................................................................................................. 4

5 U.S.C. § 552(a)(4)(B) ................................................................................. 13

5 U.S.C. § 552(b)(5) ........................................................................................ 8

8 U.S.C. § 1229a(b)(4)(B) ............................................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 6

Having cured the two issues previously raised by the Court as precluding it from granting Defendant summary judgment, Defendant now renews its motion. Most of the Plaintiffs in this case are individuals seeking more information from their respective assessments to refer, which were prepared during the United States Customs and Immigration Enforcement's ("USCIS") deliberations concerning their asylum applications and which each of them requested through the Freedom of Information Act ("FOIA"). Those assessments, however, are covered by the deliberative-process privilege (as many cases have held) and Defendant appropriately reviewed them for segregable information and released any such information to Plaintiffs. In addition, Plaintiff Catholic Charities' purports to bring a policy-and-practice claim asserting that Defendant has a policy of *not* reviewing assessments to refer for segregable information. Catholic Charities lacks standing to raise such a claim. And even if it could, the claim would fail on the merits because the record shows that Defendant has no such policy. In fact, its policy requires that all documents—including assessments to refer—be reviewed for segregable information. Accordingly, Defendant is entitled to summary judgment.

## BACKGROUND

### A.     Plaintiffs' Claims

Eight of the nine Plaintiffs in this case are individuals who have applied for but were denied asylum in the United States. [*See* Am. Compl. ¶¶ 10, 37, 40, 43, 46, 49, 52, 73, ECF No. 60.] Each of them subsequently submitted a FOIA request seeking documents related to his or her application. [SOF ¶¶ 1–8.] Defendant produced many of the documents sought by those requests, but withheld in full certain documents called "assessments to refer." [SOF ¶¶ 15–23] An assessment to refer is a document prepared by an asylum officer after interviewing an applicant whom the officer plans to recommend referring to an immigration judge for removal proceedings rather than granting asylum. [SOF ¶ 10.] These assessments are generally prepared in narrative

1

form and explain the Officer's analysis of the legal deficiencies in the application. They are then subject to review and approval by a Supervisory Asylum Officer. [*Id.*] If approved, the Assessment serves as the basis for a Notice of Referral, which is the final decision of the agency that is provided to the applicant. Plaintiffs contend that assessments to refer are sometimes introduced during immigration-court proceedings and that their FOIA requests will serve the important purpose of "avoid[ing] surprise and ambush in the immigration court." [Am. Compl. ¶ 2.] Notably, however, the law requires that an alien in removal proceedings "shall have a reasonable opportunity to examine" *any* evidence—including an assessment to refer—that is offered against him or her in removal proceedings. *See* 8 U.S.C. § 1229a(b)(4)(B).

In addition, Plaintiff Catholic Charities brings two claims of its own. First, it claims that it suffers injury from DHS's alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment." [Am. Compl. ¶¶ 25, 59.] Second, it alleges that DHS "provided nothing" in response to its February 15, 2015, request for documents related to the processing of requests for assessments. [*Id.* ¶ 61.] In fact, DHS did release documents responsive to that request on October 19, 2015, as both Catholic Charities and this Court have already recognized. [*See* ECF Nos. 30-2 at 2; 41 at 11–12.]

### B.    Procedural History

Plaintiffs filed their initial complaint in this case on March 31, 2015 [ECF No. 1], and Defendant answered it on June 22, 2015 [ECF No. 15]. In the meantime, purporting to have filed a class action—something never before allowed in a FOIA case, *see Fainman v. F.B.I.*, 269 F.R.D. 44, 49 (D.D.C. 2010) ("[Plaintiff] has not cited—nor has the Court found—any decision granting certification of a class of FOIA plaintiffs who alleged the improper withholding of information.")—Plaintiffs moved on June 15 for certification of a class consisting of "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA

request for the Assessment of their asylum officer, but were provided no portion of the Assessment." [ECF No. 14 at 20.] Shortly thereafter, on June 24, 2015, Plaintiff Catholic Charities moved for partial summary judgment on its claim alleging that DHS had not timely responded to its request for "[d]ocuments relating to the processing, answering, and responding to FOIA requests for assessments of asylum officers." [ECF No. 17.] Defendant opposed both motions and filed its own motion for summary judgment on July 28, 2015, arguing, among other things, that the assessments sought by the individual Plaintiffs were deliberative materials exempt from disclosure under Exemption 5. [ECF Nos. 22, 23.]

