**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICA GATORE, et al.,

Plaintiffs

v.                                   Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' OPPOSITION TO THE DHS RENEWED MOTION
## FOR SUMMARY JUDGMENT

The DHS filed a Renewed Motion for Summary Judgment [ECF # 77].  Plaintiffs now file this Opposition.

### INTRODUCTION

Ms. Jill A. Eggleston became the director of a FOIA Unit in defendant DHS years ago, and soon began issuing boilerplate letters stating that nothing could be segregated out of an asylum officer Assessment.  She wrote one as recently as June 3, 2017.  Numerous written instructions to FOIA employees tell them again and again to "Withhold in full." Ms. Eggleston has filed multiple declarations, stating that "nothing can be segregated," that there was a second review, which was "independent," and after these "two levels of review," nothing can be segregated.

Except, portions can be segregated.

 Portions were segregated and released to plaintiffs in March and June 2017.

In other words, plaintiffs have already partially prevailed in this case. The DHS renewed motion for summary judgment should be denied promptly.

PLAINTIFFS SEEK CLASS CERTIFICATION AND FURTHER DISCLOSURES FROM THE ASSESSMENTS

Plaintiffs have filed a motion for class certification, ECF #15, and urge the Court to make a ruling.

Plaintiffs believe that the first three parts of an assessment are biography, basis of claim, and testimony. This is what the asylum officer lesson plan says, as alleged in ¶ 3b of the Amended Complaint. Plaintiffs believe that these three parts are 100% segregable and should be released in full. The DHS has not explained why these parts should not be released. Plaintiffs are pleased that the DHS has released the first few sentences of the assessments; however, Plaintiffs believe that the first several paragraphs should be released.

## BACKGROUND

### A.  Plaintiffs' Claims

Eight of the plaintiffs are asylum applicants who requested their assessments, but were told by DHS that the documents must be "withheld in full." As correctly stated by DHS in its Renewed Motion for Summary Judgment, ECF #77-2, at page 8 of 24, "Plaintiffs contend that assessments to refer are sometimes introduced during immigration court proceedings and that their FOIA requests will serve the important purpose of 'avoiding surprise and ambush in the immigration court.'" These plaintiffs agree with Judge Jackson that factual portions of assessments are "easily" segregable.  The DHS apparently also partially agrees, since it disclosed some of the facts to each plaintiff in March and June 2017.

In the Eight Cause of Action, plaintiff Catholic Charities alleges that it is being injured in its attempts to assist asylum applicants, because the DHS is violating the Freedom of Information Act.

The Court ruled in favor of Catholic Charities, on the Ninth Cause of Action, in ECF # 58. Still pending is a request for fees and costs.

## B. Procedural history

Plaintiffs filed their complaint in March 2015, alleging that since 2009, the DHS refused to disclose any of the facts from any assessment. Plaintiffs moved for class certification in June 2015 [ECF #15]. In April 2016, the Court issued an Order, published at 177 F. Supp. 3d 46. The Court criticized the declaration of Ms. Eggleston, but gave her a second chance. The Court ruled in favor of Catholic Charities on its Ninth Cause of Action in February 2017 [ECF #58].

On March 14, 2017, the DHS released some of the facts from the assessments of the first seven plaintiffs. *See* ECF # 73-1. On June 9, 2017, the DHS released some of the facts from the assessment of plaintiff Ms. Lemus-Miranda. *See* Attachment C, of Exhibit 1, attached hereto.

## THE STANDARD FOR SUMMARY JUDGMENT

In assessing a motion for summary judgment, the court "analyzes all underlying facts and inferences in the light most favorable to the FOIA requester, even where the requester has moved for summary judgment. *See Public Citizen Health Research v. FDA,* 185 F.3d 898, 904-05 (D.C.Cir. 1999)." *Calderon v. U.S. Dep't of Agriculture,* 2017 WL 680367, *5 (D.D.C. 2017)

### Summary Judgment in FOIA cases

The requester in a FOIA case is at a distinct disadvantage: he does not have the document. How can the requester rebut the declaration of the agency employee? The requester is somewhat "helpless to counter agency claims that there is no non-exempt and reasonably segregable material within a withheld document." *Mead Data Central v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir. 1977). The Court should bear this reality in mind as it

considers the arguments of the DHS.  The agency holds the document in its hand: it can look at it

and describe it exactly and fully.

