UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                           Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

### PLAINTIFFS' STATEMENT OF GENUINE ISSUES AND STATEMENT OF MATERIAL FACTS THAT ARE NECESSARY TO BE LITIGATED

The Plaintiffs submit the following separate statement of issues and facts:

### The nature and use of assessments

1. As stated in the Amended Complaint, ECF #60, at ¶ 2: "The asylum applicant is interviewed by an asylum officer, who then writes an Assessment. When the applicant has a hearing in immigration court, the DHS at times will use the entire assessment as evidence against the applicant. *Ido v. U.S. Att'y Gen.,* 480 Fed. Appx. 972 (11th Cir. 2012).  Assessments may contain mistakes or citation to unreliable sources; therefore, the applicant needs to read it before his immigration court hearing, so that he may gather evidence to rebut it. The applicant seeks to avoid surprise and ambush in the immigration court. "

The DHS filed an Answer, ECF #72.  At ¶2 thereof, the DHS states "The allegation contained in this paragraph are characterizations and legal conclusions of the pleader to which no response is required. To the extent that a further response is required, Defendant denies said paragraph."

2. The Amended Complaint states at ¶ 32: "For the past 20 years, defendant has been providing immigration judges copies of *entire* assessments, from time to time." [emphasis in original]. The DHS admitted this fact. ECF #72, ¶32.

¶ 33 of the Amended Complaint states: "For the past 20 years, defendant has argued to immigration courts and to federal appellate courts that *entire* assessments should be considered by the court, because an assessment is a reliable and trustworthy document, and because an assessment can be probative evidence showing that the claim of an asylum applicant should be denied." The DHS says it "lacks knowledge"! ECF # 72, at ¶ 33.

3. As further stated in the Amended Complaint, at ¶ 3-3b:

The DHS instructs its asylum officers to write Assessments according to a template. The DHS instructs its officers to begin each assessment with a statement of facts, according to the applicant. These officers follow their instructions. Assessments are uniform. The first several paragraphs of each assessment are a simple recitation of the facts presented to the officer.

3a. The DHS published a lesson plan for its asylum officers entitled "Decision Writing Part I: Overview and Components, Focusing on 1st Three Components," dated June 21, 2004. This lesson plan is still followed today. It instructs the officer about the "standard format" for writing an Assessment. It states at page 5 that the asylum applicant "may submit a Freedom of Information Act (FOIA) request to obtain a copy of an assessment…." This means the *entire* Assessment, not just portions of it. It also states at page 5 that many people will have access to the entire assessment, including "the immigration judge," the BIA, and "federal courts."

3b. Said lesson plan states at page 8 that the first three parts of an assessment shall be "biographic/entry information;" "basis of claim;" and "testimony." The fourth part is "credibility determination." The lesson plan provides an example of "testimony" at page 9-10. In this example, the asylum officer writes several sentences, all of them facts, according to the applicant." [*see* pages 7 and 8, of ECF #47-1]

The DHS stated in its Answer, ECF #72, at ¶ 3-3b: "The allegation contained in this paragraph are characterizations and legal conclusions of the pleader to which no response is required. To the extent that a further response is required, Defendant denies said paragraph."

4. The last sentence of ¶ 3 of the Amended Complaint states: "The first several paragraphs of each assessment are a simple recitation of the facts presented to the officer." The DHS does not present any evidence to the contrary. ¶ 3b of the Amended Complaint states that the lesson plan gives an example of the "testimony" that the officer should write. "In this example, the asylum officer writes several sentences, all of them facts, according to the applicant." ECF #60, at ¶ 3b. The DHS does not present any evidence to the contrary.

5. Judge Jackson examined the assessment of Mr. Abtew in *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014), and wrote :

> After reviewing the Assessment *in camera,* the Court concludes that the first six paragraphs simply recite and summarize the facts that plaintiff presented to the AO during his asylum application interview. Those paragraphs do not include any analysis or impressions, and they do not reflect the AO's deliberative process: although the document does not purport to be a verbatim rendition of the interview, and there may have been some streamlining involved, the summary does not involve the sort of culling of facts from a large universe that could be characterized as deliberative.

