UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, *et al.*,

                    *Plaintiffs*,

          v.                                                    Case 1:15-cv-00459-RBW

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

                    *Defendant*.

## REPLY IN SUPPORT OF
## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Though you would not know it from Plaintiffs' opposition, this case has already been
through one round of summary judgment briefing, and the Court's considered ruling substantially
narrowed the remaining issues in this case. In denying Defendant's first motion for summary
judgment, the Court identified two, specific concerns that precluded it from ruling in favor of
Defendant: (1) it found that Defendant's declaration "discusses the segregability of the
assessments in a categorical fashion, as opposed to providing a description of the assessments
prepared in each of the individual plaintiffs' cases;" and (2) it concluded that "defendant's
representation that it conducted a 'line-by-line examination' of each of the assessments to
determine whether any portions were reasonably segregable . . . is seemingly undermined by what
appears to be the defendant's blanket policy not to release any portion of an assessment,
irrespective of its contents. *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 52 (D.D.C.
2016). In light of these concerns, the Court ordered Defendant to "submit a revised *Vaughn* index,
affidavit, or declaration, that reassesses the issue of segregability as to each of the individual
plaintiffs' assessments, and provides an adequate description of each assessment to support the

defendant's assertion that no portion may be released." *Id.* at 53. That is what Defendant has done. Its renewed motion for summary judgment and the supplemental declarations filed in support directly address and obviate the Court's prior concerns. Defendant should be granted summary judgment for that reason alone.

Plaintiffs, by contrast, ignore the Court's prior ruling. Indeed, they do not directly contend that Defendant has not satisfactorily discharged the Court's instructions for a supplemental declaration. Instead, Plaintiffs return to square one—arguing that, as a matter of law, all factual information in the assessments to refer are segregable and must be released, just as they argued in opposition to Defendants first motion for summary judgment [*Compare see* Pls.' Opp. Br. at 7–18,[1] ECF No. 78, *with* Pls.' Opp. Br. at 2–4, 6–9, 15–20, ECF No. 29.] In support of this mooted argument, Plaintiffs misapply the relevant case law, unjustly fault Defendant for its good-faith post-litigation releases, and obfuscate the record. These critical flaws—in addition to Plaintiffs' failure to dispute Defendant's compliance with the Court's specifications for a supplemental declaration—require that Plaintiffs' opposition be rejected and Defendant's renewed motion be granted.

With respect to Catholic Charities' purported policy-or-practice claim, Catholic Charities does not dispute that Defendant's policy facially requires a segregability review of assessments to refer, but now says that what it really wants is for Defendant to actually *release* information from unspecified, unexamined assessments that are not the subject of this case. Those assessments must be individually reviewed to determine whether they have any segregable information (as Defendant's policy requires), and such a sweeping order would not be appropriate. The policy-or-practice claim therefore fails.

---

[1] Because Plaintiffs have not numbered the pages of their opposition brief, Defendant refers to the page numbers automatically generated by the Court's ECF filing system.

I.        **Plaintiffs Misapply the Relevant Case Law.**

Plaintiffs cite a number of cases that they say support their general proposition that "in most cases, factual summaries should be disclosed." [Pls.' Opp. Br. at 4–5, ECF No. 78.] They fail, however, to provide any in-depth analysis demonstrating that those cases are analogous such that the factual information in *this* case must be disclosed. A closer look shows Plaintiffs' cases to be distinguishable. The cited courts held that the information in question was not covered by the deliberative process, not simply because it was a factual summary, but because it was prepared for an informational—not deliberative—purpose. *See Paisley v. C.I.A.*, 712 F.2d 686, 699 (D.C. Cir. 1983) (observing without concluding that the requested records "appear to be straightforward, factual summaries of meetings and phone conversations between [the Senate Select Committee on Intelligence] and CIA staff personnel" and remanding to the district court to determine if there was "severable factual material whose disclosure would not reveal the deliberative process"); *ITT World Commc'ns, Inc. v. F.C.C.*, 699 F.2d 1219, 1238 (D.C. Cir. 1983) (holding that notes taken during a meeting between the ICC and a foreign communications administration were not deliberative because "the Commission has cited no specific proceeding for which the notes were compiled, and in any event it has presented no evidence that the notes are evaluative in nature rather than straightforward factual narrations"); *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (holding that a factual report about the FBI's cooperation with an allegedly violent and unreliable informant was not exempt because it was not "intertwined with the policy making process of the decision maker" but that the report's task force was merely meant "to investigate the facts surrounding certain events") (internal quotation marks omitted); *Judicial Watch, Inc. v. U.S. Dep't of State*, --- F. Supp. 3d ---, No. 14-1511, 2017 WL 1078544, at *8 (D.D.C. Mar. 20, 2017) (noting plaintiff's argument that the defendant "does not identify any

