# ATTACHMENT A

## 20 pages from the 3,853 pages released in June, 2017

# Decision Writing I - Overview
## BACKGROUND



- Assessments and Notices of Intent to Deny (NOIDs) are legal documents that explain the basis for Asylum Officers' decisions in asylum cases.

- Decision writing has been streamlined and Asylum Officers use standardized templates from the Affirmative Asylum Procedures Manual (AAPM) accessible on the ECN Asylum Division page and on local asylum office Share Drives

Asylum Division Officer Training Program
Decision Writing Overview and Components
ADOTP

3



# Assessments and NOIDs

## WHO HAS ACCESS TO THE WRITTEN DECISION?

# Assessments and NOIDs
# - Who has Access?



1. The applicant and his or her attorney or legal representative (NOIDs and FOIA requests)

2. Asylum Office staff

3. Headquarters staff

4. ICE Associate Chief Counsel (ACC)

5. BIA and Federal Courts

6. Bureau of Democracy, Human Rights, and Labor (DRL) of the Department of State—issues Advisory Opinions.

7. Certain government officials or contractors as indicated in 8 C.F.R. §208.6

8. Members of Congress and Congressional Liaisons may also have access.

Asylum Division Officer Training Program
Decision Writing Overview and Components
ADOTP

6

# Components of an Assessment / NOID



A. Biographic / entry information

B. Basis of claim

C. Analysis of Prohibitions Against Filing for Asylum

D. Summary of Testimony

E. Credibility Determination/Evidence Assessment

F. Focused Legal analysis

G. Decision

959

# Basic Components of Assessments and NOIDs

## SUMMARY OF TESTIMONY

[What happened to the applicant and/or individuals similarly situated, what does he/she fear, and why?]

■ The applicant testified as follows:  [summary of material facts of applicant's testimony].

5



# Summary of Testimony

- Applicant testified as follows:  He became interested in Christianity through Christian friends in 2010.  In early 2011 he began attending weekly religious services that were held at a neighbor's house. In December 2011 he offered to host the Christmas service at his house because his neighbor was ill. During the service the police came to his home, and took the applicant to the local station.  The police also confiscated the religious materials that were at his home.  The applicant was detained for three days, during which time he was advised his religious activities were not permitted and was questioned as to the content and how he obtained the confiscated materials.  The authorities also wanted to him to provide information on his contact with foreign missionaries.  When he denied knowing any foreigners, he was struck repeatedly with a baton. The applicant was warned not to participate in any further unauthorized house church activities and required to report to the station on a weekly basis for 3 months.

# Summary of Testimony



**Stick to the facts as they were presented:**

**Don't editorialize**

**Don't "interpret" what the applicant said**

**Be Concise**

**State the facts clearly**

**Include all material facts needed for the legal analysis**

# Summary of Testimony



- The summary of testimony should include only facts, not legal conclusions.

- Be careful of using phrases such as "on account of..," "persecution," "torture," "firmly resettled," "nexus," or "protected grounds."   If any of those phrases appear in your testimony, you are likely making a legal conclusion.



- Avoid language that suggests personal opinion



Asylum Division Officer Training Program
Decision Writing Overview and Components
ADOTP

25

# Lesson Plan Overview

| | |
|---|---|
| **Course** | Refugee, Asylum and International Operations Directorate Officer Training Asylum Division Officer Training Course |
| **Lesson** | ***Decision Writing Part I:  Overview and Components, Focusing on 1st Three Components*** |
| **Rev. Date** | May 3, 2013 |
| **Lesson Description** | This lesson introduces the asylum officer to the standard format for written asylum decisions.  Through lecture, discussion, and practical exercises, the asylum officers will become familiar with the components of the written decision, the required writing style, and techniques for writing concise summaries of applicant testimony. |
| **Terminal Performance Objective** | Given a request for asylum in which a preliminary decision has been reached, the asylum officer will be able to write clear, concise, complete, and legally sufficient assessments to grant or refer and Notices of Intent to Deny (NOID) asylum within designated time constraints. |

