# EXHIBIT E

Case 1:15-cv-00687-CRC   Document 33-1   Filed 02/01/17   Page 2 of 45

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA CLEMENTE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-1252 (BJR) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION ) | |
| Et AL. ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF DR. LAURA A. MALOWANE

I, Laura A. Malowane, declare as follows:

1. I am a Vice President of Economists Incorporated, an economic consulting firm in Washington, D.C. I have been employed at Economists Incorporated since 1998. Prior to that I was an economic consultant for Princeton Economics Group and a lecturer in Economics and Statistics at Princeton University, both located in Princeton, NJ. I have testified about economic and statistical issues by declaration, at deposition, before administrative bodies and at trial. I have extensive experience in analyzing and testifying on issues related to the awarding of attorneys' fees.

2. I received my Ph.D. in Economics from Princeton University in 1998 where my areas of specialization were microeconomics and industrial organization. I also earned a Master degree in Economics from Princeton University in 1995, LL.B. and M.B.A. degrees from York University in 1991, and a Bachelor degree in Economics from York University in 1987. A copy of my curriculum vitae is attached as Appendix 1.

3. I have been asked by defendant to review the court materials in this matter and to provide my opinion about the appropriate attorney rate matrix to use for the calculation of reasonable attorney fees.

4. In my opinion the attorney fee matrix issued and updated by the United States Attorneys'
   Office for the District of Columbia ("USAO Matrix") is the appropriate matrix to use for
   purposes of determining plaintiff's attorney fees. In formulating my opinions I have
   reviewed the complaint, plaintiff's attorney fee motion materials, as well as publicly
   available data, cases and materials. A full list of the materials I have reviewed is attached
   as Appendix 2. I reserve the right to revise my opinions based on additional information
   that is made available to me and to respond to any additional declarations submitted by
   Plaintiff.

**BACKGROUND**

5. This case arises from a lawsuit brought by plaintiff to enjoin the Federal Bureau of
   Investigation from withholding information she had requested under the Freedom of
   Information Act. The court denied an initial motion for interim award of attorney fees but
   plaintiff filed a renewed motion for attorney fees.

6. Plaintiff's main attorney in this matter is James H. Lesar, a sole practitioner who has
   more than 45 years of experience. In the Plaintiff's Motion for An Award of Attorneys'
   Fees and Costs and its supporting exhibits and materials (collectively "Plaintiff's
   Motion"), plaintiff seeks to be reimbursed for Mr. Lesar's time using billing rates from a
   table that is known as the Salazar Matrix. This would provide a 2015/2016 per hour fee
   of $789 for Mr. Lesar.

**ANALYSIS**

**USAO, Laffey and Salazar Matrixes Overview**

7. For many years the United States Attorney's Office for the District of Columbia
   ("USAO") has used a specific matrix as a basis for determining reasonable attorneys'
   fees in litigation claims. This matrix concept was first introduced by the District Court for
   the District of Columbia to determine reasonable attorneys' fees for work performed in
   *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354, (D.D.C. 1983), aff'd 746 F.2d 4
   (D.C. Cir. 1984) ("*Laffey*"). The attorney fees awarded in that case were for work done
   primarily in 1981 and 1982.

8. To adjust the attorney rates provided in the *Laffey* case for later years, the USAO looked
   to the Bureau of Labor Statistics ("BLS") tracking of relevant pricing changes over time.
   The BLS publishes a monthly Consumer Price Index ("CPI"), which is a measure of the

average change over time in the prices paid by urban consumers for a market basket of consumer goods and services. The BLS also regularly publishes CPI indexes specific to certain local areas, including one for the Washington-Baltimore area. This index is referred to as the Consumer Price Index for All Urban Consumers for the Washington-Baltimore area ("CPI-Washington"). To determine reasonable attorney rates for periods following the *Laffey* case, the USAO has adjusted the original *Laffey* rates in accordance with changes in the CPI-Washington. The result has been a regularly updated matrix which provides hourly rates, based on years of experience, for attorneys, paralegals and law clerks in the Washington, D.C. area. This table, known as the Laffey Matrix, is presented in Appendix 3.

9.  In 2015, the USAO updated its matrix methodology and introduced a new matrix, known as the USAO Matrix. This new matrix begins with 2011 average hourly attorney rates in the Washington, DC area, which are derived from ALM Legal Intelligence's 2011 Survey of Law Firm Economics. This survey provides data of actual average billing rates of attorneys in the Washington, DC area, from law offices of all sizes and types.[1]

10. While the USAO Matrix will be updated periodically as new reliable survey data become available, in the interim years the matrix will be adjusted for inflation using a Producer Price Index ("PPI") published by the BLS. A PPI measures the average change over time in the selling price received by producers for their products or services. The specific PPI that will be used to update the USAO Matrix is one that tracks pricing changes in output of Offices of Lawyers ("PPI-OL"). The PPI-OL measures changes in the price received for output in the Offices of Lawyers industry code NAICS 541110. Legal services covered by this index include Real Estate, Civil Negligence, Estate Planning, Family, Tax, Intellectual Property, Bankruptcy, Labor and Employment, and Criminal. The types of prices measured by the index include hourly rates, flat fees, contingency fees, retainer fees and hybrid fees. Individuals providing these services include partners, associates and paralegals, while potential purchasers of such services include consumers, government agencies and corporations.[2] The USAO Matrix is presented in Appendix 4.

---

[1]   These data are available for purchase through the firm ALM Legal Intelligence (www.almlegalintel.com). 2011 rates are the most recent billing rates commercially available for firms in the Washington, DC area.

[2]   Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 20.

11. Plaintiff's attorney in this case proposes an alternative table of hourly rates be used, the Salazar Matrix, to calculate compensation for the attorney services rendered. This matrix was introduced in *Salazar v. District of Columbia*, 123 F.Supp.2d 8, 13-14 (D.D.C. 2000). The Salazar Matrix begins with a 1989 template of hourly billing rates for attorney services and then proposes to use a national consumer index, the U.S. City Average of the Consumer Price Index for Legal Services ("CPI- Legal Services"), to update these hourly billing rates.

12. The CPI-LS averages out pricing changes for personal legal services in several urban centers in the United States. The specific services tracked by the CPI- LS are non-commercial, legal services provided to individual household consumers, such as wills, uncontested divorces, powers of attorney, and traffic violations. For each of these pre-defined services, the BLS seeks to measure changes in the price for the entire procedure (otherwise known as a "flat-fee").[3]

13. Table 1 below displays the original data source and inflation index used for each of the three matrixes.

| Table 1 Salazar, USAO and Laffey Matrixes | | | |
|---|---|---|---|
| | Salazar Matrix | Laffey Matrix | USAO Matrix |
| Base Year Data | 1989 | 1982 | 2011 |
| Index Used for Updating | CPI-LS | CPI-Washington | PPI-OL |
| Source: www.laffeymatrix.com https://www.justice.gov/usao-dc/file/796471/download http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf | | | |

---

[3]     Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 18.

**The USAO Matrix is Superior to the Salazar Matrix for Estimating Federal Litigation Attorney Fees in Washington, DC**

14. In this section I contrast the USAO Matrix with the Salazar Matrix and show that the USAO Matrix is based on more current survey data, more precisely aligns billing rates to the years of experience of attorneys, and uses an inflation index that better captures the pricing changes of the relevant market. For these reasons the USAO Matrix is superior to the Salazar Matrix for estimating attorney fees in federal litigation cases in Washington, DC.

