UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFF CATHOLIC CHARITIES' REPLY TO DHS RESPONSE REGARDING ORDER TO SHOW CAUSE

Plaintiff Catholic Charities now submits this Reply to ECF #87, "Defendant's Response."

PROCEDURAL HISTORY

Two and one-half years ago, Catholic Charities submitted a FOIA request. It then filed a motion for summary judgment; DHS opposed; Catholic Charities filed a reply and a supplemental motion. The Court granted the motion, but for the attorney fee argument, in ECF #41. Catholic Charities filed a re-newed motion, ECF #46. It filed a Motion to Compel Production of documents re "FOIA Processing Guide" [ECF #48]; the DHS filed an Opposition; Catholic Charities filed a Reply [ECF #54], resulting in another favorable ruling: The Court ordered the DHS to show cause why it shouldn't pay $13,643 and $400 in costs. ECF #58.

The DHS continued to resist: it filed a motion to re-consider. ECF #63. At page 9 of that motion, the DHS wrote: "Some of these records almost certainly include exempt information." A bold statement. Based on what? That claim has been forgotten.  Catholic Charities filed an Opposition; DHS filed another motion [ECF #65-1], Catholic Charities filed an Opposition; the DHS filed a Reply [ECF #69]. At page 4 of its Reply, the DHS stated it has suffered "harm." Its

loss of statutory rights "is harmful." Mandated disclosure is "significant and irreparable." More bold statements. Based on what? The DHS has apparently forgotten about these claims.

June 27, 2017: the Court ordered the DHS [yet again] to show cause about the amount of fees and to disclose the Processing Guide. [ECF #79].

July 21, 2017: the DHS release its FOIA Processing Guide, [946 pages]. Some of the pages had dates and page numbers; some did not. Plaintiffs' counsel read, or skimmed, each of the 946 pages, and printed out 59 of them. Plaintiffs' counsel then studied those 59 pages, and discarded some. The 24 remaining pages are attached to ECF #78-2, filed on August 3, 2017.

The DHS filed its 18th motion for extension of time. The Court issued an Order: show cause by 7/28/17, "not to exceed ten pages." No further extensions "absent a showing of extraordinary circumstances." But, DHS could not meet that deadline, and requested yet another extension of time. Finally, the DHS filed ECF #87, "Response to the Court's Order to show cause regarding attorney fees." ECF #87 exceeds ten pages: it is 15 pages long. Attached to it are 45 pages from an economist.

Catholic Charities now replies to that Response.

I. **Catholic Charities is entitled to $13, 643 in fees.**

The DHS argues at page 8 of ECF #87 that Catholic Charities does not deserve "any fees whatsoever" because the FOIA Processing Guide has "no public value." The DHS also argues that its position was "not unreasonable." [at page 9]. The DHS is wrong: the Guide has public value, and the DHS was indeed unreasonable. The DHS does not mention the Order of the Court issued on February 3, 2017 [ECF #58] where the Court carefully considered the elements of eligibility and entitlement. The Court ruled that "the defendant has provided no

legal basis whatsoever for withholding the FOIA Processing Guide…. the defendant's inaction amounts to recalcitrance…" [at page 7-8].

*Congress seeks to encourage meritorious FOIA cases; awarding attorney fees effectuates the intent of Congress*

In *National Security Counselors v. C.I.A.*, 811 F.3d 22, 24 (D.C.Cir. 2016) the Court held that "Congress sought to encourage meritorious FOIA litigation by making any "complainant" who substantially prevails eligible to recover reasonable attorney's fees. *Accord: Morley v. C.I.A.*, 810 F.3d 841, 844 (D.C. Cir. 2016) ("The purpose of the fee provision is "to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." (citations and quotations omitted).

II. **Catholic Charities deserves to be paid for 9.25 hours for "fees on fees."**

The DHS argues at page 10 of its Response that "fees on fees should be reduced to exclude time spent on unsuccessful fee requests." This may be true in some cases, but in this case, there was no time spent on something unsuccessful. The motion for summary judgment on the Ninth Cause of Action was granted. Catholic Charities was 100% successful.

