# EXHIBIT B

Dr. Kavanaugh declaration

dated April 26, 2017

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DL, et al., on behalf of themselves )
and all others similarly situated, )
)
                Plaintiffs, )
)    Civil Action No. 05-1437 (RCL)
           v. )
)
THE DISTRICT OF COLUMBIA, )
et al., )
)
                Defendants. )
)

**Plaintiffs' Exhibit
78**
Civ. No. 05-1437 (RCL)

SECOND DECLARATION OF DR. MICHAEL KAVANAUGH
IN SUPPORT OF PLAINTIFFS' 2016 FEE APPLICATION

Michael Kavanaugh affirms and states:

1. I have provided several declarations or affidavits in this case. In my declaration offered in support of plaintiffs' 2016 fee application -- found at Plaintiffs' Exhibit 27 -- I presented my credentials, described my experience and stated opinions on how to adjust attorney billing rates for complex federal litigation for the passage of time. As in my earlier declarations or affidavits, my opinions here are stated to a reasonable degree of certainty under the standards of my profession.

2. I have been asked by plaintiffs' counsel to examine several matters raised by the District's expert Dr. Laura A. Malowane in her declaration (Def. Ex. 11): (1) the USAO Matrix 2015-2017;[1] (2) the ALM Legal Intelligence 2011 Survey of Law Firm Economics (2011 ALM SLFE), which provides the rate data for

---

[1] The USAO Matrix 2015-2017 is the label used by plaintiffs to distinguish the current USAO Matrix from the earlier matrix that was based on the Laffey Matrix. See: https://www.justice.gov/usao-dc/file/796471/download, Explanatory Note #4.

1

2. the USAO Matrix 2015-2017;[2] and, (3) data from the ALM Legal Intelligence 2014 Survey of Law Firm Economics (2014 ALM SLFE) used by Dr. Malowane in her declaration. Plaintiffs' counsel also asked me to examine: (1) Plaintiffs' Exhibits 84 and 91, which set forth the specific 2011 ALM SLFE rates used to calculate the USAO Matrix 2015-2017; and (2) Plaintiffs' Exhibit 79 which updates rate data collected by Valeo Partners (Valeo).[3] After my examinations, I continue to maintain my opinion that the LSI *Laffey* Matrix is a better reflection of the prevailing market rates for complex federal litigation in Washington, D.C., than the USAO Matrix 2015-2017.

3. In my last declaration in this case, Plaintiffs' Exhibit 27, I addressed the LSI *Laffey* Matrix and the USAO Matrix 2015-2017 by looking at the underlying surveys and the two price indices that are used to adjust the rates for the passage of time.[4] I examined the surveys and price indices and opined that: there is no material difference between the price indices used to adjust the surveyed rates;[5] so the difference in estimates of prevailing market rates is due to differences in the underlying survey.

4. The 2011 ALM SLFE and the 2014 ALM SLFE are nonprobability convenience samples.[6] A convenience

---

[2] See: https://www.justice.gov/usao-dc/file/796471/download, Explanatory Note #2.

[3] The update uses the Producer Price Index-Office of Lawyers (PPI-OL).

[4] The LSI *Laffey* Matrix is based on the 1989 update of the *Laffey* Matrix conducted at the suggestion of the court of appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(*en banc*) by Joseph A. Yablonski (Pl. Ex. 33). The LSI or Legal Services Index is used to adjust this matrix. The PPI-OL is used to adjust the 2011 ALM SLFE data for the USAO Matrix 2015-2017. See: https://www.justice.gov/usao-dc/file/796471/download, Explanatory Note #2.

[5] See my last declaration, Plaintiffs' Exhibit 27 at ¶11 and its Attachment 2.

[6] Generally, sampling methods may be described as either *probability* or *nonprobability*. In probability samples, each member of the population has a known chance of being selected. Probability methods include random sampling, systematic sampling, and stratified sampling. The advantage of probability sampling is that

2

        sample selects elements of the sample because they are easy to obtain, (e.g., the respondents mailed the results back or answered question on a web site, or they were interviewed while shopping). The purpose is to obtain data conveniently, (perhaps for use to design another type of sample). For the ALM surveys, the purpose is to provide a set of economic and financial data that offers a description of the legal profession. The method is to organize and report the observations on the returned questionnaires.

