# EXHIBIT 1

Declaration of David L. Cleveland
about recently received FOIA
responses

January 20, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICA GATORE, et al, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 15-cv-0459 [RGW] |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF HOMELAND SECURITY, ) | |
| Defendant, ) | |
| ) | |

<u>DECLARATION OF DAVID L. CLEVELAND dated January 20, 2018</u>

I, David L. Cleveland, pursuant to 28 U.S. C. § 1746, declare under penalty of perjury: I am counsel for plaintiffs in this action.

Catholic Charities made a FOIA request for the asylum officer assessment for each applicant noted in the attached documents.  In December 2017, the DHS responded by mailing me several paragraphs of each assessment:

-Edmond Watungisa [Attachment A];

-Kaps Kapende [Attachment B]

-Lisbeth Lili Garcia Reyes [Attachment C]

I declare under penalty of perjury under the laws of the District of Columbia that foregoing is true and accurate.  Dated: January 20, 2018.

Respectfully submitted,

/s/ David L. Cleveland
DAVID L. CLEVELAND
DC Bar # 424209
Catholic Charities of Washington

# ATTACHMENT A

(b)(5)

## ASSESSMENT TO REFER

ALIEN NUMBER: 205 960 969          DATE: March 18, 2015

NAME: Edmond Watungisa            ASYLUM OFFICER: ZAR 174

COUNTRY: Congo (DRC)              REVIEWING SAO: ZAR 368

LOCATION: ZAR

Applicant indicated that he is a forty-one year-old male native and citizen of the Democratic Republic of the Congo who entered the United States at Washington- Dulles International Airport on November 24, 2012, with fraudulent documents. (Applicant entered using an Angolan passport with the name Edmundo Wasunda, DOB: August 28, 1985). United States Citizenship and Immigration Services (USCIS) records and applicant's testimony indicate that applicant's status is not lawful.

The applicant fears that he will be persecuted by the government of the Democratic Republic of the Congo on account of his political opinion as a member of the Union for Democracy and Social Progress (UDPS), a political party that is opposed to the government.

The applicant filed his asylum application on April 25, 2013. However, the applicant did not establish to the satisfaction of the adjudicator his true identity

Applicant claimed that he entered the United States on November 23, 2013 (his asylum application Form I-589 lists his entry date into the United States as November 13, 2012) with an Angolan passport under the name of Edmundo Wasunda and bearing his picture. Applicant was also issued a visitor visa by the United States' Consular Office in Luanda, Angola, under the name of Edmundo Wasunda and bearing his picture. Applicant filed his asylum application under the name of "Edmond Watungisa" He also obtained work authorizations and a social security number under the name of "Edmond Watungisa."

Although presentation of a passport is prima facie evidence of nationality and identity, that presumption is rebutted in this case. Applicant's testimony and his asylum application (Form I-589) indicate that his true identity is Edmond Watungisa, a national of the DRC; DOB: August 28, 1973. Applicant has admitted to committing visa fraud and gaining admission to the United States on a fake passport.

Assessment

9

# ATTACHMENT B

ASSESSMENT TO REFER

ALIEN NUMBER: A209 487 764

NAME: KAPENDE, Kaps Plamedi

COUNTRY: Democratic Republic of the Congo

LOCATION:   ZAR

ASSESSMENT DATE: 6/12/2017

ASYLUM OFFICER: S. VanderMeer; ZAR474

REVIEWING SAO:  K. Osuji; ZAR438

The applicant indicated that he is a 15-year-old male native and citizen of the Democratic Republic of the Congo, who entered the United States at Washington-Dulles International Airport on September 14, 2015, on a B1/B2 visa valid until December 31, 2016. The applicant is not in lawful status.

The applicant was represented by his attorney, David Cleveland, during the course of his asylum interview. The interview was conducted in English because the applicant was comfortable speaking English with the officer.

The applicant fears he will be kidnapped or killed by unknown government officials in the Democratic Republic of the Congo (DRC) on account of his membership in a particular social group of *Family member of his father, Jeanpy Kapende Ndaty.*

Under the William Wilberforce Trafficking Victims Protection Act of 2008 (TVPRA), USCIS has initial asylum jurisdiction over any asylum application filed by an unaccompanied alien child. An unaccompanied alien child (UAC) is a child who has no lawful immigration status in the United States; has not attained 18 years of age; and has no parent or legal guardian in the United States, or for whom no parent or legal guardian in the United States is available to provide care and physical custody. During the course of the interview, the applicant was determined to be a UAC. The applicant entered the United States under the age of 18 years old, he was also unaccompanied by either his parents or a legal guardian. Furthermore, at the time of filing, the applicant did not have any legal guardian in the United State. As USCIS has determined that the applicant is found to be a UAC, USCIS has jurisdiction to adjudicate the applicant's asylum claim pursuant to the TVPRA. Further, because the applicant is a UAC, his application is not subject to the one year filing deadline.

