# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                                       |     |
|---------------------------------------|-----|
| RICA GATORE, <u>et al.</u>,           | )   |
|                                       | )   |
| Plaintiffs,                           | )   |
|                                       | )   |
| v.                                    | )   Civil Action No. 15-459 (RBW) |
|                                       | )   |
| UNITED STATES DEPARMENT               | )   |
| OF HOMELAND SECURITY,                 | )   |
|                                       | )   |
| Defendant.                            | )   |

_____)

## <u>MEMORANDUM OPINION</u>

Catholic Charities and eight individual plaintiffs initiated this putative class action against the defendant, the United States Department of Homeland Security, under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552 (2012), seeking, <u>inter alia</u>, portions of documents termed "assessments to refer" ("assessments") prepared by asylum officers in connection with the individual plaintiffs' applications for asylum in the United States.  <u>See generally</u> Amended Complaint ("Am. Compl.").  Currently pending before the Court is the Defendant's Renewed Motion for Summary Judgment ("Def.'s Summ. J. Mot."), and the Plaintiffs' Motion for Class Certification ("Pls.' Class Cert. Mot.").  Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny both motions and <u>sua sponte</u>

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Class Certification ("Pls.' Class Cert. Mem."), ECF No. 15; (2) the Declaration of Jill A. Eggleston ("Eggleston Decl."), ECF No. 22-1; (3) the Defendant's Me[m]orandum of Points and Authorities in Support of Its Motion for Summary Judgment, Opposition to Plaintiff[s'] Motion to Certify Class, and Opposition to Plaintiff[s'] Motion for Partial Summary Judgment ("Def.'s 1st Summ. J. Mem. & Class Cert. Opp'n"), ECF No. 23; (4) the Plaintiffs' Reply to DHS Opposition to Motion for Class Certification ("Pls.' Class Cert. Reply"), ECF No. 26; (5) the Plaintiffs' Supplemental Memorandum in Support of Their Motion for Class Certification ("Pls.' Supp. Class Cert. Mem."), ECF No. 33; (6) the Defendant's Response to Plaintiffs' Supplemental Memoranda, ECF No. 37; (7) the Plaintiff's Reply to DHS "Response," ECF No. 38; (8) the Supplemental Declaration of Jill A. Eggleston ("Supp. Eggleston . . . )

(continued . . . )

grant summary judgment to the individual plaintiffs on their requests for the reasonably segregable portions of their assessments.

## I.  BACKGROUND

As explained in the Court's prior opinions and orders in this case, plaintiff Catholic Charities submitted FOIA requests to the defendant on behalf of each of the eight individual plaintiffs, requesting, inter alia, the individual plaintiffs' assessments, see, e.g., Am. Compl. ¶¶ 10, 12; see also Def.'s Facts ¶¶ 1–8, which "are documents prepared by asylum officers" after interviewing an applicant for asylum and that "contain[, inter alia,] their opinion about whether an applicant should receive asylum or, instead, be referred to an immigration judge for removal proceedings," Def.'s Facts ¶ 10; see also Pls.' Reply to Def.'s Facts ¶ 10 (asserting that the assessments also "contain facts").  Although the defendant initially disclosed some documents in response to the individual plaintiffs' FOIA requests, see Supp. Eggleston Decl. ¶ 12, it withheld

---

( . . . continued)
Decl."), ECF No. 44-1; (9) the Plaintiffs' Supplemental Memorandum in Support of Their Motion for Class Certification ("Pls.' 2d Supp. Class Cert. Mem."), ECF No. 47; (10) the Plaintiffs' December 2016 Supplemental Memorandum in Support of Their Motion for Class Certification ("Pls.' 3d Supp. Class Cert. Mem."), ECF No. 61; (11) the Plaintiffs' Report to the Court (Apr. 17, 2017) ("Pls.' April 2017 Report"), ECF No. 73; (12) the Defendant's Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Facts"), ECF No. 77-1; (13) the Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Summ. J. Mem."), ECF No. 77-2; (14) the Second Supplemental Declaration of Jill A. Eggleston ("2d Supp. Eggleston Decl."), ECF No. 77-3; (15) the Third Supplemental Declaration of Jill A. Eggleston ("3d Supp. Eggleston Decl."), ECF No. 77-4; (16) the Plaintiffs' Opposition to the [Defendant's] Renewed Motion for Summary Judgment ("Pls.' Summ. J. Opp'n"), ECF No. 78; (17) the Plaintiffs' Reply to [the Defendant's] Statement of Material Facts as to Which There Is No Genuine Dispute ("Pls.' Reply to Def.'s Facts"), ECF No. 78-1; (18) the Plaintiffs' Statement of Genuine Issues and Statement of Material Facts That Are Necessary To Be Litigated ("Pls.' Facts"), ECF No. 78-2; (19) the defendant's Reply in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Summ. J. Reply"), ECF No. 82; (20) the Plaintiffs' Supplement to ECF #78-2 ("Pls.' Supp. Summ. J. Opp'n"), ECF No. 86; (21) the Plaintiffs' Notice of Additional Authority Concerning Segregability of Asylum Officer Assessments, ECF No. 92; (22) the defendant's Notice of In Camera Submission ("Def.'s In Camera Notice"), ECF No. 97; (23) the Plaintiffs' Report to the Court (Jan. 21, 2018) ("Pls.' January 2018 Report"), ECF No. 98; (24) the defendant's Notice of Filing ("Def.'s FOIA Guide Notice"), ECF No. 101; (25) the Plaintiffs' Objections to Recently-Filed "Complete" FOIA Processing Guide ("Pls.' FOIA Guide Objs."), ECF No. 102; (26) the Plaintiffs' Notice of Additional Authority Concerning Class Certification and Asylum Applicants ("Pls.' Class Cert. Notice"), ECF No. 104; and (27) the Plaintiffs' June 2018 Report to the Court ("Pls.' June 2018 Report"), ECF No. 106.

in full the assessments prepared in each of the individual plaintiffs' cases, see Pls.' Facts ¶¶ 20–21; see also Supp. Eggleston Decl. ¶¶ 11–12.  Consequently, on March 31, 2015, the plaintiffs filed this action, alleging that the defendant had violated the FOIA by (1) refusing to release "the first several paragraphs" of each assessment, see, e.g., Am. Compl. ¶¶ 11, 35, which contain information regarding the applicants' "biography, basis of claim [for asylum], and testimony [presented to the asylum officer]" (the "factual introductory paragraphs"), Pls.' Summ. J. Opp'n at 2; and (2) by having "a [blanket] policy and practice of never providing any part of an [a]ssessment to a FOIA requester," Am. Compl. ¶ 14, and "not even attempting to determine if there are reasonably segregable portions of an [a]ssessment," id. ¶ 25.

Thereafter, the plaintiffs filed their motion for class certification, which requests that the Court certify a class of "all persons who, since March 30, 2009, have made, or will make during the pendency of th[e] [plaintiffs'] lawsuit, a FOIA request for the [a]ssessment of their asylum officer, but were provided no portion of the [a]ssessment." Pls.' Class Cert. Mot. at 1.[2]  In this motion, the plaintiffs represented that the putative class consisted of at least forty-one members, including seven of the individual plaintiffs then involved in this case, plus thirty-four other asylum applicants on whose behalf Catholic Charities had submitted a FOIA request for their assessments.  See Pls.' Class Cert. Mem. at 13; see also Pls.' Class Cert. Mot., Exhibit ("Ex.") 1 (Declaration of David L. Cleveland (June 13, 2015) ("June 2015 Cleveland Decl.")) at 2–3 (identifying fourteen asylum applicants named in filings submitted in Bayala v. Department of Homeland Security, Civ. Action No. 14-7 (D.D.C.)); id., Ex. 1 (June 2015 Cleveland Decl.) at 4–23 (identifying twenty additional putative class members and attaching copies of the FOIA

---

[2] Because the plaintiffs did not insert page numbers on their class certification motion or many of their other filings in this case, the page numbers cited by the Court when referencing the plaintiffs' filings are the automatically-generated page numbers assigned to the plaintiffs' filings by the Court's ECF system.

requests submitted by Catholic Charities on their behalf or letters from the defendant in response to those requests). Subsequently, the plaintiffs identified twenty additional class members. See Pls.' April 2017 Report, Ex. 2 (Declaration of David L. Cleveland About Seven More Class Members (Apr. 13, 2017) ("April 2017 Cleveland Decl.")) at 2 (asserting that the plaintiffs' putative class consisted of a total of sixty-one members as of April 13, 2017).

On July 28, 2015, the defendant moved for summary judgment on the individual plaintiffs' claims regarding their requests for production of their assessments, asserting that it had properly withheld the assessments in their entirety pursuant to the deliberative process privilege of Exemption 5 of the FOIA. See Def.'s 1st Summ. J. Mem. & Class Cert. Opp'n at 7. In support of its position, the defendant relied on a declaration from Jill A. Eggleston, the Assistant Center Director in the FOIA and Privacy Act Unit of the National Records Center of the United States Citizenship and Immigration Services ("USCIS"), see Eggleston Decl. ¶ 1, in which she concluded that "[t]he factual portions of the assessment[s] . . . cannot be severed or segregated from [their] context and thus must remain exempt from disclosure . . . pursuant to Exemption 5 of the FOIA," id. ¶ 17 (citations omitted).

In the Court's memorandum opinion issued on April 6, 2016, it denied the defendant's initial summary judgment motion due to the following concerns with the defendant's position that factual portions of the assessments were not reasonably segregable:

> First, the Eggleston Declaration discusses the segregability of the assessments in a categorical fashion, as opposed to providing a description of the assessments prepared in each of the individual plaintiffs' cases. See Eggleston Decl. ¶¶ 17, 19, 20 (discussing the assessments in general). The Court is therefore unable to conduct a de novo assessment of the agency's determination of segregability as to each of the individual plaintiffs' requests. 5 U.S.C. § 552(a)(4)(B) (upon judicial review, "the court shall determine the matter de novo . . . ."). Second, the defendant's representation that it conducted a "line-by-line examination" of each of the assessments to determine whether any portions were reasonably segregable, Eggleston Decl. ¶ 20, is seemingly undermined by what appears to be the

defendant's blanket policy not to release any portion of an assessment, irrespective of its contents, see Pls.' Suppl. Partial Summ. J. Mem., Ex. A at 1, 2 (indicating that assessments should be withheld in full). . . .

