UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

# INDIVIDUAL PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER CIVIL RULE 23(b)(3)

The individual plaintiffs in this case, Rica Gatore, Isam Al Timemy, Georgine Lumonika, Innocent Shaka, Charly Ayessa, Aminata Ouedraogo, Herve Shaka, and Veronica Carolina Lemus Miranda, hereby move this Court to certify this case as a class action, under Civil Rule 23(b)(3).

The proposed class is as stated in ¶65 of the amended complaint:

"all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

As shown in the attached memorandum, they have satisfied all of the requirements of Civil Rule 23(b)(3)

August 31, 2018

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209

Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                               Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23, plaintiffs submit this Memorandum of Points and Authorities in support of their motion for class certification.  The Court should certify this case as a class action because plaintiffs have satisfied all the requirements of Civil Rule 23(a) and 23(b)(3).

INTRODUCTION

The DHS has a policy and practice of never providing the reasonably segregable portions of Assessments written by asylum officers, in response to FOIA requests by asylum applicants. The DHS has the policy and practice of not even *attempting* to determine if there are segregable portions. ECF #110.

THE REMEDIAL PURPOSES OF CLASS ACTIONS

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. Without class actions, many claims would go unaddressed. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. The Court can take judicial notice that such persons are not wealthy, are not knowledgeable about their rights, and will often be reluctant to sue a government that they hope will give them

asylum. They are not seeking money damages; most of them do not have English as a native language; most fear all governments. Very few lawyers have experience in asylum and also in FOIA. Without a class action, most of these asylum applicants will not see justice.

This class action is simple: asylum applicants were wrongly denied a portion of their Assessments. Courts have certified far more complex class actions.

**THE PLAINTIFFS ARE MEMBERS OF THE CLASS THEY SEEK TO REPRESENT**

At the time the amended complaint was filed, the individual plaintiffs had not yet received any portion of their assessments. They were certainly members of the class at that time.

The fact that DHS later gave them a few paragraphs is not relevant. A defendant may not "pick off" a class representative and thereby insulate itself from class liability. To allow this to happen would frustrate the purposes of Civil Rule 23.

Numerous courts have certified class actions, despite the apparent "mooting" of the claims of the individual representatives:

*Ramirez v. U.S. Immigration and Customs Enforcement,* Civil Action No. 18-508, {D.D.C. August 30, 2018) a class of detained alien children was certified, even though all three named plaintiffs had now been released from detention.  "The Court concludes that Plaintiffs' claims were not moot at the time that this suit was filed…" ECF #50, at 38.  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co.,* 136 S.Ct. at 669 (quoting *Chafin v. Chafin,* 568 U.S. 165, 172 (2013))." *Id.* at 38.  The Court in *Ramirez* noted that a class action "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs."  ECF #50 at 42

(quoting from *Sosna,* 419 U.S. at 401.  In *Ramirez,* a class was certified under Civil Rule 23(b)(2). "The D.C. Circuit has explained that the purpose of Rule 23(b)(2) is to 'avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief. *DL,* 860 F.3d at 726." ECF #50 at 66.

*R.I.L-R v. Jeh Johnson, Sec'y of DHS,* 80 F. Supp. 3d 164, 178 (D.D.C. 2015) involved Central American mothers with children who were allegedly wrongfully detained, pursuant to an illegal policy. A class was certified, over objections by DHS that all of the ten named plaintiffs had been released.

*Campbell-Ewald v. Gomez,* 136 S. Ct. 663 (2016) (an unaccepted settlement offer does not moot a plaintiff's case; a defendant may not prevent class certification by buying off the plaintiff)

The doctrine of "relation back" is used by courts to achieve justice. Even if the claims of the representative plaintiffs are mooted, the class may still be certified. *County of Riverside v. McLaughlin,* 500 U.S. 44, 51 (1991) Mr. McLaughlin was arrested and incarcerated.  He then filed a class action complaint, challenging procedures in the jail. While the case was pending, he was released. The Court held, however, that "the termination of a class representative's claim does not moot the claims of the unnamed members of the class."

In *Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 330 (1980), Roper filed a class action complaint, alleging a bank charged usurious finance charges. The bank tendered $889.42 to Roper, in full satisfaction of his individual claim.  The case was certified, in part because of the "separate consideration, distinct from their private interests, is the responsibility of named plaintiffs to represent the collective interests of the putative class. Two other interests are

implicated: the rights of putative class members as potential intervenors, and the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it." *Id.* at 330.

The Court noted, at page 339: [without a class] "aggrieved persons may be without any effective redress. To deny the right to appeal simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover, it would invite a waste of judicial resources."

