UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, *et al.*,

    *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

    *Defendant*.

Civil Action No. 15-0459-RBW

**MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS,
OPPOSING CATHOLIC CHARITIES' MOTION FOR SUMMARY JUDGMENT,
OPPOSING PLAINTIFFS' MOTION FOR LEAVE TO AMEND,
OPPOSING CATHOLIC CHARITIES' MOTION TO CERTIFY A CLASS, AND
OPPOSING THE INDIVIDUAL PLAINTIFFS' MOTION TO CERTIFY A CLASS**

JESSIE K. LIU
*United States Attorney*

DANIEL F. VAN HORN
*Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

Dated: February 8, 2019                    *Counsel for Defendant*

# CONTENTS

*Table of Authorities*........................................................................................................ ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT .....................................................................................................................4

I.     Catholic Charities' Policy-or-Practice Claim Is Moot; Its Motion for Summary
       Judgment Should Be Denied and Defendant's Motion to Dismiss Should Be Granted .....4

II.    Plaintiffs' Motion to Amend Is Untimely and Many of the Proposed New Claims
       Are Unexhausted, Time-Barred, or Were the Subject of Other Litigation ........................7

       A.      Plaintiffs' Motion to Amend Is Untimely ................................................................8

       B.      Many of Plaintiffs' Proposed New Claims Are Futile ...........................................9

               1.     Fifteen Proposed Plaintiffs Have Not Exhausted .....................................10

               2.     One Proposed Plaintiff Is Time-Barred ....................................................12

               3.     One Proposed Plaintiff Is Barred by Res Judicata ...................................13

               4.     One Proposed Plaintiff Has Settled His Claim .........................................14

III.   Neither Catholic Charities Nor the Individual Plaintiffs Have Satisfied the
       Requirements to Certify a Class; Their Motion Is Also Late ...........................................14

       A.      Plaintiffs' Class-Certification Motions Are Untimely ...........................................16

       B.      Plaintiffs' Claims Are All Moot, So They Cannot Represent a Class ..................18

       C.      Plaintiffs Have Not Satisfied the Requirements of Rule 23(a) .............................19

       D.      Plaintiffs Cannot Maintain a Class Action Under Rule 23(b)(2)..........................21

       E.      Catholic Charites Has No Claim that Would Afford the Class Any Relief ..........23

CONCLUSION.................................................................................................................23

# AUTHORITIES

Page(s)

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................... 15

*America Cargo Transp. v. United States*,
    625 F.3d 1176 (9th Cir. 2010) ....................................................................................... 6

*Ammex, Inc. v. Cox*,
    351 F.3d 697 (6th Cir. 2003) ......................................................................................... 7

*Anderson v. CNH U.S. Pension Plan*,
    515 F.3d 823 (8th Cir. 2008) ....................................................................................... 18

*Anguimate v. U.S. Dep't of Homeland Sec.*,
    918 F. Supp. 2d 13 (D.D.C. 2013) ........................................................................ 13, 14

*Arnold v. Panora*,
    593 F.2d 161 (1st Cir. 1979) ........................................................................................ 18

*Atchinson v. Dist. of Columbia*,
    73 F.3d 418 (D.C. Cir. 1996) ......................................................................................... 8

*Batson v. Powell*,
    912 F. Supp. 565 (D.D.C. 1996) ................................................................................. 17

*Bayala v. Dep't of Homeland Sec.*,
    264 F. Supp. 3d 165 (D.D.C. 2017) .............................................................................. 5

*Bd. of School Com'rs of City of Indianapolis v. Jacobs*,
    420 U.S. 128 (1975) ..................................................................................................... 18

*Becker v. District of Columbia*,
    258 F.R.D. 182 (D.D.C. 2009) ....................................................................................... 8

*Beta Upsilon Chi Upsilon Chapter at the Univ. of Florida v. Machen*,
    586 F.3d 908 (11th Cir. 2009) ....................................................................................... 7

*Bigwood v. Def. Intelligence Agency*,
    770 F. Supp. 2d 315 (D.D.C. 2011) ............................................................................ 12

*Black Panther Party v. Smith*,
    661 F.2d 1243 (D.C. Cir. 1981) ................................................................................... 17

*Bonner v. Social Sec. Admin.*,
  574 F. Supp. 2d 136 (D.D.C. 2008) .................................................................. 10

*Brown v. FBI*,
  744 F. Supp. 2d 120 (D.D.C. 2010) .................................................................... 9

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .......................................................................................... 15

*Cause of Action Inst. v. U.S. Dep't of Justice*,
  282 F. Supp. 3d 66 (D.D.C. 2017) ...................................................................... 9

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ............................................................................................ 5

*Coffin v. Sec'y of Health, Ed. & Welfare*,
  400 F. Supp. 953 (D.D.C. 1975) ....................................................................... 17

*Comcast Corp. v. Behrend*,
  596 U.S. 27 (2013) ............................................................................................ 15

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994) ............................................................................... 18

*Cruz v. Farquharson*,
  252 F.3d 530 (1st Cir. 2001) ............................................................................ 18

*Ctr. for Biological Diversity v. Gutierrez*,
  451 F. Supp. 2d 57 (D.D.C. 2006) .................................................................... 11

*Dettmann v. DOJ*,
  802 F.2d 1472 (D.C. Cir. 1986) ........................................................................ 10

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................ 8

*Gatore v. U.S. Dep't of Homeland Sec.*,
  177 F. Supp. 3d 46 (D.D.C. 2016) ............................................................ 2, 3, 21

*Gatore v. U.S. Dep't of Homeland Sec.*,
  No. 15-0459, 2017 WL 7803776 (D.D.C. Feb. 3, 2017) ..................................... 3