On April 6, 2016, the Court denied the motion for partial summary judgment by Plaintiff Catholic Charities, denied without prejudice Defendant's motion for summary judgment, and held in abeyance Plaintiffs' motion for class certification pending "the resolution of any renewed summary judgment motion." [ECF No. 40.] With respect to the motion by Catholic Charities, the Court noted that, after Catholic Charities filed the motion, Defendant had responded to its FOIA request on October 18, 2015. *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 54 (D.D.C. 2016). Further, the Court held that Catholic Charities' motion failed to address the legal standards applicable to claims for attorney's fees and costs and therefore must be denied in that respect. *Id.* at 55.

As for Defendant's motion, the Court held that it "might be inclined to rule in favor of the defendant here, were it not for two matters of concern." *Id.* at 52. First, the Court stated that the declaration submitted by Defendant in support of its motion "discusses the segregability of the assessments in a categorical fashion, as opposed to providing a description of the assessments prepared in each of the individual plaintiffs' cases." *Id.* The Court therefore concluded that it was

3

"unable to conduct a *de novo* assessment of the agency's determination of segregability as to each of the individual plaintiffs' requests." *Id.*

Second, the Court stated that "the defendant's representation that it conducted a 'line-by-line examination' of each of the assessments to determine whether any portions were reasonably segregable . . . is seemingly undermined by what appears to be the defendant's blanket policy not to release any portion of an assessment, irrespective of its contents." *Id.* While the Court noted that it did "not wish to cast aspersions regarding the veracity of [Defendant's] declaration" and that Defendant "has relied on prior district court opinions upholding its decision not to release any portion of these assessments," it concluded that "the possibility that the defendant now simply refuses to release assessments, as a whole, regardless of their specific contents, and contrary to the representation that each responsive document received a line-by-line review, represents a 'quantum of evidence' that overrides the presumption in favor of the agency's segregability determination." *Id.* The Court therefore ordered Defendant to "submit a revised *Vaughn* index, affidavit, or declaration, that reassesses the issue of segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released." *Id.* at 52.

In compliance with the Court's order, on May 27, 2016, Defendant submitted a supplemental declaration addressing both of the Court's concerns. [ECF No. 44.] Defendant neglected at the time, however, to formally renew its motion for summary judgment, and the Court did not act on Defendant's supplemental declaration alone. Hence, the Court has yet to have the opportunity to consider whether the supplemental declaration cures the issues that precluded the Court from granting Defendant's initial motion for summary judgment.

Shortly after Defendant filed the supplemental declaration, Plaintiff Catholic Charities renewed its motion for partial summary judgment, this time seeking the FOIA Processing Guide referenced in the supplemental declaration. [ECF No. 46.] Two months later, on June 9, 2016, Catholic Charities filed a "motion to compel" seeking the same document. [ECF No. 48.] Defendant opposed the motion to compel [ECF No. 53], but did not lodge a separate docket entry opposing the renewed motion for summary judgment. On February 3, 2017, this Court granted in part and held in abeyance in part Catholic Charities' motion, noting that Defendant had not opposed the motion nor offered any explanation for not furnishing the requested Processing Guide. [ECF No. 58 at 1–2.] The Court held Catholic Charities' request for attorney's fees in abeyance, however, to "give the defendant an opportunity to submit a response, if it chooses, to the amount sought, to ensure that this issue is fully briefed prior to its resolution." [*Id.* at 8.] On February 14, 2017, Defendant moved for reconsideration of that order, noting that Catholic Charities' FOIA request sought only documents specific to processing assessments to refer, not general documents governing the processing of *all* FOIA requests. [ECF No. 65.] That motion is now fully briefed and awaiting the Court's decision.

In the meantime, on January 23, 2017, Plaintiffs sought leave to file an amended complaint making minor grammatical revisions and adding an additional individual named Veronica Carolina Lemus-Miranda, who also sought her assessment to refer. [ECF No. 57.] Defendant filed a response stating that it did not oppose the amendment [ECF No. 59], and the Court allowed it by minute order dated February 7, 2017.