There is a "strong presumption in favor of disclosure." *Dep't of State v. Ray,* 502 U.S.

164, 173 (1991).  All exemptions to disclosure "must be narrowly construed." *FBI v. Abramson,*

465 U.S. 615, 630 (1982). The Court "imposes a substantial burden on an agency seeking to

avoid disclosure through the FOIA exemptions." *Vaughn v. Rosen,* 484 F.2d 820, 828 (D.C.Cir.

1973).

**In most cases, factual summaries should be disclosed**

In *Playboy Enterprises v. Dep't of Justice,* 677 F.2d 931, 935 (D.C.Cir. 1982)*,* at issue was a

report about an FBI agent who had infiltrated the Ku Klux Klan. The agency argued that the

report reflected the "choice, weighing and analysis of facts," so that therefore, nothing could be

segregated.  The Court disagreed, stating:

> We are not persuaded by the Department's argument. Anyone making a report must of
> necessity select the facts to be mentioned in it; but a report does not become a part of the
> deliberative process merely because it contains only those facts which the person making the
> report thinks material. If this were not so, every factual report would be protected as a part of
> the deliberative process.

In *ITT Communications v. FCC,* 699 F.2d 1219, 1238 (D.C.Cir. 1983) the Court

noted that "factual material usually is not exempt from disclosure."  Quoting from *Playboy,*

the Court ruled: "Anyone making a report must of necessity select the facts to be mentioned

in it." *Id.* In controversy in *ITT Communications* were notes taken by FCC attorneys.

Because there was "no evidence that the notes were evaluative in nature rather than

straightforward factual narrations," they were held not exempt.  To rule otherwise "would

result in a huge mass of [factual] materials being forever screened from public view."

(quoting from *Vaugh v. Rosen,* 523 F.2d at 1145-46).  ITT *Communications,* 699 F.2d at

1239.

Therefore, as stated in *Paisley v. CIA,* 712 F.2d 686, 700 (D.C.Cir. 1983)

while it is true that at times the selection of facts could reveal the deliberative process, "this

exception cannot be read so broadly as to undermine the basic rule; in most situations factual

summaries prepared for informational purposes will not reveal deliberative processes and

hence should be disclosed."  There are exceptions to this rule. At times, a court will approve

of the withholding of facts, if they are culled from a "vast number of documents." *Ancient*

*Coin Collector Guild v. Dep't of State,* 641 F.3d 504, 513 (D.C.Cir. 2011) (quoting from

*Mapother v. Dep't of Justice,* 3 F.3d 1530, 1539 (D.C.Cir. 1993).  In the instant case, the

facts come directly from the asylum applicant; the facts are not from a "vast number

of documents."

## SUMMARY OF ARGUMENT

The DHS motion for summary judgment should be denied, because the DHS has now

admitted, and demonstrated, that it can segregate some facts out of assessments. While plaintiffs

are pleased that DHS released some facts, the plaintiffs want more. The agency has not

demonstrated why all of the facts cannot be disclosed.  Ms. Eggleston is inconsistent, and has

changed her position without explanation. The Eighth Cause of Action, where Catholic Charities

alleges a pattern and practice of FOIA violations, is well-taken because Catholic Charities has in

the past, is presently, and shall continue to make FOIA requests for asylum applicants.

## 1. THE DHS DID NOT PROPERLY WITHHOLD FACTS FROM ASSESSMENTS

The DHS argues, ECF #77-2, at page 14 of 24, that it "properly withheld

deliberative information under Exemption 5."  The DHS states "it withheld certain parts of their

assessments…."  Unstated is what happened on March 14, 2017: the DHS *released* parts of the

assessments.  The DHS nowhere explains this event: for years, the DHS told requesters that

> In our review of these pages, we have determined that they contain no reasonably
> segregable portion(s) of non-exempt information.

Now, suddenly, the DHS has discovered it was wrong for all this time. If the DHS can disclose

some facts in 2017 for the plaintiffs in this case, the DHS should have done so years ago, when

each plaintiff made his FOIA request. If the DHS can disclose some facts in 2017, then it should

do so for each of the members of the class: all requesters from March 2009 to the present.