Judge Jackson concluded by ruling that the paragraphs are "easily" segregated from the privileged portions of the Assessment. *Id.*

6. ECF #60, the Amended Complaint, states at ¶ 29: "The assessment written by plaintiff Ms. Gatore's asylum officer is quite similar to the assessment in *Abtew v. DHS,* [D.D.C. 2014]." The DHS denied this in its Answer, but has not yet provided any evidence to support its denial. The first six paragraphs of the *Abtew* assessment are at Attachment A of Exhibit 1, attached hereto. A quick reading thereof shows that the officer followed the instructions in the lesson plan: the officer wrote "several sentences, all of them facts, according to the applicant." There is no evidence of record that the *Gatore* asylum officer deviated from the lesson plan when he wrote the Gatore assessment.

7. Attached to the Complaint are ten *entire* assessments disclosed by the DHS in earlier years. ECF # 1-2.  Anyone who reads these assessments will see that each one begins with a simple recitation of the facts.  ¶ 29 of the Complaint states that the *Gatore* assessment "is quite similar" to those ten assessments. The DHS denies this, but provides no facts. ECF #16, at ¶ 29.

8. In February 2017, plaintiffs filed an Amended Complaint, which added Ms. Veronica Lemus as a named plaintiff. ECF #60.  The DHS filed an Answer, ECF #72, in March 2017, in essence repeating its earlier Answer.

### Written instructions to FOIA processors

9. <u>Documents furnished in October 2015</u>

The DHS provided three pages of instructions which are given to its FOIA requesters, in October 2015.   These are found at ECF #32, Exhibit A.

Page 5 of 14 of ECF #32 states, concerning an assessment: "Withhold in full… "

Page 6 of 14 states: "Fully withhold Assessment to Refer…

Page 7 of 14 states: "partially withhold" worksheets.

These three pages show that DHS employees are instructed to "partially" withhold worksheets, and "fully" withhold assessments.

10. <u>Documents furnished in October 2016 to Professor Stevens</u>

Professor Jacqueline Stevens made a FOIA request "for all materials used for guidance in managing USCIS FOIA requests…." The USCIS responded with 4,321 pages, which have now been published on the webpage of the American Immigration Lawyers Association. ECF # 61-1.

Page 3939 of the 4,321 pages is entitled FINAL ACTION LETTER TEMPLATE, and has as its fifth sentence:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

This sentence has a total of 19 words in it. *See* page 2 of 3, ECF #61-3. These 19 words have been used consistently by Ms. Eggleston since 2009. She used them most recently on June 3, 2107. *See* her letter, Attachment B to Exhibit 1, attached hereto.

FOIA clerks are instructed twice on page 4158 of the 4,321 pages to "withhold in full" asylum flowcharts. *See* page 2 of 2, ECF #61-4.  That same instruction is repeated, twice, on page 4168. *See* page 2 of 2, ECF #61-5.  FOIA clerks are instructed again at page 4206 to "Withhold in full" assessments. *See* Page 2 of 2, ECF #61-6.   The clerks are *never* instructed to "partially" withhold assessments.

The word "segregate" appears nowhere in the 4,321 pages; the word "segregable" appears only once, on page 3939.  There are no instructions in the 4,321 pages dealing with the duty to segregate.

From January 1, 2010 to the present, employees at US CIS who respond to FOIA requests are mandated to use said FINAL ACTION LETTER TEMPLATE.   *See* Request for Admission #5, in Exhibit F, part of Attachment #1.

**Letters of Jill Eggleston**

LETTERS : 2011-2014

11. ¶ 15 of the Amended Complaint states that during the past six years, more than 100 asylum applicants have made a FOIA request for their assessment, and the DHS has not provided

even one assessment in response. The DHS says it "" lacks knowledge" about this. ECF # 72, at ¶ 15.

¶ 16-19 of the Amended Complaint states that from 2011-2014, Jill Eggleston wrote 25 nearly identical letters. ¶ 18 states that each letter contains this sentence:

> In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.

This sentence is the fifth sentence in each and every one of the 25 letters mentioned above. The DHS basically admits this. ECF #72, at ¶ 18.

The fifth sentence contains 19 words. Those same 19 words are the same [5th] sentence of each letter.