particular agency action or decision to which the email relates or in which the email played any role" and that it was written for informational purposes only and was therefore not deliberative); *Judicial Watch, Inc. v. U.S. Dep't of State*, --- F. Supp. 3d ---, No. 15-688, 2017 WL 456417, \*10 (D.D.C. Feb. 2, 2017) (holding that the identities of certain potential sources of conflict identified in emails were not deliberative where the defendant had provided only a "conclusory statement that, at times, factual material can reveal an agency's deliberative process").

In this case, by contrast, there is no question that the assessments to refer were prepared as part of a deliberative proceeding. That is well established by case law. *See, e.g., Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013) (Walton, J.) (holding that assessments to refer are "quintessential[ly] deliberative" because they provide the asylum officer's "analysis of the credibility of the plaintiff's claims and recommendation that she be denied asylum") (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). [*See also* Def.'s MSJ Br. at 10–11, ECF No. 77-2.] Consequently, the cases cited by Plaintiffs, which did not involve a deliberative proceeding, do not apply. Indeed, courts in this district have distinguished some of the cases cited by Plaintiffs on just those grounds. For example, in *Leopold v. C.I.A.*, the court held that an internal report summarizing the contents of documents made available to the Senate Select Committee on Intelligence were covered by the deliberative process privilege. 89 F. Supp. 3d 12, 23–24 (D.D.C. 2015). The court distinguished *Playboy Enterprises*, noting that the records at issue in that case were "'prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress.'" *Id.* (quoting *Playboy Enterprises*, 677 F.2d at 935). By contrast, the court held, the records in the *Leopold* case "reflected a point of view—namely, what agency personnel thought important enough to bring to senior officials' attention in light of their understanding of the policy issues that the CIA might face as a

4

result of the investigation." *Id.* Thus, the court found its case more analogous to *Montrose Chemical Corp. of Cal. v. Train*, 491 F.2d 63 (D.C. Cir. 1974), where the selective factual summary in question was contained in a report that was "prepared for the . . . purpose of assisting the Administrator to make a complex decision." *Id.* (internal quotation marks and citation omitted); *see also Cities Serv. Co. v. F.T.C.*, 627 F. Supp. 827, 836 (D.D.C. 1984) ("The facts in *Playboy Enterprises* were not prepared to become an integral part of the decision-making process, but were prepared merely for informational purposes. In contrast, the material in the present case was created for the purpose of helping its authors and/or the Commission make decisions. For similar reasons, the Court also finds plaintiffs' reliance on *ITT World Communications* . . . to be without merit."). The same distinction applies here, where the assessments were prepared as a recommendation in a deliberative process on whether to grant asylum. They are therefore deliberative.

## II.   Plaintiffs Improperly Fault Defendant for Revisiting Its Releases in Good Faith.

Plaintiffs attempt to indict Defendant for initially stating that no portions of the assessments to refer were segregable, and then subsequently reevaluating that position and releasing a small amount of factual information. [*See* Pls.' Opp. Br. at 5 (arguing that "Ms. Eggleston is inconsistent and has changed her position without explanation."), ECF No. 78; *see also id.* at 9–11, 17.] That is not a valid argument against granting Defendant summary judgment. An agency's disclosure of previously withheld documents does not, as a matter of law, call into question the veracity of the agency's declarations. As the D.C. Circuit has long held:

> In *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C.Cir.1981), we "emphatically reject[ed]" the notion that an agency's disclosure of documents it had previously withheld renders its affidavits suspect . . . . We observed that such a line of argument, if accepted, "would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when

> appropriate, release documents previously withheld." *Id.* Were the court to thus "punish flexibility," it would "provide the motivation for intransigence"; the argument in favor of doing so is "based on the perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency." *Id.*

*Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986); *see also Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 627 (D.C. Cir. 2011) ("As in previous FOIA cases, we decline to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings."). Indeed, the agency's willingness to revisit its earlier withholdings shows its good-faith approach to its FOIA obligations, not the opposite. Accordingly, Defendant's reevaluation of its withholdings provides no grounds to deny it summary judgment.