**Enabling Performance Objectives**

1. List required components of an assessment.(AA3)
2. List required components of a Notice of Intent to Deny (NOID).(AA3)
3. Determine which information to include in the biographical/entry information summary.(AA3)
4. Determine which information to include in the summary of the facts. (AA1)(AA3)
5. Identify information and statements that are not relevant or appropriate to include in an assessment or NOID. (AA3)
6. Within specific time constraints, write an assessment or NOID in following Plain Language principles. (AA3)
7. List the circumstances under which a NOID must be prepared.(AA3)
8. Explain when to consult with your supervisor, and when to refer a case to your supervisor for review and signature.(OK5)
9. Identify who may have access to affirmative asylum assessments and NOIDS. (AA3) 

9

# Writing Style



A. <u>Informational Tone</u>
- Objective - No reference to 1st person "I" or "the Asylum Officer." For NOIDS, "USCIS" is used (e.g. "USCIS finds that...")
- No personal opinions, either positive or negative

B. <u>Language That is Easy to Understand</u>
- No legal jargon or superfluous language

C. <u>Language Structure, Grammar, Spelling</u>
- Always use computer "spell check"
- Use computer "grammar check"
- Turn Auto Correct OFF!

Asylum Division Officer Training Program
Decision Writing Overview and Components
ADOTP

32

**Presentation**                                                  **References**

## I.   INTRODUCTION

The purpose of this lesson is to instruct officers how to write
assessments and Notices of Intent to Deny (NOIDs), focusing on
three of the necessary components of these documents: the
biographical/entry information, the basis of the claim, and the
summary of testimony.  This lesson will also cover the differences
between assessments and Notices of Intent to Deny, and discuss
appropriate language to use in both documents.

## II.   OVERVIEW

### A.   Background

Assessments and Notices of Intent to Deny are legal
documents that explain the basis for asylum officers' decisions.

Prior to "Reform" asylum officers were required to write
lengthy decisions, citing all relevant case law and country
conditions information.  The writing of assessments and
NOIDs, however, has evolved into the streamlined version that
asylum officers now use.  One of the purposes of using a more
streamlined written assessment is to reduce the length of
writing time, which in turn allows more time for interview and
case analysis.

See Asylum Division lesson
*History of the Affirmative
Asylum Program* concerning
"Reform"

Standardized "template" documents for assessments and
NOIDs are installed on the Asylum Division computer
network so that asylum officers can quickly and easily access
and use these documents.  Asylum officers should check with
their local office management for guidance on how to access
these templates.  The use of standardized templates promotes
consistency of work product across the Asylum program.

Refer to *Affirmative Asylum
Procedures Manual* for
copies of templates.

### B.   Assessments and NOIDs: Legal Documents to which a Number of Persons Have Access

Information pertaining to an applicant's application for
asylum—including the assessment or NOID—is generally
protected from disclosure pursuant to the asylum
confidentiality regulations found at 8 CFR § 208.6.
Individuals who have access to assessments and NOIDs

include the following:

1. The applicant and his or her attorney or legal representative are sent copies of the NOID. Under some circumstances the assessment may be released to the applicant or his or her attorney/legal representative if a Freedom of Information Act (FOIA) request is submitted to obtain a copy of an assessment (and other information in the file).

2. Certain Asylum Office staff review assessments and NOIDs.

    Supervisory asylum officers routinely review all assessments and NOIDs. Certain other Asylum Office staff, such as the Quality Assurance/Trainer, Deputy Director, and Director, may also review assessments and NOIDs. In addition, other asylum officers may review files of cases in which the interviewing officer could not complete the case or, in certain instances, if there is a need to reinterview the applicant.

3. The Headquarters Asylum Division Training and Quality Assurance Branch staff reviews assessments and NOIDs from certain categories of cases where HQ review is required or requested.