*i)      The USAO Matrix is Based on More Current Data*

15. The USAO and Salazar Matrix each begin with data of attorney billing rates for a given year and then update these rates each year with a specific inflation index. The USAO Matrix begins with 2011 survey data of billing rates while the Salazar Matrix begins with 1989 data. As stated in a Declaration by Mr. Kavanaugh provided in the Plaintiff's Motion materials "(i)n general, the more contemporary the observation, the less possibility exists for forecasting errors."[4] As each new year of matrix rates are estimated, there is a chance of forecasting error. Since each subsequent year's estimate is based on the estimate from previous years, any year's forecasting errors get compounded in future years. The more years the matrix continues without updating its original data source, the more each year's forecasting errors may be compounded. For this reason, estimated current attorney rates based on four-year old data (as they are in the USAO Matrix) is expected to be more accurate than that based on 27 year-old data (as they are in the Salazar Matrix).

*ii)      The USAO Matrix is More Precise in its Measure of Attorney Experience*

16. Both the USAO and the Salazar Matrix provide attorney fees based on categories of attorneys' years of experience. The USAO Matrix begins with an experience level of "less than 2 years" and has "31+ years" as its most experienced category. In total, the USAO Matrix provides nine individual experience categories. In contrast, the Salazar

---

[4]      Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, 2013, par. 23.

Matrix has five individual experience categories beginning with "1-3" years and ending with "20+" years.

17. Survey data indicate that attorney billing rates indeed do go up with each year of experience. For example, 2014 survey data show that the national hourly billing rate for individuals with 21 to 30 years of experience was $387, while the national hourly billing rate for individuals with 31 or more years of experience was $430.[5] Despite these differences, the Salazar Matrix would combine individuals in each of these experience levels into its single "20+" years category. Similar differences in billing rate by years of experience are observed in the data for all other subcomponents of the Salazar Matrix's broad experience categories. Having more narrowly defined categories of years of experience enables the USAO Matrix to more accurately capture an individual attorney's fees.

### iii)   The PPI-OL used by the USAO Matrix is Superior to the CPI-LS used by the Salazar Matrix for Measuring Pricing Changes in the Relevant Market

18. The USAO Matrix is preferable to the Salazar Matrix in its chosen inflation index for updating the data to future years. When using indices to update prices economists try to use the most specific index available. In this regard, an index that tracks pricing changes for federal litigation services in the Washington, DC area would be ideal. Since such an index is not available, it is necessary to seek a close substitute. As I explain in more detail below, the PPI-OL is superior to the CPI-LS as a close substitute.

19. While the PPI-OL does not track pricing changes for just federal litigation services, it does track overall inflationary trends in all areas of law including constitutional law, environmental law, bankruptcy and other types of federal litigation.  Unlike the PPI-OL, the CPI-LS utilized by the Salazar Matrix does not track pricing changes of the relevant services. The CPI-LS is a sub-component of the broader national CPI published by the BLS. The national CPI is a measure of the changes in prices paid by urban consumers for a market basket of consumer goods and services. "Legal services" is one such consumer service in the CPI's market basket, and pricing changes over time for these services are what is being measured in the CPI-LS used by the Salazar Matrix. Despite the generic title of "Legal Services" used by the BLS, the CPI-LS does not purport to measure the types of legal services at issue in this matter, or in any case in federal litigation. Instead,

---

[5]     ALM Legal Intelligence, Survey of Law Firm Economics, 2014, pp. 136, 154.

the CPI-LS is based on price movements for personal legal services in several urban centers in the United States. The "pre-selected" services tracked by the CPI-LS are legal services that may be used by typical household consumers in a given year, such as wills, uncontested divorces, powers of attorney, and traffic violations.[6] There is no reason to expect that pricing changes of consumer legal services tracks pricing changes of the services at issue here.[7]

20. In measuring pricing changes for consumer legal services, the CPI-LS does not track the forces of supply and demand for federal litigation services. The demand for the types of personal legal services covered by the CPI-LS come from people who need help with particular kinds of cases (such as uncontested divorce), and the supply of personal legal services comes from lawyers with knowledge of local rules for those kinds of cases. By contrast, the demand for federal litigation comes from individuals or corporations who need help with such intricate issues as public-interest litigation, and the supply of legal services for these cases comes from lawyers with experience in those areas. Because of legal specialization and the skills necessary to supply specific legal services, there is no reason to expect that lawyers who supply federal litigation services also supply personal legal services.

21. In contrast, the PPI-OL tracks pricing changes for federal litigation services along with other types of legal services. The PPI-OL also more accurately captures the purchasers and sellers of the relevant services and the overall market trends of federal litigation

---

[6] The BLS states that "The consumer price index program (CPI) calculates price indexes for legal services fees. These price indexes are primarily based on the price movement of the following specific flat-fee legal services. These pre–selected services are non-business related and include: 1. Preparing a brief, 2. Attending a deposition, 3. No fault or uncontested divorce, 4. Prenuptial agreement, 5. Wills and trusts, 6. Living wills, 7. Power of attorney, 8. Driving under the influence (DUI), 9. Traffic Violations, 10. Personal Bankruptcy, 11. Immigration/work visas." (Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 18)

[7] It has been suggested by one judge that using the pricing of consumer legal services to measure changes in the price of complex litigation is conservative and that the inclusion of such "comparatively inexpensive" services in the CPI-LS means that prices for complex federal litigation rise more rapidly than the overall CPI-LS would suggest. (Memorandum Opinion, *Laura J. Makray v. Thomas Perez*, Case No. 12-520 (D.D.C. February 8, 2016) pp.47-48) The implication is that the rates in the Salazar Matrix may be lower than actual rates because of the use of the CPI-LS. This argument confuses the price of a service with the change in the price of a service. While consumer services may indeed be less in price than more complex services, there is no reason to believe that the *change* in the price of consumer legal services is lower (or greater) than the change in the price of complex services. The best way to measure the change in prices of complex federal litigation services is to measure price movements in as close a market as possible. The CPI-LS does not allow for that.

services. On the purchaser side, the PPI-OL measurers pricing changes for services purchased by all types of entities, including consumers, government agencies and corporations. In contrast, the CPI-LS measures pricing changes for services purchased only by consumers. On the seller side, the PPI-OL is also superior for capturing the market for federal litigation services. The PPI-OL measures pricing changes for services provided by individuals at law firms, including partners, associates and paralegals. In contrast, the CPI-LS measures pricing changes for services provided by non-lawyer legal service firms in addition to regular law firms.[8]

22. The PPI-OL also more accurately measures the various pricing schemes used by attorneys in federal litigation matters. The purpose of the USAO Matrix and the Salazar Matrix is to measure reasonable actual <u>hourly</u> rates of lawyers. The CPI-LS used by the Salazar Matrix does not measure pricing changes in hourly rates. Instead, the CPI-LS is "primarily based on the price movements of the specific <u>flat-fee</u> legal services."[9] (Emphasis added) To determine prices for the CPI-LS, the BLS contacts consumer-oriented attorneys and records prices they charge for a defined "procedure" (such as a will). In other words, the CPI-LS tracks flat-fees for an entire service, not hourly rates.

23. The flat-fee tracked by the CPI-LS covers all the time spent to provide the service and may include other charges, such as travel expenses, document and filing fees, and postage costs. A change in local laws, such as requirements to obtain a divorce, may entail a change in the amount of time or expense necessary to render the service. Thus, the flat-fee charged for a specific legal service can change simply because of changes in the expected time and expenses needed to perform the service, rather than because of any change in hourly rates. For these reasons, a flat-fee index such as the CPI-LS can change at a different rate than hourly prices – even for the exact same type of legal service being performed.

24. At most law firms, standard hourly billing rates account for the vast majority of gross billings.[10] For example, in a 1998 national law survey, 88% of Washington, DC law firms

---

[8]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, pp. 18-20.

[9]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, p. 13.

[10]   Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, National Edition, June 1, 1998, p. xi. This survey was cited in the *Salazar v. District of Columbia* decision.

surveyed received 10% or less of gross billings in the form of flat-fees.[11] A 2009 survey indicated that for those Washington, DC area firms that do offer alternative billing, only 8% of revenue came from such billings.[12] Of course, Washington, DC law firms that do not offer flat-fee services at all receive 0% of their revenue from such billings.