**III-A. Using the LSI Matrix is reasonable.**

The DHS argues "Catholic Charities has not met its burden of showing that the rates it seeks are reasonable." [at page 11]. Catholic Charities does not have this burden: the burden is on the DHS. The Court ordered the DHS "to show cause" why Catholic Charities should not get #13,643 in fees. ECF #79. This is an intentional reversal of the burden of proof. *Cheeks v. Fort*

*Meyer Construction,* 216 F. Supp. 3d 146, 169 (D.D.C. 2016)(plaintiff's request that the Court order defendant to show cause was denied).

The DHS has not shown cause. It does not claim to have done so.

To be sure, in *Salmeron v. District of Columbia,* 195 F. Supp. 3d 153, 166 (D.D.C. 2016), the Court declined to apply the LSI Matrix. However, that case involved the Individuals with Disabilities Education Act [IDEA]. The Court noted that some IDEA matters are not complex, and are not comparable to "complex federal litigation." Some courts have held that IDEA litigation is a special "sub-market;" therefore, lower fees should be paid. The instant case, of course, does not involve IDEA: this is a FOIA case.

It is true that Judge Cooper declined to apply the LSI Matrix in *Elec. Privacy Info. Ctr. v. U.S. Drug Enforcement Admin,* 2017 WL 3049403, at *5 (D.D.C. 2017). However, in that case, the plaintiff "fail [ed] to respond to the DEA's defense of the revised USAO matrix." In that case, the plaintiff submitted a declaration from their own expert economist, Dr. Kavanaugh, written in 2013. The DEA submitted a declaration from its expert, Dr. Malowane, dated 2016. The plaintiff did not rebut that declaration.

In the instant case, Catholic Charities submits new evidence, including declarations executed in 2017.

Attached hereto as Exhibit A is a Declaration from Carolyn Pravlik, a lawyer representing the plaintiffs in *DL v. D.C.,* (D.D.C. Case No 05-cv-1437), and in *Salazar v. D.C.* (D.D.C. Case No. 93-cv-452). Ms. Pravlik refers to evidence submitted in those cases, which is also attached hereto as Exhibit D, which is 874 pages long.

Ms. Pravlik concludes at page 1 of her declaration that the LSI matrix "better reflects the prevailing market rates" than does the 2015 USAO matrix. Citing *Salazar v. D.C.,* 809 F.3d 58, 65 (D.C.Cir. 2015), she notes that our court of appeals found no fault in the conclusion that the LSI matrix is a *"conservative'* estimate of the market. [emphasis in original] (Paragraph 3, page 2 of Declaration). She notes that the underlying data for the ALM survey is not publicly available: it is "only available through…. FOIA or through litigation." [page 5 of Declaration]. She notes that the 2015 USAO matrix is 29% below market, and that the LSI itself is 9% below market. *Id.* at 8.  Ms. Pravlik notes that the Valeo data show rates above the LSI. *Id.* at 9.  She notes the several affidavits from complex federal litigators in the D.C. area who confirm that the LSI rates are consistent with, or below, the prevailing market. *Id.* at 9.

At page 5 of her Declaration, Ms. Pravlik refers to Exhibit 78, a declaration written by Dr. Kavanaugh on April 26, 2017. (found at page 537 of 874) [For ease of reference, exhibit 78 is attached hereto again as Exhibit B.]

*Dr. Kavanaugh's Declaration dated April 26, 2017*

Dr. Kavanaugh comments upon declarations of Dr. Malowane as follows:

-Dr. Malowane draws conclusions about attorney fees from a 2011 "ALM" survey. This survey is flawed, because it is based on average rates for all types of legal services, not just complex federal litigation. *See* Exhibit 78, page 4. "The price for DWI/DUI legal defense work is not comparable to the price for complex federal litigation." *Id.*  The ALM survey includes lawyers in West Virginia. *Id.* at 5. The ALM survey includes more lawyers from outside the District of Columbia than inside. Note 16 on page 6.  The ALM survey does not have a breakdown for the specialty "complex federal litigation." *Id.* at 10.