5. The 1989 *Laffey* Matrix survey is a nonprobability expert sample. In an expert survey, respondents are selected on the basis of a judgment of a knowledgeable person. Here the purpose was to find billing rates for complex federal litigation. Its method was to identify attorneys performing complex federal litigation and interview them.[7]

6. The USAO Matrix 2015-2017 uses standard hourly billing rates for the Washington, D.C., metropolitan area drawn from the 2011 ALM SLFE. It adjusts those rates for the passage of time using the PPI-OL.[8]

7. The 2011 ALM SLFE was designed to provide a set of economic and financial data about the legal

---

sampling error can be calculated. Sampling error is an estimate of how much a sample might differ from the population. So when inferences made from the sample are applied to the population, the results are reported plus or minus the sampling error.

    In non-probability samples, members are selected from the population in a specified, non-random way. These methods include convenience sampling and expert sampling which are described below. When inferences made from the sample are applied to the population, the results are not and cannot be reported plus or minus the sampling error.

[7] In preparing the 1989 update to the *Laffey* Matrix, Mr. Yablonski used a procedure comparable to the one used by Daniel Rezneck when he conducted the expert sample underlying the original *Laffey* Matrix (See First Affidavit of Daniel Rezneck from the *Laffey* case, Pl. Ex. 30).

[8] See: https://www.justice.gov/usao-dc/file/796471/download, Explanatory Note #2.

3

      profession.[9] It does not provide a separate sample of rates for that part of the profession that practices complex federal litigation.

8. It is a simple economic principle that comparable prices are found by observing comparable goods. In preparing an offer for a luxury car, for example, prospective buyers seeking a comparable price do not look at car prices for cars of all sizes and types, they do not look at the whole automobile market. Instead, comparable prices are sought from the prices of comparable luxury cars. The same is true for attorneys. The price for DWI/DUI legal defense work is not comparable to the price for complex federal litigation. The attorneys in these two markets command different prices and their skills are not ready substitutes.

9. Dr. Laura Malowane has described the data from the 2011 ALM SLFE underlying the USAO Matrix 2015-2017 as consisting of "actual average billing rates of attorneys in the Washington, DC area from law offices of all sizes and types."[10]

10. The use of a rate survey consisting of "billing rates of attorneys in the Washington, DC area from law offices of all sizes and types" to establish prevailing billing rates for conducting complex federal litigation is a serious defect. This is because complex federal litigation is not practiced at all types of law firms. Moreover, including rates for conducting all types of representation obscures the billing rates for complex federal litigation.

---

[9] See: 2011 ALM Survey, p. 5 (Pl. Ex. 81).

[10] See Declaration of Dr. Laura A. Malowane at ¶12 in *Makray v. Perez* (U.S. Secretary of Labor) Civil Action No. 12-0520 (BAH)(ECF No. 88-1)(Pl. Ex. 99). In her declaration in this case, Dr. Malowane describes this less fully. She omits the reference to all types of firms. See Def. Ex. 11 at ¶6. See also ¶22 of this declaration.

4

11. The 2011 ALM SLFE obscures rates data for complex federal litigation by combining rates from complex litigation with rates from non-complex litigation. The 2011 ALM SLFE on page 14, provides the distribution of the law firms participating in its survey. For the South Atlantic region, of which the District of Columbia is a part, twenty-six of the forty-one firms identified their practice area as General Law.[11] Only seven of the forty-one firms identified their practice area as litigation. Five of the seven identified as Insurance Defense Litigation. Often, such litigation is not complex federal litigation.[12]

12. This defect is intensified here because plaintiffs' counsel are located in Washington, D.C., while the rates data underlying the USAO Matrix 2015-2017 are for the Washington, D.C., metropolitan area.[13] The 2011 ALM SLFE bases its geographic areas on the "definitions determined by the U.S. Office of Management and Budget (OMB) as applied to U.S. Census Bureau data."[14] The Washington, D.C., metropolitan area as defined by these sources includes the District of Columbia, Virginia, West Virginia, and Maryland.[15] As the geography of the survey area expands, the composition of the data or product mix changes. Data limited to the District of Columbia likely included some rates for complex federal litigation and some rates for non-complex representation, but as the geography is expanded the composition or product mix changes to include

---

[11] See: 2011 ALM SLFE, pp. 13-14 (Pl. Ex. 81).