The applicant testified as follows:   On January 23, 2015 the applicant was approached by five individuals with weapons while waiting for the bus in the Democratic Republic of the Congo. The applicant said that these individuals put the gun to the applicant's back and told him to follow them. The applicant was then placed in a car and driven what he said seemed like hours. The applicant was taken to a house and was kept there for three days. During that time, these individuals did not harm the applicant; they only came in to tell the applicant that if they didn't get his father, they were going to beat him. The applicant stated that there were other individuals in different rooms that he could hear being beaten. After three days the applicant was placed back in the car and driven to be dropped off. During this time, he was thrown out of the vehicle and sustained minor injuries. The applicant claimed that after this, his father wanted him to be brought to a hospital to have his blood tested for poison. The applicant learned that he was not poisoned, but was checked for any serious harm. The applicant believes that these individuals who kidnapped him were part of the government because they spoke Swahili, which most people in the government speak. He did not go to the police because they also work for the government and he could be harmed for going. After this, the applicant remained in the DRC for another 8 months prior to coming to the U.S. without being threatened or harmed.

11

The applicant fears that if he were to return to the DRC, he would be kidnapped again and possibly killed by individuals working for the government. He believes that these individuals would harm him as a way to get to his father. Since leaving, the applicant has not received any threats. The applicant stated that he did not know where his parents were, however during the interview he stated that he speaks to his family every month or so. He stated that they are still in hiding but that his siblings still go to school. He also claimed that they have not been attacked or harmed since he came to the U.S.

(b)(5)   The applicant stated that he did not fear anyone else in the Democratic Republic of the Congo. The applicant also stated that no one has mistreated, threatened or harmed him besides the aforementioned.

# ATTACHMENT C

ASSESSMENT TO REFER

ALIEN NUMBER: A206 722 226                    ASSESSMENT DATE: 4/24/2017

NAME: GARCIA REYES, Lisbeth Lili            ASYLUM OFFICER: S. VanderMeer; ZAR474

COUNTRY:   Honduras                          REVIEWING SAO: E. Roeschke; ZOL03W

LOCATION:  ZAR                                                              JER ⑤

The applicant indicated that she is a 14-year-old female native and citizen of Honduras, who was apprehended at or near Hidalgo, TX on or about May 27, 2014 without valid entry documents but was released into the custody of her mother. The applicant is not in lawful status.

The applicant was represented by her attorneys, Katherine Felgenhauer and Rosemary Rakas, during the course of her asylum interview. The interview was conducted in Spanish with Mariana Oria serving as the interpreter.

The applicant fears she will be killed by her uncle, Andres Reyes Cardenas, in Honduras on account of her membership in a particular social group of *family member of her grandmother, Hortencia Cardenas.*

Under the William Wilberforce Trafficking Victims Protection Act of 2008 (TVPRA), USCIS has initial asylum jurisdiction over any asylum application filed by an unaccompanied alien child. An unaccompanied alien child (UAC) is a child who has no lawful immigration status in the United States; has not attained 18 years of age; and has no parent or legal guardian in the United States, or for whom no parent or legal guardian in the United States is available to provide care and physical custody.

Evidence in the file indicates a previous UAC status determination was made by CBP. The applicant has an I-213 form designating her as a UAC on May 30, 2014. As USCIS has determined that the applicant was previously found to be a UAC, USCIS has jurisdiction to adjudicate the applicant's asylum claim pursuant to the TVPRA. Further, because the applicant is a UAC, her application is not subject to the one year filing deadline.

The applicant testified as follows: When the applicant was around 9 years old her uncle, Andres Reyes Cardenas, lived in the house next door to her grandmother, Hortecia Caredenas, and her house. Every day the applicant would see this uncle. He would come over and sit around the house or come over and watch TV. In 2011, Andres became more violent due to his drug use. He would come over and ask his mother, the applicant's grandmother, for money. The applicant stated that sometimes Andres would threaten to harm the applicant or even kill the applicant. The applicant believed that her uncle knew how much she meant to her grandmother and knew that if he used the applicant against his mother, he would get what he wanted. The applicant testified that sometimes Andres would walk around the house with a machete when he would threaten her and her grandmother.

The applicant and her family never reported Andres' threats to the police. Her grandmother didn't want to see her son in jail. The last threat the applicant received was about a week before she decided to come to the United States. She fears going back to Honduras because she fears her uncle will carry out his threats and kill her. Though the applicant and her family members have not received any threats since the applicant came to the United States, the applicant's cousin stated the Andres is still on drugs and still carries his machete around with him.

(b)(5)   The credibility of applicant's testimony was analyzed