[Additionally, t]he courts in Gosen v. U.S. Citizenship and Immigration Services, 118 F. Supp. 3d 232 (D.D.C. 2015), and Abtew v. U.S. Department of Homeland Security, 47 F. Supp. 3d 98 (D.D.C. 2014), aff'd 808 F.3d 895 (D.C. Cir. 2015), which both involved the same type of assessment at issue here, ordered the defendant to provide the withheld assessments for in camera review and thereafter concluded that some portions were reasonably segregable. See Gosen, 118 F. Supp. 3d at 243 ("The Court has reviewed the documents in question and finds that there is at least some factual material that may not expose the deliberative process. For example, both assessments begin with factual introductory information."); Abtew, 47 F. Supp. 3d at 114 ("After reviewing the Assessment in camera, the Court concludes that the first six paragraphs simply recite and summarize the facts that [the] plaintiff presented to the [asylum officer] during his asylum application interview. Those paragraphs do not include any analysis or impressions, and they do not reflect the [asylum officer's] deliberative process: although the document does not purport to be a verbatim rendition of the interview, and there may have been some streamlining involved, the summary does not involve the sort of culling of facts from a large universe that could be characterized as deliberative." (citing Ancient Coin Collectors[ Guild v. U.S. Dep't of State], 641 F.3d [504,] 513 [(D.C. Cir. 2011)]). The Court is persuaded by Gosen and Abtew that there may be some portion of the assessments at issue in this case that contain factual information that may be reasonably segregated from the whole.

Gatore v. U.S. Dep't of Homeland Sec., 177 F. Supp. 3d 46, 52–53 (D.D.C. 2016) (Walton, J.) (Gatore I). To afford the defendant an opportunity to address these concerns, the Court denied its initial summary judgment motion and ordered "the defendant to submit a revised Vaughn index, affidavit, or declaration[] that reassesses the issue of segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released." Id. at 53. Additionally, the Court held in abeyance the plaintiffs' class certification motion "pending the defendant's compliance with the Court's [O]rder . . . and the resolution of any renewed motions for summary judgment." Id. at 55.

On May 27, 2016, in response to the Court's Order, the defendant filed a supplemental declaration from Eggleston. See generally Supp. Eggleston Decl. Eggleston represented that

each of the seven assessments then at issue in this case "contain[ed] three sections[:] an introduction, an analysis section[,] and a conclusion / recommendation section," and that "[t]he introduction section is not a verbatim transcript of information provided by [the] plaintiff[]s but reflects a selective recording of information the USCIS asylum officer deemed particularly pertinent to [each] plaintiff's request for asylum, and therefore, focused specifically on select information." Id. ¶ 12. She further represented that each assessment had received "two levels of review," id. ¶ 11, including an initial review by "USCIS staff," id. ¶ 5, and "a second review in the administrative appeals process by the USCIS Office of Chief Counsel," id. ¶ 10, and that following this review process, "a determination was made that the factual portions of the assessment[s] to refer c[ould ]not be severed or segregated from [their] context[s] and thus must remain exempt from disclosure," id. ¶ 11.

On February 8, 2017, the plaintiffs filed an amended complaint, see Am. Compl. at 1, which added a new cause of action regarding an eighth individual plaintiff, Veronica Carolina Lemus Miranda, who also sought production of portions of her assessment, see id. ¶¶ 72–74. Shortly thereafter, on March 14, 2017, the defendant released limited portions of the assessments to the seven individual plaintiffs who originally brought this case. See Pls.' Facts ¶¶ 23–24; see also Pls.' April 2017 Report, Ex. 1 (Release of Information from [Seven] Assessments on March 14, 2017 ("March 2017 Production")). Specifically, the defendant released the first paragraph of each of the assessments for plaintiffs Rica Gatore, Isam Al Timemy, Aminata Ouedraogo, Herve Shyaka, and Charly Minth Ayessa, and the first two paragraphs of each of the assessments for plaintiffs Innocent Kabano Shyaka and Georgine Lumonika. See Pls.' April 2017 Report, Ex. 1 (March 2017 Production) at 2–8.

A few months later, on June 9, 2017, the defendant filed its renewed motion for summary judgment. See Def.'s Summ. J. Mot. at 1. On that same date, the defendant also released the first three paragraphs of the assessment for plaintiff Lemus Miranda. See Pls.' Facts ¶ 24; see also id., Ex. 1 (Declaration of David L. Cleveland (June 15, 2017) ("June 2017 Cleveland Decl.")), Attachment ("Att.") C (Portions of Assessment of Ms. Lemus Miranda, Released on June 9, 2017). It simultaneously submitted a second and third supplemental declaration from Eggleston, both which acknowledged the defendant's decision to release information from the eight individual plaintiffs' assessments, in particular, "limited information relating to the asylum applicant's biographical information" contained in "the opening paragraph(s)." 2d Supp. Eggleston Decl. ¶ 3; see also 3d Supp. Eggleston Decl. ¶ 9 (representing that "[o]n further review, it was determined that USCIS could release limited factual information from the introductory portion" of the assessment for plaintiff Lemus Miranda).

On January 4, 2018, following its review of the three supplemental Eggleston declarations and the parties' additional submissions, the Court ordered the defendant to submit the individual plaintiffs' assessments to the Court for in camera review. See Gatore v. U.S. Dep't of Homeland Sec., 292 F. Supp. 3d 486, 495 (D.D.C. 2018) (Walton, J.) (Gatore II). The Court concluded that

> although [it] [wa]s satisfied that the defendant ha[d] reviewed each assessment individually in this case, see Supp. Eggleston Decl. ¶ 12, and the defendant ha[d] now released to the plaintiffs certain "biographical" information contained in each assessment, [ ] 2d Supp. Eggleston Decl. ¶ 3, . . . for several reasons [ ] the supplemental declarations again preclude[d] it from making a de novo determination as to whether the defendant ha[d] fulfilled its obligation to disclose all reasonably segregable material, see Gatore [I], 177 F. Supp. 3d at 53.
>
> . . . [Specifically, i]t appears that the information the defendant has disclosed represents only a fraction of the factual material that the Abtew and Gosen courts determined could be released. . . . And since this Court issued its Memorandum Opinion [in Gatore I], a third member of this Court has [ ] reviewed an assessment in camera and [ ] concluded that the defendant could reasonably segregate several

introductory paragraphs, including paragraphs that "recit[e] and summar[ize] [the plaintiff's asylum] application." Bayala[ v. U.S. Dep't of Homeland Sec.], 264 F. Supp. 3d [165, 177 (D.D.C. 2017)]; see also id. at 176–77 . . . (ordering the defendant to release "the first eight paragraphs" of the assessment). Here, . . . the defendant has released only the first one or two paragraphs in each assessment, which contain a limited set of facts, such as the plaintiff's age, citizenship, immigration status, date and location of entry into the United States, and information regarding the logistics of a plaintiff's asylum interview. See Pls.' [April 2017] Report, Ex. 1 (March [ ] 2017 [Production]). But see Pls.' Facts, Ex. 1 ([June 2017] Cleveland Decl.), Att. C (Portions of Assessment of Ms. Lemus Miranda, Released on June 9, 2017) (releasing limited additional information regarding the basis for plaintiff Lemus Miranda's asylum application). The defendant has not released any paragraphs summarizing the content of a plaintiff's testimony during an asylum application interview or the factual content of a plaintiff['s] asylum application supporting the plaintiff's asylum claim.

The supplemental Eggleston declarations fail to adequately explain why the defendant has not disclosed the additional factual paragraphs that the Abtew, Gosen, and Bayala courts determined could be released. . . .

Id. at 491–92.

On January 10, 2018, in accordance with the Court's January 4, 2018 Order, the defendant submitted the individual plaintiffs' assessments for in camera review. See Def.'s In Camera Notice at 1. The Court having now examined the assessments, the parties' pending motions are now ripe for review.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S.

242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), but must instead present specific facts "such that a reasonable [factfinder] could return a verdict for the non[-]moving party," Grosdidier v. Broad. Bd. of Governors, Chairman, 709 F.3d 19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  And, if the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases are typically resolved on motions for summary judgment.  Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  The Court will grant summary judgment to the agency in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (citation omitted).  "With respect to the applicability of exemptions . . . , summary judgment may be based solely on information provided in the agency's supporting declarations," Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 133

(D.D.C. 2013) (Nat'l Sec. Counselors III) (citations omitted), so long as those declarations "contain reasonable specificity of detail rather than merely conclusory statements" and "are not called into question by contradictory evidence in the record or by evidence of agency bad faith," Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013). "With respect to policy-or-practice claims, the moving party must establish that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Nat'l Sec. Counselors III, 960 F. Supp. 2d at 133 (quoting Fed. R. Civ. P. 56(a)).

**B.      Class Certification**

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23(b)). Accordingly, "a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir. 2006). To satisfy this burden, "a party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard."). And, "[i]n deciding whether class certification is appropriate, a district court must [ ] undertake a 'rigorous analysis' to see that the requirements of the Rule have been satisfied." R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 179 (D.D.C. 2015) (quoting Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147, 161 (1982)).