In *Samuels v. District of Columbia,* 770 F.2d 184, 193 n. 5 (D.C.Cir.1985), four low-income tenants filed a class action complaint. "Shortly after this lawsuit was filed [three of the tenants were granted relief.] …We agree with the district court, however, that the District's attempt to provide partial and long delayed relief to a few tenants does not render this case moot…. First, the defendants have not submitted any information to this court indicating that they have provided the remaining individual plaintiffs with administrative hearings. More importantly, however, the plaintiffs, who sought class certification to represent all public housing tenants in the District, allege that the District has systematically refused to provide an administrative forum for certain tenant complaints on a classwide basis. Granting relief to individual plaintiffs does not moot such a class action claim.

In *Basel v. Knebel,* 551 F.2d 395, 397 n. 1 (D.C.Cir.1977) Ms. Basel was on food stamps, and then her benefits were terminated. She filed a class action complaint, challenging the

procedures. Her benefits were then restored. The Court held her case was not moot. The Court cited *Sosna v. Iowa,* 419 U.S. 393, 399-400 (1975):

> Second, the Sosna Court expressly provided that in some circumstances a class action should not be deemed moot even if the named plaintiff's claim becomes moot prior to certification of the class: There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

In *U.S. Parole Commission v. Geraghty,* 445 U.S. 388, 399 (1980) Mr. Geraghty was sentenced to prison in Illinois. His first application for release on parole was denied. He then filed a class action complaint, challenging the parole procedures. The Court noted that a "plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." *Id.* at 402.

"We therefore hold that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a "personal stake" in obtaining class certification sufficient to assure that Art. III values are not undermined." *Id.* at 404.

In the instant case, the claims of the individual plaintiffs are not moot. They still have not received all the paragraphs ordered by the Court on August 24, 2018. The individuals retain a significant stake in the case. Certifying this class will promote the purposes of Civil Rule 23.

**THE PREREQUISITES OF RULE 23(a) ARE SATISFIED**

To justify class certification, the plaintiffs must satisfy the four requirements in FRCP 23(a): 1) the class is so numerous that joinder of all members is impracticable 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. *See Love v. Johanns,* 439 F.3d 723, 727 (D.C. Cir. 2006)

### A. Numerosity: Rule 23(a)(1)

If the class is so large that joinder of all parties is impracticable, the prerequisite of numerosity is satisfied. As of April 2017, there were 61 members in the class. ECF #110 at 4. Seven more members of the class are named in Exhibit 1, attached hereto. There are very likely more members of the class. From 2009 to the present, which is about nine years, thousands of people applied for asylum each year; many of them probably made FOIA requests. If the class is certified, these persons can also see justice.

*It is impracticable to join all the members of this class*

"Several of the relevant factors to impracticability— 'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members,'…are present here." *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. 2013). Moreover, the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join. *See e.g. Olson v. Brown,* 284 F.R.D. 398, 408 (N.D. Ind. 2012) ("[F]uture members make joinder inherently impracticable because there is no way to know who they will be").

### B. Commonality: Rule 23(a)(2)

Commonality requires that a plaintiff raise claims which rest on questions of law or fact common to the class. *Taylor v. D.C. Water & Sewer Auth,* 241 F.R.D. 33, 37 (D.D.C. 2007). The DHS has a policy of never providing any part of an assessment to a FOIA requester. ECF #110 at 18. As the D.C. Circuit recently explained, commonality is satisfied where there is

"a uniform policy or practice that affects all class members." *DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013).

There are no factual variations of the members of this class. Each is an asylum applicant who made a FOIA request for his assessment.

**Typicality: Rule 23(a)(3)**

Typicality requires that a plaintiff must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Each applicant wants the segregable portions of his assessment. There is no evidence that any of the applicants are different from one another. Each was injured in the same way. Typicality is easily satisfied. *Coleman through Bunn v. District of Columbia,* 306 F.R.D. 68, 83 (D.D.C. 2015). **Adequacy of Representation: Rule 23(a)(4)**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products v. Windsor,* 521 U.S. 591, 625-26 (1997). There are no conflicts here.

*More than 50 asylum applicants are still waiting for justice*

As of April 2017, there were 61 members of the class. ECF #110 at 4. Eight of those persons, who are named as plaintiffs in this case, will get the segregable portions of their assessments, as per this Court's recent order. But, what about the 53 remaining members of the class? Must each one of them file his own complaint, serve process upon defendant, get assigned to a judge, and argue his case? This would be an unnecessary burden on the class members, and on the Court.  The Court should certify this case as a class action, and order the DHS to give justice to the 53 applicants.