*Gatore v. U.S. Dep't of Homeland Sec.*,
  286 F. Supp. 3d 25 (D.D.C. 2017) ...................................................................... 3

*Gatore v. U.S. Dep't of Homeland Sec.*,
  292 F. Supp. 3d 486 (D.D.C. 2018) ...................................................... 3, 21, 22

*Gatore v. U.S. Dep't of Homeland Sec.*,
  327 F. Supp. 3d 76 (D.D.C. 2018) ............................................................... 3, 4, 14, 16

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................... 15, 20

*Harris v. Koenig*,
  271 F.R.D. 383 (D.D.C. 2010) ................................................................................... 15

*Harris v. Sec'y, U.S. Dep't of Veterans Affairs*,
  126 F.3d 339 (D.C. Cir. 1997) .................................................................................... 8

*Hartman v. Duffey*,
  19 F.3d 1459 (D.C. Cir. 1994) ............................................................................. 15, 16

*Hoffman v. United States*,
  266 F. Supp. 2d 27 (D.D.C. 2003) ............................................................................. 9

*Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*,
  628 F.3d 568 (D.C. Cir. 2010) .................................................................................... 5

*Howard v. Gutierrez*,
  474 F. Supp. 2d 41 (D.D.C. 2007) ...................................................................... 16, 17

*Howard v. Pritzker*,
  775 F.3d 430 (D.C. Cir. 2015) .................................................................................. 12

*Kenney v. U.S. Dep't of Justice*,
  700 F. Supp. 2d 111 (D.D.C. 2010) .......................................................................... 12

*Khine v. United States Dep't of Homeland Sec.*,
  334 F. Supp. 3d 324 (D.D.C. 2018) .......................................................................... 11

*Larsen v. U.S. Navy*,
  525 F.3d 1 (D.C. Cir. 2008) ................................................................................ 6, 23

*Los Angeles Cty. v. Davis*,
  440 U.S. 625 (1979) ..................................................................................................... 6

*McKart v. United States*,
  395 U.S. 185 (1969) ................................................................................................... 10

*Minter v. Prime Equip. Co.*,
  451 F.3d 1196 (10th Cir. 2006) .................................................................................. 8

*Moore v. Black Panther Party*,
  458 U.S. 1118 (1982) ................................................................................................. 17

*Muwekma Ohlone Tribe v. Salazar,*
  708 F.3d 209 (D.C. Cir. 2013) ........................................................... 12

*Nat'l Sec. Counselors v. CIA,*
  931 F. Supp. 2d 77 (D.D.C. 2013) ..................................................... 10

*Nat'l Sec. Counselors v. CIA,*
  960 F. Supp. 2d 101 (D.D.C. 2013) ..................................................... 8

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ........................................................... 10

*Polsby v. Thompson,*
  201 F. Supp. 2d 45 (D.D.C. 2002) ..................................................... 13

*Pub. Employees for Envtl. Responsibility v. EPA,*
  926 F. Supp. 2d 48 (D.D.C. 2013) ..................................................... 14

*Ragsdale v. Turnock,*
  841 F.2d 1358 (7th Cir. 1988) ............................................................ 6

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
  601 F.3d 1096 (10th Cir. 2010) .......................................................... 6

*Rocky v. King,*
  900 F.2d 864 (5th Cir. 1990) ........................................................... 18

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ........................................................................ 18

*Sossamon v. Texas,*
  560 F.3d 316 (5th Cir. 2009) ......................................................... 6, 7

*Spannaus v. U.S. Dep't of Justice,*
  824 F.2d 52 (D.C. Cir. 1987) ........................................................... 12

*Taylor v. D.C. Water & Sewer Auth.,*
  241 F.R.D. 33 (D.D.C. 2007) ........................................................... 20

*Thomas v. Knight,*
  257 F. Supp. 2d 86 (D.D.C. 2003) ..................................................... 17

*Tucker v. Phyfer,*
  819 F.2d 1030 (11th Cir. 1987) ........................................................ 19

*United States v. Philip Morris USA, Inc.,*
  566 F.3d 1095 (D.C. Cir. 2009) ...................................................... 5, 6

*United States v. W. T. Grant Co.*,
 345 U.S. 629 (1953) ........................................................................................................ 6

*W. Virginia Highlands Conservancy v. Johnson*,
 540 F. Supp. 2d 125 (D.D.C. 2008) ................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ................................................................................ 15, 19, 20, 22

**Statutes**

28 U.S.C. § 2401(A) ........................................................................................................ 12

**Rules**

Fed. R. Civ. P. 15(a) .................................................................................................... 7, 8

Fed. R. Civ. P. 23(a) ...................................................................................................... 19

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 20

Fed. R. Civ. P. 23(b)(2) .................................................................................................. 21

**Regulations**

6 C.F.R. § 5.8(A)(1) ...................................................................................................... 11

**Other Authorities**

Newberg on Class Actions § 4:26 (5th ed. 2013) ........................................................ 21

## INTRODUCTION

After nearly four years of litigation, the substantive disputes in this case have been resolved or mooted. The individual plaintiffs have all received copies of their requested assessments to refer with factual information left unredacted, and USCIS has issued new guidance to its FOIA officers instructing them to treat future releases of assessments to refer the same way. Yet despite their apparent success, within days of the Court's most recent opinion on these issues, Plaintiffs filed a bevy of new motions seeking to prolong and dramatically expand the scope of this litigation. First, they suddenly seek leave to add 57 new individual plaintiffs (many of whom are clearly outside the statute of limitations, have not exhausted administrative remedies, or have already litigated and lost the claims they attempt to reassert here). Second, Catholic Charities demands an advisory ruling on a claim that has been entirely mooted by USCIS's new guidance. Third, Catholic Charities asks for the first time in three-and-a-half years to certify a class of the same kind that the Court has already rejected. And, fourth, the individual plaintiffs newly seek to certify a class on different grounds than they previously asserted. These requests are untimely in the extreme and utterly lacking in merit. Plaintiffs' motions should be denied and this case finally closed.