After further review, on March 14, 2017 (and, for Ms. Lemus-Miranda, on June 9, 2017), Defendant released the disputed assessments to refer to the individual plaintiffs with limited factual information unredacted. [SOF ¶ 24.] Following the March 14 release, undersigned counsel

5

conferred with counsel for Plaintiffs who stated that Plaintiffs did not consider their dispute resolved and wished to continue pursuing this litigation. Defendant therefore filed a motion for a briefing schedule to resolve all matters outstanding in this case [ECF No. 74], which the Court adopted by minute order dated April 26, 2017. Defendant now moves for summary judgment.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7–8 (D.D.C. 2008).

## ARGUMENT

Plaintiff Catholic Charities' Ninth Cause of Action for the release of documents about how DHS processes FOIA requests for Assessments to Refer is currently the subject of Defendant's motion for reconsideration, which leaves remaining the eight individual claims for the release of assessments to refer and Catholic Charities' purported "pattern or practice" claim.

The Court should grant Defendant summary judgment on those claims. As for the individual claims for release of the assessments to refer, Defendant has properly withheld certain portions of those documents as deliberative-process privileged under Exemption 5, which is supported by overwhelming authority. Further, Defendant closely reviewed each of the requested assessments to refer for reasonably segregable information, as shown by the supplemental declarations, which address all of the concerns raised by the Court in denying without prejudice

Defendant's first motion for summary judgment. Indeed, after further review and reconsideration, Defendant has released some segregable factual information to Plaintiffs.

Plaintiff Catholic Charities' pattern-or-practice claim also fails. As an initial matter, Catholic Charities lacks standing to bring such a claim because it does not allege a cognizable injury. But in any event, the supplemental Eggleston declaration conclusively shows that Catholic Charities mischaracterizes agency policy, which is to review *all* documents for segregability and to release segregable, nonexempt information.

## I.     Defendant Properly Withheld Deliberative Information under Exemption 5.

Defendant released much of the information requested by the individual Plaintiffs, but it withheld certain parts of their assessments to refer as exempt from disclosure under Exemption 5. The individual Plaintiffs challenge that withholding—and only that withholding—in this case. *See Gatore*, 177 F. Supp. 3d at 51. Defendant, however, was right not to release the information.

FOIA "recognizes limitations that compete with the general interest in disclosure, and that, in appropriate cases, can overcome it." *Nat'l Archive & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "Thus, while 'disclosure, not secrecy, is the dominant objective of FOIA,' there are [nine] exemptions from the statute's broad reach[.]" *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "These exemptions stem from Congress's recognition that the release of certain information may harm legitimate governmental or private interests." *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.

§ 552(b)(5). The exemption shields from release information of the type that would be privileged in the civil-discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Intern. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Here, Defendant withheld portions of the assessments to refer under the deliberative-process privilege. The general purpose of that privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. It does this by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are actually adopted; and (3) protecting against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *see also McKinley v. Bd. of Gov. of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011) (emphasis in original) ("[Congress] determined that disclosure of material that is both predecisional and deliberative does harm [to] an agency's decisionmaking process."); *Coastal States Gas Corp v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative-process privilege protects intra- or inter-agency documents that are "both pre-decisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Information is "predecisional" if it is "antecedent to the adoption of an agency policy." *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*). And it is "deliberative" if it is "a direct part of the deliberative process in that it makes recommendations or expresses opinion on legal or policy matters." *See Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975). This category of documents includes "advisory opinions, recommendations and deliberations

comprising part of the process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

Importantly, Exemption 5 "was intended to protect not only deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (emphasis added). For that reason, even purely factual material is exempt if it reflects an "exercise of discretion and judgment calls." *Mapother*, 3 F.3d at 1539. "Thus the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151; *Vaughn*, 523 F.2d at 1144).