The DHS memorandum suggested that disclosure of information "may harm legitimate

governmental…interests." ECF #77-2, at page 14 of 24.  The DHS suggested that it is important

to "prevent injury" to the agency. *Id.* at page 15 of 24.  Ms. Eggleston, however, does not know

about this. In all her many declarations, she never mentions "harm" or "injury."  There is no

evidence of record that disclosure of facts from assessments will harm anyone. The DHS has

been disclosing facts from assessments for years, to impeach asylum applicants. Someone who is

ambushed in court suffers real harm; an asylum officer whose assessment is revealed months or

years later is oblivious to that event and suffers nothing. The asylum officer knows his

assessment may be disclosed in open court. He has no expectation of privacy. *See* ¶ 3a of the

Amended Complaint, which quotes from an asylum officer lesson plan that advises the officer

that judges may read the assessment. *See* Plaintiffs' Statement of Genuine Issues and Statement

of Material Facts that are Necessary to be Litigated, ¶¶ 1-8.

**A.  Some portions of assessments are NOT covered by a privilege.**

The DHS argues, ECF #77-2, at page 16 of 24 that "There is no question that at least some portion of assessments to refer are covered by the deliberative process privilege."  This argument is repeated at page 17 of 24: "…several other courts in this district have similarly held that at least some portion of assessments to refer are [exempt]…."  Unstated, but implicit in this argument, is that while some portions are exempt, some are *not.*  The DHS has now conceded that it was wrong when it said dozens of times in its letters:

> In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.

The DHS has now conceded that Ms. Eggleston was wrong when she said under oath that nothing can be segregated.

**B.  The DHS has still not released all reasonably segregable information.**

At page 17 of 24, ECF #77-2, the DHS argues it "released all reasonably segregable information."  The DHS cites *Abramyan v. US DHS,* 6 F. Supp. 3d 57 (D.D.C. 2013) which held that nothing can be segregated out of assessments, and that nothing can be segregated out of the notes. However, the DHS has changed its position about notes, and no longer claims that asylum officer notes are exempt. *See Martins v. U.S. CIS,* 962 F.Supp. 2d 1106 (N.D. Calif. July 3, 2013) and 2013 WL 8284498 (Settlement Agreement dated November 19, 2013).  Notes are nothing but "selected facts," deemed "pertinent" by the note-taker. They are culled from the larger universe of what the applicant testified to.

If facts in notes are not exempt, then neither are the same facts in assessments.

Courts which relied only on declarations from Ms. Eggleston acquiesced in her conclusion that nothing can be segregated. However, courts which conducted *in camera* inspections found that lo and behold: parts can indeed be segregated and disclosed.  The Court in

*Abtew v. US DHS,* 47 F. Supp. 3d 98, 113 (D.D.C. 2014) found, after an *in camera* inspection, that several paragraphs were "easily" segregable. The Court in *Gosen v. US CIS,* 118 F. Supp. 3d 232, 242 (D.D.C. 2016) found after an *in camera* inspection that "a chronological list of what the applicant testified" was disclosable. Shortly after the *Gosen* decision, the agency stated that it could release part of an assessment. *See* ECF #29-1.

As of June 2017, the DHS has released parts of nine assessments: eight in this case, and one in *Gosen.* If the *Abramyan* Court were informed as to these events, it would alter its decision.

"If a person requests particular factual matter… agency will usually be able to excise the matter from the draft document and disguise the material's source, and thus the agency will usually be able to release the material without disclosing any deliberative process." *Dudman Communications v. Dep't of Air Force,* 815 F.2d 1565, 1569 (D.C. Cir. 1987). The DHS has not explained why this rule does not apply here.

In *Judicial Watch v. U.S. Dep't of State,* 2017 WL 456417 (D.D.C. 2017) (RC), the Court held that parts of emails connected with Hillary Clinton were segregable. The Court noted that the agency's "conclusory argument that, at times, factual matter can reveal an agency's deliberative process does not show that would in this case." *Id.* at *10. In that case, the requester was seeking "only certain raw factual information that the State Department deliberated upon." "Taken to its logical extreme, State's argument would justify the shielding of all factual material that is the subject of deliberation by agency officials." *Id.*

Judicial Watch sued the State Department again over emails and reports concerned with Benghazi, Libya. In *Judicial Watch v. US Dep't of State,* 2017 WL 1078544 (D.D.C. 2017) (ABJ) in controversy were two emails, "which were summaries of calls between the President of

the United States and the Presidents of Libya and Egypt. *Id.* at \*7. The State Department argued that the emails contained a "selection of facts chosen for the purpose of advising high-level State officials…." [quoting from Stein Decl. ¶ 58]. The Court ruled against the State Department: "The case law does not support defendant's argument that the mere selection of facts to be incorporated in a summary is enough in and of itself to satisfy the requirement that it be deliberative." *Id.* at \*8. The emails "simply summarize telephone calls."