MORE LETTERS OF JILL EGGLESTON 2015-2017

12. Plaintiffs identified more asylum applicants who made FOIA requests, bringing the total to 41, as of June 2015. *See* ECF #15-1.  Plaintiffs at that time had identified 41 letters from Jill Eggleston with the same 19 words in the fifth sentence, stating that nothing could be segregated.  The DHS has not yet challenged these assertions.  Plaintiffs identified still more members of the class who received boilerplate letters from Ms. Eggleston, at ECF #47-2 and 47-4.  For example, on May 10, 2016, Ms. Eggleston wrote a letter to Catholic Charities about Mr. Adel Ahmeddin, stating 19 words in the fifth sentence: nothing can segregated. [at page 10 of 11, at ECF #47-2]. On August 22, 2016, Ms. Eggleston wrote a letter to Catholic Charities, about Ms. Veronica Lemus Miranda, stating the same 19 words in the fifth sentence. [at page 2 of 3, ECF # 60-2]

13. Ms. Eggleston continues in the year 2017. On March 23rd, she wrote to Catholic Charities about Ms. Ghani, stating 19 words in the fifth sentence. *See* page 24 of 26, in ECF #73-2. On June 3, 2017, Ms. Eggleston told a requester that

> In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.

14. Ms. Eggleston is following written instructions: at seven different places, employees are told to "fully withhold" assessments. She is obeying a document found at page 5 of 8 of ECF #32, which tells processors who find an assessment to "Withhold in full. "She follows page 6 of 8 of ECF #32 which instructs "Fully withhold Assessment to Refer…"

15. She is following the instructions on page 3939 of the 4,321 pages to the Professor Stevens, which offers an example of a FINAL ACTION LETTER TEMPLATE, which has as its fifth sentence:

> "In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information."

*See* page 2 of 3, ECF #61-3

16. Concerning the 4,321 pages, she is obeying what it says on page 4158, 4168 and 4206: "withhold in full."

### Statements of Ms. Eggleston under oath

17. At ECF #22-1 is a Declaration from Jill Eggleston, dated July 28, 2015. She states, at page 8 of 9: "The factual portions of the assessment to refer cannot be severed or segregated from its context and thus must remain exempt from disclosure." She does not claim that anyone will be harmed if facts are disclosed. She does state that defendant wants "to protect the manner in which asylum officers, such as those that interviewed the plaintiffs, prioritize then analyze information gleaned from asylum applicants during interviews." *Id.* at lines 305-307. Protect the officers from what? How does keeping the facts away from the FOIA requester protect the officer? Ms. Eggleston does not explain. Immigration Judges are given *entire* assessments at times, *Ido v. U.S. Att'y Gen.* 480 Fed. Appx. 972 (11th Cir. 2012). Ms. Eggleston

does not explain why the officers do not need "protection" from judges reading the facts, but somehow need "protection" from the requester reading the facts.

18. The Court in *Abtew v. DHS,* 47 F. Supp. 3d 98, note 18 (D.D.C. 2014) recognized the possible unfairness to an asylum applicant when the DHS uses an assessment in immigration court, stating:

> The Court notes, though, that this case presents a unique situation where the document at issue may have significant repercussions for plaintiff if it is used at his immigration proceeding. Based on the potential significant impact that the document may have on plaintiff's immigration status, as well as the strong likelihood that the Assessment will be introduced at plaintiff's immigration proceeding and that such use would in fact waive the deliberative process privilege while simultaneously triggering the protection afforded to plaintiff by section 1229a(b)(4)(B), the Court encourages defendant to not delay in providing the Assessment to plaintiff if it ultimately decides it will be used in the immigration proceeding.

This Court criticized the declaration of Ms. Eggleston, because it "discusses the segregability of the assessments in a categorical fashion…" *Gatore v. US DHS,* 177 F. Supp. 3d 46, 52 (D.D.C. 2016) [ECF #41 at page 7]. The Court further noted that there "appears to be" a "blanket policy not to release any portion of an assessment, irrespective of its contents." 177 F. Supp. 3d at 52.

19. Ms. Eggleston submitted a new Declaration, dated May 25, 2016. Therein, she repeated what she had said earlier: "the factual portions of the assessment to refer cannot be severed or segregated…." [lines 107-108, on page 3 of 12, ECF #44-1] At page 4 of 12, she says, yet again, "factual matters" "cannot be severed." Ms. Eggleston states that each assessment has 3 sections: an introduction, an analysis, and a conclusion. At page 5 of 12, Ms. Eggleston states, yet again, at lines 163-164, that the agency "did not find any reasonably segregable information to release." Ms. Eggleston said the same words about each assessment of the 7 named plaintiffs.