## III.   Plaintiffs Obfuscate the Record in Several Respects.

Plaintiffs are often imprecise about the facts. Defendant addresses two such instances. *First*, Plaintiffs mislabel Ms. Eggleston's declarations as conclusory and mischaracterize them as stating only that the facts in the assessments to refer "cannot be severed from its context." [Pls.' Opp. Br. at 15, ECF No. 78.] In fact, there is much more to the record than that. The first supplemental Eggleston declaration notes that each assessment to refer is composed of three sections: an introductory section, an analysis section, and a recommendation. [Def.'s MSJ Br. at 14, ECF No. 77-2.] Each section contains facts that reflect the agency's deliberative process. [*Id.*] More specifically, the introduction section in each of the assessments is "not a verbatim transcript of information provided by [each plaintiff] but reflect[s] a selective recording of information the USCIS asylum officer deemed particularly pertinent to [each plaintiff's] request for asylum and, therefore, focused specifically on select information." [*Id.*] The analysis section of each assessment "only reflects selective information pertinent to [each] asylum officer's deliberative process." [*Id.*] And each conclusion contains only those facts that are "a direct reflection of the selected information used during the asylum officer's deliberative process to highlight those facts most

6

relevant to the officer's conclusion / recommendation." [*Id.*] Further, the record also shows that a "lesson plan" called "Decision Writing Part I" instructs asylum officers to practice a technique called "Know It But Don't Show It," whereby the officer "is not required to 'show' all the information that he or she is required to 'know'" but must instead show only that "[i]nformation that forms the basis of the claims and the decision." [*Id.* at 11–12.] Thus, there is far more to the record than Plaintiffs' highly selective excerpt, and the record is more than sufficient to show that the information withheld by Defendant is deliberative.

*Second*, contrary to the record, Plaintiffs insist that FOIA reviewers are instructed to withhold assessments to refer in full without exception, and that, in some unspecified 4,321 pages of instructions supposedly released to someone else (which Plaintiffs have not included in the record nor described in any detail), "the word 'segregate' appears nowhere." [Pls.' Opp. Br. at 11.] It is not clear what Plaintiffs are referring to or how they came to this conclusion; but in any event, Defendant has presented evidence showing that, while the FOIA Processing Guide does provide guidance to reviewers that assessments to refer should be withheld in full (a position that numerous decisions by this district court have upheld), the Guide also notes that such guidance "does not comprehensively cover every scenario and cannot be used as a substitute for thought." [Defs.' MSJ Br. at 15.] It also states that "[t]he guidance provided does not mean you must always use all those exemptions, or only those exemptions. A processor must evaluate the page." [*Id.*] More relevant to this case, the record definitively shows that the assessments at issue were in fact reviewed no less than three times for segregable information and that some limited information was ultimately released. [*Id.*] Defendant has therefore satisfied its FOIA obligations to Plaintiffs.

## IV.     Catholic Charities' Refashioned Policy-or-Practice Claim Still Fails.

Catholic Charities seems to have now rewritten its policy-or-practice claim. Its amended complaint alleged that Defendant has a "policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment." [Am. Compl. ¶¶ 25, 59, ECF No. 60.] Defendant disproved that allegation in its motion for summary judgment. [Def.'s MSJ Br. at 17–18.] Now, Catholic Charities seems to say that what it really wants is not for the Court to order Defendant to conduct a segregability review of assessments, but for the Court to order Defendant to actually *release* information from certain assessments that are not at issue in this litigation. [*See* Pls.' Opp. Br. at 20 ("The DHS argues it has a policy of 'reviewing' assessments for segregability. . . . Requesters do not care is 'review' is done; requesters want compliance with the FOIA").] This revised claim still fails, however, because Catholic Charities cannot prove that assessments to refer that are not even at issue in this case contain segregable information that must be released. More importantly, Catholic Charities cannot show that Defendant has a policy or practice of violating FOIA that would even allow for such broad, untailored relief. The law clearly establishes that assessments to refer are generally covered by the deliberative process privilege, and Defendant has shown that it has a policy instructing that assessments to refer be reviewed for purposes of segregability. While Plaintiffs complain that some assessments to refer have been withheld in full, numerous courts have upheld similar withholdings in the past, as this Court has noted. *See Gatore*, 177 F. Supp. 3d at 52 (recognizing that "defendant has relied on prior district court opinions upholding its decision not to release any portion of these assessments). For these reasons, Catholic Charities cannot obtain an order requiring Defendant to release particular information from assessments that are not even at issue in this case.

**CONCLUSION**

The Court should enter summary judgment in favor of Defendant on Plaintiff's remaining claims.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
     JOHNNY H. WALKER, D.C. Bar #991325
     Assistant United States Attorney
     555 4th Street, N.W.
     Washington, District of Columbia 20530
     Telephone: 202 252 2575
     Email: johnny.walker@usdoj.gov

*Counsel for Defendant*