    See *Affirmative Asylum Procedures Manual*

4. ICE Assistant Chief Counsels read certain assessments and NOIDs. (In some cases, the Assistant Chief Counsel may enter an assessment or NOID into the record, which means that the immigration judge and others would also review these documents.)

    Note that asylum officers may be required to testify in immigration court as to the content of interviews and/or their reasoning for reaching particular decisions.

5. The Board of Immigration Appeals (BIA) and federal courts review certain assessments and NOIDs.

6. The Bureau of Democracy, Human Rights, and Labor (DRL) of the Department of State gives advisory opinions on certain claims.

7. Certain government officials (*e.g.*, FBI or other law enforcement agencies) or contractors as indicated in 8 C.F.R. §208.6(c) may have access to particular files.

    8 C.F.R. § 208.6(c)

8. Members of Congress who receive inquiries from applicants may have access to the assessments and NOIDs in the applicants' files. The Congressional liaisons who are responsible for responding to

    Note that the provisions of *The Privacy Act of 1974 (5 U.S.C. § 552a)* would require that Members of Congress or their staff obtain

12

before a final decision is rendered by the asylum officer. The NOID must specifically address all reasons the applicant would not establish eligibility for asylum.

7. Written in the second person (referencing "you").

## IV. COMPONENTS OF AN ASSESSMENT AND A NOID

The contents of assessments and NOIDs can be divided into the following basic components:

- **Biographic/Entry Information**

- **Basis of Claim**

- **Prohibitions on Filing for Asylum**

- **Summary of Testimony**

- **Credibility Determination/Evidence Assessment**

- **Focused Legal Analysis**

- **Decision**

The above-listed components are expanded upon below.

### A. Biographic/Entry Information

1. Includes:

    a. Age of applicant

    b. Sex of applicant

    c. Country of which applicant is a native and country or countries of applicant's citizenship (or, whether applicant is stateless)

    d. Date and place of entry into the United States

    e. Manner of entry

    f. Limited information concerning applicant's immigration status



2. Does <u>not</u> include extraneous information such as:

    a. The applicant's journey to the U.S. (*e.g.*, the route, the length of time, the cost, whether smugglers were involved);

    b. How many family members remain in applicant's country; or

    c. Information addressed in other components of assessment.

3. Examples:

    a. Applicant is a 19-year old male, native and citizen of the People's Republic of China who entered the U.S. without inspection somewhere along the border between Mexico and California on March 24, 2012.  The applicant is not in lawful status.

    b. Applicant is a 35-year old female, native and citizen of Ethiopia who was admitted to the U.S. at New York, NY as a F1 student for duration of status on March 24, 2012. The applicant is in lawful status.

**B. Basis of Claim**

1. Brief statement of:

    a. What the applicant fears

    b. Whom the applicant fears

    c. Country where the harm is feared

    d. The protected ground(s), if any, the fear is connected to (on account of)

2. The Basis of Claim component always states the harm that the applicant fears in the future.  It does not include the legal analysis of eligibility issues, credibility analysis or address past harm the applicant has experienced.

Because applicants are not necessarily familiar with U.S. immigration laws and regulations to establish eligibility for asylum, the asylum officer must consider the testimony and other evidence in order to accurately frame the basis of claim in the written decision.   This is often

US CITIZENSHIP AND IMMIGRATION SERVICES – RAIO    ASYLUM DIVISION OFFICER TRAINING COURSE
MAY 3, 2013    DECISION WRITING PART I: OVERVIEW

10

988

the case when the applicant's claim in based on his/her membership in a particular social group, but may occur in other instances as well.