25. In contrast to the CPI-LS, the PPI-OL tracks pricing changes for all types of pricing schemes used by law firms, including hourly rates. Survey respondents are asked to provide the pricing model used by the firm, whether it be hourly rates, flat fees, contingency fees, retainer fees or hybrid fees.[13]

26. The PPI-OL is also superior in that it seeks to specifically take account of the discount rates and contingency fees commonly offered by law firms. The BLS states that when collecting data on standard rates, the "realization rate or discount rate" should also be collected.[14] In contrast, according to the BLS, discounts are not incorporated into the CPI-LS data unless the contracted attorney "routinely" gives one for a specific service. It is my understanding that contingency fees are not included at all in the CPI-LS.

27. Surveys of law firms reveal that contingency fees and other alternative fees arrangements are common practice. In a 2008 survey of the largest law firms in the nation, 73% of respondents stated that they provide discounted hourly rates. Within Washington, DC, 64% of firms offer such discounts. Contingency fees are also commonplace. Of the survey respondents, 70% of firms nationwide, and 82% of firms in Washington, DC obtain revenue through contingency billings.[15] The BLS itself states that "in practice law firms usually discount their rates or fees using a discount rate or a realization rate."[16]

28. Overall, the USAO Matrix is superior to the Salazar Matrix in its use of more current survey data, and an inflation index that more accurately captures the types of purchasers,

---

[11]    Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, p. xi.

[12]    2009 National Law Journal Billing Survey.

[13]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 20.

[14]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 21.

[15]    2008 National Law Journal Billing Survey. See also Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, 1998.

[16]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 14.

sellers, prices and services that exist in the federal litigation industry. The inappropriateness of using the Salazar Matrix to measure attorney hourly rates in the Washington, DC area is illustrated in Table 2. This table depicts the actual attorney billing rates in 2011 in the Washington, DC area as well the billing rates provided by the Salazar Matrix for that same year. In each category of attorney experience, the Salazar Matrix provides rates that are much higher than the actual rates seen in the area. In the most experienced category, which is the category of the attorney at issue, the Salazar Matrix provides a rate that is $250 more per hour than the rate observed in the Washington, DC area.

| Table 2 | | | | |
|---|---|---|---|---|
| 2011 Rate | | | | |
| Years Since Law School | Salazar Matrix | Average Billing Rates (Washington, DC) | Salazar $ Greater Than Actual | Salazar % Greater Than Actual |
| 20+ years | $709 | $459 | $250 | 54.5% |
| 11-19 | $589 | $418 | $171 | 40.9% |
| 8-10 | $522 | $338 | $184 | 54.4% |
| 4-7 | $361 | $295 | $66 | 22.4% |
| 1-3 | $294 | $270 | $24 | 8.9% |

Source:
www.laffeymatrix.com
ALM Legal Intelligence, Survey of Law Firm Economics, 2011

**Plaintiff's Motion and Declaration of Mr. Kavanaugh**

29. In her motion, the plaintiff provides a single justification for using the Salazar Matrix: "because it contains as the updating component the measure of the cost of legal services called the Legal Services Index."[17] Plaintiff contrasts this with the old Laffey Matrix

---

17      Plaintiff's Motion for An Award of Attorneys' Fees and Costs, p.38.

which relies on the CPI-Washington, but never addresses the new USAO Matrix or why the Salazar Matrix is superior to it.

30. In support of the proposed use of the Salazar Matrix, plaintiff refers to a 2013 declaration in another matter by economist Michael Kavanaugh. In this unrelated declaration Mr. Kavanaugh provides his opinion as to why the use of the CPI-LS in the Salazar Matrix is superior to the use of the CPI-Washington in the Laffey Matrix. As with the Plaintiff's Motion, Mr. Kavanaugh does not address the USAO Matrix or its use of the PPI-OL.

31.  Mr. Kavanaugh provides three reasons why, in his opinion, the Salazar Matrix is superior to the Laffey Matrix: 1) the specific goods and services included in each price index, 2) the characterization of the market in the provision of complex legal services, and 3) the age of the sample rates.[18] Even though Mr. Kavanaugh and plaintiff's counsel do not address the differences between the Salazar Matrix and the USAO Matrix, I address each of Mr. Kavanaugh's reasons for preferring the Salazar Matrix and the CPI-LS in turn as it relates to the USAO Matrix and the PPI-OL.[19]

32. Mr. Kavanaugh states that the specific goods and services covered by the CPI-LS is the first reason he favors the Salazar Matrix and its use of the CPI-LS for adjusting rates as compared to the Laffey Matrix and its use of the CPI-Washington. In particular he argues that the CPI-LS is superior because it measures fees charged for providing specific legal services while the CPI-Washington measures prices of a basket of goods for consumers.

33. Mr. Kavanaugh's first reason for preferring the CPI-LS does not apply to the use of the PPI-OL as it also measurers legal services. In fact, the PPI-OL is superior to the CPI-LS for capturing the relevant services at issue. While both indexes measure pricing changes in legal services, the PPI-OL covers all areas of law including constitutional law, environmental law, bankruptcy and other types of federal litigation. In contrast, the CPI-LS does not measure the types of legal services at issue in this matter, or generally in federal litigation.  Instead, the CPI-LS is based on price movements for personal legal services that may be used by typical household consumers such as prenuptial

---

[18]    Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, 2013.

[19]    Later in this declaration I address plaintiff's arguments as they relate to the Laffey Matrix.

agreements, living wills, work visas, and driving under the influence violations.[20] Mr.
Kavanaugh states, and I agree, that "economists try to use the most specific index
available."[21] The CPI-LS is not the most specific index available for measuring pricing
changes in complex federal litigation.

34. Mr. Kavanaugh states that a second reason he favors the CPI-LS over the CPI-
Washington is that it "more accurately reflects the conditions of competition for complex
litigation."[22] Specifically, Mr. Kavanaugh states that in his opinion the market for legal
services in complex federal litigation is a national market and that an index that tracks
national pricing changes is preferable to one that tracks Washington, DC area pricing
changes.

35. Once again Mr. Kavanaugh's cited reason for preferring the CPI-LS has no merit when
comparing it to the PPI-OL. Like the CPI-LS, the PPI-OL is a national index that tracks
pricing changes throughout the country. Indeed the PPI-OL is preferable to the CPI-LS in
tracking pricing changes in national complex federal litigation services as it more
accurately tracks the prices charged and paid by the types of sellers and purchasers of
complex litigation. The CPI-LS, in its focus on consumer purchasers of legal services
allows for the inclusion of services offered by non-attorney firms and ignores purchases
made by corporate or government entities.

36. Mr. Kavanaugh's final reason for preferring the use of the Salazar Matrix and CPI-LS
over the Laffey Matrix and CPI-Washington is that the Salazar Matrix uses "the most

---

[20]  The BLS states "The consumer price index program (CPI) calculates price indexes for legal services fees.
These price indexes are primarily based on the price movement of the following specific flat-fee legal
services. These pre–selected services are non-business related and include: 1. Preparing a brief, 2.
Attending a deposition, 3. No fault or uncontested divorce, 4. Prenuptial agreement, 5. Wills and trusts, 6.
Living wills, 7. Power of attorney, 8. Driving under the influence (DUI), 9. Traffic Violations, 10. Personal
Bankruptcy, 11. Immigration/work visas." (Bureau of Labor Statistics, Industry Synopsis: NAICS 541110
– Offices of Lawyers, p. 18.)

[21]  Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S.
Department of Justice*, 2013, par. 19.