*Laura Malowane's declaration dated July 6, 2016 [ECF #87-1]*

Dr. Malowane draws conclusions from the ALM survey of 2011, which provides data from "law offices of all sizes and types." [at page 4 of 45, of ECF # 87-1] She uses the phrase "litigation claims" at page 3 and "federal litigation" at pages 5, 6, 7, 8, 10, 11, 13, 16, and 18. She does not acknowledge that there is one kind of federal litigation: IDEA claims, which has been deemed to be a "sub-market" of federal litigation. *Salmeron v. D.C.,* 195 F. Supp. 3d 153, 166 (D.D.C. 2016) (some IDEA matters are not complex, and are not comparable to "complex federal litigation.")

The first time Dr. Malowane uses the phrase "complex federal litigation" is at note 7 of page 7, when she notes that the court in *Makray v. Perez* uses the phrase. She does not claim that the ALM survey measures just "complex federal litigation." She basically admits that the ALM survey lumps in slip-and-fall cases with IDEA claims, and with "complex federal litigation." She states that the USAO matrix reflects "the rates of the vast majority of attorneys." [at page 21 of 45].   Plaintiffs agree: the USAO matrix measures fees from lawyers who do civil negligence, IDEA, and also FOIA cases. And, it measures fees from lawyers in West Virginia and far-away counties in Maryland and Virginia.

Dr. Malowane does not mention "West Virginia" in her declaration. She does not claim that the underlying data for the ALM survey is publicly available. She does not explain her earlier sworn testimony in *Biery v. U.S.,* 2012 WL 5914260, *4 (Ct. Claims 2012) where she stated that $705 per hour was a proper rate for some lawyers for the year 2012.

*More criticism of Dr. Malowane*

Marked as Exhibit 1 in the 874-page package is a September 2016 affidavit of Bruce Terris, Esq. He states in his affidavit that he was aware of Dr. Malowane's reliance on "rate surveys" that underlie her conclusions drawn from the 2011 ALM survey. He states that he tried unsuccessfully to obtain those rate surveys. Paragraph 87, [page 45 of 874]. Ms. Pravlik testifies that she too was unable to obtain the Malowane surveys. [Exhibit 26, at page 150 of 874].

Mr. Davidson, a D.C. lawyer, criticizes Malowane for relying on data from West Virginia. [Exhibit 55, at page 436 of 874]

Dr. Malowane testified in 2012 that some lawyers deserved $705 per hour, in a case where she was hired by the plaintiffs, and where she testified against the government. *Biery v. United States,* 2012 WL 5914260, *4 (Ct. Claims 2012). Ms. Malowane does not explain how in 2012 that $705 was fair, but in this case, that the maximum fee should be $581 per hour.

In *Makray v. Perez,* 159 F. Supp. 3d 25, 50 (D.D.C. 2016), the Court criticized Malowane for using the 2011 ALM survey, because it "leaves some doubt as to whether this survey fairly estimates the [rate for complex federal litigation]. The Court noted that the survey includes rates from lawyers "across all practice areas" and it includes contingency and flat-rate fees. It includes "civil negligence." But how do contingency cases relate to complex federal litigation, asked the Court at page 55. Slip-and-fall cases are not complex federal litigation; therefore, the survey is suspect, ruled the Court. The same criticism of Malowane was noted in *EPIC v. Dep't of Homeland Security,* 218 F. Supp. 3d 27, 49 (D.D.C. 2016).

*A great deal of evidence supports the conclusion that the LSI matrix is better than the 2015 USAO matrix*

The Declaration of Ms. Pravlik refers to the exhibits found in the 874 pages attached hereto:

-the Terris, Pravlik, &Millian law firm did its own survey of lawyers who do complex federal litigation in Washington DC, from January 2015 to September 2016. [Paragraph 15]

- "The market data show that the USAO matrix 2015-2017 rates are 29.68% below market, and the LSI *Laffey* Matrix is 9.36% below market. [Paragraph 17]

- "Valeo data" is a 2012-2013 survey resulting in rates *above* the LSI *Laffey* rates [paragraph 19]

-several lawyers in Washington DC submitted affidavits, stating that they are familiar with rates for complex federal litigation in Washington DC, and that the LSI rates are consistent with or below the prevailing market rates. [Paragraph 20].