[12] Second McEwen Aff. (Pl. Ex. 73), at ¶15.

[13] As explained in the Second Pravlik Affidavit (Pl. Ex. 70), Plaintiffs' Exhibit 91 was obtained from the Department of Justice (of which the USAO is a part) pursuant to a FOIA request seeking the ALM rates underlying the USAO Matrix 2015-2017. As also explained by Ms. Pravlik in her affidavit, Plaintiffs' Exhibits 84 and 91 provide the same rates data by experience level for 2011 for the Washington, DC, metropolitan area. Dr. Malowane relied upon plaintiffs' Exhibit 84 in preparing her declaration in this case. See Pl. Ex. 85.

[14] See: 2011 ALM SLFE, p. 10 (Pl. Ex. 81).

[15] See: Second Pravlik Affidavit (Pl. Ex. 70), para. 6; Pl. Ex. 92.

5

        more practitioners of other types of legal services, such as DWI/DUI defense, wills and trusts, and simple bankruptcies. The more data added for services other than complex federal litigation, the more the product mix of complex federal litigation to non-complex federal litigation shifts toward non-complex federal litigation. As the product mix shifts toward non-complex federal litigation, this dilutes the rates and reduces the degree to which the data reflects rates for complex federal litigation. Thus, the use of geographically expanded data dilutes the rates for complex federal litigation beyond that addressed above.[16]

13. Some of this dilution can be seen by comparing the data in: (i) Plaintiffs' Exhibit 91 which provides the rates underlying the USAO Matrix 2015-2017 (the broader D.C. metropolitan area); with, (ii) the data on page 143 of the 2011 ALM SLFE which shows rates by experience level only for the District of Columbia itself.[17] The rates for the District of Columbia itself are higher at each experience level (where rates are provided) than the rates in Plaintiffs' Exhibit 91. For example, the average rate for the "31 or More Years" experience level is $570 for the District of Columbia itself on page 143 of the 2011 ALM SLFE and it is $503 on Plaintiffs' Exhibit 91 (the broader D.C. metropolitan area). The ninth decile rate for this experience level is $763 for the District of Columbia itself.[18]

---

[16] As can be seen from comparing the "Number of Offices" and the "Number of Lawyers" columns on page 143 (Pl. Ex. 81) and Plaintiffs' Exhibit 91, many more lawyers and offices from outside the District of Columbia are represented in the data for the Washington, DC, metropolitan area than in the data for the District of Columbia alone. For example, at the "21 to 30" experience level, data for 83 lawyers is included in the rates for the Washington, DC, metropolitan area. Only 35 of those lawyers are located in the District of Columbia. Therefore, the data for more than half of the lawyers comes from outside of the District of Columbia.

[17] Although page 143 of the 2011 ALM SLFE (Pl. Ex. 81) lacks data for two experience levels, a comparison between it and Plaintiffs' Exhibit 91 can still be drawn.

[18] See the discussion about the ninth decile rates in paragraph 16 below.

6

14. What is needed to estimate prevailing market rates for complex federal litigation is a survey of billing rates for conducting complex federal litigation. The 2011 ALM SLFE is not designed for this purpose. It is a survey designed to provide economic and financial data about the legal profession.

15. Since the USAO Matrix 2015-2017 rates are derived from the broad 2011 ALM SLFE survey and since complex federal litigation is performed by only a narrow part of the legal profession, it is incorrect to use the broad-based USAO Matrix 2015-2017 rates to find prevailing market rates for the narrow part of the legal profession, the part that performs complex federal litigation.

16. Dr. Malowane acknowledges the inappropriateness of using rates for all types of legal work in a later part of her declaration. She examines the rates for litigation specialization in the 2014 ALM SLFE and compared those rates to the USAO Matrix 2015-2017 and the LSI *Laffey* Matrix rates. For this comparison, she states, "Since complex federal litigation may have some of the higher rates in the litigation specialty, I also looked at the rates charged by the top 10% of attorneys in the nation for litigation services."[19] The top 10% rates are shown in the 2014 ALM SLFE in the ninth decile column.[20] The 2011 ALM SLFE has ninth decile rates for the District of Columbia.[21] The ninth decile rate for the top experience level is $763. If that rate is adjusted in the same manner as the USAO Matrix 2015-2017 updates the 2011 ALM SLFE data, then the updated rate is $879. This adjusted rate is higher than the

---

[19] Def. Ex. 11 at ¶17.