# III.    ANALYSIS

## A.    The Individual Plaintiffs' Requests for the Reasonably Segregable Portions of Their Assessments

The defendant first seeks summary judgment on the individual plaintiffs' requests for the factual introductory paragraphs in their assessments. As explained in the Court's prior memorandum opinions, the parties do not dispute that at least some portion of each assessment at issue in this case is protected from disclosure pursuant to the deliberative process privilege of Exemption 5, see, e.g., Gatore II, 292 F. Supp. 3d at 490, which protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena, 40 F.R.D. 318, 324 (D.D.C. 1966)). However, they dispute the extent to which the assessments' factual introductory paragraphs are reasonably segregable and therefore, must be disclosed. Specifically, the defendant argues that apart from the "certain limited biographical information about the [plaintiffs]" that it has already disclosed, Def.'s Summ. J. Mem. at 15, the factual introductory paragraphs "constitute[] a 'selection or organization of facts [that] is part of an agency's deliberative process' and is therefore exempt from disclosure," id. at 12 (quoting Ancient Coin Collection Guild, 641 F.3d at 513). As support for its position, the defendant relies on Eggleston's representations that "[t]he introduction section [of each assessment] is not a verbatim transcript of information provided by [the] plaintiff[]s but reflects a selective recording of information the USCIS asylum officer deemed particularly pertinent to [the] plaintiffs' request[s] for asylum." Supp. Eggleston Decl. ¶ 12. In response, the plaintiffs argue that the factual introductory paragraphs "are [one hundred percent] segregable and should be released in

full," Pls.' Summ. J. Opp'n at 2, as they are simply "a summary of what an asylum applicant told his officer," id. at 9.

Under the FOIA, the Court must determine de novo whether agency records have been properly withheld. See 5 U.S.C. § 552(a)(4)(B). The FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt," id. § 552(b), and "it has long been the rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions," Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)). Although "factual material is [generally] not exempt [from disclosure] under the deliberative process privilege," Bayala, 264 F. Supp. 3d at 175, this Circuit has held that the deliberate process privilege does protect "factual summaries . . . [that are] culled . . . from the much larger universe of facts presented . . . and reflect an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations," Ancient Coin Collection Guild, 641 F.3d at 513 (internal quotation marks omitted).

Upon in camera review of the plaintiffs' assessments, the Court agrees with the plaintiffs that a number of factual introductory paragraphs in each assessment do not qualify for protection under Exemption 5. As the Gosen, Abtew, and Bayala Courts found, these paragraphs "simply recite and summarize the facts that [the] plaintiff[s] presented to the [asylum officer] during [their] asylum application interview[s]," Abtew, 47 F. Supp. 3d at 114; see also Gosen, 118 F. Supp. 3d at 243–44 (describing the factual material it determined could potentially be segregated as including "a paragraph that is (mostly) just a chronological list of what the applicant

testified"), and in their asylum applications, see Bayala, 264 F. Supp. 3d at 177 (observing that

"the first eight paragraphs [of the plaintiff's assessment were] a simple recitation and summary

of [the plaintiff's asylum] application"). Although it appears that Eggleston is correct that these

paragraphs are "not a verbatim transcript of information provided by [the] plaintiffs," Supp.

Eggleston Decl. ¶ 12, the Court cannot discern any support for her assertion that these

paragraphs "reflect[] a selective recording of information [that] the [ ] asylum officer[s] deemed

particularly pertinent to [the] plaintiffs' request[s] for asylum." Supp. Eggleston Decl. ¶ 12.[3]

The paragraphs themselves "carry no signs that they were plucked from a broader array of facts,"

Bayala, 264 F. Supp. 3d at 177, let alone a "much larger universe of facts presented," Ancient

Coin Collection Guild, 641 F.3d at 51, and Eggleston "does not [represent that she] consult[ed]

the asylum officer[s] to ask if additional facts were discussed or t[ook] any other steps to

establish whether facts were omitted," Bayala, 264 F. Supp. 3d at 176. In the absence of any

such factual support, Eggleston's representation is "merely [a] conclusory statement[]" that

cannot justify an award of summary judgment for the defendant. Judicial Watch, 726 F.3d at

215. Moreover, the Court's in camera review reveals that "[t]he facts contained in the[se] . . .

paragraphs" do not otherwise reflect the asylum officer's deliberative process, as they "are

---

[3] The defendant attempts to support Eggleston's claim by asserting that "asylum officers are specifically instructed to exercise judgment when drafting [a] factual recitation [in an assessment] and to include only those facts that are material to th[eir] recommendation," Def.'s Summ. J. Mem. at 11, citing an asylum officer "lesson plan," which reminds asylum officers that "[a]n important aspect of streamlined writing is that the asylum officer is not required to 'show' all the information that he or she is required to 'know,'" see id. (quoting Pls.' 2d Supp. Class Cert. Mem., Ex. 1 (Declaration of David L. Cleveland (June 2, 2016) ("June 2016 Cleveland Decl.")), Att. A (Asylum Officer Basic Training Lesson Plan) at 6). However, this language does not explicitly require asylum officers to exclude any material, and indeed, it instructs that asylum officers should not exclude "[i]nformation that forms the basis of [an asylum applicant's] claim." Pls.' 2d Supp. Class Cert. Mem., Ex. 1 (June 2016 Cleveland Decl.), Att. A (Asylum Officer Basic Training Lesson Plan) at 6 (instructing that such information "must be 'shown'" (emphasis added)). In any event, this general advice to all asylum officers does not demonstrate that the asylum officers who prepared the assessments at issue in this case excluded any information from those assessments, or "culled . . . from [a] much larger universe of facts," Ancient Coin Collection Guild, 641 F.3d at 513, and therefore, this language does not support the defendant's position that the factual introductory paragraphs at issue here are so selective that they are deliberative, see Def.'s Summ. J. Mem. at 12.

presented without interpretation, characterization, or analysis by the author." Bayala, 264 F. Supp. 3d at 176. Therefore, although "there may have been some streamlining involved" in the composition of these paragraphs, the Court cannot conclude that they "involve the sort of culling of facts from a large universe that could be characterized as deliberative." Abtew, 47 F. Supp. 3d at 114 (citing Ancient Coin Collection Guild, 641 F.3d at 513); see also Playboy Enters., Inc. v. Dep't of Justice, 677 F.2d 931, 935 (D.C. Cir. 1982) ("Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.")

Additionally, the Court concludes that these paragraphs are not "inextricably intertwined with exempt portions," and as such are reasonably segregable and must be produced. Wilderness Soc'y, 344 F. Supp. 2d at 18. Therefore, the defendant has failed to satisfy its burden to demonstrate "that it has fully discharged its obligation[] under the FOIA" to produce the reasonably segregable portions of the individual plaintiffs' assessments, Friends of Blackwater, 391 F. Supp. 2d at 119 (citation omitted), and accordingly, the Court must deny the defendant's renewed motion for summary judgment as to the individual plaintiffs' requests for their assessments. Moreover, the Court finds it appropriate to sua sponte enter summary judgment for the individual plaintiffs as to these requests. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Bayala, 264 F. Supp. 3d at 177 (quoting Celotex Corp., 477 U.S. at 326). After two rounds of summary judgment briefing and the defendant's submission of four declarations from Eggleston, there is no question that the

defendant has had ample opportunity to present its arguments and evidence in support of its position on the individual plaintiffs' requests. Therefore, because the Court has concluded that the factual introductory paragraphs in each assessment are reasonably segregable and must be produced, the Court will enter summary judgment for the individual plaintiffs on their requests for their assessments and order the defendant to release the assessments' factual introductory paragraphs to the individual plaintiffs.[4]

## B.    Catholic Charities' Policy-or-Practice Claims

The defendant also seeks summary judgment on Catholic Charities' "policy-or-practice" claims, see Def.'s Summ. J. Mem. at 15–18, which are claims that the defendant has "a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA" that "will impair [the plaintiffs'] lawful access to information in the future," Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988).[5] Here, Catholic Charities asserts that the defendant employs two policies or practices that violate the FOIA: (1) "a [blanket] policy and practice of never providing any part of an [a]ssessment to a FOIA requester," Am. Compl. ¶ 14; and (2) "a [blanket] policy and practice of not even attempting to determine if there are reasonably

---

[4] The Court's sua sponte grant of relief regarding the individual plaintiffs' requests does not affect the Court's conclusion that the individual plaintiffs may not bring these requests or their other claims "on behalf of [a] class of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b)[(2)]." Am. Compl. ¶ 64. As explained in Part III.C, infra, the Court concludes that the individual plaintiffs may not represent such a class for other reasons.

[5] The defendant merely argues that "Catholic Charities' [policy or practice] claim[s] fail[]," Def.'s Summ. J. Mem. at 16; however, it appears that the individual plaintiffs also seek to bring these claims, see, e.g., Pls.' Class Cert. Notice at 3 ("In the instant case, [plaintiff] Gatore challenges the [defendant's] policy and practice of failing to disclose the segregable portions of asylum officer assessments." (emphasis added)); Am. Compl. ¶ 67 (alleging that "common questions . . . that relate to and affect the rights of each member of the [putative] class[] . . . include . . . whether the [defendant]'s continued pattern and practice of not making an attempt to determine whether there are portions [of assessments] that are reasonabl[y] segregable is unlawful"). Because the defendant has not addressed the individual plaintiffs' policy and practice claims, the Court need not decide whether summary judgment should be granted as to them. However, the Court notes that to the extent the individual plaintiffs intend to pursue these claims, for the reasons explained in Part III.C, infra, it appears that they would lack standing to do so.

segregable portions of an [a]ssessment," id. ¶ 25.[6]  As relief for these alleged violations, Catholic

Charities requests that the Court "[d]eclar[e] that [the challenged] polic[ies] and practice[s] . . .

violate[] the FOIA," "order [the] defendant to discontinue . . . the [ ] unlawful policies and

practices," and "enjoin [the] defendant from failing to disclose [the reasonably segregable]

portions [of assessments] in the future." Id. at 16.   The defendant argues that both policy-or-

practice claims must fail because "Catholic Charities [l]acks [s]tanding for [p]rospective

[r]elief," see Def.'s Summ. J. Mem. at 16–17, and alternatively, because the record is insufficient

to establish that the alleged policies or practices exist or that the defendant's actions violate the

FOIA, see, e.g., id. at 17 (asserting that, contrary to the plaintiffs' claims, "the record shows that

[the d]efendant has a policy of reviewing assessments . . . for segregable information"); see also

Def.'s Summ. J.  Reply at 8 (arguing that "Catholic Charities cannot prove that assessments . . .

that are not even at issue in this case contain segregable information").  The Court will address

each of the defendant's arguments in turn.