*The individual plaintiffs are good representatives of the class*

This case is not moot. The Court should protect the interests of the class members. In *DL v. District of Columbia,* 860 F.3d 713, 722 (D.C. Cir. 2017) the defendant argued the case was moot because the named plaintiffs had aged out. When the lawsuit was filed a decade ago, the named plaintiffs were between the ages of three and five. They challenged how the public school system treated this age group.  Ten years later, they indeed aged out. Nonetheless, the Court ordered the case to continue as a class action.  The Court stated, at page 722:

> Permitting relation back in this case is also consistent with Rule 23's purpose. As the Supreme Court explained in *Geraghty,* the "justifications that led to the development of the class action include ... the provision of a convenient and economical means for disposing of similar lawsuits[ ] and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." 445 U.S. at 402-03 (citing Advisory Committee Notes on Fed. R. Civ. P. 23). Those interests are served by a rule allowing class claims to proceed when a district court erroneously certifies too broad a class while plaintiffs' claims are live, only to be reversed and instructed to consider smaller subclasses containing exactly the same children. By contrast, Rule 23's purpose would be disserved by a rule, advocated by the District, requiring parents to find new named plaintiffs at every turn of inevitably protracted class litigation.

In this case, we have a "voteless class of litigants…who are strangers to the laws and customs in which they find themselves involved and… often do not understand the [language]…" *Wong Yang Sung v. McGrath,* 339 U.S.33, 46 (1950).  The Court should protect them.  Class actions save the resources "of both the courts and the parties" by litigating issues potentially affecting every class member "in an economical fashion." *Califano v. Yamasaki,* 442 U.S. 682, 701 (1979).

## CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As the Advisory Committee notes to Rule 23 explain, "[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

*Questions of law or fact common to class members predominate over any questions affecting only individual members*

There are no individual questions in this case. Each member of the class is an asylum applicant, who made a FOIA request, who was denied by a form letter written by the same employee of defendant DHS. This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products v. Windsor,* 521 U.S. 591, 623 (1997).

The predominance requirement is linked to the commonality requirement in that "[p]laintiffs must show that the common issues identified by the Court ... as sufficient under Rule 23(a)(2) predominate over any non-common issues." *In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 262 (D.D.C. 2002).

As stated in *Howard v. Liquidity Services,* 322 F.R.D. 103, 136 (D.D.C. 2017): "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" (citing *Tysons Foods,* 136 S.Ct. at 1045).

*A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.*

As of April 2017, there were 61 named members of the class. Eight of them have been accorded some relief; the remaining 53 are waiting. Must there be 53 individual lawsuits? NO: a class action is much more efficient.

There have already been three previous lawsuits: *Gosen, Abtew,* and *Bayala,* (cited at ECF #110 at 12).  Three courts ruled that the DHS must provide segregable portions of assessments. But the DHS ignored those courts, and forced the filing of the instant complaint. The DHS apparently will continue its policy of providing portions of assessments only to those requesters who file complaints in our busy federal courts. Certifying this case as a class action will provide a much-needed remedy.

"A class action would certainly be more desirable than thousands of smaller suits against the District based on essentially the same operative facts and legal theories. Such actions would require the expenditure of unnecessary litigation costs and duplication of effort." *Hardy v. District of Columbia,* 283 F.R.D. 20, 29 (D.D.C. 2012)

Most FOIA requesters do not, and will not, file complaints in federal court. Asylum applicants are, in general, new arrivals to the United States, and are not wealthy. They do not know their rights under the FOIA. Without a class action, they will never see justice.  Where there are reasons "why the putative class members would be unlikely to bring their claims to court individually," a class action is "the superior method" of adjudicating a case. *Alvarez v. Keystone Plus Construction Corp.*  303 F.R.D. 152, 163 (D.D.C. 2014)

*The requirements of Civil Rule 23(b)(3) (A-D) have been satisfied*

Civil Rule 23(b)(3) directs the Court to consider four matters:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

*The class members do not show interest in individually controlling the case*

The class members are silent: they have not yet shown any interest in individually controlling this case.

*There is no litigation concerning the controversy already begun by class members*

There is no pending litigation concerning this controversy,

*It is desirable to concentrate this litigation in this Court*

District of Columbia courts have expertise in FOIA.

*There are no difficulties in managing this case as a class action*

Defendant DHS has files in its possession concerning each member of the class.  Each member of the class is similarly-situated to the others. It will be easy to manage this case.

CONCLUSION

Certification of the proposed class will advance the broad remedial purposes of FOIA. The individual plaintiffs should be named as class representatives.

August 31, 2018

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                                              No.  15-cv-459 [RBW]

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY
Defendant

## ORDER

Upon consideration of the individual plaintiffs' Motion for class certification, it is

hereby:

ORDERED that Plaintiff's motion is GRANTED.


Date _____              _____
REGGIE B. WALTON
                                                            U.S. District Judge