## BACKGROUND

Eight plaintiffs initiated this action on March 31, 2015, ECF No. 1, and a ninth joined in January 2017, ECF No. 57. Eight of the nine plaintiffs are individuals who claimed that U.S. Citizenship and Immigration Services ("USCIS") had not properly responded to their Freedom of Information Act ("FOIA") requests insofar as they sought records called "assessments to refer." *See* Am. Compl. ¶¶ 10, 37, 40, 43, 46, 49, 52, 73, ECF No. 60. An assessment to refer is a document prepared by an asylum officer recommending that an asylum applicant be referred to immigration court for removal proceedings rather than granted asylum. Eggleston Decl. ¶ 4, ECF No. 22-1. USCIS had withheld in full the content of the individual plaintiffs' assessments as pre-decisional

and deliberative and therefore exempt from release under FOIA; but the individual plaintiffs argued that a portion of those assessments consisting of purely factual matter did not qualify as deliberative and should have been segregated for release. *Gatore v. U.S. Dep't of Homeland Sec.* ("*Gatore I*"), 177 F. Supp. 3d 46, 54 (D.D.C. 2016). The individual plaintiffs also sought to certify a class of "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment." ECF No. 15. The Court held the class-certification motion in abeyance pending the resolution of summary-judgment motions. *Gatore I*, 177 F. Supp. 3d at 53 n.3.

The ninth plaintiff, Catholic Charities, brought two separate claims. First, it challenged what it alleged to be USCIS's "policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment." Am. Compl. ¶¶ 25, 59. Second, it alleged that USCIS "provided nothing" in response to a FOIA request by Catholic Charities for records about how USCIS processed FOIA requests for assessments to refer. *Id.* ¶ 61.

On June 24, 2015, Catholic Charities moved for partial summary judgment on the latter claim. ECF No. 17. Defendant opposed the motion and filed its own motion for summary judgment on all the claims in the case. ECF Nos. 22, 23. On April 6, 2016, the Court denied Catholic Charities' motion for partial summary judgment and denied without prejudice Defendant's motion for summary judgment. ECF No. 40. As to Catholic Charities' motion, the Court noted that USCIS had responded to Catholic Charities' FOIA request after it moved for summary judgment. *Gatore*, 177 F. Supp. 3d at 54. With respect to Defendant's motion, the Court noted that it "might be inclined to rule in favor of the defendant" but for certain concerns about the thoroughness of the declaration submitted in support of the motion. *Id.* at 52. The Court therefore ordered Defendant to "submit a revised *Vaughn* index, affidavit, or declaration, that reassesses the issue of

segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released." *Id.* at 52. In compliance with that order, on May 27, 2016, Defendant submitted a supplemental declaration, ECF No. 44, and later renewed its motion for summary judgment on the individual plaintiffs' claims and on Catholic Charities' purported policy-or-practice claim. *See* ECF Nos. 77, 78, and 82.[1]

On January 4, 2018, the Court issued an opinion concluding that USCIS's supplemental declaration still did not contain enough detail for the Court to "mak[e] a *de novo* determination as to whether the defendant has fulfilled its obligation to disclose all reasonably segregable material." *Gatore v. U.S. Dep't of Homeland Sec.* ("*Gatore IV*"), 292 F. Supp. 3d 486, 495 (D.D.C. 2018). The Court therefore directed Defendant to submit the relevant assessments to refer for *in camera* inspection. *Id.* After reviewing the assessments, the Court concluded that "a number of factual introductory paragraphs in each assessment do not qualify for protection under Exemption 5" and ordered their release. *Gatore v. U.S. Dep't of Homeland Sec.* ("*Gatore V*"), 327 F. Supp. 3d 76, 88 (D.D.C. 2018). The Court also denied Defendants' motion for summary judgment on Catholic Charities' policy-or-practice claims, holding that Catholic Charities had standing and that written instructions provided to USCIS FOIA reviewers indicated that assessments to refer should be withheld in full. *Id.* at 95.

---

[1] Catholic Charities also later renewed its motion for partial summary judgment to demand that USCIS release a FOIA Processing Guide that had been referenced in the supplemental declaration. ECF No. 46. The Court ultimately granted that motion, noting that Defendant had not opposed it. *Gatore v. U.S. Dep't of Homeland Sec.* ("*Gatore II*"), No. 15-0459, 2017 WL 7803776, at *3 (D.D.C. Feb. 3, 2017). The Court also later granted in part and denied in part Catholic Charities' request for attorney's fees and costs associated with that motion. *See Gatore v. U.S. Dep't of Homeland Sec.* ("*Gatore III*"), 286 F. Supp. 3d 25, 51–52 (D.D.C. 2017).

The Court declined, however, to certify the individual plaintiffs' requested class, holding that they could not represent a class consisting of individuals who "were provided no portion of the [a]ssessment," because each of them had in fact received one to three paragraphs of their assessment from USCIS. *Id.* at 103 (quoting Am. Compl. ¶ 65). The Court further held that, to the extent the individual plaintiffs sought to challenge a policy or practice, they lacked standing for any prospective injunctive relief because they did not allege to have any pending FOIA requests before USCIS. *Id.* at 103–04.

Within a week of the Court's opinion, Plaintiffs filed three new motions. The individual plaintiffs moved again to certify the same class that had already been rejected by the Court, but on different grounds. ECF No. 113. Catholic Charities moved for the first time to represent a class in its own respect. ECF No. 112. And Catholic Charities moved for the first time for summary judgment on its policy-or-practice claim. ECF No. 111. Weeks later, Plaintiffs filed a fourth motion, seeking leave to amend their complaint to add 57 new plaintiffs, all of whom claim that USCIS withheld too much of their assessments to refer. ECF No. 115. Defendant respectfully urges that all these motions be denied.