## A. Assessments to Refer Are Covered by the Deliberative-Process Privilege.

There is no question that at least some portion of assessments to refer are covered by the deliberative-process privilege. As this Court has previously recognized, the assessments are "predecisional" in nature because they "predate[] and form[] the basis for [the] decision to deny the plaintiff's asylum application." *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 18–19 (D.D.C. 2013) (Walton, J.). [*See also* SOF ¶¶ 10, 16–23.] They also contain "quintessential deliberative information" in the form of the asylum officer's "analysis of the credibility of the plaintiff's claims and recommendation that she be denied asylum." *Id.* at 19 (citing *Dep't of*

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). [*See also* SOF ¶¶ 10, 16–23.] Following *Anguimate*, several other courts in this district have similarly held that at least some portion of assessments to refer are covered by the deliberative-process privilege and therefore exempt from disclosure. *See Abramyan v. U.S. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 65 (D.D.C. 2013); *Abtew v. U.S. Dep't of Homeland Sec.*, 47 F. Supp. 3d 98, 104 (D.D.C. 2014); *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232, 242–43 (D.D.C. 2015). Indeed, as this Court previously noted, Plaintiffs in this case "do not appear to challenge the applicability of Exception 5; instead, the dispute revolves around whether some portion of the assessments is reasonably segregable from the exempt portions of the documents." *Gatore*, 177 F. Supp. 3d at 51 (citing Pl.'s Compl. ¶ 1, ECF No. 1). Defendant therefore turns to that question.

  **B.**  **Defendant Released All Reasonably Segregable Information.**

  Assessments to refer, including those at issue in this case, typically contain a recitation of material facts that are relevant to and form the basis of the asylum officer's recommendation not to grant asylum. *See Anguimate*, 918 F. Supp. 2d at 18. [*See also* SOF ¶¶ 10, 16–23.] As demonstrated by a document filed by Plaintiff in this case, asylum officers are specifically instructed to exercise judgment when drafting this factual recitation and to include only those facts that are material to the recommendation. Specifically, Plaintiffs submitted a "lesson plan" called "Decision Writing Part I," which counsel for Plaintiffs says he acquired from the USCIS website and that instructs asylum officers about how to write assessments to refer. [*See* Cleveland Decl. ¶ 2 (June 2, 2016) & Attach. A at 1, ECF No. 47-1.] With respect to the background section of the assessments, officers are taught to practice a technique dubbed "Know It But Don't Show It," which is described as follows:

> An important aspect of streamlined writing is that the asylum officer is not required to "show" all the information that he or she is required to "know." This is often referred to as the "know it but don't

> show it" technique. Information that forms the basis of the claim and
> the decision, however, must be "shown."

[*Id.* at ECF page 6.] The Supplemental Eggleston Declaration also notes that, for each plaintiff's assessment to refer, the factual sections therein "reflect a selective recording of information the USCIS asylum officers deemed particularly pertinent to plaintiffs' requests for asylum." [SOF ¶¶ 16–23.] As such, the factual recitation in the assessments constitutes a "selection or organization of facts [that] is part of an agency's deliberative process" and is therefore exempt from disclosure. *See Ancient Coin*, 641 F.3d at 513.

Defendant acknowledges, however, that courts in this district have reached different conclusions about whether any part of the factual portion of an assessment to refer is segregable. Two cases, including one by this Court, have relied on an agency declaration to conclude that the factual portion of the assessments is entirely deliberative because it constitutes a "selective recording of information the asylum officer deemed particularly pertinent to [the p]laintiff's request for asylum." *Anguimate*, 918 F. Supp. 2d at 19 (Walton, J.) (citing *Ancient Coin*, 641 F.3d at 513–14); *see also Abramyan*, 6 F. Supp. 3d at 57 ("Even the factual information in the Assessment to Refer can be considered deliberative, because it is a 'distillation' of the facts, not a 'verbatim transcript.'"). Both of those cases held that the assessments to refer were properly withheld in full. Another case, after conducting an *in camera* review, instructed the agency to review certain factual areas in the assessments where there "may be reasonably segregable material," but also recognized that "courts should give 'considerable deference' to an agency's judgment as to what constitutes 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made.'" *Gosen*, 118 F. Supp. 3d at 244 (quoting *Chem. Mfrs.*, 600 F. Supp. at 118). The *Gosen* court did not explicitly conclude that the factual portions of the assessment were in fact segregable. It left that determination to the agency. Finally, in *Abtew*, the

12

court reviewed an assessment to refer *in camera* and concluded that certain factual paragraphs "do[] not involve the sort of culling of facts from a large universe that could be characterized as deliberative," and ordered that those paragraphs be released. 47 F. Supp. 3d at 114. Notably, however, the court in *Abtew* appears to have made this determination based solely on the face of the assessment itself, and its analysis neither references nor gives deference to any agency declaration stating that the referenced factual portions constitute a "selection or organization of facts [that] is part of an agency's deliberative process." *Ancient Coin*, 641 F.3d at 513.