The Court ruled against the State Department because: "The agency has not articulated any principle that would justify withholding here that would not also justify the withholding of all factual summaries prepared in the ordinary course of agency business." *Id.*

If summaries of conversations between presidents of countries is not exempt, then neither is a summary of what an asylum applicant told his officer.

WHICH DECLARATION OF JILL EGGLESTON IS DEFINITIVE?

The DHS argues that "the supplemental Eggleston Declaration satisfies the Court's request." ECF #77-2, at page 20 of 24. Ms. Eggleston has written many declarations; the DHS does not give a date or ECF #. The DHS argues that "the supplemental declaration discusses each plaintiffs' asylum assessment individually and describes why there is *no* segregable information. [SOF ¶¶ 16-23.]" [emphasis supplied] But, there *is* such information.

On March 14, 2017, the DHS released parts of the assessments for each plaintiff. ECF #73-1. Ms. Eggleston wrote a declaration dated May 25, 2017, ECF # 77-3, where she states, at lines 30-31, that factual portions from the assessments could be released. Is this the "supplemental" declaration that DHS refers to, in its Renewed Motion for Summary Judgment? Probably not. The DHS is probably referring to the May 2016 declaration found at ECF #44-1. Why does the DHS direct the Court to read a declaration which says there is no segregable

information, when in the record there is a more recent declaration that says there *is* segregable information?

The DHS references "SOF ¶¶16-23" in its Memorandum. Assuming this means ECF #77-1, if we look at page 6 of 11 of that document, there is a reference to an Eggleston Declaration, ECF #44-1.

ECF #44-1 is indeed a declaration from Ms. Eggleston, dated May 25, 2016, that is 12 pages long. In that declaration, she refers to a staff instruction that "does state assessments to refer are withheld in full," but claims that plaintiff "misconstrues" it. *See* page 2 of 12. She also states, at page 3 of 12 that the factual portions were "properly withheld" and "cannot be severed." At line 113 on page 4 of 12, she states it "cannot be severed."  At line 132 of the same page, Ms. Eggleston describes the assessment of Ms. Gatore as having three sections, the first of which is an introduction.  The introduction contains "a selective recording of information the USCIS asylum officer deemed particularly pertinent…." [lines 134-35]. Then, at line 152, she repeats that the facts "cannot be severed…"

On the next page, at lines 163-64, Ms. Eggleston states the agency "did not find any reasonably segregable information to release." [at page 5 of 12].

The DHS filed its Renewed Motion for Summary Judgment, ECF # 77, in June 2017.  In it, the DHS refers to a declaration written in 2016. That declaration says, several times, that nothing can be segregated.  But, portions *can* be segregated!  Portions were released in March 2017. Ms. Eggleston wrote a declaration in May 2017 that says some facts *could* be released. Why does the DHS direct the Court's attention to a declaration from 2016, when a current 2017 declaration is available?

What happened to cause Ms. Eggleston to change her thinking, which enabled her to segregate some facts? Why doesn't she explain this change? If she is now able, in 2017, to segregate, shouldn't she withdraw from her earlier declarations?  Shouldn't the DHS re-open the *Abramyan* case and give that requester part of her assessment?

In 2017, under oath, Ms. Eggleston told the Court that some facts can be segregated. Why then, does she continue to write letters to requesters in 2017 that contain the 19 words which say nothing can be segregated? For a June 3, 2017 letter, with the 19 words, *see* Attachment B to Exhibit 1, attached hereto.

FOIA PROCESSORS ARE TOLD REPEATEDLY TO WITHHOLID IN FULL.