She did not mention three cases which found that there are indeed facts that can be segregated out of an assessment: *Abtew, Gosen,* and *Gatore*. She does not claim that the *Abtew* and *Gosen* assessments are different from the 7 named plaintiffs.

The Amended Complaint, at ¶ 3, states that "The DHs instructs its asylum officers to write Assessments according to a template." ¶ 3a thereof states that officers are instructed to use a "standard format" for writing assessments. The DHS did not really deny these allegations in its Answer, ECF #72.  Ms. Eggleston does not state anything contrary in her Declaration.

20. ECF # 77-3 is a declaration from Ms. Eggleston dated May 25, 2017.  At page 1 thereof, line 17, she states that USCIS determined that the assessments should be withheld "in full." However, at page 2, she states that "it was determined that USCIS could release limited factual information from the assessments."  Who determined this? Ms. Eggleston? Someone else? When? Why?

21. Ms. Eggleston furnished another declaration, dated June 9, 2017 [ECF #77-4]. Therein, she refers to her letter dated August 22, 2016, which has 19 words in its fifth sentence:

> In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.

[The August 22, 2016 letter is at page 6 of 7, ECF #77-4.]

The June 9, 2017 Declaration states at ¶ 5, [page 2 of 7 of ECF #77-4] that the assessment contains "background" about the applicant, an "analysis" that includes an "analysis," and "conclusions and recommendations."  The word "analysis" is used four times. The word "fact" appears zero times.

¶¶ 6 and 7 of the Declaration states that the Assessment contains "information."  The word "analysis" is used three times. The word "fact" appears zero times. ¶ 8 of the Declaration

uses the word "analysis" twice, and the word "fact" zero times. ¶ 8 concludes by stating that USCIS "determined that the assessment to refer should be withheld *in full*." [emphasis added]

But then, at ¶ 9, she states that "On further review, it was determined that USCIS could release limited factual information from the introductory portion of the Lemus-Miranda assessment to refer." Ms. Eggleston concludes ¶ 9 by referring to "analysis" and not admitting to the existence of any "facts." The parts of this assessment which were released are Attachment C, of Exhibit 1, attached hereto.

Line 94 of the Declaration states that the assessment shall be withheld "in full;" line 95 is blank; then line 96 says part can be released. There is no explanation as to why the agency changed its mind. The agency does not explain the leap between line 94 and line 96.

**Parts of assessments already released**

22. Disclosures made in *Gosen*

The Court in *Gosen v. UC CIS,* 118 F. Supp. 3d 232, 243 (D.D.C. July 30, 2015) stated, after an *in camera* inspection, that "there is at least some factual material that may not expose the deliberative process… [the assessments] include a paragraph that is (mostly) just a chronological list of what the applicant testified." The Court also noted several long quotes from various published reports…. It is not entirely clear to the Court why the factual and quoted material in those reports would provide meaningful insight into the decisionmaker's judgment or the deliberative process." *Id.*

On August 14, 2015, the agency submitted a status report, wherein it stated that "USCIS determined that it *can* release additional information…" That report is found at ECF # 29-1.

23. March 14, 2017 disclosures of parts of seven assessments

The DHS released parts of the assessments of the first seven named

Plaintiffs on March 14, 2017.  They are Exhibit 1, attached to ECF #73.  For example, for plaintiff Gatore, the DHS released the first paragraph, comprising two long sentences. *See* page 4 of 8, of ECF #73-1.  The DHS released three long sentences from the assessment of plaintiff Al Timemy. *See* page 5 of 8, ECF #73-1.

24. <u>June 2017 disclosure of part of one assessment</u>

On June 9, 2017, the DHS released part of the assessment of plaintiff Ms. Lemus Miranda. It is Attachment C to Exhibit 1, attached hereto.

**Catholic Charities and its Eighth Cause of Action**

25. ¶ 7 of the Amended Complaint states: "Plaintiff Catholic Charities is an organization in Washington DC which assists asylum applicants.  This plaintiff has made FOIA requests in the past for Assessments, and will continue to do so in the future."  DHS does not really deny this. ECF #72, at ¶ 7.