3.   Examples:

    a.   An applicant from China claims the police authorities detained and beat him because he and his friends were practicing Falun Gong exercises. The applicant states that Falun Gong is not a religion. Falun Gong is considered an "evil cult" by the Chinese authorities and the International Religion Freedom report includes Falun Gong as a religion. Depending on what information is elicited during the interview, the Basis of Claim component could read as follows:

       Applicant fears he will be harmed by the government of China on account of his religion *or*

       Applicant fears he will be harmed by the government of China on account of his imputed political opinion.

    b.   An applicant from Uzbekistan states that the authorities will harm him because of his Russian ethnic background. During the interview, the officer elicits information that indicates that the authorities would be motivated to harm the applicant because his activities are viewed as a political opinion rather than because of his ethnic background. The Basis of Claim component might read as follows:

       The applicant fears he will be harmed by the authorities in Uzbekistan on account of his nationality and his imputed political opinion.

## C.   Prohibitions on Filing for Asylum

This component addresses whether the applicant is eligible to *file* for asylum. For applicants who filed on or after April 1, 1997, an assessment or NOID must address whether the applicant was eligible to apply for asylum.

*This component is discussed in the Asylum Division lesson, Decision Writing Part II: Legal Analysis*

## D.   Summary of Testimony

*15*

The summary of testimony is a summary of the material facts of the applicant's claim.  These are material facts that were elicited from the applicant during the asylum interview.

Material facts are those facts that have a direct and substantive bearing on the claim, and which, when analyzed by applying the law, determine the outcome of the claim.

Generally speaking, material facts are related to the event(s) that caused the applicant to leave his or her country and/or the event(s) that form the basis of the applicant's fear of return.

All material facts necessary to construct the legal analysis should be described in the testimony component of the assessment and NOID.  Material facts not stated in the summary of testimony should not be introduced in the content of the legal analysis.

**Example:**

Applicant testified that he became interested in Christianity through Christian friends in 2010.  In early 2011 he began attending weekly religious services that were held at a neighbor's house. In December 2011 he offered to host the Christmas service at his house because his neighbor was ill. During the service the police came to his home, and took the applicant to the local station.  The police also confiscated the religious materials that were at his home.  The applicant was detained for three days, during which time he was advised his religious activities were not permitted and was questioned as to the content and how he obtained the confiscated materials. The authorities also wanted to him to provide information on his contact with foreign missionaries.  When he denied knowing any foreigners, he was struck repeatedly with a baton. The applicant was warned not to participate in any further unauthorized house church activities and required to report to the station on a weekly basis for 3 months.

16

### E.   Credibility Determination/Evidence Assessment

The asylum officer must make a determination as to the
applicant's credibility in every assessment of asylum
eligibility.   The credibility determination is made after the
summary of facts.   If a negative credibility determination is
made, the asylum officer must explain in the assessment or
NOID the reasons for finding the applicant not credible.

*See Asylum Division lesson, Decision Writing Part II: Legal Analysis for discussion of the credibility determination and evidence assessment.*

A negative credibility determination always requires an
assessment of other available evidence before it can be
determined that the applicant did not meet his/her burden of
proof.

### F.   Focused Legal Analysis

The asylum officer's legal rationale for the decision must be
included in every assessment and NOID.  Note that while the
"Focused Legal Analysis" component addresses eligibility
issues such as past persecution, well-founded fear of future
persecution and mandatory bars/discretionary factors; several
other "components" of a written assessment or NOID may
contain legal analysis.

*Legal analysis is discussed in depth in Asylum Division lesson, Decision Writing Part II:  Legal Analysis.*

### G.   Decision

This is the outcome of the asylum officer's legal analysis of the
applicant's request for asylum.  In an assessment, the Decision
states whether the case is granted or referred.  In a NOID, the
Decision indicates that USCIS finds that the applicant is not
eligible for asylum (and in some cases, withholding of
removal) and intends to deny the request.  There must be a
Decision in every assessment or NOID.

## V.   WRITING STYLE

Assessments and NOIDs should be informational in tone and
written in language that the reader can easily understand.