[22]  Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S.
Department of Justice*, 2013, par. 22.

recent survey of rates developed in 1989" and that "the more contemporary the observation, the less possibility exists for forecasting error."[23]

37. Applying Mr. Kavanaugh's reasoning to a comparison between the USAO Matrix and the Salazar Matrix shows that Mr. Kavanaugh should clearly favor the USAO Matrix as it is based on 2011 survey rates which are 22 years more recent than the rates relied upon in the Salazar Matrix. Like his other opinions, Mr. Kavanaugh's third and final reason for favoring the Salazar Matrix has no merit when comparing the matrix to the USAO Matrix.

38. Overall, the plaintiff and Mr. Kavanaugh provide no valid reason why the Salazar Matrix and its use of the CPI-LS is superior to measuring attorney fees in complex federal litigation cases in Washington, DC. Their arguments do not address the USAO Matrix and its use of the PPI-LS, nor are they valid when examining them within the context of the new matrix.

**The Laffey Matrix is Superior to the Salazar Matrix for Estimating Federal Litigation Attorney Fees in Washington, DC**

39. Prior to the 2015/2016 year, the USAO utilized the Laffey Matrix to determine appropriate attorney fees in complex federal litigation cases in Washington, DC. In this section I discuss why the Laffey Matrix is superior to the Salazar Matrix for determining such fees in years prior to the introduction of the USAO Matrix.

*i)*      *The Laffey Matrix More Accurately Reflects Actual Attorney Rates*

40. The purpose of using a matrix for determining attorneys' fees in particular cases is, of course, to approximate the reasonable average hourly rates collected in the local community by attorneys with similar experience working on comparable cases, (i.e. the "market rate"). With this objective in mind, I have reviewed the ALM Legal Intelligence's 2011 Survey of Law Firm Economics, which provides data of actual average billing rates of attorneys in the Washington, DC area, from law offices of all sizes and types. Table 3 below compares the 2011 average billing rates of attorneys in the Washington, DC metro area with the rates listed in the Salazar Matrix and the Laffey Matrix for that same year. This table reveals that the Laffey Matrix attorney rates are

---

[23] Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, 2013, par. 23.

approximately the same as (or slightly higher or lower than) the overall billing rates of firms in the DC area, while the Salazar Matrix rates are consistently higher than the actual average billing rates of firms in this region.

| Table 3 Washington, DC Billing Rates 2011 | | | |
|---|---|---|---|
| Years Since Law School | Salazar Matrix[1] | Laffey Matrix[2] | Average Billing Rates (Washington, DC)[3] |
| 20+ years | $709 | $475 | $459 |
| 11-19 | $589 | $420 | $418 |
| 8-10 | $522 | $335 | $338 |
| 4-7 | $361 | $275 | $295 |
| 1-3 | $294 | $230 | $270 |

Source: [1] www.laffeymatrix.com
[2] http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf
[3] ALM Legal Intelligence, Survey of Law Firm Economics, 2011

41. Table 4 shows, in percentage terms, how much greater (or smaller) each of the respective matrices rates are in comparison to actual average billing rates. The Laffey Matrix rates range between 15% lower and 3% higher than actual Washington, DC average billing rates in 2011. By contrast, the Salazar Matrix rates range between 9% and 54% higher than actual average billing rates. For the specific attorney at issue in this matter, the Laffey Matrix provides a rate that is 3% higher than average local rates, while the Salazar Matrix provides a rate that is 54% higher. Thus, the Laffey Matrix rates better approximate past actual average billing rates of DC area attorneys such as plaintiff's counsel than the estimated rates offered in the Salazar Matrix.

| Table 4 | | |
| 2011 Percentage Differences in Rates | | |
| Matrix v. Actual | | |
| Years of Experience | Salazar Matrix Greater (Less) Than Actual [1,3] | Laffey Matrix Greater (Less) Than Actual [2,3] |
|---|---|---|
| 20+ years | 54% | 3% |
| 11-19 | 41% | 0% |
| 8-10 | 54% | -1% |
| 4-7 | 22% | -7% |
| 1-3 | 9% | -15% |

Source: [1] www.laffeymatrix.com

[2] http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf

[3] ALM Legal Intelligence, Survey of Law Firm Economics, 2011

*ii)*   ***Attorney Rates Vary Across Firm Size***

42.  As discussed above, for experienced attorneys such as the plaintiff's counsel in this case, the Salazar Matrix provides rates that are hundreds of dollars more than the median billing rates of similarly experienced attorneys. There exists a further reason why the Salazar Matrix would provide even greater over-compensation to the plaintiff's attorney. Law firm billing rates generally differ with the size, region and scope of the firm. Billing rates at a sole practitioner office, such as that of Mr. Lesar, are not comparable to those at large multi-office, multinational law firms.[24] Small firms generally do not have the same overhead as larger firms and, as a result, attorneys at small firms generally are able to offer services at lower fees (but not necessarily lower profits) than those at their larger firm counterparts.[25] Similarly, larger multinational firms may be able to command higher

---

[24]   See, for example, Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, National Edition, June 1, 1998; and, ALM Legal Intelligence, Survey of Law Firm Economics, 2014. For a discussion of cases that have recognized that billing rates generally vary by firm size see Memorandum Opinion, *Dick Anthony Heller v. District of Columbia,* December 29, 2011.

[25]   Some of the overhead that may be higher at larger firms include staff wages, former partner compensation, and occupancy expense. Plaintiff's attorney himself states that he does not have a secretary or office

fees due to, among other reasons, an offering of more services, having a better national or international reputation, having the capacity to take on bigger or more complicated matters, or being located in a higher rent and higher profile area of the region. Clients seeking lower cost alternatives to the large firms may seek out attorneys from smaller firms.

43. The role that firm size plays in attorney billing rates was addressed by this Court in 2011 in the matter of *Dick Anthony Heller v. District of Columbia*, Civil Action No. 03-213 (EGS). In that case, I submitted an affidavit regarding attorneys' fees and the opposing expert, Michael Kavanaugh, submitted a declaration in response to my affidavit. In its Memorandum Opinion the Court found it "significant" that Dr. Kavanaugh did not dispute my assertions regarding the impact that firm size may have on an attorney's hourly rate, nor my statements regarding the ability of small and medium size firms to offer services at lower rates than those attorneys at their larger firm counterparts.[26] For these reasons, the Court stated that it was unwilling to award the high rates suggested by the Salazar Matrix absent specific evidence that those rates are, indeed, the prevailing markets rates for attorneys engaged in federal litigation outside of the District of Columbia's largest law firms.[27]

44. The BLS has also stated that one of the determinants of price for attorneys is the size of the firm for which the lawyer works. It further states that "A large firm will generally bill at a higher rate than a smaller firm. Sole proprietorships generally bill the lowest rates or fees in the industry."[28]

45. Recent survey data show that, for both partners and associates, 2014 attorney billing rates do in fact increase with the number of lawyers at the attorney's law firm. For example, in 2014 the national average rate for a partner at a firm with 1 to 9 lawyers was $300, while the same rate for a partner at a firm with over 150 lawyers was $454. Associate rates reveal similar patterns. In 2014 the national average billing rate for an associate at a firm

---

assistant, and does not subscribe to legal research services such as LexisNexis and Westlaw. (Plaintiff's Motion, p. 19)

[26]    *Dick Anthony Heller v. District of Columbia*, Memorandum Opinion, footnote 12.

[27]    *Dick Anthony Heller v. District of Columbia*, Memorandum Opinion, page 29.