-in *Salazar v. D.C.,* 809 F.3d 58, 64-65 (D.C.Cir. 2015), the court stated that the fee applicants submitted "a great deal of evidence regarding prevailing market rates for complex federal litigation." Ms. Pravlik states that the evidence presented in *DL v. D.C.,* and in this case, "far exceeds the evidence that was used in *Salazar.*" [paragraph 21.]

Dr. Kavanaugh notes that the "Valeo data" results in fees that are higher than the LSI. [Exhibit 78, at page 544 of 874.] Dr. Kavanaugh notes a chart showing the Valeo results, at page 553 of 874. That chart is attached here, again, as exhibit C.

*The LSI matrix should be used because the District of Columbia Council has endorsed its use in D.C. Code section 32-1308*

The District of Columbia council enacted the Wage Theft Prevention Act, D.C. Code section 32-1308, and stated that the "LSI -Salazar" rate of fees shall be used to award attorney fees. This endorsement by a local governing body, that the LSI is reasonable, is strong evidence of the reasonableness of the matrix. The court in *Makray v. Perez,* 159 F. Supp. 3d 25, 48 (D.D.C. 2016) noted that this is an important endorsement.  LSI rates were awarded in *Herrera v. Mitch O'Hara LLC,* 2017 WL 2869410 (D.D.C. 2017) (unpaid laborers sued under the Fair Labor Standards Act and D.C. Wage Payment and Collection Law).

*The United States government has twice agreed that rates above the 2015 matrix are reasonable.*

The Department of Homeland Security agreed to pay LSI rates in *EPIC v. Dep't of Homeland Security,* 197 F. Supp. 3d 290, 295 (D.D.C. 2016). In *Biery v. United States,* 2012 WL 5914260, *4 (Fed. Cl. Nov. 27, 2012) Dr. Malowane testified that a fee of $705 per hour was in line with market rates.  "The government indicated at oral argument that it accepts this quoted rate as the rate in Washington DC for the purposes of the *Davis County* exception." *Id.*, Note 6.

*Numerous courts have endorsed the LSI matrix*

*Salazar v. DC,* 809 F.3d 58,65 (D.C. Cir. 2015): (The district court had held that the LSI matrix was "probably a *conservative* estimate of the actual costs of legal services in this area;" the D.C. Circuit said that holding "does not appear illogical." [emphasis in original]. The Court noted that the LSI was 14% lower than the average national law firm rates, and that rates for many lawyers "far exceeded the rates in the LSI update.").

*Interfaith Community v. Honeywell,* 726 F.3d 403, 416 (3d Cir. 2013) was a case brought under the Resource Conservation and Recovery Act, 42 U.S.C. section 6901. The district court relied upon the LSI matrix, rejecting the USAO matrix. The Third Circuit ruled it was not "clear error."

*Makray v. Perez,* 159 F. Supp. 3d 25, 32 (D.D.C. 2016) (the LSI is a "conservative estimate;" there are lawyers who charge more than LSI [page 36] the LSI "likely provides a conservative estimate of the prevailing market rate…" [page 39] Steven K. Davidson, Esq. declares that LSI rates are consistent with the prevailing market [page 47]).

*Hernandez v. Chipotle,* 2017 WL 2804 867 (D.D.C. 2017) (LSI is superior; rates for some lawyers "far exceed" the rates on LSI [at *11]; the DC Circuit in *Salazar* noted that the LSI was a "conservative estimate of actual costs of legal services;" the Court "has little difficulty concluding that the LSI Laffey Matrix properly reflects a reasonable, and conservative, estimate of the prevailing market rates, for complex federal litigation in the Washington, D.C. area." [at *13])

*Texas v. United States.,* 2017 WL 1194 159 *5 (D.D.C. 2017) (In *Salazar,* the court "reviewed copious evidence…explaining why [the LSI matrix] is a better measure…"  The Court refused to pay Paul Smith at $1,100 per hour, and reduced him to the LSI rate of $789.)