[20] 2014 ALM SLFE, p. 9 (Pl. Ex. 96). Page references to Plaintiffs' Exhibit 96 refer to the page numbers at the bottom of the page, not to the ECF stamp from a previous filing at the top of the page.

[21] 2011 ALM SLFE, pp. 10, 143 (Pl. Ex. 81).

7

top rate of $826 in the LSI *Laffey* Matrix.

17. An appropriate way to find billing rates for complex federal litigation is to begin with a survey of prevailing rates for complex federal litigation and then adjust those rates for the passage of time. The LSI *Laffey* Matrix is based on a survey of rates for performing complex federal litigation. (See Yablonski declaration, Pl. Ex. 33). It is adjusted for the passage of time by using the LSI, which as addressed in my last declaration in this case, is comparable to the PPI-OL.

18. In my previous declaration (Pl. Ex. 27), I performed a test that compared the rates from an adjusted LSI *Laffey* Matrix to the billing rates in the summary of affidavits and court documents collected by plaintiffs' counsel of prevailing market billing rates charged by Washington, D.C., firms in 2015 and 2016. The rates in these documents provide additional evidence of prevailing market rates in Washington, D.C. (Pl. Exs. 47-49). The evidence shows that the adjusted LSI *Laffey* Matrix produces a better approximation of prevailing rates for complex federal litigation in the Washington, D.C., market than the USAO Matrix 2015-2017.

19. In this declaration, I present another test. Plaintiffs' Exhibit 53 includes rates data from Valeo. Plaintiffs' counsel adjusted the Valeo data for the passage of time using the PPI-OL index in the same manner that the USAO Matrix 2015-2017 updated the 2011 ALM SLFE data. See Plaintiffs' Exhibit 79.

20. I have reviewed Plaintiffs' Exhibits 79. My review of Plaintiffs' Exhibit 79 did not evaluate whether the Valeo data was entered and sorted correctly. I assumed that the data are correctly entered and sorted. I did confirm that plaintiffs' counsel adjusted the rates in the same manner as the USAO Matrix 2015-2017. The results show that the adjusted Valeo rates are higher than the LSI *Laffey* Matrix rates. The adjusted Valeo rates data demonstrates that the rates in the LSI *Laffey* Matrix are a better

8

reflection of the prevailing market rates for complex federal litigation in Washington, D.C., than the rates in the USAO Matrix 2015-2017.

21. The adjusted Valeo rates provide another validation of the LSI *Laffey* Matrix. This is because the Valeo data are limited to complex federal litigation[22] while the USAO Matrix 2015-2017 that is based on the 2011 ALM SLFE is not limited to complex federal litigation.

22. As mentioned in paragraph 9 above, Dr. Malowane claims that the rates in the 2011 ALM SLFE are "actual" billing rates.[23] It appears that Dr. Malowane is attempting to distinguish between standard rates and actual rates. Dr. Malowane is incorrect. Plaintiffs' Exhibit 84, which she relied upon in preparing her declaration and which is the same as Plaintiffs' Exhibit 91, states that it provides "Standard Hourly Billing Rates."[24]

23. In my earlier declaration (Pl. Ex. 27 at ¶ 13-15), I stated that it is appropriate to use either the LSI or the PPI-OL to adjust for the passage of time. Either index provides the national rate of price change for legal services. I gave as one of the reasons why I thought a nationally based index was appropriate the fact that the market for complex federal litigation in Washington, D.C., is a national rather than a local market. I stated that it was a national market because "Washington, D.C., area law firms compete with law firms in other areas such as New York, Philadelphia, Chicago, Dallas, and San Francisco." In

---

[22] See: Declaration of Mark F. (Thor) Hearne, Pl. Ex. 53 at ¶18.

[23] See: Def. Ex. 11 at ¶6.