### 1.      Standing

The defendant argues that Catholic Charities lacks standing to bring either of its policy-

or-practice claims because it has failed to "establish . . . concrete likelihood of injury."  Def.'s

Summ. J. Mem. at 17.  Specifically, it argues that Catholic Charities' allegations that it "has

made many FOIA requests for [a]ssessments of asylum applicants in the past, and will continue

to do so in the future," id. (quoting Am. Compl. ¶ 56), are the type of "general statements . . .

---

[6] Although Catholic Charities also refers to a "policy and practice of not providing reasonably segregable portions of assessments to FOIA requesters," Am. Compl. ¶ 70, it appears that this reference is an alternative characterization of the alleged "policy and practice of never providing any part of an [a]ssessment to a FOIA requester," id. ¶ 14. Because Catholic Charities uses only the latter characterization in its opposition to the defendant's summary judgment motion, see Pls.' Summ. J. Opp'n at 20, the Court will refer in this opinion only to the alleged "policy and practice of never providing any part of an [a]ssessment to a FOIA requester," Am. Compl. ¶ 14, with the understanding that this characterization is interchangeable with a "policy and practice of not providing reasonably segregable portions of assessments to FOIA requesters," id. ¶ 70.

[that] do not establish . . . concrete likelihood of injury[, which] emanates from allegations of specific, pending FOIA requests that are likely to be subject to an agency's challenged policies," id. (quoting Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 93–94 (D.D.C. 2013) (Nat'l Sec. Counselors II)). The Court disagrees.

"The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability," Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011) (citation omitted), and "[t]he absence of any one of these three elements defeats standing," Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010). To establish "injury in fact," a plaintiff must show that it has suffered "a harm . . . that is 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). However, "when a [party] seeks prospective declaratory or injunctive relief, . . . past harms are insufficient." Nat'l Sec. Counselors v. CIA, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (Nat'l Sec. Counselors I) (citing Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011)). Instead, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury." Dearth, 641 F.3d at 501. And, "[w]hen a plaintiff seeks injunctive or declaratory relief specifically for the purpose of challenging an alleged policy or practice of a government agency, it must [ ] demonstrate that it is 'realistically threatened by a repetition of [its] experience,'" Nat'l Sec. Counselors I, 898 F. Supp. 2d at 260 (quoting Haase v. Sessions, 835 F.2d 902, 910–11 (D.C. Cir. 1987)), which requires "plaintiffs [to] not only demonstrate [the] existence [of a policy] but also that they are likely to be subjected to the policy again," Haase, 835 F.2d at 911; see also Tipograph v. Dep't of Justice, 146 F. Supp. 3d 169, 176 (D.D.C. 2015) ("If a plaintiff demonstrates that it will be subjected in the near future to the particular agency policy or practice

that it challenges under [the] FOIA, then the injury requirement of Article III standing is satisfied."). Finally, "the Court must measure standing by the state of the world as of the date of the [a]mended [c]omplaint." G&E Real Estate, Inc. v. Avison Young—Wash., D.C., LLC, 168 F. Supp. 3d 147, 159 (D.D.C. 2016); see also Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74 (2007) ("When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

To survive a challenge to standing at the summary judgment stage, a plaintiff may "no[t] [ ] rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Swanson Grp. Mfg. LLC v. Jewell, 790 F.3d 235, 240 (D.C. Cir. 2015) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). Here, the Court concludes the evidence proffered by Catholic Charities satisfies its burden to demonstrate a likelihood of future injury for purposes of standing to bring its policy-or-practice claims. First, Catholic Charities has satisfied its burden to "demonstrate [the] existence" of the alleged policies and practices for purposes of standing. Haase, 853 F.2d at 911. As explained in further detail in Part III.B.2.i, infra, Catholic Charities has proffered an abundance of evidence to support the existence of a "policy and practice of never providing any part of an [a]ssessment to a FOIA requester," Am. Compl. ¶ 14, including documents reflecting (1) the defendant's instructions to its FOIA reviewers to "[w]ithhold [assessments] in full," see, e.g., Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at 159; (2) the defendant's denial of more than forty requests for assessments since 2012, including the eight assessments at issue in this case, see, e.g., Pls.' Class Cert Mot., Ex. 1 (June 2015 Cleveland Decl.) at 4, 9–13, 15, 17, 19, 21, 23 (providing documentation of eleven requests for assessments denied by the defendant from 2012 to 2015); and (3) the defendant's representations to Catholic Charities, made when

rejecting a number of Catholic Charities' appeals from initial denials of assessments, that "[a]n asylum officer's written assessment is exempt from disclosure," see, e.g., Pls.' Supp. Class Cert. Mem., Ex. 2 (December 2015 Cleveland Decl.), Att. A (Letter from Alan D. Hughes, Associate Counsel, Commercial and Administrative Law Division, Department of Homeland Security, Citizenship and Immigration Services, to David L. Cleveland (Sept. 15, 2015)) at 29. Moreover, as explained in Part III.B.2.ii, infra, this same evidence also indirectly supports the existence of a "policy and practice of not even attempting to determine if there are reasonably segregable portions of an [a]ssessment," Am. Compl. ¶ 25, as it would be logical to infer that the defendant's FOIA reviewers do not routinely make segregability determinations of assessments because a blanket policy of never providing any part of an assessment would render such determinations unnecessary. Therefore, Catholic Charities has proffered sufficient evidence to "demonstrate [the] existence" of the challenged policies and practices for purposes of standing. Haase, 853 F.2d at 911.

Additionally, Catholic Charities has proffered evidence demonstrating that it is "likely to be subjected to the [alleged] polic[ies] again." Haase, 835 F.2d at 911. As the defendant acknowledges, see Def.'s Summ. J. Mem. at 17, "[w]here a FOIA requester challenges an alleged ongoing policy or practice and can demonstrate that it has pending [requests] that are likely to implicate that policy or practice, future injury is satisfied." Nat'l Sec. Counselors I, 898 F. Supp. 2d at 262 (first citing Citizens for Responsibility and Ethics in Wash. ("CREW") v. U.S. Sec. & Exch. Comm'n, 858 F. Supp. 2d 51, 60 (D.D.C. 2012); then citing CREW v. Exec. Office of the President, 587 F. Supp. 2d 48, 60–61 (D.D.C. 2008)); see also Tipograph, 146 F. Supp. 3d at 176 (recognizing that a plaintiff may demonstrate a likelihood of future injury by "demonstrat[ing] that [it has] pending FOIA requests that are likely to implicate the [alleged]

policy or practice'" (second alteration in original) (quoting Nat'l Sec. Counselors II, 931 F.

Supp. 2d at 93)). Here, Catholic Charities asserts that it "has several FOIA requests [for

assessments] pending," Pls.' Summ. J. Opp'n at 19, including "[forty] requests [for assessments]

pending" as of June 2015, id. (citing Pls.' Class Cert. Mot., Ex. 1 (June 2015 Cleveland Decl.)),

and "[sixty-one] requests [for assessments] pending" as of April 2017, id. (citing Pls.' April 2017

Report, Ex. 2 (April 2017 Cleveland Decl.)). Although it appears that when the plaintiffs filed

their amended complaint on February 8, 2017, see Am. Comp. at 1, a number of these requests

had already been processed by the defendant, and therefore were no longer pending, see, e.g.,

Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.), Att. A (Letter from Jill A.

Eggleston, Director, FOIA Operations, to David L. Cleveland (Dec. 13, 2016)) (representing that

as of December 13, 2016, the defendant had "completed [its] review of all documents"

responsive to Catholic Charities' FOIA request and "released" documents), viewing the record in

the light most favorable to Catholic Charities, as the Court must, see Holcomb, 433 F.3d at 895,

at least seventeen of these requests remained unresolved by the defendant as of that date,

including two requests that were made after the plaintiffs amended their complaint, see, e.g.,

Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.), Att. D (Letter from USCIS to David

L. Cleveland (Feb. 13, 2017)) (informing Cleveland that the defendant "received [his] request for

information relating to Kay T. Khine on February 13, 2017"); id., Ex. 2 (April 2017 Cleveland

Decl.), Att. F (Letter from Jill A. Eggleston, Director, FOIA Operations, to David L. Cleveland

(Mar. 16, 2017)) (informing Cleveland that the defendant had "received [his] request for

information relating to Ephrem Gudu Djaleta on March 16, 2017").[7] And, the record

---

[7] The Court's estimate of the number of Catholic Charities' FOIA requests that were pending as of February 8, 2017, includes all FOIA requests for assessments submitted by Catholic Charities that are documented in the record, either with a copy of the FOIA request itself or a letter from the defendant acknowledging receipt of the request, see, e.g.,

(continued . . . )

demonstrates that these seventeen requests are "likely to implicate the alleged policies and lead to future injury," Nat'l Sec. Counselors I, 898 F. Supp. 2d at 261, given that the pending requests seeking assessments are "of the same character" as the numerous requests for assessments that Catholic Charities asserts have been rejected by the defendant pursuant to its alleged policies and practices, including the assessments at issue in this case, id. at 262 (concluding that a plaintiff had standing to bring a FOIA policy-or-practice claim because "it had already submitted fifteen FOIA requests to the [defendant]" that "appear[ed] to be of the same character as the specific requests that form[ed] the basis of the plaintiff's [ ]claims"); see also Muckrock, LLC v. CIA, 300 F. Supp. 3d 108, 134 (D.D.C. 2018) (concluding that the plaintiff had sufficiently established that it "w[ould] be subjected in the near future to the . . . [e-mail] policy or practice that it challenge[d]" because it "[wa]s a serial FOIA requester[] [that] . . . consistently file[d] request[s] for emails which [we]re denied," and it "ha[d] pending requests for emails that ha[d] not been denied yet but would be denied based on [the challenged] policy" (citations and internal quotation marks omitted)).[8]

---

( . . . continued)
Pls.' Class Cert Mot., Ex. 1 (June 2015 Cleveland Decl.) at 6 (copy of FOIA Request for Mamadou Badiane), and which have not yet been processed by the defendant, as evidenced by the absence of any documentation in the record indicating that the defendant has completed its review of documents responsive to the request.