## ARGUMENT

### I. Catholic Charities' Policy-or-Practice Claim Is Moot; Its Motion for Summary Judgment Should Be Denied and Defendant's Motion to Dismiss Should Be Granted.

Catholic Charities contends that it is entitled to summary judgment on its policy-or-practice claim because USCIS purportedly instructs FOIA processors to withhold in full all asylum officer assessments. ECF No. 111 at 4. The processing guidance to which Catholic Charities refers, however, has been rescinded and replaced with new guidance calling for officers to release segregable factual information in conformity with what Catholic Charities advocates. Catholic

Charities' policy-or-practice claim is therefore moot and its motion for summary judgment should be denied and its claim dismissed.

The mootness doctrine limits federal courts to deciding only actual, ongoing controversies. "A case is moot when 'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'" *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). It is a defendant's burden to show that a claim is moot. *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).

Defendant meets the burden here. As explained in the appended declaration of Jill Eggleston, in light of recent federal court decisions—including *Bayala v. Department of Homeland Security*, 264 F. Supp. 3d 165, 177 (D.D.C. 2017)—USCIS's FOIA office revised its guidance to FOIA processors regarding how to treat first-party requests for assessments to refer. Eggleston Decl. ¶¶ 27, 30. The prior guidance challenged by Catholic Charities, which indicated that assessments to refer should generally be withheld in full under Exemption 5, has been rescinded; the new guidance contains no instruction or other suggestion that assessments to refer should be withheld in full. *Id.* ¶ 28.

To the contrary, FOIA processors are now provided a guide indicating that assessments to refer generally contain both factual and deliberative information and instructs that the former should be segregated and released to first-party requesters. *Id.* ¶ 29 & Attach. 18. This new guidance was issued of all USCIS FOIA employees in December 2017, and they are expected to follow it. *Id.* ¶ 31. Indeed, as Plaintiffs have acknowledged in a number of recent "supplemental" filings and "status reports" filed with the Court, since this policy change, USCIS has regularly

released assessments to refer with the first several paragraphs of factual information unredacted. *See* ECF Nos. 98 (three assessments partially released in December 2017), 106 (one assessment partially released in June 2018), & 107 (a second assessment partially released in June 2018). Because this change in USCIS policy means that there is no longer any relief for the Court to award on Catholic Charities' policy-or-practice claim, Catholic Charities' motion for summary judgment should be denied and Defendant's motion to dismiss the policy-or-practice claim as moot should be granted. *See Philip Morris*, 566 F.3d at 1135.

Moreover, the mootness of Catholic Charities' claim is not overcome by the voluntary-cessation exception. "[A]s a general rule, 'voluntary cessation of allegedly illegal conduct . . . does not make the case moot.'" *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). Even conduct that is voluntarily ceased, however, will render a claim moot "if the defendant shows that: (1) 'there is no reasonable expectation . . . that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting Davis, 440 U.S. at 631 (internal citations omitted)).

Notably, "[c]essation of the allegedly illegal conduct by *government* officials has been treated with more solicitude by the courts than similar action by private parties." *America Cargo Transp. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (emphasis added) (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 & n.15 (10th Cir. 2010) (citing several cases taking this approach); *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity . . . .");

*Beta Upsilon Chi Upsilon Chapter at the Univ. of Florida v. Machen*, 586 F.3d 908, 916–17 (11th Cir. 2009) ("In cases where government policies have been challenged, the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior moots the claim."); *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003). This is because government agencies, unlike private defendants, "are accorded a presumption of good faith." *Sossamon*, 560 F.3d at 325 ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.").

There is no reasonable expectation that USCIS is likely to undo its policy change and revert back to the FOIA Processing Guide that Catholic Charities challenges as unlawful under FOIA. As explained in the Eggleston declaration, USCIS rescinded that FOIA Processing Guide and issued guidance that factual information in assessments to refer should be release based on federal court decisions, including *Bayala*. Eggleston Decl. ¶¶ 27, 31. There is no reason to believe that there will be a change in those circumstances or that USCIS will have any reason to revert to its prior policy. Accordingly, the Court should afford USCIS's cessation of the challenged conduct a presumption of good faith and find Catholic Charities' claim moot.

## II. Plaintiffs' Motion to Amend Is Untimely and Many of the Proposed New Claims Are Unexhausted, Time-Barred, or Were the Subject of Other Litigation.

At the tail end of nearly four years of litigation, Plaintiffs seek to dramatically expand the scope of this case by adding 57 new plaintiffs who, like them, purportedly submitted FOIA requests for assessments to refer—some of which date as far back as 2012. *See* Eggleston Decl. ¶¶ 8–9, 16, 23–34. The motion to amend is in many respects frivolous and in all respects untimely.

After a responsive pleading has been filed, a party may amend a complaint to add a new party only with leave of Court or with the written consent of the other party. Fed. R. Civ. P. 15(a)(2). As Defendant provided no such written consent here, Plaintiffs seek leave of Court.

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). But, as *Foman* and this Circuit's case law recognize, factors such as undue delay, prejudice to the defendant, and futility can warrant denying a motion for leave to amend. *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996). It is within a district court's discretion to decide whether to allow a requested amendment. *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997) (stating that determining the propriety of amendment is done on a case by case basis). Applying the relevant considerations, Plaintiffs' effort to amend should be denied because it is untimely in the extreme. And even if amendment were allowed, many of the purported new plaintiffs should be rejected because their claims are futile for having been unexhausted, time-barred, or the subject of separate litigation.