In its prior opinion denying without prejudice Defendant's motion for summary judgment, this Court reviewed the cases cited above and concluded as follows with respect to segregability:

> In light of the presumption that agencies have complied with the FOIA's obligation to release all reasonably segregable information, *Sussmen*, 494 F.3d at 1117, the Court might be inclined to rule in favor of the defendant here, were it not for two matters of concern. First, the Eggleston Declaration discussed the segregability of the assessments in a categorical fashion as opposed to providing a description of the assessments prepared in each of the individual plaintiffs' cases. *See* Eggleston Decl. ¶¶ 17, 19, 20 (discussing the assessments in general). The Court is therefore unable to conduct a *de novo* assessment of the agency's determination of segregability as to each of the individual plaintiffs' requests. 5 U.S.C. § 552(a)(4)(B) (upon judicial review, "the court shall determine the matter de novo . . . ."). Second, the defendant's representation that it conducted a "line-by-line examination" of each of the assessments to determine whether any portions were reasonably segregable, Eggleston Decl. ¶ 20, is seemingly undermined by what appears to be the defendant's blanket policy not to release any portion of an assessment, irrespective of its contents, *see* Pls.' Suppl. Partial Summ. J. Mem., Ex. A at 1, 2 (indicating that assessments should be withheld in full). To be sure, the Court does not wish to cast aspersions regarding the veracity of the Eggleston Declaration, and the Court recognizes that the defendant has relied upon prior district court opinions upholding its decision not to release any portion of these assessments. However, the Court believes that the possibility that the defendant now simply refuses to release assessments, as a whole, regardless of their specific contents, and contrary to the representation that each responsive document received a line-by-

13

> line review, represents a "quantum of evidence" that overrides the
> presumption in favor of the agency's segregability determination.

*Gatore*, 177 F. Supp. 3d at 52. In light of these observations, the Court ordered Defendant "to submit a revised *Vaughn* index, affidavit, or declaration, that reassesses the issue of segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released." *Id.* at 53.

Defendant has now done precisely that. The Supplemental Eggleston Declaration satisfies the Court's request and cures the two issues that prevented it from granting Defendant summary judgment. First, the supplemental declaration discusses each plaintiff's asylum assessment individually and describes why there is no segregable information. [SOF ¶¶ 16–23.] It notes that each assessment to refer is composed of three sections: an introductory section, an analysis section, and a recommendation. [*Id.*] Each section, to some extent, contains facts; but those facts reflect the agency's deliberative process and are largely exempt from release. More specifically, the introduction section in each of the assessments at issue is "not a verbatim transcript of information provided by [each plaintiff] but reflect[s] a selective recording of information the USCIS asylum officer deemed particularly pertinent to [each plaintiff's] request for asylum and, therefore, focused specifically on select information." [*Id.*] The analysis section of each assessment "only reflects selective information pertinent to [each] asylum officer's deliberative process." [*Id.*] Finally, each conclusion section contains only those facts that are "a direct reflection of the selected information used during the asylum officer's deliberative process to highlight those facts most relevant to the officer's conclusion / recommendation." [*Id.*] The Supplemental Eggleston Declaration specifically notes that the above facts are true of each individual assessment and does not "discuss[]the segregability of the assessments in a categorical fashion." *See Gatore*, 177 F. Supp. 3d at 52. It therefore satisfies the Court's first concern.

Second, the supplemental declaration specifically states that Defendant does *not* have a blanket policy against reviewing assessments to refer for segregable information. [SOF ¶¶ 11–12.] To the contrary, while a table in Defendant's FOIA Processing Guide suggests withholding assessments to refer in full, the Guide also specifically notes that the referenced table (as well as the others) only provides "guidance relating to processing specific and/or commonly used documents" and that such guidance "does not comprehensively cover every scenario and cannot be used as a substitute for thought." [SOF ¶ 11.] Importantly, the Guide goes on to say that "[t]he guidance provided does not mean you must always use all those exemptions, or only those exemptions. *A processor must evaluate the page*." [*Id.* (emphasis added).] Further still, the Supplemental Eggleston Declaration notes that the specific assessments to refer that are the subject of this case were not only reviewed according to that policy in the first instance, but they also received a *second* review during the administrative appeals process, which found that they were properly withheld as deliberative-process materials independent of any policy in the tables of the FOIA Processing Guide. [SOF ¶ 14.]