Ms. Eggleston does not mention pages 5 and 6 of ECF #32, which both instruct FOIA processors to "withhold in full" assessments.  Page 7 of ECF #32 instructs processors to only "partially" withhold worksheets. *See* "Plaintiffs' Statement of Genuine Issues and Statement of Material Facts that are Necessary to be Litigated" at ¶ 9. Nor does Ms. Eggleston mention the instructions released to Professor Stevens: 4,321 pages released in October 2016. *Id.* at ¶ 10. In those pages, the processors are instructed five times to "withhold in full" assessments. *Id.*  in the 4,321 pages, the word "segregate" appears nowhere. *Id.* The word "segregable" appears only once, on page 3939, where it appears in a 19-word sentence:

> In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.

*Id.*

In *State of Washington v. Trump,* 847 F.3d 1151, 1166 (9th Cir. 2017), the Court noted the "shifting interpretations" of an Executive Order, and suggested that therefore the current interpretation was not trustworthy. In the instant case, Ms. Eggleston's shifts, without

explanation, do not inspire confidence. An agency that does not explain and is inconsistent, is one that acts arbitrarily, and it not entitled to respect. *D&F Afonso Realty v. Garvey,* 216 F.3d 1191, 1195 (D.C.Cir. 2000) ("Based on the FAA's explanation, or lack thereof, in the issuance of this hazard determination, we conclude that the FAA acted arbitrarily by issuing a hazard determination inconsistent with established standards. Thus, we hold that the FAA exceeded the permissible bounds of agency action."). *Accord: Global Tel*Link v. Federal Communications Commission,* ___ F.3d ___, 2017 WL 2540899, *5 (D.C.Cir. 2017) (where the explanation of an agency "lacks any coherence," a court owes no deference [citations and quotations omitted]).

1.  *Ms. Eggleston merely repeats language from a New York judge.*

Ms. Eggleston states in her May 2016 declaration [ECF #44-1, at page 4 of 12]:

> The factual distillation in the assessments to refer do[sic] not purport to be a verbatim transcript of the Plaintiff's asylum interview. Rather, it reflects a selective recording of information the USCIS asylum officer deemed particularly pertinent to plaintiff's request for asylum. As such, the assessment to refer contains factual matter that cannot be severed from its context and is exempt from disclosure pursuant to Exemption 5 of the FOIA.

This same paragraph is also found in her July 2015 declaration [ECF #23-1, at page 8 of 9.

This paragraph is almost identical to what a New York court stated in *Phillips v. Immigration and Customs Enforcement,* 385 F. Supp. 2d 96, 303 (S.D.N.Y. 2005):

> The asylum interview notes in the present case do not purport to be a verbatim transcript. Rather they appear to reflect a selective recording of information particularly pertinent to Garcia's request for asylum. As such, they "contain factual matter that can[not] be severed from its context" and are exempt from disclosure.

An agency should not parrot language from a judge. An agency should give individualized attention to the request of the FOIA requester.

"The case law does not support defendant's argument that the mere selection of facts to be incorporated in a summary is enough in and of itself to satisfy the requirement that it be deliberative." *Judicial Watch v. U.S. Dep't of State,* 2017 WL 1078544, *8 (D.D.C. 2017) (summaries of telephone calls between the President of the United States and the Presidents of Libya and Egypt were not exempt).   "The agency has not articulated any principle that would justify withholding here that would not also justify the withholding of all factual summaries prepared in the ordinary course of agency business." *Id.*   Moreover, it cannot be said that disclosure of these records would "so expose the deliberative process" that the exemption should apply. *See Mead Data Cent.*, 566 F.2d at 256. The records do not emphasize, comment upon, or characterize events or facts; they simply summarize telephone calls and pass information on to State Department officials, without any indication [that it was related to a particular decision]."

In *EPA v. Mink,* 93 S.Ct. 827, 838 (1973), the Court noted that it would be error "to embrace an equally wooden exemption permitting the withholding of factual material otherwise available on discovery merely because it was placed in a memorandum with matters of law, policy, or opinion." Courts should employ a "flexible, common-sense approach" that allows the release and discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents." *Id.*   The Fourth Circuit stated: "With few exceptions, purely factual materials are not protected by the deliberative process privilege." *Hennessey v. U.S. AID,* 121 F.3d 698 (4th Cir. 1997) (Table decision at *4).