26. The Eighth cause of action, ¶ 55-59 of the Amended Complaint, states that Catholic Charities is a religious organization that helps asylum applicants, by doing FOIA requests, and conducting seminars and trainings for lawyers.  ¶ 58 states that Catholic Charities "wants to monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice… it wants to preserve the integrity of immigration court and asylum office proceedings." The DHS says it "lacks knowledge" about all of this. ECF # 72, at ¶ 55-58.

27. ¶ 59 of the Amended Complaint says that Catholic Charities is "being injured by" the acts of the defendant.  The DHS denies this, ECF #72, at ¶ 59, but provides no facts to justify its denial.

**Ninth Cause of Action of Catholic Charities**

28. ¶ 60-62 of the Amended Complaint alleges that Catholic Charities made its own FOIA request for documents relating to the processing of requests for assessments, and that the DHS did not comply in a timely fashion. The Court has ruled in favor of Catholic Charities on this cause of action. ORDER, dated February 3, 2017 [ ECF #58]. The Court found that Catholic Charities "has substantially prevailed," [page 6 of 9]; that the DHS "has provided no legal basis whatsoever for withholding the FOIA Processing Guide," [page 7 of 9] and that the inaction of the DHS "amounts to recalcitrance." [page 8 of 9]. The Court granted the motion of Catholic Charities for summary judgment, "except as to the issue of the amount of attorney's fees requested." [page 8 of 9].

29. The DHS filed a Motion to Reconsider on February 14, 2017 [ECF #63.]. In this 13-page document, the DHS argues that plaintiffs "failed to exhaust administrative remedies." [at page 6 of 13]. The DHS states that "Plaintiffs never submitted a FOIA request to DHS for the complete FOIA Processing Guide." [page 8 of 13]. The DHS said the Guide was hundreds of pages long; and "Some of these records *almost certainly* include exempt information." [page 9 of 13; emphasis supplied]. At Note 5 on page 9, the DHS asked for permission "to assert applicable exemptions to the entire FOIA Processing Guide" by a certain date. The DHS further argued that stays of disclosure can be proper, if there is "prejudice to the respective parties and the public interest." [page 12 of 13].  The DHS suggested that "harm" could result to someone or something. The DHS suggested that a stay would permit it "sufficient additional time to review the entire" Guide. [page 12 of 13].

30. Catholic Charities opposed the Motion on February 15, 2017. ECF # 64.  The next day, the DHS filed its Motion again! ECF #65-1.  This Motion was 11 pages long.   The DHS again argued that Catholic Charities had not exhausted administrative remedies, citing a dozen cases. [pages 4-8 of 11].  The DHS repeated its earlier statement, that some of the Guide "*almost certainly* includes exempt information." [at page 8 of 11; emphasis supplied]. The DHS again made a reference of "harm" that might be suffered by someone, and hoped that it would be permitted "sufficient additional time to review the entire" Guide. [at page 10 of 11].  Catholic Charities opposed the Motion again. ECF #66.

On February 17, 2017, the DHS filed its 17th motion to extend time.

31. On February 21, 2017, the DHS filed further arguments in support of its Motion to reconsider, stating that "Plaintiffs are also wrong, Opp. at 3, that Defendant has not demonstrated harm." [at page 4 of 5, ECF #69].  Defendant DHS writes at page 4:

"Defendant's loss of its statutory right to consider Plaintiff's expanded request administratively is harmful."

The DHS goes to claim it would suffer "a harm [that is] significant and irreparable." *Id.* Nowhere, however, does the DHS demonstrate what that harm may be.

The DHS quoted twice from the Guide in May 2016, in ECF #44-1. At that time, the DHS had not furnished the Guide to plaintiffs. It is not proper for a party to quote from a source not available to the Court or to opposing party. The DHS should be deemed estopped from further argument, on this ground alone.

The DHS quoted again from the Guide in its June 2017 submission. ECF #77-1, at page 4 of 11]

June 20, 2017

    Respectfully submitted,

    Attorney for Plaintiffs

    David L. Cleveland
    DC Bar # 424209
    Catholic Charities
    924 G Street, NW   Washington, DC 20001
    [202] 772-4345 Fax: [202] 386-7032
    1949.david@gmail.com