### A.   Informational Tone

1.   The assessment is written in the third person, referencing
"the applicant"; the NOID is written in the second person,
referencing "you."

2.   There should not be any reference to the first person

pronoun "I" in either of these documents. The asylum officer is representing USCIS when writing these documents and so the term "USCIS" is used rather than "the asylum officer" or "I." For example, "United States Citizenship and Immigration Services (USCIS) finds that..." is used instead of "The asylum officer finds that..." or "I find that..."

3. The asylum officer should not include his or her personal opinions, or value judgments, either positive or negative, when writing these documents. Both assessments and NOIDs should be strictly informational in tone.

**B. Language that Is Easy to Understand**

Assessments and NOIDs should be written in language that the reader can easily understand, avoiding excessive legal terminology and superfluous language. Whenever possible, use the active voice, short paragraphs and sentences, and simple words and pronouns. While these are sound principles of writing generally, these principles were incorporated into U.S. law through the Plain Writing Act of 2010.

See RAIO Module: *Decision Making* for more detailed discussion.

**C. Language Structure, Grammar, and Spelling**

Although officers are under time constraints and need to write multiple assessments every week, the asylum officer should quickly review his or her assessments and NOIDs for grammar and spelling before giving them to a supervisor for review.

Computer word processing software is equipped with a "spell check" function that should always be used on final versions of these documents.  Officers should verify that the autocorrect feature has not inadvertently altered the meaning of any words or phrases. "Grammar check" can also be helpful.

## VI. SUMMARY 

A. Assessments and Notices of Intent to Deny (NOIDs) are legal documents that explain the bases for asylum officers' decisions in asylum cases.

B. A number of persons may have access to assessments and NOIDs including, but not limited to:

1.   The applicant and his or her attorney or legal representative;

2.   Asylum Office staff;

3.   Headquarters staff;

4.   ICE Assistant Chief Counsels;

5.   The BIA and federal courts;

6.   Staff from the Bureau of Democracy, Human Rights, and Labor (DRL) of the Department of State; and

7.   Certain government officials as indicated in 8 C.F.R. §208.6(c).                                              8 C.F.R. §  208.6(c)

C.   There are several differences between assessments and NOIDs

   1.   An _assessment_ is an internal USCIS document written for all grants and for referrals of cases in which the asylum applicant is not in status.  If the asylum applicant is an _ABC_ class member (or a class member of the _Mendez_ Settlement Agreement), an assessment is only written if the case is granted.  Written in the third person, referencing "the applicant," it explains the reasons for granting a case or referring a case to an immigration judge.  It includes limited legal and country conditions information and does not include information about the asylum process.  If the case is referred, the applicant is not given an opportunity to rebut the reasons the applicant was not found eligible.

   2.   A _Notice of Intent to Deny (NOID)_ is a preliminary denial letter written for cases in which the applicant is in status or is an _ABC_ class member (or a class member of the _Mendez_ Settlement Agreement).  It is written in the second person, referencing "you," and is sent to the applicant and representative, if any.  In addition to legal and country conditions information, it contains limited information about the asylum process, and gives the applicant an opportunity to rebut all the grounds for denial before a final decision is rendered.

D.   Although there are several differences between assessments and NOIDs, they contain the same basic components, which are:

_19_

US CITIZENSHIP AND IMMIGRATION SERVICES – RAIO        ASYLUM DIVISION OFFICER TRAINING COURSE
MAY 3, 2013                                                                          DECISION WRITING PART I: OVERVIEW

15

993

1.  Biographic/Entry Information

2.  Basis of Claim

3.  Prohibitions on Filing for Asylum

4.  Summary of Testimony

5.  Credibility Determination/Evidence Assessment

6.  Focused Legal analysis

7.  Decision

E.  Assessments and NOIDs should be informational in tone and should be written in language that is easily understood, without any reference to the first person pronoun "I" or "the asylum officer."  They should not include any personal opinions of the asylum officer.