[28]    Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 – Offices of Lawyers, 2013, p. 16.

with 1 to 9 lawyers was $227, and the same rate for an associate at firm with over 150 lawyers was $280.[29]

46. Indeed, 2014 data indicate that the Salazar Matrix rate that the plaintiff's attorney is requesting more accurately reflects the billing rate of partners at the largest firms in Washington, DC. The National Law Journal ("NLJ") 350 Annual Survey is a comprehensive survey that the NLJ performs each year. It encompasses billing rates of the 350 largest firms in the nation, who have offices dispersed throughout the country as well as internationally. For most law firms surveyed, the NLJ provides information on the firm's number of attorneys, principal or largest office location, and attorney billing rates. Partner and associate attorney billing rates are provided separately, with the minimum, maximum and average rates for each group being shown.

47. I examined the 2014 NLJ survey to gather billing rate data of the nation's largest firms that have their main office location in Washington, DC. Overall, twelve such firms provided billing data for the survey. These firms range in size from 122 lawyers to 2,313 lawyers. Table 5 compares the 2014 actual billing rates of partners in these twelve largest firms headquartered in Washington, DC with the rates that the plaintiff's attorney would receive under the Salazar Matrix. As the table shows, the billing rate of $789 per hour that plaintiff's attorney is requesting is even higher than the average billing rate of partners at the nation's largest law firms headquartered in the Washington DC area. In fact, eight of the twelve firms surveyed have average partner billing rates that are lower than the plaintiff's attorney's requested rate. Plaintiff's attorney's requested rate is even higher than the single highest billing rate of *any* partner at the law firm of Akin Gump, a firm with 809 lawyers spread over 22 offices in nine countries.[30] Moreover, Sterne, Kessler, Goldstein & Fox, the smallest Washington, DC firm in the survey of the nation's largest firms, has 122 lawyers in its sole office in Washington, DC and has an average partner billing rate of $577; again much smaller than the plaintiff's attorney's requested hourly rate of $789.[31] Plaintiff's requested rate simply cannot be justified, even by comparing it to rates charged by the country's largest, most prestigious firms that are headquartered in Washington, DC.

---

[29]    ALM Legal Intelligence, Survey of Law Firm Economics, 2014, p. 148.

[30]    http://www.akingump.com/en/locations/index.html

[31]    http://www.skgf.com/location



iii)    *The CPI-LS Does Not Accurately Capture the Relevant Services or Geographic Region*

48. The Laffey Matrix has updated its rates annually using the CPI-Washington, a consumer index for the greater Washington, DC area. The Salazar Matrix's rates are updated annually using the CPI-LS, an index of consumer legal services for cities across the country. It is illogical to conclude that the Salazar Matrix is preferred because it uses a consumer legal services index to update attorney rates, while the Laffey Matrix uses a Washington, DC index to update its rates.

49. While the CPI-Washington does not specifically track pricing changes for federal litigation services, it does track overall inflationary trends in the relevant region of greater Washington, DC. By comparison, the CPI-LS utilized by the Salazar Matrix tracks neither regional inflationary trends, nor supply and demand induced pricing changes of the relevant services.

50. As discussed earlier, the CPI-LS does not purport to measure the types of legal services at issue in this matter, or generally in federal litigation. Instead, the CPI-LS is based on price movements for personal legal services in several urban centers in the United that

may be used by typical household consumers in a given year, such as wills, uncontested divorces, powers of attorney, and traffic violations.

51. Due to intricacies in both demand and supply, the CPI-LS can and should be used only to measure average urban price changes for consumer driven legal services. There is no justification for using the CPI-LS to measure price changes for other products or services such as complex federal litigation services. But this is exactly how the Salazar Matrix uses the CPI-LS.

52. Not only does the CPI-LS not measure pricing changes in the services at issue, it also does not measure pricing changes in the region at issue. The CPI-LS averages price changes for specific flat-fee services across certain US cities. As I explain below, there is no reason to expect that this average is representative of any particular city, including Washington, DC.

53. Due to the importance of local rules as well as the convenience of the client, consumer legal services tend to be regional in nature. An individual seeking legal assistance for a traffic violation or an uncontested divorce, for example, will most commonly seek a local attorney. There is no reason to believe that an attorney in Chicago, for example, would (or even could) provide these types of services to an individual in Los Angeles, or that an individual consumer in Los Angeles would seek an out-of-state attorney for such personal services.

54. Moreover, the specific components necessary to provide a consumer legal service may also differ by region. A no-fault divorce, for example, may require different attorney time and expense commitments in one region versus another because of local laws. Thus the flat-fee charged for such a service (which is what the CPI-LS measures) may be different by locality simply because the services required are different.

55. Because of the regional nature of personal legal services as well as differences in local legal requirements, consumer legal fees are unlikely to be uniform nationwide. The CPI-LS, by averaging price changes across many different cities, is simply providing a national urban average. There is no reason to expect that this average appropriately reflects the Washington, DC area or any other particular city.

56. Also of importance is that the purpose of the Laffey Matrix and the Salazar Matrix is to measure reasonable hourly rates of lawyers. As discussed earlier, the CPI-LS used by the Salazar Matrix does not measure pricing changes in hourly rates. Instead, the CPI-LS is

primarily based on the price movements of the specific flat-fee legal services. Surveys such as those discussed earlier, reveal that hourly billing rates are overwhelmingly more commonplace than flat-fee pricing for attorney services and that there is no reason to believe that changes in the price of flat-fee consumer legal services accurately reflect changes in the hourly rate of complex federal litigation.

57. The CPI-LS does not accurately capture the relevant services or geographic region at issue and primarily measures price changes in the types of fees a very small minority of law firms charge and from which few law firms derive any significant revenue.

### iv)   Salazar Matrix Does Not Represent Rates of the Vast Majority of Attorneys

58. As discussed above, the Salazar Matrix rates are as high as, or higher than, most partner rates of the Washington, DC firms that are included in the nation's largest 350 firms. Recent data indicate that approximately 128,000 attorneys work in the country's 350 largest law firms.[32] According to the American Bar Association, there exist approximately 1.27 million attorneys in the United States. Thus, attorneys at the largest law firms in the country represent less than 10% of nation's total available attorneys.

59. Since the Salazar Matrix rates are similar or higher than fees charged by the absolute largest firms in the country, its rates represent, at most, 10% of the attorneys in the country and likely a much smaller percentage than that.[33] As this Court has stated in the _Heller_ matter, the requesting party has failed to provide "specific evidence that [the Salazar Matrix] rates are, indeed, the prevailing market rates for attorneys engaged in complex federal litigation outside the District of Columbia's largest law firms."[34]

60. Overall, for years prior to 2015, the Laffey Matrix is superior to the Salazar Matrix for estimating hourly attorney fees in complex federal litigation cases in Washington, DC. The Laffey Matrix more accurately reflects actual attorney rates in Washington, DC and the rates of the vast majority of attorneys.

---

[32]   http://www.law360.com/articles/518950/law360-reveals-400-largest-us-law-firms

[33]   The data show that the Salazar Matrix rate that plaintiff's counsel is requesting is higher than eight out of twelve of the country's largest law firms headquartered in Washington, DC. For this reason, the Salazar Matrix likely represents rates at a small fraction of even the largest 350 firms in the country, and thus likely even less than 10% of attorneys in the country.

[34]   _Dick Anthony Heller v. District of Columbia_, Memorandum Opinion, page 29.