*EPIC v. Dep't of Homeland Security,* 218 F. Supp. 3d 27, 49 (D.D.C. 2016) (Held: LSI matrix is better; Malowane's evidence is insufficient)

**III-B.  Spending 9.25 hours on a fee petition is reasonable.**

The DHS argues at page 13 of its Response that the fees of Catholic Charities should be reduced because "its counsel spent excessive time on its fee petition."  The DHS does not explain how much time should have been spent.  On June 5, 2016, plaintiffs' counsel spent 1.2 hours doing "research on eligibility for attorney fees."  [*see* Page 3 of ECF #46-3]This was too much time? Counsel should only have spent .6 hours?  On June 6, 2016, plaintiffs' counsel spent 1.1 hours "assembling motion for attorney fees; itemizing fees."  *Id.*  This was too much time? Counsel should only have spent .5 hours?

In *Judicial Watch v. U.S. Dep't of Justice,* 774 F. Supp. 2d, 225, 232 (D.D.C. 2011), the government complained that spending 72 hours for opposition to a motion for summary judgment was "excessive." But why was that excessive, asked the Court. The government must provide "specific countervailing evidence" that shows a specific item is unreasonable. *Id.* at 233.  Merely giving an opinion that time is excessive is not evidence;

therefore, the government "has not carried its burden of establishing that a departure from the lodestar is appropriate." *Id.* at 234.

9.25 hours is a modest amount of time.

To be sure, at times courts criticize counsel when they spend as much time on fees as on something else, such as summary judgment. *EPIC v. U.S. Dep't of Homeland Security,* 218 F. Supp. 3d 27, 52 (D.D.C. 2016).  But in that case, there were other criticisms: the court found that EPIC spent a great deal of time on items such as "review billing records" and "enter billing records," which totaled nearly one third of the fee request. 218 F. Supp. 3d at 52.  The court approved of work done in preparation of the Motion for Attorneys' Fees. The court excluded fees for reviewing and entering billing records. In this case, the DHS has not identified any particular item that was excessive.

*There is no rule of proportionality between time spent on the merits versus time on fees*

Congress provided for the possibility of attorney fees to encourage attorneys to represent FOIA requesters. A court should not place too many hurdles in front of a plaintiff's counsel, seeking to effectuate the intent of Congress. This will create a "deterrent" to meritorious cases. *McNeil v. District of Columbia,* 233 F. Supp. 3d 150, 156 (D.D.C. 2016) (fees on fees on fees granted). In other contexts, courts have found there is no rule of proportionality between the amount of plaintiff's recovery and attorney fees:

*City of Riverside v. Rivera,* 477 U. S. 561, 574 (1986) ("Reasonable attorney's fees under section 1988 are not conditioned upon and need not be proportionate to an award of money damages." A civil rights plaintiff "seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. Congress has determined that the public as a whole has an interest in these rights. A plaintiff who obtains relief "contributes significantly to the deterrence of civil rights violations in the future." *Id.* at 575.)

*Williams v. First Government Mortgage,* 225 F.3d 738, 747 (D.C. Cir. 2000) ( no rule of proportionality under the District of Columbia Consumer Protection Procedures Act; it promotes public policy and vindicates important rights, where borrower recovers $8,000 and attorney is awarded $199,000)

*Radtke v. Cashetta,* 2017 WL 2483 720 at *4 (D.D.C. 2017) (under the Fair Labor Standards Act, where employee was awarded $5,000 and attorney fees of $307,000, fees "should not be reduced solely to achieve proportionality." A rule of proportionality would make it difficult for individuals with meritorious civil rights claims to obtain redress in courts. Congress sought to insure effective access to the judicial process.)

*Conclusion*

The DHS has not "shown cause" why Catholic Charities should be paid $13, 643 in fees and $400 in costs. The Court should render judgment for those amounts, for Catholic Charities.

Dated: August 23, 2017     Respectfully submitted,

/s/ David L. Cleveland
DAVID L. CLEVELAND
Attorney for Plaintiff    DC Bar # 424209
Catholic Charities of Washington
924 G Street, NW  Washington, DC 20001
[202] 772-4345  Fax: [202] 386-7032
1949.david@gmail.com