[24] Page 16 of the 2011 ALM SLFE instructions (Pl. Ex. 83, unnumbered page after page 15), directs the survey participant to provide in Column J the individual's standard hourly rate. Page 10 of the instructions refers to standard and actual rates independently so the 2011 ALM SLFE does not treat these rates as being synonymous. Page 143 of the 2011 ALM SLFE (Pl. Ex. 81) and Plaintiffs' Exhibit 91 both report standard rates data, not actual rates data.

9

response to this statement, Dr. Malowane (Def. Ex. 11 at ¶17-20) compared the LSI *Laffey* Matrix rates and the USAO Matrix rates for 2015 to the national rates for litigation in the 2014 ALM SLFE in order to demonstrate that the USAO Matrix rates are more representative than the LSI *Laffey* Matrix rates.

24. Dr. Malowane's comparison is flawed. The data that Dr. Malowane relies upon are not limited to complex federal litigation. Dr. Malowane's Table 2 is titled "National Litigation Billing Rates vs Matrix Rates". The "National Litigation Billing Rates" are from the category "other litigation" in the 2014 ALM SLFE.[25] There is no reason to conclude that "other litigation" is only complex federal litigation. It presumably includes non-complex and non-federal litigation. In fact, Dr. Malowane explains that although the 2014 ALM SLFE "breaks down litigation rates by sub-specialty," "complex federal litigation is not part of the breakdown."[26] The inclusion of these other litigation rates obscures the rates for complex federal litigation and reduces the rates. Although the data she cites is limited to litigation, it does not cure the problem of being too broad because the litigation is not limited to complex federal litigation.

25. Since the 2014 ALM SLFE litigation rates data are too broad in type of services, they do not constitute a valid data set to test whether the LSI *Laffey* Matrix or the USAO Matrix 2015-2017 is the better estimator of the prevailing market rates for complex federal litigation in Washington, D.C.

26. Dr. Malowane attempts to overcome problems with the "other litigation" data in the 2014 ALM SLFE by examining only data for a subset of the ALM survey—billing rates for bankruptcy representation—and argues that these rates more closely approximate the USAO matrix rates than the LSI *Laffey* Matrix.

---

[25] See: 4/10/2017 Email from Chad Copeland (Pl. Ex. 108).

[26] Def. Ex. 11 at ¶19.

10

27. Dr. Malowane does not present evidence that the bankruptcy litigation in her comparison is for complex litigation.[27] She does note that in the 2014 ALM SLFE bankruptcy is described as "one of the highest paying sub-specialties."[28] As with the general litigation data, the bankruptcy litigation data is too broad. While some bankruptcy representation may require the same skills as other complex federal litigation, not all bankruptcies require the skills needed for complex federal litigation.[29] If the billing rates for litigating bankruptcy are to be a proxy for complex federal litigation, then including billing rates for simple bankruptcies reduces the reported combined (simple plus complex) billing rates and thereby biases downward the estimates of billing rates for complex federal litigation.

28. My review of the 2014 ALM SLFE shows it distinguishes between litigation and non-litigation bankruptcies.[30] It asks the respondents to report how bankruptcy representations are staffed.[31] It asks the respondent to forecast the likely future importance of bankruptcy representation to the firm.[32] These results provide interesting information about the legal profession but the results are not relevant to establishing prevailing rates for performing complex federal litigation.

29. Further, the 2014 ALM SLFE does not identify other factors that could influence rates such as whether the rates charged for bankruptcy representation are for:

---

[27] See: Def. Ex. 11 at ¶19.

[28] Ibid.

[29] See Second MacEwen Aff. (Pl. Ex. 73), at ¶14.

[30] See: 2014 ALM SLFE, p. 7 (Pl. Ex. 96).

[31] op cit. pp. 155-168.

[32] op cit. pp. 19-21.

11

- corporations or households,
- complex or simple cases,
- contested or uncontested cases,
- administrative work,
- cases that have a large number of creditors,
- cases with creditors represented by other attorneys,
- cases that have a long duration,
- cases that are eligible for in-house representation,
- cases that require knowledge of a particular industry, or,
- cases that require advice on restructuring.