[8] Although the documentation provided in support of some of Catholic Charities' FOIA requests does not explicitly indicate that the requests seek assessments, see, e.g., Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.), Att. D (Letter from USCIS to David L. Cleveland (Feb. 13, 2017)) (only acknowledging that Catholic Charities had made a "request for information relating to Kay T. Khine"), and the corresponding declarations from Catholic Charities' attorney also do not explicitly assert that the requests sought assessments, see, e.g., id., Ex. 2 (April 2017 Cleveland Decl.) at 2 (only generally representing that "FOIA requests" were made), the declarations do assert that the requests were made on behalf of asylum applicants who are "members of the class," see, e.g., id., Ex. 2 (April 2017 Cleveland Decl.) at 2. And, because the putative class includes "all persons who, since March 30, 2009, have made . . . a FOIA request for the[ir] [a]ssessment," Pls.' Class Cert. Mot. at 1, and the Court must view the record in the light most favorable to Catholic Charities, see Holcomb, 433 F.3d at 895, the Court finds it appropriate to conclude for purposes of deciding the defendant's summary judgment motion that these requests sought assessments.

Additionally, the record supports Catholic Charities' assertion that it "will continue to . . . [make FOIA requests for assessments] in the future."  Pls.' Facts ¶ 25.  Catholic Charities' evidence shows that as of the date it filed its motion for class certification, it had submitted forty-one FOIA requests for assessments to the defendant, see Pls.' Class Cert. Mot., Ex. 1 (June 2015 Cleveland Decl.) at 1–2, and that since then, it has made twenty new requests for assessments, see Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.) at 1.  Moreover, filing FOIA requests for assessments appears to be critical to Catholic Charities' stated mission of "help[ing] asylum applicants[] by [filing] FOIA requests" and "monitor[ing] and examin[ing] the word of asylum officers[] to ensure that all asylum applicants obtain justice."  Pls.' Facts ¶ 26.  These facts, which the Court must "take[] to be true," Swanson Grp. Mfg. LLC, 790 F.3d at 240, "display[] [Catholic Charities'] clear intent to continue filing FOIA requests with the [defendant]," Nat'l Sec. Counselors I, 898 F. Supp. 2d at 262 (finding that the plaintiff's "clear intent to continue filing FOIA requests" was "supported by its consistent habit of filing such requests both before and after the commencement of th[e] litigation and its stated mission 'to obtain records about national security issues'").

The defendant has made no response to Catholic Charities' arguments regarding standing, see generally Def.'s Reply, and thus, merely relies on its initial position that Catholic Charities has not satisfied its burden to establish likelihood of future injury under the standard articulated in National Security Counselors II and Tipograph.  See Def.'s Summ. J. Mem. at 17 (first citing Nat'l Sec. Counselors II, 931 F. Supp. 2d at 93–94; then citing Tipograph, 146 F. Supp. 3d at 175).  However, based on the facts presented by Catholic Charities, National Security Counselors II and Tipograph are easily distinguishable, as the plaintiffs in those cases "neither assert[ed] that [they] ha[d] any FOIA requests pending that could implicate the alleged [ ] policy or practice nor

identifie[d] a specific FOIA request that they intend[ed] to file in the near future." Tipograph,

146 F. Supp. 3d at 177 (internal quotation marks and citation omitted) (rejecting as insufficient

the plaintiff's "generalized plans to file unspecified requests for information at some uncertain

point in the future"); see also Nat'l Sec. Counselors II, 931 F. Supp. 2d at 93–94 (similar).

 For all of the foregoing reasons, the Court concludes that Catholic Charities has identified

specific facts demonstrating that it is likely to be subjected to the defendant's alleged policies

and practices in the future.  Consequently, the defendant has failed to demonstrate that Catholic

Charities lacks standing to challenge its alleged policies and practices.

### 2. The Merits of Catholic Charities' Policy-or-Practice Claims

#### i. The Defendant's Alleged Policy and Practice of Never Providing Any Part of Assessments to FOIA Requesters

 The defendant raises two additional arguments for why the Court must grant it summary

judgment on Catholic Charities' challenge to an alleged "policy and practice of never providing

any part of an [a]ssessment to a FOIA requester."  Am. Compl. ¶ 14.[9]  First, it argues that no

such policy exists because it "has shown that it has a policy instructing . . . [FOIA processors to]

review[] [assessments] for purposes of segregability," Def.'s Reply at 8, and "to release

segregable information from assessments," Supp. Eggleston Decl. ¶ 8.  Second, the defendant

_____

[9] The defendant argues that "Catholic Charities seems to have [ ] rewritten its policy-or-practice claim . . . [and n]ow[] . . . seems to say that what it really wants is not for the Court to order [the d]efendant to conduct a segregability review of assessments, but for the Court to order [the d]efendant to actually release information from certain assessments that are not at issue in this litigation."  Def.'s Summ. J. Reply at 8 (citing Pls.' Summ. J. Opp'n at 20).  However, the defendant mischaracterizes the plaintiffs' filings in this case.  The plaintiffs' Amended Complaint challenges not only the defendant's alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an [a]ssessment," Am. Compl. ¶ 25, but also the alleged "policy and practice of never providing any part of an [a]ssessment to a FOIA requester," id. ¶ 14.  Moreover, neither the Amended Complaint nor the plaintiffs' opposition asks the Court to order the defendant to produce information from assessments not at issue in this litigation.  See Am. Compl. at 16 (requesting that the Court "[o]rder [the] defendant to disclose the reasonably segregable portions of the [a]ssessment to each plaintiff" and "[e]njoin the defendant from failing to disclose such portions in the future" (emphasis added)); Pls.' Summ. J. Opp'n at 20 (generally stating that "requesters want compliance with the FOIA").  Therefore, the Court concludes that the argument advanced by the defendant has no merit.

argues that although Catholic Charities "complain[s] that some assessments . . . have been withheld in full," it "cannot prove that assessments . . . that are not even at issue in this case contain segregable information that must be released," Def.'s Reply at 8, and "numerous courts have upheld similar withholdings in the past, as this Court has noted," id. (citing Gatore I, 177 F. Supp. 3d at 52). Catholic Charities responds that the defendant "has provided no evidence to refute the[] allegations [in its] Amended Complaint," including the claim that "[d]uring the past six years, . . . [numerous] asylum applicants have made a FOIA request for their assessment[, but t]he defendant has not provided even one assessment in response." Pls.' Summ. J. Opp'n at 20.

Viewing the evidence in the light most favorable to Catholic Charities, it is clear to the Court that Catholic Charities has satisfied its burden to identify specific facts "such that a reasonable [factfinder] could return a verdict for [it]" on this particular policy-or-practice claim. Grosdidier, 709 F.3d at 23. First, Catholic Charities has provided a number of documents reflecting "written instructions [from the defendant] to FOIA employees . . . to '[w]ithhold [assessments] in full.'" Pls.' Summ. J. Opp'n at 1. Notably, Appendix C to the defendant's FOIA Processing Guide (the "FOIA Guide"), which purports to "provide guidance [to the defendant's FOIA reviewers] relating to processing specific and/or commonly used documents," Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at 157, contains a table with the following entry regarding assessments:

| TITLE/SUBJECT | FOIA EXEMPTION | PA EXEMPTION |
|---|---|---|
| Assessment to reject/terminate, grant or refer (relates to Asylum) | **Withhold in full (b)(5)** | (d)(5) and (b)(5) |

id., Att. (FOIA Processing Guide) at 159 (emphasis added). Additionally, Catholic Charities has provided a number of documents produced by the defendant to a third party in June 2017, which also purport to instruct that assessments be withheld in full. See Pls.' Supp. Summ. J. Opp'n, Ex.

2 (Declaration of Dr. Ella Cleveland about "Administrative Appeal" Records Received on June 18, 2017 from the DHS (July 26, 2017) ("Dr. Ella Cleveland Decl.")), Att. B (15 Pages Concerning "Administrative Appeals" Printed from the Disc Attached to the DHS Letter of June 18, 2017 ("June 2017 Production")) at 10 ("The asylum officer's Assessment to Refer . . . [is] to be held in full"); see also id., Ex. 2 (Dr. Ella Cleveland Decl.), Att. B (June 2017 Production) at 13 ("Fully withhold Assessment to Refer[.]"); id., Ex. 2 (Dr. Ella Cleveland Decl.), Att. B (June DHS Production) at 8 ("Always withhold an Assessment to Refer . . . . The document is always deliberative."); id., Ex. 2 (Dr. Ella Cleveland Decl.), Att. B (June 2017 Production) at 6 (listing "Asylum Officers' Assessments" under the title "Documents or information that we withhold").