## A.     Plaintiffs' Motion to Amend Is Untimely.

Plaintiffs' effort to add 57 new plaintiffs to this largely concluded, four-year-old case is a classic example of an attempt to unduly prolong a litigation through a very late amendment. "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target . . . [or] to present theories seriatim in an effort to avoid dismissal." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 133–34 (D.D.C. 2013) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006)); *see also Becker v. District of Columbia*, 258 F.R.D. 182, 185 (D.D.C. 2009) ("Waiting to move to amend until after the close

of discovery and after the filing of or ruling upon dispositive motions has been considered an undue delay.").

This case is nearly four-old years and has generated several dispositive motions and opinions by the Court. Most recently, on August 24, 2018, the Court issued a 39-page opinion resolving all of the record-request claims by the eight individual plaintiffs and denying Defendant's motion for summary judgment on Catholic Charities' policy-or-practice claim, ECF No. 110, after which USCIS revised its policy so as to moot that claim, *see* Part I above. The individual plaintiffs do not themselves claim to have any further interests for the Court to adjudicate; but in an effort to keep the litigation going, they seek to add dozens of additional plaintiffs who have heretofore shown no desire to bring their purported years'-old FOIA claims to court. This is precisely the kind of seriatim presentation of issues that would unduly delay this long-pending case and deprive Defendant of a final resolution after four years of litigation. Using Rule 15 to advance such tactics is appropriately rejected. *See Hoffman v. United States*, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) ("A plaintiff, quite simply, cannot be permitted to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens." (internal quotation marks omitted)); *see also Cause of Action Inst. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 66, 75 (D.D.C. 2017) (same); *Brown v. FBI*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (same). The Court should do so here as well.

## B. Many of Plaintiffs' Proposed New Claims Are Futile.

Further, Plaintiffs' proposed amendment is in many respects futile because several of the claims asserted therein are unexhausted, time-barred, precluded by the doctrine of res judicata, or were settled.

1.      *Fifteen Proposed Plaintiffs Have Not Exhausted.*

Fifteen of the fifty-seven proposed new plaintiffs have not exhausted their purported FOIA claims administratively. In a FOIA case, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citation omitted). "The exhaustion requirement also allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id.* (citing *McKart v. United States*, 395 U.S. 185, 194 (1969) ); *see also Dettmann v. DOJ*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). "Failure to exhaust administrative remedies is not a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 99–100 (D.D.C. 2013). "[E]xhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Social Sec. Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008).

As described in the accompanying declaration, thirteen of the proposed new plaintiffs received determinations on their FOIA requests from USCIS—some as far back as 2012—but never sought to challenge that determination with the agency. Eggleston Decl. ¶¶ 6–11, 13–15, 17–20. This failure precludes them from bringing their claims in court. *See Bonner*, 574 F. Supp. 2d at 139. This is not the only case in which Catholic Charities has utterly ignored exhaustion

requirements. "As this Court previously advised Catholic Charities, if it 'was unhappy with the reasons proffered by DHS, [it] could have registered this complaint in an administrative appeal rather than filing this action prematurely.'" *Khine v. United States Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 337 (D.D.C. 2018). Yet again, however, Catholic Charities has ignored this obligation and attempts to add over one dozen plainly unexhausted claims to this case. That effort must be rejected.

Yet another plaintiff failed to submit a written consent from the individual whose records were being sought. Eggleston Decl. ¶ 12. USCIS informed this requestor that if it did not receive such a consent within 30 days, the request would be closed. *Id.* & Attach. 8. USCIS heard nothing further from this requestor and the request was therefore closed the request. *Id.* ¶ 12. The requestor failed to appeal this determination and has therefore not exhausted administrative remedies.

Another of the proposed new plaintiffs did in fact submit an administrative appeal, but that appeal was untimely. *Id.* ¶ 16. Regulations promulgated by the Department of Homeland Security and applicable to USCIS require that administrative appeals of adverse FOIA determinations be transmitted to the agency within 90 working days. 6 C.F.R. § 5.8(A)(1). The proposed plaintiff does not deny that he failed to comply with that requirement, but instead seeks to circumvent his error by bringing his unexhausted claim in court. *See* Proposed Am. Compl. ¶ 127. He may not do so. His unexhausted claim would be subject to dismissal. *See Ctr. for Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 65–67 (D.D.C. 2006) (dismissing FOIA claim for failure to exhaust where plaintiff had filed its administrative appeal one day late).

Because each of these fifteen plaintiffs failed to exhaust administrative remedies, any effort by them to join this case—even were it timely—should be denied as futile.

2.      *One Proposed Plaintiff Is Time-Barred.*

One of the proposed plaintiffs is barred from bringing his claim by the applicable statute of limitations. A six-year statute of limitations applies to FOIA actions. *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987); *see also* 28 U.S.C. § 2401(A) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) ("§ 2401(a) applies to suits under [FOIA], which does not include its own statute of limitations"). This statute of limitations is jurisdictional. *Spannaus*, 824 F.2d at 52 ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed . . . . Where clear language restricts our jurisdiction, we may not overturn it merely by invoking spirits and thrusts."); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 218 (D.C. Cir. 2013) ("The court lacks subject matter jurisdiction to hear a claim barred by section 2401(a)."). Because this statute of limitations is jurisdictional, neither waiver nor equitable tolling is applicable. *See Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 319 (D.D.C. 2011) (citing *W. Virginia Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008)).