In addition to supplying the Supplemental Eggleston Declaration addressing the Court's concerns, Defendant has even further reviewed the assessments to refer at issue in this case and has concluded that it could release certain limited biographical information about the applicants contained in the assessment's introductory paragraphs. [SOF ¶ 24.] Thus, Defendant has satisfied its obligation to review each of the assessments to refer for segregable information and to provide such information to Plaintiffs. Defendant should be granted summary judgment.

## II.   Catholic Charities' Policy-or-Practice Claim Fails.

Plaintiff Catholic Charities claims to suffer from Defendant's alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment."

[Am. Compl. ¶¶ 25, 59.] The D.C. Circuit has held that a party may obtain injunctive relief under FOIA where "the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). Here, however, Catholic Charities' claim fails for two reasons. First, it lacks standing to assert it. And second, Defendant has no such policy or practice.

### A.    Catholic Charities Lacks Standing for Prospective Relief.

To assert a policy-or-practice claim, as with any claim, a party must have standing. Catholic Charities does not. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting U.S. Const. art. III, § 2). To satisfy this burden, a plaintiff must establish three elements. First, it must show that it suffered an "injury in fact" that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Second, it must demonstrate "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (internal punctuation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

Moreover, when a plaintiff seeks declaratory or injunctive relief, it "must show [it] is suffering an ongoing injury or faces an immediate threat of [future] injury." *Dearth v. Holder*, 641 F.3d 499, 051 (D.C. Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). And

when a plaintiff challenges a policy or practice of a government agency, it must make a "showing of [a] real or immediate threat that [it] will be wronged again." *Lyons*, 461 U.S. at 103.

Catholic Charities fails to satisfy these standards. It alleges simply that it "has made many FOIA requests for Assessments of asylum applicants in the past, and will continue to do so in the future." [Am. Compl. ¶ 56.] Courts have rejected similar allegations as insufficient to confer standing. For example, in *National Security Counselors v. C.I.A.*, the plaintiffs alleged that they "regularly file FOIA requests with CIA and will continue to do so in the future." 931 F. Supp. 2d 77, 93–94 (D.D.C. 2013). The Court held that such "general statements about a 'regular' course of conduct and an expressed intention to 'continue to do so in the future' do not establish the same concrete likelihood of injury that emanates from allegations of specific, pending FOIA requests that are likely to be subject to an agency's challenged policies." *Id.* at 94. Similarly, in *Tipograph v. Department of Justice*, the plaintiff was a criminal-defense attorney that used FOIA requests as part of her legal strategy when representing clients. 146 F. Supp. 3d 169, 175 (D.D.C. 2015). She showed that she had filed "dozens" of requests over the past four decades and that she "will continue submitting FOIA requests to the FBI for records relating to [her] current and future clients." *Id.* The court found this insufficient to confer standing and awarded summary judgment to the defendant. Catholic Charities' allegations match those rejected in *National Security Counselors* and *Tipograph*—almost word for word. They too should be rejected and summary judgment awarded to Defendant.

**B.     Defendant's Policy Is to Review Assessments for Segregability.**

Even if Catholic Charities did have standing to bring its policy-or-practice claim, it would fail on the merits because the record shows that Defendant has a policy of reviewing assessments to refer for segregable information, contrary to Plaintiffs' allegation. [*See* Am. Compl. ¶¶ 25, 59.]

17

As noted above, the Supplemental Eggleston Declaration shows that Defendant does not have a blanket policy against reviewing assessments for segregable information. To the contrary, the FOIA Processing Guide specifically *requires* that every page of any document potentially responsive to a FOIA request must be independently reviewed for segregable information. [SOF ¶¶ 11–12.] Indeed, that is precisely what Defendant did for the assessments at issue in this case. [SOF ¶¶ 13–14.] Accordingly, Plaintiffs' policy-or-practice claim is disproven and Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant.

Dated: June 9, 2017

Respectfully Submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
    JOHNNY H. WALKER, D.C. Bar # 991325
    Assistant United States Attorney
    555 4th Street, N.W.
    Washington, District of Columbia 20530
    Telephone: 202 252 2575
    Email: johnny.walker@usdoj.gov

*Counsel for Defendant*