Ms. Gatore and the other plaintiffs do not have the Assessment; Ms. Eggleston does. Ms. Gatore is at a great disadvantage: she is somewhat "helpless to counter agency claims that there is no non-exempt and reasonably segregable material within [the Assessment]. *Mead Data*

*Central v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). To redress this imbalance, the agency must provide a "detailed justification" of its claims. *Id.* at 261. The agency must disclose "as much information as possible without thwarting the exemption's purpose." *King v. Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir. 1987). The Court in *Defenders of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83 (D.D.C. 2009) quoted the duty to disclose "as much as possible" three times. *Id.* at 88 and 90.

The duty of an agency to segregate portions of a document is important. The D.C. Circuit recently expanded the duty to segregate, in *National Association of Criminal Defense Lawyers v. U.S. Dep't of Justice Executive Office,* 844 F.3d 246 (D.C. Cir. 2016), which involved a manual [the "Blue Book"] containing advice for prosecutors about conducting discovery.  The Court held it to be exempt as "attorney work product."  The Court further noted that where a record is "work product," there is case law suggesting that no segregability is required. *Id.* at 256. However, the Court remanded the case, directing the lower court to "examine each section to determine if it might be amenable to segregation and disclosure." *Id.* at 257.

In *100Reporters LLC v. U.S. Dep't of Justice,* 2017 WL 1229709, *35 (D.D.C. 2017) (RC) the agency proffered a declaration from Ms. Moberly, who asserted that she "reviewed each page of the material deemed responsive ... to determine whether there was any non-exempt information that could be reasonably segregated and released." Moberly Decl. ¶ 37. Ms. Moberly states that "some factual information" is being withheld under the deliberative process privilege because it is "inextricably intertwined with core deliberative material" and, "[m]oreover, the factual material reflects the Monitor's efforts to distill material facts from a much larger body of information, which was itself a deliberative act." Moberly Decl. ¶ 38."  The

Court ruled this was insufficient to justify withholdings pursuant to the deliberative process privilege. *Id.* at \*37.

In *Borda v. U.S. Dep't of Justice, Criminal Division,* 2017 WL 1166297, \*7 (D.D.C. 2017) the agency declaration asserted that the "withheld records ... are not segregable without revealing the protected information" and that "no meaningful portion ... could be released without triggering foreseeable harm to one or more of the interests protected by" the FOIA exemptions it invokes. The Court held that these "conclusory statements" were insufficient. *Id.*

   2.   *An agency must "prove" that nothing can be segregated*

The Declarations of Ms. Eggleston are similar to those in other cases, where courts ruled they were insufficient:

An agency must "prove there is no reasonably segregable material in the withheld documents…" *STS Energy Partners v. F.E.R.C.,* 82 F. Supp. 3d 323, 330 (D.D.C. 2015). In that case, the agency declaration stated at ¶ 13 that "[f]actual portions of the withheld documents are inextricably intertwined with the deliberative matter…[t]here is no additional segregable factual information that could be released without revealing protected information." *Id.* at 337.  The Court ruled that this Declaration was "without any real detail," and that it was inadequate because it was "wholly conclusory (that is to say, they come with no additional detail or factual support.)" *Id.*

Ms. Eggleston says that the facts "cannot be severed from its context." But why not? Merely stating a conclusion is insufficient. "The government's current *ipse dixit* that it is not able to segregate any of the nonexempt legal analyses in the semiannual reports from exempt information, *see* 3d Bradley Decl. ¶ 9, without more, is manifestly insufficient to satisfy the government's obligation to demonstrate that this is so." *EPIC v. DOJ,* 2016 WL 447426, note 4

(D.D.C. 2016). *See also General Electric v. Joiner,* 118 S. Ct. 512, 519 (1997) (a court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

AGENCIES FREQUENTLY CLAIM THAT DOCUMENTS HAVE NO SEGREGABLE PARTS; YET UPON EXAMINATION, LARGE PORTIONS ARE FOUND TO BE EASILY SEGREGABLE.

In *Pub. Empls. for Envtl. Responsibility v. EPA,* 926 F. Supp. 2d, 48, 59 (D.D.C. 2013), the agency claimed a report was entirely exempt. However, the Court found that the first three sections of the document were not protected by Exemption 5 because they represent 'purely factual material' that can be severed 'without compromising' the rest of the report." (quoting from *Playboy Enters.*, 677 F.2d at 935).