## CONCLUSION

61. The USAO Matrix is the appropriate matrix to use for purposes of determining plaintiff's attorney fees. For rates prior to 2015/2016, the Laffey Matrix is superior to the Salazar Matrix for determining such fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 6, 2016

Laura A. Malowane

**Appendix 1**

**Curriculum Vitae of Dr. Laura A. Malowane**



# LAURA A. MALOWANE

**Office Address**

Economists Incorporated
2121 K Street, NW
Suite 1100
Washington, DC 20037
(202) 223-4700
Fax:  (202) 296-7138
malowane.l@ei.com

**Home Address**

5103 Brookeway Drive
Bethesda, MD  20816

**Education**

Ph.D. Economics, 1998
Princeton University

M.A. Economics, 1995
Princeton University

MBA, 1991
York University, Schulich School of Business

LL.B., 1991
York University, Osgoode Hall Law School

B.A. Economics, 1987
York University

**Professional Experience**

2005-Present:   Vice President, Economists Incorporated

1998-2005:       Senior Economist, Economists Incorporated

1997-1998:       Lecturer, Princeton University, Woodrow Wilson School of
Public Policy

1994-1997:       Senior Economist, Princeton Economics Group



**Professional Experience (continued)**

       1992-1993:     Law Clerkship, McMillan Binch, Barristers & Solicitors

       1989:           Economic Analyst, Environment Canada, Government of Canada

       1988:           Economic Analyst, Department of Regional Industrial Expansion, Government of Ontario

**Articles and Papers**

"Estimating Lost Earnings for a Single Plaintiff," *Economists Ink*, Spring 2015 (with Benjamin S. Shippen).

"Wrongful Death Damages and Personal Consumption Offsets," *Economists Ink,* Winter 2015.

"E-Commerce Tax Implications of the Marketplace Fairness Act," *Economists Ink*, Winter 214.

"Supreme Court Ruling Concerns Antitrust Fines and Evidence of Economic Effects," *Economists Ink*, Fall 2012.

"Calculating Awards of Attorney Fees," *Economists Ink*, Summer 2011.

"Resale Price Maintenance and the Rule of Reason," ABA Section of Antitrust Law, *Economics Committee Newsletter,* Volume 10, Number 1, Summer 2010 (with Allison Holt).

"Assessing Monopolization Claims in the Face of Innovation," *Economists Ink*, December 2009 (with Barry C. Harris and Matthew B. Wright).

"Resale Price Maintenance and the Rule of Reason," *Economists Ink*, Summer 2008.

"Geographic Market Definition In Markets with Imports:  Evolution of Antitrust Agency Analysis," *The Threshold*, 2007 (with Philip Nelson and Robert Kneuper).

"Imports and Geographic Market Definition," *Economists Ink*, Spring 2007.

"The Deterrence Value of Punitive Damages," *Economists Ink*, Fall 2001 (with Jonathan Walker).



**Articles and Papers (continued)**

"Exporters to the U.S. Apparel Industry: The Significance of Geographic Proximity," *Economists Ink*, Fall 1998.

"Foreign Competition, Domestic Market Power and Antitrust Policy: A Survey and Analysis," (Princeton University, Spring 1998).

"International Competition, Antitrust Policy and Asymmetric Information: When are Foreign Firms a Sufficient Competitive Discipline?" (Princeton University, Fall 1997).

"Foreign Competition in the U.S. Apparel Industry,"(Princeton University, Spring 1998).

**Testimony**

*Caroline Herron v. Fannie Mae* - Provided expert report and deposition testimony on behalf of defendant regarding damages in a wrongful termination and defamation claim, United States District Court for the District of Columbia, Civil Action No. 10-943 (RMC), 2015.

*Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice* – Provided declaration on behalf of defendant regarding proper methodology and data sources for assessing attorneys' fees, United States District Court for the District of Columbia, Civ. No. 12-1491 (JDB), 2015.

*Wilma Eley v. District of Columbia* – Declaration regarding attorneys' fees in a separate matter (Civ. No. 12-1491) filed by United States in support of its Statement of Interest, United States District Court for the District of Columbia,  Civil Action No. 11-0309 (BAH), 2015.

*Laura J. Makray v. Thomas E. Perez, Secretary of Labor* – Provided declaration and supplemental declaration on behalf of defendants regarding rate matrixes to use for assessing attorneys' fees, United States District Court for the District of Columbia, Civil Action No. 12-0520 (BAH), 2015.

*Premium Pet Health v. All American Pet Proteins, et al.* – Provided report and rebuttal report on behalf of plaintiff regarding damages and lost profits due to tortious interference, employee misconduct and breaches of loyalty, District Court, Denver County, Colorado, Case Number: 2014cv31356, Div./Ctrm.: 259, 2015.



**Testimony (continued)**

*Citizens for Responsibility and Ethics in Washington v. U.S. Department of Veterans Affairs* – Provided declaration on behalf of defendants regarding rate matrixes to use for assessing attorneys' fees, United States District Court for the District of Columbia, Civil Action No. 08-1481 (PLF), 2015.

*Steven Farrell v. Great Eastern Resort Corporation, et al.* – Provided report on behalf of plaintiff to address report on behalf of plaintiff to address antitrust and economic issues in the timeshare industry, in the United States District Court for the Western District of Virginia, Harrisonburg Division, No. 5:13 CV 00075, 2013.

*Gary Martin v. United States of America* – Provided expert report and deposition testimony on behalf of defendant regarding damages in a wrongful death claim, in the United States District Court for the District of New Hampshire, No. 11-CV-593-JL, 2013.

*Elizabeth Abel, et al. v. CSX Transportation, et al.* – Provided declaration on behalf of defendants regarding punitive damages in a railway accident matter, in the Philadelphia County Court of Common Pleas, No. 000769, 2013.

*Fred E. Evans, et al. v. United States, and Edward L. Bright, II et al. v. United States* – Provided declaration on behalf of plaintiffs regarding the competitive market rates of attorneys, in the United States Court of Appeals for the Federal Circuit, No. 2010-1303 and No. 2010-1385, 2012.

*Cynthia Hyland v. Raytheon Company, Raytheon Technical Services Company, Heidrick & Struggles, Inc., Bryan J. Even, and Laura Miller* – Provided report and trial testimony on behalf of defendant regarding damages in retrial of defamation and wrongful termination case, in the Circuit Court for Fairfax County at Law No. 221038.

*Michael Akosile v. Armed Forces Retirement Home* – Provided report on behalf of defendants with respect to the state of the job market for health care workers, in the United States District Court for the District of Columbia, No. 09-CV-173 (RBW), 2012.



**Testimony (continued)**

*Steven J. Hatfill, M.D., v. John Ashcroft, et al.* – Provided report and deposition testimony on behalf of the Department of Justice regarding damages stemming from alleged violation of constitutional rights and defamation of an individual labeled as a person of interest in the investigation of the mailing of lethal Anthrax letters in the United States, United States District Court for the District of Columbia, Civ.A. No.03-1793 (RBW).

*Beth M. Norden v. G. Wayne Clough, Secretary, Smithsonian Institution* – Provided affidavit on behalf of the Smithsonian Institution addressing acceptable methods for assessing attorneys' fees, in the United States District Court for the District of Columbia, Case No. 05-1232 (RMC).

*Dorothy L. Biery, et al, and Jerramy and Erin Pankratz, et al., v. The United States* – Provided declaration on behalf of plaintiffs regarding the relevant market for attorney fees and the reasonableness of current billing rates, in the United States Court of Federal Claims, No. 07-693L and 07-675L, 2012.

*Mohammed Amin Kakeh v. United Planning Organization* – Provided affidavit regarding the appropriate method to use to value attorney fees, in the United States District Court for the District of Columbia, No. 1:05-CV-1271 (GK/JMF).

*Margaret A. Burnette v. Vangent* – Provided expert report on behalf of defendant on the valuation of damages stemming from allegations of sexual discrimination and wrongful termination, in the United States District Court for the Eastern District of Virginia (Alexandria Division), No. 1:10 CV 1079, 2011.

*Reginald G. Moore, et al. v. U.S. Department of Homeland Security* – Provided declaration on behalf of the Department of Homeland Security regarding appropriate statistical methods in relation to a discrimination matter of Secret Service employees, in the United States District Court for the District of Columbia, Civ. No. 000-953 (RWR/OAR), 2010.

*Queen Anne's Conservation Association v. United States Department of State* – Provided declaration on behalf of defendant regarding the appropriate use of the Laffey Matrix for the calculation of attorney's fees, in the United States District Court for the District of Columbia, No. 10-0670 (CKK), 2010.