30. Dr. Malowane's use of the bankruptcy data from the 2014 ALM SLFE as a proxy for complex federal litigation rates produces results that are not reliable. Her assumptions are that: all bankruptcy litigation is complex litigation (this is not so, as addressed above in paras. 27 and 29); and, that the standard rates for complex federal litigation are indicated by the standard rates published in the ALM survey for bankruptcy litigation (ALM Specialty Code 201). This may not be so. The ALM survey may be reporting some of the rates for bankruptcy litigation as bankruptcy litigation (ALM Specialty Code 201); and some of the bankruptcy rates as rates for practicing in the multiple practice areas (ALM Specialty Codes 127, 227 or 300). (This is explained below in ¶31.) These considerations diminish the confidence in the belief that the ALM bankruptcy rates represent prevailing market rates for complex federal litigation.

31. The instructions for the 2014 ALM SLFE request the responder to indicate "each individual's most commonly assigned (standard) hourly rate on 1/1/2014."[33] The instructions also request that only one "Specialty Code" be assigned for each lawyer.[34]

---

[33] See: 2014 ALM SLFE Submission Form Instructions and Worksheets, p. 13 (Pl. Ex. 98)

[34] op cit. p.13.

12

> There are fifty-seven "Specialty Codes" divided between non-litigation and litigation. The instructions direct that for a code to be assigned, "[a]n individual must spend **50% or more** of their billable time in this area."[35] However, an attorney with a diverse practice that includes significant bankruptcy litigation may nonetheless appropriately respond with the 'multiple litigation' specialty (Code 227), or 'multiple non-litigation (code 127)' or 'multidisciplinary (Code 300)' because no single specialty makes up 50% or more of her practice. When this happens the "multiple" categories (127, 227, 300) will be comprised of standard rates charged from specific categories (e.g., Code 201 bankruptcy - litigation). Some bankruptcy rates are lost to a multiple category. This underreporting may result in an increase or a decrease in the published bankruptcy rate. This uncertainty diminishes the confidence that the reported standard rate for a specialty represents the prevailing rate for a specialty.[36]

32. Dr. Malowane's use of the bankruptcy standard rates in the 2014 ALM SLFE as a proxy for complex federal litigation rates produces unreliable results for another reason. The 2014 ALM SLFE data are unclear about how standard rates are influenced by complexity and litigation. Look at the rate data for non-litigation bankruptcy[37] and for litigation bankruptcy.[38] Compare the standard billing rates at the ninth decile for attorneys with >20 years experience for non-litigating representation with those for litigating representation. The non-litigating standard rate exceeds the litigating standard rate.

---

[35] op cit. p.13 (emphasis in original).

[36] In contrast, plaintiffs' prevailing market rates information is based on sworn statements submitted to a federal court that a particular lawyer charges a particular rate in litigation before the court in which a party is seeking a fee award.

[37] See: 2014 ALM SLFE 2014 p. 158 (Pl. Ex. 96).

[38] See: op. cit. p. 165.

13

Why does this happen? It could be that experienced attorneys who *litigate* bankruptcies more than 50% of the time are handling simple bankruptcies (households, a few creditors, etc.) while experienced attorneys whose specialty is *non-litigation* bankruptcies are representing corporations in complex matters involving restructuring and numerous creditors. So which rate should be used to indicate complex federal litigation? The rate for complex representation or the rate for litigation? The one with litigation in the title or the one that may be representing complex matters? I conclude, again, that the bankruptcy data in the 2014 ALM SLFE do not provide a consistent indicator of complexity and do not provide a reliable indicator of prevailing market rates for complex federal litigation.

33. The 1989 update to the *Laffey* Matrix conducted at the suggestion of the court of appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(*en banc*),[39] was designed to elicit billing rates for complex federal litigation. It was an expert survey that targeted attorneys who were performing complex federal litigation and asked for billing rates for defined levels of experience.

34. Simply put, all surveys are not alike. The ALM SLFE surveys and the survey for the 1989 update of the *Laffey* Matrix served different purposes. They surveyed different populations. Their results are not substitutes for one another. An updated 1989 *Laffey* Matrix does not provide a set of economic and financial data about the entire legal profession; and, the ALM SLFE surveys (2011 and 2014) do not provide reliable estimates of prevailing rates for complex federal litigation.

35. My billing rate for the preparation of this affidavit is $250/hour.

---

[39] See: Declaration of Joseph A. Yablonski, Pl. Ex. 33.

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This document executed on April 26, 2017.

*mkavanaugh*
_____
MICHAEL KAVANAUGH, PhD