Despite acknowledging that Appendix C of the FOIA Guide "does state that assessments . . . are withheld in full," Eggleston nonetheless asserts that Catholic Charities "misconstrues th[e] [Appendix], and interprets it out of context[] as a strict direction to withhold the assessments." Supp. Eggleston Decl. ¶ 8. Specifically, she argues that the "Appendix C introductory paragraph states that the . . . 'guidance [in the Appendix] does not comprehensively cover every scenario and cannot be used as a substitute for thought[,] . . . [and] does not mean [a reviewer] must always use all [of] th[e] exemptions [referenced], or only those exemptions." Id.; see also Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at 157. In addition, she cites a passage that appears earlier in the FOIA Guide that generally instructs FOIA processors to

> segregate information that is exempt (cannot be released) from information that is non-exempt (can be released). If a document contains one piece of information that is not releasable, but the rest of the document is releasable, it is usually improper to withhold the entire page. If you are able to give the requester part of a page, you should. You should not fully withhold a page solely because it is more convenient.

Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at 49. However, the defendant's attempt to qualify the instruction to withhold in Appendix C fails to acknowledge the numerous other documents produced by Catholic Charities reflecting instructions by the defendant to

withhold assessments in full.  See, e.g., Pls.' Supp. Summ. J. Opp'n, Ex. 2 (Dr. Ella Cleveland

Decl.); Att. B (June 2017 Production) at 10 ("The asylum officer's Assessment to Refer . . . [is]

to be held in full.").

And critically, the defendant also ignores Catholic Charities' evidence that the

defendant's FOIA reviewers have repeatedly denied requests for assessments, demonstrating

that, notwithstanding any other language in Appendix C or general instructions elsewhere in the

Guide, the defendant's FOIA processors have followed Appendix C's specific instructions to

"[w]ithhold [assessments] in full," Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at

159.  Specifically, Catholic Charities' evidence demonstrates that in the nearly five-year period

before the plaintiffs filed their amended complaint, the defendant denied over forty FOIA

requests for assessments, including the requests submitted by the individual plaintiffs in this

case.[10]  And notably, the defendant has not identified a single instance in which it voluntarily

provided any part of an assessment to a FOIA requester during this period.[11]  Additionally, the

---

[10] The Court's estimate of the number of Catholic Charities' FOIA requests for assessments denied by the defendant includes all requests for assessments (1) made on behalf of putative class members, i.e., persons who Catholic Charities represents have been "provided no portion of the [a]ssessment," Pls.' Class Cert. Mot. at 1, (2) made prior to the filing of the amended complaint and (3) that have already been processed by the defendant as indicated by evidence in the record, see, e.g., Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.), Att. A (Letter from Jill A. Eggleston, Director, FOIA Operations, to David L. Cleveland (Dec. 13, 2017)) (representing that the defendant had "completed [its] review of all documents" responsive to the request and "released" any non-exempt documents or information).

[11] The Court acknowledges that following the plaintiffs' initiation of this suit, the defendant produced limited factual content from the assessments at issue in this case in March and June of 2017, see Pls.' Facts ¶¶ 23–24; see also Pls.' April 2017 Report, Ex. 1 (March 2017 Production); Pls.' Facts, Ex. 1 (June 2017 Cleveland Decl.), Att. C (Portions of Assessment of Ms. Lemus Miranda, Released on June 9, 2017), and released several paragraphs from three assessments in response to FOIA requests from asylum applicants on December 2017, see Pls.' January 2018 Report at 1.  However, any change in the defendant's conduct following the initiation of this suit is irrelevant to the question of whether the defendant "routinely employed [the alleged] policy . . . , or whether the [defendant] could again opt to employ such a policy . . . , which are the only pertinent questions at issue here."  Muckrock, LLC, 300 F. Supp. 3d at 135–36 (citing Payne Enters., 837 F.2d at 491–92).  In any event, Catholic Charities has produced evidence that since the filing of this suit, the defendant has continued to refuse to provide any part of assessments in response to a number of other requests.  Compare Pls.' Class Cert. Mem. at 13 (asserting that the plaintiffs' putative class contained forty-one members as of June 15, 2015), with Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.) at 1 (asserting that the plaintiffs' putative class contained sixty-one members as of April 13, 2017).

record contains statements from the defendant on five separate occasions acknowledging that at least some of these requests were denied because it is the defendant's position that "[a]n asylum officer's written assessment is exempt from disclosure." See, e.g., Pls.' Supp. Class Cert. Mem., Ex. 2 (December 2015 Cleveland Decl.), Att. A (Letter from Alan D. Hughes, Associate Counsel, Commercial and Administrative Law Division, Department of Homeland Security, Citizenship and Immigration Services, to David L. Cleveland (Sept. 15, 2015) at 29 (rejecting Catholic Charities' appeal from the defendant's denial of an assessment request). This evidence clearly supports the existence of a policy or practice of the defendant to never provide any part of an assessment to FOIA requesters. See Muckrock, LLC, 300 F. Supp. 3d at 136 (granting summary judgment for the plaintiff on a policy-or-practice claim based on undisputed evidence that the defendant had refused to process at least twelve FOIA requests pursuant to the challenged policy, while the defendant failed to "present[] any evidence predating the commencement of th[e] case that . . . [it] processed a single FOIA request" in contravention of that policy).

Moreover, Eggleston's representations that "the [defendant's] policy includes a segregability review and instructions to release segregable information from assessments," Supp. Eggleston Decl. ¶ 8, and that, in this case, the defendant "reviewed all responsive documents pursuant to the [individual plaintiffs'] FOIA requests," id. ¶ 5, are insufficient to defeat Catholic Charities' evidence. Although "[i]n FOIA cases, '[s]ummary judgment may be granted on the basis of agency affidavits' in FOIA cases," such affidavits are not sufficient if "called into question by contradictory evidence in the record." Judicial Watch, Inc., 726 F.3d at 215 (second alteration in original) (quoting Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006)). Here, as explained above, the record contains a significant amount of

contradictory evidence suggesting that the defendant does indeed have a policy of withholding assessments in full as a matter of course. Therefore, Eggleston's denials fail to refute Catholic Charities' specific evidence supporting the existence of the defendant's alleged policy and practice of never providing any part of an assessment. See Muckrock, LLC, 300 F. Supp. 3d at 135 (granting summary judgment for the plaintiff on its challenge to the defendant's blanket e-mail policy despite the defendant's representations that "it ha[d] no such policy but consider[ed] requests for e[-]mail records on a 'case-by-case' basis").

The defendant next argues that Catholic Charities cannot show that the defendant's denials of FOIA requests for assessments violate the FOIA because it "cannot prove that assessments . . . that are not even at issue in this case contain segregable information that must be released." Def.'s Reply at 8. The Court finds this point unpersuasive as well, given that Catholic Charities has identified specific evidence demonstrating that many, if not all, assessments contain reasonably segregable factual material that must be disclosed under the FOIA. As already discussed, three other members of this Court in Abtew, Gosen, and Bayala concluded after in camera reviews that the assessments at issue in those cases contained factual summaries of the applicants' claims and testimony that were reasonably segregable and therefore had to be disclosed. See Bayala, 264 F. Supp. 3d at 177 (concluding that the defendant could reasonably segregate eight introductory paragraphs, including paragraphs that "recit[e] and summar[ize] . . . [the plaintiff's asylum] application"); Gosen, 118 F. Supp. 3d at 243 ("The Court has reviewed the documents in question and finds that there is at least some factual material that may not expose the deliberative process. For example, both assessments begin with factual introductory information."); Abtew, 47 F. Supp. 3d at 114 (concluding that the defendant could reasonably segregate "the first six paragraphs[, which] simply recite and summarize the

facts that [the] plaintiff presented to the [asylum officer] during his asylum application interview").  And this Court has now also determined after its in camera review that the eight assessments at issue in this case contain similar factual introductory material that is reasonably segregable.  See supra Part III.A.

Additionally, Catholic Charities has submitted evidence demonstrating that many or all assessments contain content similar to the reasonably segregable factual content in the assessments at issue in Abtew, Gosen, Bayala, and this case.  Specifically, Catholic Charities has provided excerpts from the defendant's asylum officer lesson plan instructing asylum officers to follow a "standard format" for assessments, see Pls.' 2d Supp. Class Cert. Mem., Ex. 1 (Declaration of David L. Cleveland (June 2, 2016) ("June 2016 Cleveland Decl."), Att. A (Asylum Officer Basic Training Lesson Plan) at 1, which requires a "[b]rief statement of" the "[b]asis of [the applicant's] [c]laim," as well as a "summary of . . . the applicant's [testimony]," id., Ex. 1 (June 2016 Cleveland Decl.), Att. A (Asylum Officer Basic Training Lesson Plan) at 9. Moreover, Catholic Charities has provided copies or descriptions of fifteen different assessments, which demonstrate that each of these assessments contains factual introductory paragraphs that recite the relevant asylum applicant's claim and testimony presented to the asylum officer.  See Am. Compl., Ex. 2 (Declaration of David L. Cleveland (Mar. 5, 2015) ("March 2015 Cleveland Decl.")) (attaching copies of or describing ten assessments that were produced by the defendant in court proceedings or in response to Catholic Charities' FOIA requests in the period from 1998 to 2007); Pls.' January 2018 Report, Ex. 1 (Declaration of David L. Cleveland About Recently Received FOIA Responses (Jan. 20, 2018)), Att. A (Assessment of Edmond Watungisa), Att. B (Assessment of Kaps Plamedi Kapende), Att. C (Assessment of Lisbeth Lilli Garcia Reyes); Pls.' FOIA Guide Objs., Ex. 1 (Declaration of David

L. Cleveland About FOIA Response Received on January 26, 2018 (Mar. 17, 2018)), Att. A

(Assessment of Naw Hla Kyi); Pls.' June 2018 Report, Ex. 1 (Declaration of David L. Cleveland

About FOIA Response Received on June 18, 2018 (June 28, 2018)), Att. A (Assessment of

Mohammed Al Qaraghuli).[12]  Notably, the defendant does not dispute Catholic Charities'

assertion that all assessments follow a standard format, see generally Def.'s Summ. J. Mem.;

Def.'s Summ. J. Reply, and indeed, the Eggleston declarations describe the format and content of

each of the eight assessments at issue in this case using identical terms, see, e.g., Supp. Eggleston

Decl. ¶ 12 (describing each assessment as "contain[ing] three sections[:] an introduction, an

analysis section[,] and a conclusion / recommendation section").  Thus, Catholic Charities has

presented evidence showing that all assessments contain at least some reasonably segregable

material, and consequently, that the defendant's challenged policy or practice of never providing

any part of an assessment to a FOIA requester violates the FOIA.