One of the proposed plaintiffs received a response to her FOIA request on July 18, 2012. Eggleston Decl. ¶ 24; Proposed Am. Compl. ¶ 96–97. She filed an appeal, which USCIS responded to on September 24, 2012, at which time her FOIA claim accrued for purposes of the statute of limitations. *See Kenney v. U.S. Dep't of Justice*, 700 F. Supp. 2d 111, 115 (D.D.C. 2010) ("A FOIA claim accrues once the requester has exhausted his or her administrative remedies, either actually or constructively; only then can the requester institute and maintain a suit in court."). Yet over six years elapsed before Plaintiffs sought to add the proposed plaintiff's claim to this case on October

4, 2018. ECF No. 115. As a result of the lengthy delay, the proposed plaintiff's claim is time barred, jurisdiction is lacking, and amendment would be futile.

### 3. *One Proposed Plaintiff Is Barred by Res Judicata.*

Res judicata precludes one of the proposed plaintiffs—Paulette Anguimate—from re-litigating the same claim that she already brought and lost before this same Court. There are four elements of res judicata: "(1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." *Primorac v. C.I.A.*, 277 F. Supp.2 d 117, 119 (D.D.C. 2003) (quoting *Polsby v. Thompson*, 201 F. Supp. 2d 45, 48 (D.D.C. 2002)).

In this case, Anguimate claims that USCIS did not furnish her with the first several paragraphs of her assessment to refer. Proposed Am. Compl. ¶ 99. Yet Anguimate (represented by the same plaintiff's counsel) has already asserted the same claim against the same party in a prior case that was decided by this very Court. In *Anguimate v. U.S. Department of Homeland Security*, Anguimate similarly challenged USCIS's withholding in full of her assessment to refer and argued that USCIS could not show that the factual information in her assessment could not be segregated from deliberative material. 918 F. Supp. 2d 13, 22 (D.D.C. 2013) (Walton, J.); *see also* Eggleston Decl. ¶ 22. This Court concluded that Anguimate's segregability challenges were unavailing, *id.*, and granted summary judgment to the defendant as it related to USCIS's withholdings under FOIA, *id.* at 23–24. The Court entered a final order and closed the *Anguimate* case on March 26, 2013. *Anguimate*, No. 12-0791, Order, ECF No. 21 (Mar. 26, 2013). Anguimate did not appeal. Having fully litigated the same claim against the same defendant six years ago before this very Court, Anguimate is barred by the doctrine of res judicata from trying to litigate that claim again.

13

### 4.      *One Proposed Plaintiff Has Settled His Claim.*

Still another plaintiff seeks to revive a claim that he dismissed with prejudice in connection with a stipulation of settlement entered with Defendant on October 29, 2013. In *Hemed v. U.S. Department of Homeland Security*, proposed plaintiff Omar Hemed sued Defendant for allegedly withholding an assessment to refer in full from its response to his FOIA request. *See Hemed v. U.S. Dep't of Homeland Sec.*, No. 13-0129 (D.D.C.), Compl. ¶ 47, ECF No. 1 (Jan. 31, 2013). Months later, however, Hemed, through counsel (again, the same plaintiff's counsel as this case) entered into a stipulation of settlement and dismissal in which he agreed to dismiss his FOIA claims with prejudice in exchange for $20,000 in attorney's fees and costs. *Id.*, Stip. of Settlement and Dismissal, ECF No. 25 (Oct. 30, 2013). The settlement agreement states that it "constitutes the full and complete satisfaction of any and all claim arising from (a) the allegations set forth in the complaint files in this lawsuit, and (b) any litigation or administrative proceeding that Plaintiff has brought, could bring, or could have brought regarding Plaintiff's FOIA request in this case." *Id.* ¶ 3. Reneging on that agreement, Hemed now seeks to relitigate precisely the same claim against Defendant. *See* Proposed Am. Compl. ¶¶ 118–19. Because he opted—with the advice and assistance of counsel—to accept a settlement in "full and complete satisfaction" of that same claim, however, Hemed is barred from trying to revive it. *See Pub. Employees for Envtl. Responsibility v. EPA*, 926 F. Supp. 2d 48, 54 (D.D.C. 2013) ("A settlement agreement is a contract, and [plaintiff] is bound by the contract he signed.") (dismissing FOIA claim where it was the subject of a prior settlement agreement).

### III.   **Neither Catholic Charities Nor the Individual Plaintiffs Have Satisfied the Requirements to Certify a Class; Their Motion Is Also Late.**

This Court has already considered and denied the individual plaintiffs' first motion for class certification. *See Gatore V*, 327 F. Supp. 3d at 102–04. Plaintiffs' new class certification

motions fare no better. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To certify a class under Rule 23, a plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three Rule 23(b) requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Supreme Court has held that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*; *see also id.* at 350–51 ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982))); *Harris v. Koenig*, 271 F.R.D. 383, 388 (D.D.C. 2010) ("The plaintiff bears the burden of proof on each element of Rule 23." (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997))). District courts exercise broad discretion in deciding whether to certify a class. *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994).

After this Court denied the individual plaintiffs' first motion to certify a class and resolved the their claims that USCIS failed to disclosure segregable portions of their assessments to refer, both the individual plaintiffs and Catholic Charities filed new motions asserting different theories for certification. Plaintiffs seek to certify a class consisting of "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment." ECF No. 112 at 1, ECF No. 113 at 1. This broad request would require USCIS to divert a huge amount of its resources toward reprocessing requests for persons who have not even challenged USCIS's

withholdings. USCIS receives more FOIA requests that any other government agency. Eggleston Decl. ¶ 33. Since fiscal year 2011, it has consistently received well over 100,000 requests per year and as of fiscal year 2017, that number has grown to nearly 200,000 requests. *Id.* To even ascertain which requestors are in Plaintiffs' proposes class, USCIS would be required to manually review (electronic searching is impossible) over 1.1 million requests to determine which of them sought assessments to refer. *Id.* ¶¶ 35–37. On average, over 95% of the requests received by USCIS are from individuals seeking their entire immigration file, each of which generally involves hundreds to thousands of pages of responsive records. *Id.* ¶¶ 35, 38. To review all of those requests and the responsive pages to determining whether the requestors fall into Plaintiffs' proposed class would take years and would put an extremely onerous, if not crippling, strain on USCIS's FOIA operations, which would work to the great detriment of other requestors. *Id.* ¶ 35. In any event, as explained in more detail below, Plaintiffs' class-certification motions fall far short of satisfying rigorous analysis for certifying a class; and, in any event, the motions are untimely.