In *Trentadue v. Integrity Committee,* 501 F.3d 1215, 1231 (10th Cir. 2007), a federal prisoner was found hanging his cell. There was an investigation by the FBI. There was a review of the investigation by Ken Fine.  The agency argued that all of Mr. Fine's report was exempt. However, upon examination, it was determined that the first seven pages of the report were almost entirely unprotected; it was "purely factual content."

THE DHS HAS DISCLOSED ENTIRE ASSESSMENTS FOR THE PAST TWENTY YEARS

The DHS has admitted that "for the past 20 years, defendant has been providing immigration judges copies of entire assessments, from time to time." ¶ 32 of Amended Complaint; ¶ 32 of Answer. It is not fair for an agency to resist disclosure of a document in FOIA litigation, and then ambush the applicant with that same document in immigration court.

The D.C. Circuit ruled against an agency which had earlier released documents, but then stated it would suffer harm if such documents were released. In *Army Times Publishing Co. v.*

*Dep't of Air Force,* 998 F.2d 1067, 1070 (D.C.Cir. 1993) (the Air Force proffered a "conclusory assertion" of harm, which is "interesting, given that the Air Force on its own initiative, selectively releases aggregate survey results to the public from time to time.).

### C. The DHS is grossly inconsistent in its rationales.

In ECF #77-2, the DHS presents confusing and inconsistent statements at Pages 20-21. At line 7, the DHS refers to a declaration that "describes why there is *no* segregable information." [emphasis added]. At line 11, however, the declaration says the facts are "largely" exempt. Why doesn't it say the facts are entirely exempt? Some facts are segregable, or is it that none are?

On page 22, the DHS admits to the existence of a table which "suggests withholding in full," but then DHS suggests the table does not mean that. The DHS does not explain how the average FOIA processor would interpret the table which says, concerning assessments, "withhold in full."   The DHS then says a *second* review was done [emphasis in original], which resulted in no part of the assessments being released.  But then, abruptly and without explanation, the DHS did release portions of the assessment. One wonders who did the "second" review, and if they know that Ms. Eggleston has overruled them.

At page 20, the DHS argues that an assessment has three parts: introductory, analysis, and a recommendation.  The DHS describes the "introductory" section and the "analysis" in almost the same way: the introduction section "reflects a selective recording of information" that is "particularly pertinent;" the analysis section "only reflects selective information pertinent to [the officer].  So, both of these sections contain facts that were "selected" and which are "pertinent."

The DHS released some facts from the introduction section on March 14, 2017.  By what criteria?  Why some, and not others?  Why weren't all the facts released? Why weren't some facts also released from the analysis section?

Plaintiffs alleged in their Amended Complaint, ECF #60, ¶ 3b as follows:

3b. Said lesson plan states at page 8 that the first three parts of an assessment shall be "biographic/entry information;" "basis of claim;" and "testimony." The fourth part is "credibility determination."  The lesson plan provides an example of "testimony" at page 9-10. In this example, the asylum officer writes several sentences, all of them facts, according to the applicant." [*see* pages 7 and 8, of ECF #47-1].

The Agency does not claim the lesson plan is out of date, or that officers do not follow it. The Court should rule that all of the assessment, up to "credibility" should be released.

## II.     THE EIGHTH CAUSE OF ACTION ASSERTED BY CATHOLIC CHARITIES IS SUPPORTED BY EVDENCE AND LAW

The Eighth Cause of Action states that Plaintiff Catholic Charities is an organization that helps asylum applicants, and that *it* is being injured. The DHS argues that "Catholic Charities' Policy-or-Practice Claim Fails," ECF #77-2, at page 21 of 24.

¶ 56 of the Amended Complaint, ECF #60, states that Catholic Charities "has made many FOIA requests for Assessments of asylum applicants in the past, and will continue to do so in the future." ¶ 57 states that Catholic Charities "conducts trainings and seminars" for lawyers, and that lawyers from the organization speak at conferences and write articles.  ¶ 58 states that the organization "wants to monitor" the work of asylum officers, "to ensure that the officers are doing their job properly." The organization wants to assist Congress and "preserve the integrity of immigration court and asylum office proceedings." But, the organization is being "injured" and thwarted in achieving its goals, states ¶ 59 of the Amended Complaint.  The organization "relies heavily and frequently on FOIA to conduct work that is essential to the performance of certain of their primary institutional goals." *Id.*

The D.C. Circuit has stated that a policy-or-practice claim is viable so long as there is evidence of such a policy or practice, "and not merely isolated mistakes by agency officials." *Payne Enters. v. United States,* 837 F.2d 486, 491 (D.C.Cir. 1988). Here there is evidence of years of boilerplate letters being issued, falsely stating that "nothing can be segregated."