*Oscar Salazar, et al. v. District of Columbia, et al.* – Provided affidavit on behalf of defendants regarding the appropriate method for determining attorneys' fees, in the United States Court for the District of Columbia, No. 93-452 (GK), 2010.



**Testimony (continued)**

*American Thoracic Society v. American Lung Association* – Provided affidavit on behalf of defendant regarding the use of discount rates and consumer price indexes to properly capture the time value of money in present and future income values, in the Superior Court of the District of Columbia, No. 2009 CA 004543 B, 2010.

*Dick Anthony Heller v. The District of Columbia* – Provided declaration on behalf of defendant in relation to the appropriate methods for valuing attorneys' fees and the usage of the Laffey Matrix, in the United States District Court for the District of Columbia, No. 03-CV-0213-EGS, 2010.

*Gist and Herlin Press, et al. v. Jeffery D. Poland and The Pension Service, Inc.* - Provided economic analysis and deposition testimony on behalf of plaintiffs regarding damages stemming from erroneous pension funding estimates, in the Superior Court for the Judicial District of Waterbury, No: X10 UWY-CV-05-40101305.

*Cynthia Hyland v. Raytheon Company and Raytheon Technical Services Company* – Provided report, trial and deposition testimony on behalf of defendant regarding damages in defamation and wrongful termination case, in the U.S. District Court for the Eastern District of Virginia (Alexandria Division), No. 1:04CV1273, 2005; Circuit Court for Fairfax County at Law No. 221038.

*Victoria Gray v. American Academy of Achievement* – Provided affidavit on behalf of defendants regarding analysis of damages from breach of services contract, Superior Court of the District of Columbia, No. 04ca003012, 2005.

*Neurology Services v. Fairfax Medical* – Provided affidavit on behalf of defendant regarding economic losses in a breach of contract case, in the Circuit Court for Fairfax County, No. L220451, 2005.

*Mario Panayutidis v. Bill Page Imports* – Provided report on behalf of defendants regarding damages in a wrongful termination case, in the U.S. District Court for the Eastern District of Virginia (Alexandria Division), No. 1:05CV604, 2005.

*Kevin T. Keleghen v. Sears, Roebuck and Co.* – Provided affidavit and deposition testimony on analysis of economic losses on behalf of plaintiff in defamation and breach of contract case, Circuit Court of the Nineteenth Judicial Circuit Lake County, Illinois, No. 02L938, 2005.



**Testimony (continued)**

*World Trade Center, Victims Compensation Fund:  Raymond Murphy* – Co-authored written report and provided oral expert testimony before the Victims Compensation Fund regarding economic losses to the family of a New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  Dennis McHugh* – Co-authored written report and provided oral expert testimony before the Victims Compensation Fund regarding economic losses to the family of a New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  Robert Crawford* – Co-authored written report and provided oral expert testimony before the Victims Compensation Fund regarding economic losses to the family of a New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  Thomas Farino* – Co-Authored written report and provided oral expert testimony before the Victims Compensation Fund regarding economic losses to the family of a New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  James* Corrigan – Co-authored written expert testimony to the Victims Compensation Fund regarding economic losses to the family of a retired New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  John Moran* – Co-authored written expert testimony to the Victims Compensation Fund regarding economic losses to the family of a New York firefighter that died on 9/11.

*World Trade Center, Victims Compensation Fund:  Nathaniel Webb* – Co-authored written expert testimony to the Victims Compensation Fund regarding economic losses to the family of a Port Authority police officer that died on 9/11.

*Section 201 Steel-* Co-authored written expert testimony for the International Trade Commission regarding the financial and economic state of the domestic steel industry, 2001 (No. 201-TA-073).

*Lockheed Martin/COMSAT* – Co-authored written expert testimony to the Federal Communications Commission regarding an analysis of the competitive impact of a proposed merger in the satellite industry, 1999.



**Honors and Awards**

> Princeton University Full Graduate Fellowship – 1997, 1996, 1995, 1994, 1993
> Ontario Graduate Scholarship – 1991, 1990, 1988
> York University Business School Dean's Honor Roll – 1991, 1990, 1988
> York University Business School Proctor & Gamble Entrance Scholarship – 1987
> York University Scholarship – 1987, 1986, 1985
> York University Economics Award – 1987

**Selected Consulting Matters**

> *Asbestos and RICO Litigation* – Performed damage analysis on behalf of plaintiff in a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 2012.

> *Sue O'Brien et. al. v. Leegin Creative Leather Products, Inc.* – Assistance with liability and damages in resale price maintenance case, in the Eighteenth Judicial District Court, Sedgwick County, Kansas, Civil Department, No. 04CV1688.

> *Patrick J. Cunningham and Anton N. Zanki v. International Business Machines Corporation* – Provided liability and damage analysis on behalf of defendant concerning alleged breach of contract of employee retirement benefits.

> *Unions and RICO Litigation* – Performed damage analysis on behalf of plaintiff regarding contract interference and allegations under the Racketeer Influenced and Corrupt Organizations Act (RICO), 2011.

> *In Re: Ideal Mortgage Bankers, Ltd.* – Performed damage analysis on behalf of defendant in class action case involving alleged violation of the Fair Labor Standards Act, 2008.

> *Lead Paint Litigation* – Provided assistance in several individual cases with the estimation of damages from the use of lead in paints and pigments, 2007.

> *UPMC Acquisition of Mercy Hospital Assisted in Hart-Scott-Rodino and Pennsylvania Attorney General* - Reviewed hospital transaction in Pittsburgh, Pennsylvania, 2007.



**Selected Consulting Matters (continued)**

*Arizona Nursing Services Investigation and Litigation* – Economic analysis on behalf of defendants in government investigation and private litigation of alleged monopsony purchasing of temporary nursing services, 2006.

*Amazon Study: Taxation of E-commerce* - Performed studies on effects of taxation on internet transactions of various sized firms, 2004, 2009, 2012, 2014.

*John Jonson, et. al., v. Big Lots Stores, Inc.* – Assisted in analysis on behalf of defendant concerning alleged violation of Fair Labor Standards Act, 2008.

*In Re: Lockheed Meridian, MS Shooting Incident* – Assisted with estimate on behalf of defendant regarding damages, 2006.

*In Re: Robin Singh d/b/a Test Masters* – Assisted on behalf of plaintiff concerning damages in standardized testing preparation industry, 2007, 2009.

*Harrah's Entertainment, Inc./Caesars Entertainment, Inc. Merger* – Assisted in Casino Control Commission, State of New Jersey, review of competition related to casino merger, 2005.

*Estate of Peter Haskos, et al vs. Lee Jung, M.D. et al* - Provided damage analysis for defendant in claim of wrongful death, State of Connecticut Superior Court Judicial District of New Haven, No. CV-01-0448262-5, 2004.

*HealthAmerica v. Susquehanna Health System* – Provided competition analysis for defendant in claim of monopolization, US District Court for the Middle District of Pennsylvania, No.4:CV-00-1525, 2001.

*Alan Glazer et al. v. Dressbarn* – Provided estimate of damages for women's apparel catalog retailer regarding unfair business practices, State of Connecticut Superior Court, No. CV-01-01690755, 2002.

*Anderson v. Washington Post* – Analysis of economic losses on behalf of defendants in employment discrimination case, US District Court for the District of Columbia, No. 02-0002718, 2002.

*DataSafe, Inc. and David F. Muller v. Federal Express Corporation et al.* – Provided estimate of damages on behalf of defendants concerning damages to internet security provider from breach of contract, commonwealth of Massachusetts, Middlesex Superior Court, No. 01-2590, 2001.