The defendant finally argues that "numerous courts have upheld [fully] withholding[]

[assessments] in the past," Def.'s Reply at 8 (citing Gatore I, 177 F. Supp. 3d at 52); however,

this point does not undermine Catholic Charities' evidence either.  Although two decisions in

this Court have held that the defendant properly withheld an assessment in its entirety, these

decisions did not reach that conclusion based on in camera review by the court of the assessment

at issue, but instead relied solely on the defendant's representations that any factual content in

the assessments could not be reasonably segregated.  See Anguimate v. U.S. Dep't of Homeland

Sec., 918 F. Supp. 2d 13, 16, 22 (D.D.C. 2013) (Walton, J.) (relying on representations from

_____

[12] The Court notes that Catholic Charities purports to attach copies of ten assessments to its Amended Complaint,
see Am. Compl., Ex. 2 (March 2015 Cleveland Decl.) at 14–15 ¶ 5; however, it has only attached copies of two of
the ten assessments, see id., Ex. 2 (March 2015 Cleveland Decl.) at 16, 18–19.  Nonetheless, the Court finds it
appropriate to consider Cleveland's representations regarding the content of all ten assessments, as the defendant has
not proffered evidence to refute these representations, and in any event, the Court must view this evidence in the
light most favorable to Catholic Charities.  See Holcomb, 433 F.3d at 895.

Eggleston nearly identical to those in this case and "deem[ing] the Eggleston declaration sufficient to discharge the agency's segregability obligations"); Abramyan v. U.S. Dep't of Homeland Sec., 6 F. Supp. 3d 57, 66 (D.D.C. 2013) (in concluding that there existed "no non-exempt material to segregate," relying on the defendant's representation that "the factual portions of [an a]ssessment . . . reflect[] a selective recording of information the [ ] asylum officer deemed particularly pertinent to [the p]laintiff's request for asylum"). By contrast, in this case and in Abtew, Gosen, and Bayala, although Eggleston made similar representations, the courts found it necessary to conduct in camera reviews, and following those reviews, it was determined that the assessments at issue in fact contained reasonably segregable material. Therefore, unlike the decisions in these cases, the conclusions in Anguimate and Abramyan that assessments do not contain reasonably segregable material were based on a less robust examination of the assessments.

In sum, the Court concludes that Catholic Charities has satisfied its burden to identify specific facts "such that a reasonable [factfinder] could return a verdict for . . . [it]" on its claim that the defendant has a policy and practice of not providing any part of an assessment to FOIA requesters in violation of the FOIA. Grosdidier, 709 F.3d at 23. Accordingly, the Court must deny the defendant's motion for summary judgment on this policy-or-practice claim.

### ii. The Defendant's Alleged Policy and Practice of Not Even Attempting To Determine If There Are Reasonably Segregable Portions of Assessments

The defendant also seeks summary judgment on Catholic Charities' challenge to an alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an [a]ssessment." Am. Compl. ¶ 25. Specifically, the defendant argues that Catholic Charities cannot establish that any such policy exists because "the record shows that [the d]efendant has a policy of reviewing assessments . . . for segregable information."

Def.'s Summ. J. Mem. at 17.  As support, the defendant relies on the same evidence discussed above, namely, representations from Eggleston that its "policy includes a segregability review and instructions to release segregable information from assessments," Supp. Eggleston Decl. ¶ 8, and that, in this case, the defendant "reviewed all responsive documents pursuant to the [individual plaintiffs'] FOIA requests," id. ¶ 5, in addition to an excerpt from the FOIA Guide generally instructing the defendant's FOIA reviewers to release reasonably segregable material, see Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide) at 49.  Catholic Charities makes no specific response to the defendant's arguments regarding this claim, except to say that "[r]equestors do not care if 'review' is done; requesters want compliance with the FOIA."  Pls.' Summ. J. Opp'n at 20.

The Court concludes for several reasons that it cannot award summary judgment to the defendant on the plaintiff's claim that the defendant has a policy or practice of not even attempting to determine if there are reasonably segregable portions of an assessment.[13]  First, it is clear to the Court, and the defendant does not dispute, see generally Def.'s Summ. J. Mem.; Def.'s Summ. J. Reply, that such a policy or practice, if it existed, would violate the FOIA's requirements that agencies "take reasonable steps necessary to segregate and release nonexempt

---

[13] Although Catholic Charities' opposition does not explicitly oppose summary judgment on its claim challenging the alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an [a]ssessment," Am. Compl. ¶ 25; see Pls.' Summ. J. Opp'n at 20 ("Requestors do not care if 'review' is done; requesters want compliance with the FOIA."); see also Pls.' Class Cert. Notice at 3 (asserting only that plaintiff "Gatore challenges the [defendant's] policy and practice of failing to disclose the segregable portions of asylum officer assessments," and not referencing the alleged policy of not even attempting to determine if there are reasonably segregable portions of assessments), the Court may not grant summary judgment to the defendant solely on the basis of the plaintiff's failure to oppose the motion, given this Circuit's instruction that "a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment," Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507 (D.C. Cir. 2016) (citation omitted); cf. Wash. Alliance of Tech Workers v. U.S. Dep't of Homeland Sec., 892 F.3d 332, 344 (D.C. Cir. 2018) (holding that the district court abused its discretion when it "dismissed [the plaintiff's] plausible claim for relief because its timely response to the motion to dismiss purportedly failed to state [the plaintiff's] opposition with sufficient substance").  Therefore, the Court bases its decision as to whether summary judgment for the defendant is warranted on this claim on its independent assessment of the defendant's and the evidence in the record.

information," 5 U.S.C. § 552(a)(8)(A)(ii)(II), and to provide "[a]ny reasonably segregable

portion of a record . . . to any person requesting such record after deletion of the portions which

are exempt," id. § 552(b); see also Lurie v. Dep't of Army, 970 F. Supp. 19, 34 (D.D.C. 1998)

("The agency is required to make a 'segregability' determination[.]").  Second, Catholic

Charities' evidence of the defendant's alleged policy or practice of not providing any part of an

assessment to FOIA requesters gives rise to the reasonable inference that the defendant also has a

policy or practice of not even attempting to determine if there are reasonably segregable portions

of assessments, given that the former policy or practice would render it unnecessary for the

defendant's FOIA reviewers to make segregability determinations as to assessments.  In other

words, the evidence of the defendant's alleged policy or practice of not providing any part of an

assessment to FOIA requesters constitutes circumstantial evidence of the defendant's alleged

policy or practice of not even attempting to determine if there are reasonably segregable portions

of assessments.  See Lucas v. Duncan, 574 F.3d 772, 777 n.6 (D.C. Cir. 2009) ("Circumstantial

evidence is indirect evidence of a fact which is established or logically inferred from a chain of

other facts or circumstances." (citation omitted)).

Moreover, the evidence referenced by the defendant does not negate the inference in

Catholic Charities' favor that can be drawn from the evidence in the record.  The cited FOIA

Guide excerpt generally instructing FOIA reviewers to "segregate information that is exempt . . .

from information that is non-exempt," Def.'s FOIA Guide Notice, Att. (FOIA Processing Guide)

at 49, does not foreclose the existence of an informal practice of not making segregability

determinations when specifically reviewing assessments, see Payne Enters., Inc., 837 F.2d at 491

(instructing that policy-or-practice claims may be based on "informal [practices], rather than

[practices] articulated in . . . an official statement of policy"), which can be reasonably inferred

from the Guide's more specific instruction to "withhold [assessments] in full," Def.'s FOIA

Guide Notice, Att. (FOIA Processing Guide) at 159, and other evidence demonstrating the

existence of a policy or practice of never providing any part of an assessment to FOIA

requesters. Additionally, Eggleston's representation that the defendant's staff conducted a

segregability review as to the particular assessments at issue in this case, see Eggleston Decl.

¶ 20 (asserting that "[a]ll responsive documents [at issue in this litigation] . . . received a line-by-

line examination in an effort to identify all reasonably segregable, unprivileged, nonexempt

portions for release"),[14] does not foreclose the existence of the alleged policy or practice of not

making segregability determinations for assessments as a general matter, given that the

defendant has not made any representations regarding whether it conducted a segregability

review for any of the approximately thirty-five other FOIA requests for assessments that were

denied,[15] cf. Muckrock, LLC, 300 F. Supp. 3d at 136 (granting summary judgment for the

plaintiff on a policy-or-practice claim based on undisputed evidence that the defendant had

refused to process at least twelve FOIA requests pursuant to the alleged policy); Cause of Action

Institute v. Eggleston, 224 F. Supp. 3d 63, 72 (D.D.C. 2016) (recognizing "that a policy or

practice claim is alleged when [a] 'plaintiff challenges not just an isolated action'").

---

[14] Catholic Charities "den[ies] that 'USCIS staff' performed a segregability review" on the assessments at issue in this case on the ground that Eggleston "does not identify the[] persons" who conducted the review. See Pls.' Reply Facts ¶¶ 13–14. However, this allegation fails because "'[a]gency affidavits are accorded a presumption of good faith' in th[e] [FOIA] context and cannot be rebutted by speculation of the sort proffered by [Catholic Charities]." Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech., 775 F. Supp. 2d 174, 187 (D.D.C. 2011) (first alteration in original) (quoting SafeCard Servs., Inc. v. Sec. Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

[15] The Court's estimate of the number of Catholic Charities' FOIA requests for assessments that have been denied by the defendant includes all requests for assessments (minus the requests at issue in this case) that were (1) made on behalf of putative class members, i.e., persons who Catholic Charities represents have been "provided no portion of the [a]ssessment," Pls.' Class Cert. Mot. at 1; and (2) that have already been processed by the defendant as indicated by evidence in the record, see, e.g., Pls.' April 2017 Report, Ex. 2 (April 2017 Cleveland Decl.), Att. A (Letter from Jill A. Eggleston, Director, FOIA Operations, to David L. Cleveland (Dec. 13, 2016)) (representing that the defendant had "completed [its] review of all documents" responsive to the request and "released" any non-exempt documents or information).