### A.    Plaintiffs' Class-Certification Motions Are Untimely.

Plaintiffs filed the class-certification motions at issue over three-and-a-half years after initiating this litigation.[2] They are far too late. Local Civil Rule 23.1(b) requires parties purporting to serve as class representatives to move for class certification "within 90 days after the filing of a complaint in a case sought to be maintained as a class action." The 90-day deadline is measured from the filing of the initial complaint containing class allegations, not from any amended pleadings. *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 53 (D.D.C. 2007) ("[T]he most natural

---

[2] The individual plaintiffs initially moved for class certification on June 15, 2015—76 days after filing suit. *See* ECF Nos. 1, 15. The Court held that motion in abeyance and ultimately denied it on August 24, 2018. *See Gatore V*, 327 F. Supp. 3d at 102–04. The individual plaintiffs did not seek reconsideration of that order and instead filed a new, untimely motion to certify. Catholic Charities has not previously moved for class certification. Its August 31, 2018, motion is its first request to do so in the three-and-a-half-year lifespan of this case.

reading of the rule requires the filing of a certification motion within ninety days of the first complaint that states class allegations—in this case, the initial complaint.").

Local Rule 23.1(b) is strictly applied. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1279 (D.C. Cir. 1981) ("[S]trict enforcement of Local Rule 1–13(b) [Local Rule 23.1's predecessor] implements the policy of Rule 23(c)(1) of the Federal Rules of Civil Procedure, which states that the status of class actions should be determined quickly."), *vacated on other grounds sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982); *Batson v. Powell*, 912 F. Supp. 565, 570 (D.D.C. 1996) ("As this Court has made clear, the 90–day limit of Local Rule 203(b) [another predecessor of Local Rule 23.1] has been strictly enforced in this Circuit." (internal quotation marks omitted)). Thus, where plaintiffs fail to move for certification within the 90-day deadline, they may not pursue their case as a class action. *Howard*, 474 F. Supp. 2d at 53–57 (granting motion to strike class allegations where plaintiffs did not timely move to extend their time to move for certification); *Thomas v. Knight*, 257 F. Supp. 2d 86, 91 n.5 (D.D.C. 2003) (denying motion for class certification for failure to comply with LCvR 23.1(b)); *Coffin v. Sec'y of Health, Ed. & Welfare*, 400 F. Supp. 953, 956–57 & n.18 (D.D.C. 1975) (denying motion for class certification filed seven months after initial complaint for failure to comply with local rule). Plaintiffs initial complaint in this case, filed on March 31, 2015, was the first pleading to contain class allegations. *See* Compl. ¶¶ 63, *et seq.*, ECF No. 1. As such, any motion for class certification should have been filed on or before June 29, 2015. Instead, the pending motions were filed on August 31, 2018, ECF Nos. 112, 113—over three years too late. Accordingly, both Catholic Charities' and the individual plaintiffs' motions for class certification should be denied as untimely.

**B.      Plaintiffs' Claims Are All Moot, So They Cannot Represent a Class.**

Independent of their timeliness problems, the Plaintiffs in this case no longer have a live controversy through which to represent the classes for which they seek certification. The Court *sua sponte* resolved the claims of the individual plaintiffs, and they have received the portions of their assessments that the Court deemed segregable. Further, as described above, Catholic Charities' policy-or-practice claim has become moot because USCIS now explicitly requires FOIA officers to release factual information in assessments commensurate with what this Court deemed segregable. *See* Part I above. As such, Plaintiffs no longer have claims that they can litigate on behalf of a class.

The mootness doctrine applies in the context of class action. *See Sosna v. Iowa*, 419 U.S. 393, 402–03 (1975). While the Supreme Court has held that the mooting of a purported class representative's claim after a class is certified will not moot a class action as a whole, id., it is clear that a class may not be certified where a purported representative's claim becomes moot before the class is certified, *see, e.g., Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008) ("In a class action, dismissal on mootness grounds normally is required when the named plaintiffs' claims become moot prior to a decision on class certification."); *Cruz v. Farquharson*, 252 F.3d 530, 533–34 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.") (citing *Arnold v. Panora*, 593 F.2d 161, 164 (1st Cir. 1979)); *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.") (citing *Bd. of School Com'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129–30 (1975) (*per curiam*)); *Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is

moot where the named plaintiff's individual claim became moot before class certification."); *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.").

Here, before the individual plaintiffs and Catholic Charities filed their new motions for class certification, the Court had already resolved the claims of the individual plaintiffs by ordering USCIS to disclose segregable factual portions of their assessments to refer, *see* ECF No. 109, and Catholic Charities' sole policy-or-practice claim was been mooted by the change in the December 2017 change in guidance to the agency's FOIA staff, *see* Part I above. Given the absence of a live controversy on the part of any of the named Plaintiffs, they are not able to represent a class of persons who did not receive any portion of their assessment to refer.

### C.     Plaintiffs Have Not Satisfied the Requirements of Rule 23(a).

The individual plaintiffs and Catholic Charities face yet another barrier to class certification: they cannot meet the basic requirements of Rule 23(a). There are four such requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs here fall short in the areas of commonality and typicality.