Catholic Charities has a long track record of assisting asylum applicants, and it will continue to do so. It is similar to the plaintiff in *Newport Aeronautical Sales v. Dep't of the Air Force,* 684 F.3d 160, 164 (D.C. Cir. 2012). In that case, the plaintiff was a commercial library that collected and sold information. It was deemed to have standing due to its "continual requesting and receiving documents."

**A. Catholic Charities has standing because it is suffering ongoing injury.**

The DHS argues that "Catholic Charities Lacks Standing For Prospective Relief," at page 22 of 24, ECF #77-2. However, the DHS overlooks these facts: a] Ms. Eggleston continues to send letters in 2017 that contain the 19 words which say nothing can be segregated; and b] FOIA processors at DHS are still instructed in writing, to withhold assessments "in full." The DHS has not claimed to have revoked or re-written these instructions. Employees at DHS presumably shall continue to withhold "in full" until a Court orders them to stop.

The DHS has also overlooked the fact that Catholic Charities has been filing FOIA requests for decades. It has several FOIA requests pending. As of June 2015, it had 40 requests pending. ECF #15-1. As of April 13, 2017, it had 61 requests pending. ECF# 73-2.

In *National Security Counselors v. C.I.A.,* 898 F. Supp. 2d 233 (D.D.C. 2012), plaintiff National Security Counselors had 15 outstanding FOIA requests. It was deemed to have standing. In another case with the same parties, *National Security Counselors v. C.I.A.,* 931 F.

Supp. 2d 77 (D.D.C. 2013), plaintiff National Security Counselors had no request pending; so, it

lacked standing.

Catholic Charities has outstanding FOIA requests, seeking assessments. It therefore has

standing.

**B.  The DHS has a policy of releasing nothing from assessments,
    unless a Court forces it to.**

The DHS argues it has a policy of "reviewing" assessments for

segregability. ECF #77-2, at page 23 of 24. Requesters do not care if "review" is done;

requesters want compliance with the FOIA. ¶ 14 of the Amended Complaint, ECF #60, states

that "Defendant has a policy and practice of never providing any part of an Assessment to a

FOIA requester. This policy is uniform. It is a blanket policy. There is a probability that this

illegal conduct will recur in the future."

The DHS has provided no evidence to refute these allegations from

the Amended Complaint:

¶ 12: "During the past six years, more than 100 asylum applicants have made a

FOIA request for their assessment. The defendant has not provided even one assessment

in response."

¶¶ 16-18: Ms. Eggleston wrote 25 letters, all of which have the same 19 words as

the fifth sentence:

In our review of these pages, we have determined that they contain no reasonably
segregable portion(s) of non-exempt information.

Those 19 words appear in a June 2017 letter from Ms. Eggleston. *See*

Attachment B to Exhibit 1, attached hereto.

CONCLUSION

After years of claiming that nothing can be segregated, the DHS now has admitted that plaintiffs are correct. The DHS renewed motion for summary judgement should be denied.

"At all times, courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." *Center for Responsibility and Ethics in Washington v. U.S. Dep't of Justice,* 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *ACLU v. U.S. Dep't of Justice,* 655 F.3d 1,15 (D.C.Cir. 2011). The DHS has not overcome this presumption.

"A sincere policy of maximum disclosure would truncate many of the disputes that are considered by this court." *Vaughn v. Rosen,* 484 F.2d 820, 828 (D.C.Cir. 1973). The DHS does not have such a policy; its policy is one of minimum effort to comply with FOIA requirements. The DHS Motion for Summary Judgment should be denied.

June 21, 2017

      Respectfully submitted,

      Attorney for Plaintiffs

      David L. Cleveland
      DC Bar # 424209
      Catholic Charities
      924 G Street, NW  Washington, DC 20001
      [202] 772-4345 Fax: [202] 386-7032
      1949.david@gmail.com