**Selected Consulting Matters (continued)**

*Ertha Mae Williams v. CSX Transportation, Inc., et al.* – Assisted with analysis on behalf of defendants concerning the economics of punitive damages, State of South Carolina, County of Hampton, No. 04-CP-25-267, 2004.

*White v. Calomiris* – Analysis for defendant concerning damages in wrongful injury case, Superior Court of the District of Columbia, No. 03-1833-mw, 2005.

*Legi-Slate Inc. v. Thomson Information Services Inc.* – Provided economic support on behalf of plaintiffs concerning damages to on-line content provider from breach of contract, US District Court for the District of Columbia, No. 99-1570, 2000.

*Gordon v. Lewistown Hospital* – Analysis for defendant in restraint of trade and tying claims of ophthalmologist, in the US District Court for the Middle District of Pennsylvania, No.1: CV99-1100, 2000.

*Pineapple Antitrust Litigation* – Assisted in analysis of alleged monopolization in pineapple industry, 2003, 2005.

*Dow Chemical/Union Carbide Merger* – Assisted in Hart-Scott-Rodino review of competition related to chemical merger, 1999-2000.

*State of Alabama v. Exxon Corporation* – Assisted in the estimation and economics of punitive damages arising from a royalty and lease dispute, 2001.

*Roll International Corporation and Paramount Farms, Inc. v. Unilever United States, Inc., et al.* – Provided economic support on behalf of defendants regarding business valuation and damages to a snack food manufacturer in a breach of contract and fraudulent misrepresentation suit, 2001.

*Ronald O. Lewis v. Booz-Allen & Hamilton, Inc.* – Assisted in liability and damage issues concerning a discrimination suit, US District Court for the District of Columbia, No. 1:99CV00713, 2000.

*Emad Kowatli, M.D. v. Russell County Medical Center, et al.* – Provided damage analysis for defendant in matter of physician's loss of hospital privileges, in the US District Court in the Western District of Virginia, No. 98-142-A, 1999.

*Ahold/Pathmark Proposed Acquisition* - Assisted in Hart-Scott-Rodino review of competition related to grocery chain acquisition, 2002.



**Selected Consulting Matters (continued)**

*Greenlawn Funeral Home vs. Gobblers Knob Cemetery, et al.* Provided economic support concerning claims of monopolization and tying in the cemetery industry, in the US District Court for the Western District of Missouri, Southern Division, No. 01-3258-CV-S-BB, 2002.

*Section 201 Steel* – Provided expert testimony before the ITC regarding the financial condition of the American steel industry, 2001.

*Dr. Michael J. Galvin v. The New York Racing Association, Inc., et al.* – Provided economic support on behalf of defendant regarding commercial damages in breach of due process and tortious interference suit, 2000.

*Willie Brown, Jr., et al. v. General Motors Corporation, et al.* – Performed economic analysis concerning lost NFL player earnings, 1999.

*Compuware/Viasoft Proposed Acquisition* – Competitive analysis for Compuware's attempted acquisition of Viasoft in the mainframe software industry, 1999.

*Transocean/R&B Falcon Proposed Acquisition* – Assisted in Hart-Scott-Rodino review of competitive impact of a proposed merger in the drilling rig industry, 2000.

*R&D Business Systems et al. v. Xerox Corporation* – Provided antitrust consulting for defendants in a class action suit alleging tying and monopolization in the copier and printer industries, 1996.

*Re Brand Name Prescription Drug Antitrust Litigation* – Assisted in economic analysis for selected defendants regarding Robinson-Patman litigation in prescription drug industry, 1999.

*Roanoke Neurosurgeons* – Analysis of competitive effect of proposed merger of neurosurgery practices, 2000.

*Integrated Payment Systems, Inc. v. Travelers Express Company* – Analysis of alleged predatory practices in the money order industry, 1999.



**Selected Consulting Matters (continued)**

*Missouri HMOs* – Analysis of product market and competitive effect of proposed merger of HMOs, 2000.

*Regional Snacks Acquisitions* – Analysis of antitrust implications of an investment group purchasing several salty snack manufacturers, 2000.

*Oshkash/McNeilus Acquisition* – Assisted in competitive analysis of acquisition in concrete mixer industry, 1999.

Case 1:15-cv-00667-CRC   Document 33-8   Filed 02/01/17   Page 36 of 45

**Appendix 2**

**Materials Reviewed**

2008 National Law Journal Billing Survey

2009 National Law Journal Billing Survey

2014 National Law Journal Billing Survey

2014 National Law Journal 350: Annual Survey of Nation's Largest Firms

ALM Legal Intelligence, Survey of Law Firm Economics, 2011

ALM Legal Intelligence, Survey of Law Firm Economics, 2014

Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, National Edition, June 1, 1998

Supplemental Complaint for Injunctive Relief

Plaintiff's Motion for an Award of Attorney's Fees and Costs Pursuant to Rule 54 of the Federal Rules of Civil Procedure

Declaration of Michael Kavanaugh, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, 2013

*Dick Anthony Heller v. District of Columbia*, Civil Action No. 03-213, Memorandum Opinion

www.laffeymatrix.com

https://www.justice.gov/usao-dc/file/796471/download

http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf

http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf

http://www.law360.com/articles/518950/law360-reveals-400-largest-us-law-firms

www.almlegalintel.com

http://www.bls.gov/cpi/cpifaq.htm

Bureau of Labor Statistics, Industry Synopsis: NAICS 541110 - Offices of Lawyers, 2013

Bureau of Labor Statistics, Industry Synopsis: NAICS 541110-Office of Lawyers, 2004.

**Appendix 3**

**Laffey Matrix**

## LAFFEY MATRIX -- 2003-2014
## (2009-10 rates were unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 | 12-13 | 13-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 | 495 | 505 | 510 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 | 435 | 445 | 450 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 | 350 | 355 | 360 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 | 285 | 290 | 295 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 | 240 | 245 | 250 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 | 140 | 145 | 145 |

*Explanatory Notes:*

1.   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does **not** apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2.   This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3.   The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4.   Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g., Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995).

**Appendix 4**

**USAO Matrix**

# USAO ATTORNEY'S FEES MATRIX – 2015 – 2016

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 |
|---|---|
| 31+ years | 568 |
| 21-30 years | 530 |
| 16-20 years | 504 |
| 11-15 years | 455 |
| 8-10 years | 386 |
| 6-7 years | 332 |
| 4-5 years | 325 |
| 2-3 years | 315 |
| Less than 2 years | 284 |
| Paralegals & Law Clerks | 154 |

*Explanatory Notes*

1.   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases.  The matrix does **not** apply to cases in which the hourly rate is limited by statute.  *See* 28 U.S.C. § 2412(d).

2.   A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.  The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  The PPI-OL index is available at www.bls.gov/ppi/#data.  On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multiple screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers."  The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of  the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3.   The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-Legal Services index measures.  Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*,

793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should eliminate disputes about whether the inflator is sufficient.

4.   The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area.  Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, see note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website.  That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area.  *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, --- F. Supp. 3d ---, 2015 WL 6529371 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5.   Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount.  Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6.   The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school.  Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school).  *See Laffey* 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression.  *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same).  The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data.  Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level.  The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7.   ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks.  Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index.  The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8.   The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9.   Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc).  The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996).  Most lower federal courts in the District of Columbia have relied on the USAO Matrix, rather than the so-called "*Salazar*" Matrix (also known as the "LSI Matrix" or the

"Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 67, 71 n.2 (D.D.C. 2006)); *see, e.g., CREW v. U.S. Dep't of Justice*, --- F.Supp.3d ---, 2015 WL 6529371 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Public Charter School*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc*., 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000). The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based.

**Appendix 5**

**Salazar Matrix**

# LAFFEY MATRIX



History

Case Law

Expert Opinion

**See the Matrix**

Contact us

Home

Links

| | | | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

\* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

\*\* The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.