Therefore, in light of the inference that may be drawn in Catholic Charities' favor, the defendant "simply cannot obtain [ ] summary judgment" on Catholic Charities' claim challenging the defendant's alleged policy or practice of not even attempting to determine if assessments contain reasonably segregable material. Celotex Corp., 477 U.S. at 330 n.2 ("If . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment" (alteration in original) (citation omitted)). The evidence proffered by the defendant in opposition to Catholic Charities' claim merely creates a genuine factual dispute that cannot be resolved on summary judgment. See Fed. R. Civ. P. 56(a). Accordingly, the Court must deny the defendant's motion for summary judgment as to this claim.

## C.     The Individual Plaintiffs' Motion for Class Certification

Having now resolved the defendant's summary judgment motion, the Court turns to the individual plaintiffs' motion for class certification. As already referenced, the eight individual plaintiffs in this case seek to bring their claims "on their own behalf and on behalf of [a] class of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b)[(2)]." Am. Compl. ¶ 64.[16] The defendant opposes class certification on the ground that the individual plaintiffs have failed to satisfy the prerequisites for class certification under Rule 23(a)(1) and (2), specifically, numerosity and commonality. See Def.'s Resp. to Pls.' Supp. Class Cert. Mem. at 7–8; see also Def.'s 1st Summ. J. Mem. & Class Cert. Opp'n at 13–16 (arguing that the individual plaintiffs have failed to establish numerosity). However, the Court concludes that it

---

[16] Although the Amended Complaint suggests that the individual plaintiffs seek certification of a class under both Rule 23(b)(2) and (b)(3), see Am. Compl. ¶¶ 70–71 (alleging that "[a]ll requirements of Fed. R. Civ. P. 23(b)(2) [and (3)] have been met"), their class certification motion and subsequent filings only reference Rule 23(b)(2), see, e.g., Pls.' Class Cert. Mem. at 18–19 (not referencing Rule 23(b)(3)). Therefore, the individual plaintiffs have done nothing to demonstrate that the requirements for class certification under Rule 23(b)(3) have been established, see Richards, 453 F.3d at 530, and therefore, the Court declines to certify any class under that provision.

need not address the defendant's arguments as to numerosity or commonality because it finds that the individual plaintiffs have failed to satisfy another requirement for certification of a class under Rule 23(a).

"Inherent in Rule 23 is the requirement that the class representatives be members of the class." Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan, 292 F.R.D. 8, 13 (D.D.C. 2013); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citation omitted)); Bailey v. Patterson, 369 U.S. 31, 32–33 (1962) ("[Plaintiffs] cannot represent a class of [which] they are not a part."); Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition.").[17] Thus, "where the lead plaintiff does not fit the class definition, the class may not be certified." Hayes, 725 F.3d at 360; see also 5 James Wm. Moore, et al., Moore's Federal Practice § 23.21[2] (3d ed. 1999) ("For a class action to proceed, the court must apply the class definition to each proposed class representative and find that the class representative is a member of that class."). Here, the individual plaintiffs seek to represent a class that "consists of all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the [a]ssessment of their asylum officer, but were provided no portion of the [a]ssessment." Am. Compl. ¶ 65 (emphasis added). However, as already explained, in March and June 2017, each of the individual plaintiffs received between one and three paragraphs of his or her assessment. See Pls.' Facts ¶¶ 23–24.

---

[17] As the Third Circuit in Hayes explained, "different courts have asserted different origins for this axiom," 725 F.3d at 360, including "the 'adequacy' requirement of Rule 23(a)(4)," the requirement that a class representative be "similarly situated to those he s[eeks] to represent," and the requirement that a class representative have standing, id. at 360 n.8. However, the Court need not decide between these different rationales because regardless of the origin, the Court "arrive[s] at the same conclusion: where the lead plaintiff does not fit the class definition, the class may not be certified." Id. at 360.

Therefore, the Court cannot find at this time that the individual plaintiffs are members of the proposed class of persons who "were provided no portion of the[ir] [a]ssessment." Am. Compl. ¶ 65. Accordingly, the Court must deny the individual plaintiffs' motion for class certification for failure to satisfy the requirements of Rule 23(a).

Additionally, to the extent that the individual plaintiffs seek to challenge the defendant's alleged FOIA policies and practices, see, e.g., Pls.' Class Cert. Notice at 3 ("[Plaintiff] Gatore challenges the [defendant's] policy and practice of failing to disclose the segregable portions of asylum officer assessments."), the Court cannot conclude that they have satisfied the requirements to represent a class under Rule 23(b)(2), which provides that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). "To represent a class under 23(b)(2), plaintiffs must have standing to obtain injunctive [or declaratory] relief," Does I Through III v. District of Columbia, 216 F.R.D. 5, 9 (D.D.C. 2003), which, as already explained, requires a plaintiff seeking prospective relief to "show he is suffering an ongoing injury or faces an immediate threat of injury," Dearth, 641 F.3d at 501, and, in the context of challenging an agency's FOIA policy or practice, generally requires a plaintiff to "demonstrate that [he or she has] pending FOIA requests that are likely to implicate the policy or practice,'" Tipograph, 146 F. Supp. 3d at 176 (quoting Nat'l Sec. Counselors II, 931 F. Supp. 2d at 93), or to demonstrate "a clear intent to continue filing FOIA requests with the [defendant]," Nat'l Sec. Counselors I, 898 F. Supp. 2d at 262. Here, the individual plaintiffs have not asserted that they are suffering an ongoing injury or face an immediate threat of injury; rather, they assert only that their FOIA requests for their assessments have been denied, see, e.g., Am. Compl. ¶ 12, which is a "past

harm[] [ ] insufficient" to establish entitlement to prospective relief, Nat'l Sec. Counselors I, 898 F. Supp. 2d at 253; see also Coleman v. Drug Enf't Admin., 134 F. Supp. 3d 294, 306 (D.D.C. 2015) (concluding that the defendant's effective denial of the records requested by the plaintiff was a "past injury [that did] not automatically portend future injury and confer standing to seek injunctive relief"). And, unlike plaintiff Catholic Charities, see supra Part III.B.1, the individual plaintiffs have not asserted that they have any pending FOIA requests beyond their individual requests at issue in this case or that they have any concrete plans to continue filing FOIA requests with the defendant. Therefore, the individual plaintiffs have failed to demonstrate that they have standing to seek prospective relief with respect to the defendant's alleged policies or practices. See CREW v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d 101, 106 (D.D.C. 2007) (concluding that the plaintiff lacked standing to obtain prospective relief for the defendant's alleged unlawful FOIA policy because it "d[id] not allege . . . that it ha[d] a FOIA request pending with the [defendant] or that it intend[ed] to file a specific FOIA request with the [defendant] for [ ] records [subject to the challenged policy] in the near future"). Consequently, the Court cannot certify a putative class as requested by the individual plaintiffs under Rule 23(b)(2). See Johnson v. District of Columbia, 248 F.R.D. 46, 56 (D.D.C. 2008) ("Finding that the [p]laintiffs lack standing to obtain prospective injunctive relief, the Court declines to certify [a] Rule 23(b)(2) class[.]").

For these reasons, the Court concludes that the individual plaintiffs have failed to demonstrate that the requirements for class certification under Rule 23(a) and (b)(2) have been satisfied. See Richards, 453 F.3d at 530. Accordingly, the Court must deny the individual plaintiffs' request for class certification.[18]

---

[18] Although neither party raised the issues of whether the individual plaintiffs are members of the putative class or

(continued . . . )

# IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the defendant has failed to demonstrate that it has disclosed all reasonably segregable portions of the individual plaintiffs' assessments, and therefore, the Court must deny the defendant's motion for summary judgment as to the individual plaintiffs' requests for the factual introductory paragraphs of their assessments.  The Court will also <u>sua sponte</u> enter summary judgment for the individual plaintiffs as to these requests and order the defendant to disclose the first several paragraphs of each assessment as indicated in the Order accompanying this Memorandum Opinion. Additionally, the Court concludes that Catholic Charities has identified sufficient evidence for a reasonable factfinder to conclude that the defendant has a policy or practice of never providing any part of an assessment and not even attempting to determine if assessments contain reasonably segregable material.  Thus, the Court must deny the defendant's motion for summary judgment as to Catholic Charities' policy-or-practice claims, as well.  Finally, because the individual plaintiffs have failed to demonstrate that they are members of the putative class or that they have standing to obtain prospective injunctive or declaratory relief, the Court must deny the individual plaintiffs' request for class certification.[19]

**SO ORDERED** this 24th day of August, 2018.


REGGIE B. WALTON
United States District Judge

---

( . . . continued)
whether they have standing to seek prospective injunctive or declaratory relief, the Court found it appropriate to raise these issues <u>sua sponte</u> in light of its "independent obligation to decide whether an action was properly brought as a class action."  <u>Doe v. U.S. Dep't of Labor</u>, 451 F. Supp. 2d 156, 160 n.3 (D.D.C. 2006) (Walton, J.) (first citing <u>Martinez–Mendoza v. Champion Int'l Corp.</u>, 340 F.3d 1200, 1216 n.17 (11th Cir. 2003); then citing Charles A. Wright <u>et al.</u>, 7AA Federal Practice & Procedure § 1785), <u>vacated on other grounds</u> by Civ. Action No. 05-2449, 2007 WL 1321116, at *1 (D.D.C. Mar. 22, 2007).

[19] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.