Rule 23(a)(2)—commonality—requires that Plaintiffs establish that "there are questions of law or fact common to the class." In *Wal-Mart*, the Supreme Court instructed that commonality requires that class members' claims depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551. "This does not mean merely that [class members] have all suffered a violation of the same provision of law," for "[w]hat matters to class certification . . . is not the raising of common

'questions,' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted) (emphasis in original). Plaintiffs must also demonstrate typicality as required by Rule 23(a)(3). To do so, they must show that their claims are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This means that the representative plaintiffs must "possess the same interest and suffer the same injury" as the other class members. *See Falcon*, 457 U.S. at 156 (internal quotation marks and citations omitted). The commonality and typicality requirements often overlap because both "serve as 'guideposts'" to determine whether a class action is practical and whether the representative plaintiffs' claims are sufficiently interrelated with the class claims to protect absent class members. *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 44–45 (D.D.C. 2007) (quoting *Falcon*, 457 U.S. at 157 n. 13).

Here, Plaintiffs' class claims allege that the members of the class should have received any preliminary factual material contained in their assessments to refer, and they seek a court order requiring USCIS to release that material. Am. Compl. ¶ 65; ECF No. 112 at 1; ECF No. 113 at 1. But the issue of whether and what factual material must be released in each of the purported class members' assessments cannot be resolved through the adjudication of the eight individual plaintiff's records-request claims. Each assessment to refer is different and unique to the applicant—some may have three paragraphs of segregable factual information, some may have seven such paragraphs, and some may have no segregable factual information at all. Consequently, each assessment would have to be specifically and independently reviewed to determine whether

that particular assessment contains segregable factual material and to delineate precisely which of that material should be released to the requestor.

This Court recognized that reality when it held that it could not even adjudicate the individual plaintiffs' records-request claims without detailed and specific descriptions of each of their assessments to refer. *Gatore I*, 177 F. Supp. 3d at 53 (requiring Defendant to provide a revised declaration or *Vaughn* index "that reassesses the issue of segregability as to each of the individual plaintiffs' assessments, and provides an adequate description of each assessment to support the defendant's assertion that no portion may be released"). Even after Defendant provided a more detailed description of the assessments, the Court ordered that it was still insufficient and that it would have to review each of the individual assessments at issue in this case *in camera* to determine whether there was segregable material and which of that material was subject to release. *Gatore IV*, 292 F. Supp. 3d at 495. Just as the Court was unable to rely on a description of assessments in general or to a review (by this Court or the other courts in this district that have reviewed assessments to refer for segregable factual information) of a single assessment to adjudicate the individual plaintiffs' claims with respect to each of their individual assessments, so too is the Court unable to rely on the adjudication of those eight individual claims to determine whether and how much information should be disclosed from the likely hundreds of thousands of other assessments to refer that are the subject of the class claims. Given this discrepancy, the named plaintiffs lack the commonality and typicality necessary to meet the requirements of Rule 23(a).

### D.     Plaintiffs Cannot Maintain a Class Action Under Rule 23(b)(2).

Both Catholic Charities and the individual plaintiffs newly seek certification of a class under Rule 23(b)(2). That paragraph sets forth two requirements (in addition to those in Rule 23(a): (1) the party opposing the class must have "acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members," and (2) "final relief of an injunctive nature

or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, must be appropriate." Fed. R. Civ. P. 23(b)(2); 2 William B. Rubenstein, Newberg on Class Actions § 4:26 (5th ed. 2013). Rule 23(b)(2) allows class treatment "only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* at 2557 (emphasis in original). The Court explained that "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal quotation marks omitted).

The same disparities that prevent Plaintiffs from satisfying the commonality and typicality requirements of Rule 23(a) also prevent them from satisfying the requirements of Rule 23(b)(2). The Court cannot craft injunctive relief settling the legality of Defendant's behavior with respect to the likely hundreds of thousands of assessments to refer without a description or review of each one of those hundreds of thousands of assessments. Indeed, the Court's injunction in this case shows that the requested relief is not indivisible and that each member of the class would require a separate injunction. To fashion relief for the eight individual plaintiffs, the Court reviewed each of their assessments to refer *in camera* and issued a detailed order specifying precisely how many paragraphs must be segregated and released. For example, the Court concluded that six paragraphs should be segregated and released from Gatore's assessment, five paragraphs from Al Timemy's assessment, four paragraphs from Ayessa's assessment, and ten paragraphs from Shyaka's assessment. ECF No. 109. Nothing about this document-specific relief resolves how many paragraphs (if any) should be released from the likely hundreds of thousands of assessments to

refer that are the subject of plaintiffs' purported class claims. Consequently, if the class plaintiffs wish to challenge USCIS's withholding of their assessments, they must seek an injunction specific to those assessments.

### E.     Catholic Charites Has No Claim that Would Afford the Class Any Relief.

For the first time in this litigation, Catholic Charities has moved to represent a class in its own right. ECF No. 112. Yet the plaintiffs' class claim seeks segregable portions of the class members' assessments to refer, *id.* at 1, and Catholic Charities itself has never had any such claim pending in this litigation. Catholic Charities' sole claims in this case have been that USCIS failed to release records about its practices for processing assessments to refer (which has been resolved by the Court) and that USCIS has a policy and practice of not releasing segregable material and of not even reviewing assessments for segregable material (which has been mooted as explained in Part I above). *See* Am. Compl. ¶¶ 55–62. As such, Catholic Charities has never sought an injunction requiring that any portion of any assessment to refer be segregated and released to anyone and therefore it has no viable claims the resolution of which would have any bearing on the relief sought for the purported class members.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Catholic Charities' policy-or-practice claim should be granted, Catholic Charities' motion for summary judgment should be denied, Plaintiffs' motion for leave to amend should be denied, and Plaintiffs' motions for class certification should be denied.

Dated: February 8, 2019

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar # 991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendant*

24