UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                              Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

# CATHOLIC CHARITIES' OPPPOSITION TO DHS MOTION TO DISMISS CATHOLIC CHARITIES' POLICY OR PRACTICE CLAIM

Catholic Charities now files this Opposition to ECF #125, "Defendant's motion to dismiss Catholic Charities' Policy or Practice Claim."

Catholic Charities agrees that because DHS has changed its position, there is no longer any need for the Court to issue injunctive relief, concerning requesters who file FOIA requests in the future.  DHS, since December 2017, has been releasing the first several paragraphs of assessments, to recent and current requesters.

However, the DHS has not released the first several paragraphs of assessments for requests made from March 2009 to December 2017.  The Court should provide a remedy for these requesters.

THE 57 PLAINTIFFS COULD FILE A NEW CLASS ACTION LAWSUIT TOMORROW

If no class is certified, and if the new plaintiffs are not allowed to join this lawsuit, they can file a new lawsuit tomorrow. That would be a waste of resources for everyone.

If the new plaintiffs file a class action lawsuit, perhaps the DHS would then give each plaintiff the first several paragraphs of their assessment, and then file a motion to dismiss, arguing that the case is moot. That would be unfair to the class members.

The Court should resolve this case as follows:

1. DHS, since December 2017, has been able to segregate and disclose the first several paragraphs of each assessment requested of it. If DHS can segregate and disclose from 2017 to now, it can segregate and disclose from 2009 to 2017.

2. DHS should segregate and disclose the first several paragraphs of the 57 new plaintiffs. There is no need for them to file a new lawsuit. That would waste resources of everyone.

3. The Court should certify as a class action, the class of requesters from 2009 to 2017 who have yet to receive their first several paragraphs.

4. Then, the DHS shall undertake "reasonable efforts" to determine the members of the class. The parties shall then propose what notice is appropriate.

A SUMMARY OF THE CASE

From March 2009 to March 2017, the DHS provided no part of the asylum officer assessment, when requested by an asylum applicant. In March 2017, the DHS released the first few sentences of seven assessments. In December 2017, the DHS changed its policy and re-wrote its instructions to its FOIA processors. The new instructions say that the first several paragraphs of assessments can be segregated out and disclosed to requesters. [DHS notified the Court of this change fourteen months later: in February 2019].

FOIA requesters from 2009 through 2017 have been wrongly treated: their rights under FOIA were violated. This Court should provide a remedy for them. The remedy is to certify this as a class action. After certification, the parties can suggest what efforts the DHS should

undertake to determine class members, what notice should be given, and what remedies should be offered.

The DHS has known for years that this was a class action case. Plaintiffs filed a complaint, alleging at ¶ 64, that this case is being brought "on behalf of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b). ¶ 65 of the complaint alleges that the class "consists of all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment."

¶ 71 of the complaint alleges:

> "Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the final and efficient adjudication of the controversy. All requirements of Fed. R. Civ. P. 23(b)(3) have been met.

Less than 90 days later, plaintiffs filed a motion for class certification, defining the class as stated in ¶ 65 of the complaint: all persons from March 30, 2009 to the present, who made FOIA requests. That motion argued that "final injunctive relief" was appropriate, so that the class should be certified under Civil Rule 23(b)(2).  Thus, DHS has known for years that plaintiffs wanted class certification.

During the years 2015-2016, the DHS opposed all of plaintiffs' motions. The DHS said it could segregate nothing out of asylum officer assessments.

However, in March 2017, the DHS disclosed a few paragraphs for seven of the plaintiffs in this case. *See* ECF # 73, Exhibit 1. One month later, plaintiffs filed "Report to the Court," ECF # 73, and suggested as follows:

"DHS should pledge that starting today, the DHS shall: a] stop using boilerplate in its initial response that 'nothing can be segregated;' b] revise its Processing Guide to instruct its employees that parts of assessments are indeed segregable; and c] release at least some part of the assessment of each requester in the future."

DHS did not agree. DHS pledged nothing.

Instead, it filed a Renewed Motion for Summary Judgment, ECF #77, wherein DHS argued that "there is *no* segregable information" in any of the plaintiffs' assessments. ECF #77-2, at page 20 of 24 [emphasis added]. This decision was made by DHS, after one review, and then, the assessments "received a *second* review…which found that [information was properly withheld]." *Id.* At 21 [emphasis in original].

ECF #77 was filed in June 2017. The DHS apparently forgot that it had released some paragraphs of seven assessments a few months earlier, in March.

ECF # 77-4 is a declaration from Jill Eggleston, dated June 9, 2017. That declaration states at the end of ¶ 8: "…USCIS also conducted a segregability review and determined that the assessment to refer should be withheld *in full*." [emphasis added]. ¶ 9 says that USCIS "could release limited factual information…[but after more review] USCIS determined that it cannot further segregate any additional information." Ms. Eggleston does not explain what happened between ¶s 8 and 9. Why the change in position?

In July 2017, the DHS continued its opposition to releasing several paragraphs from each assessment, in its Reply in Support of Defendant's Renewed Motion for Summary Judgment, ECF #82. In that document, DHS noted, correctly, that plaintiffs argued that "Ms. Eggleston is inconsistent and has changed her position without explanation." ECF #82, page 5 of 9. The DHS basically agrees with that argument. The DHS did not, and still has not, explained why Ms.

Eggleston changed her position. The DHS then suggests that just because an agency now discloses some documents, that "does not call into question the veracity of the agency's declarations." *Id.*  Therefore, the DHS is saying that Ms. Eggleston's declarations are true and accurate.

In other words, according to DHS, the Eggleston declaration dated June 9, 2017, ECF #77-4 is true and accurate. That declaration says the assessment to refer should be withheld in full, except that it should not be.

The DHS changed its position, again, in December 2017 and issued new guidance to its FOIA officers, instructing them to release the factual portions of assessments. ECF # 125-1, page 12 of 31.  The DHS did not inform the Court of this change until fourteen months later: in February 2019.  The DHS informed plaintiffs of this change at the same time: February 2019.  The DHS has not yet explained why it was silent for these fourteen months.

In December 2017, the DHS released several paragraphs of three assessments, for requesters who are not among the named plaintiffs in this case. The DHS released several paragraphs for Mr. Watungisa, Mr. Kapende, and Ms. Reyes. ECF # 98.  Plaintiffs argued that "The DHS has apparently conceded it can segregate paragraphs out of asylum officer assessments." *Id.* at page 1 of 4.

The DHS promptly denied it had made any concession. In ECF #99, filed on January 25, 2018, it stated: "DHS makes no such concession." *Id.* at 1 of 2.  The DHS referred to its earlier filing, ECF No. 77-2, wherein it "explained why it withheld the information it did from the assessments at issue here…It stands by that position and makes no concession to the contrary." *Id.* at 2.

[in ECF No. 77-2, at page 20 of 24, the DHS argued that "there is *no* segregable information" in any of the plaintiffs' assessments. [emphasis added].

DHS changed its position in December 2017. It does not explain why it continued to argue that nothing could be segregated in January 2018.

*Memorandum Opinion dated January 4, 2018*

ECF # 96 is a Memorandum Opinion, dated January 4, 2018.  The Court noted that Ms. Eggleston had submitted three declarations to the Court; nonetheless, the Court was still precluded "from making a de novo determination as to whether the defendant had fulfilled its obligation to disclose all reasonably segregable material." ECF # 96, page 7 of 14.  So, the Court ordered DHS to submit plaintiffs' assessment to it for in camera review.

DHS changed its position in December 2017, but did not explain why it did not immediately inform the Court.

The Court issued an Order dated January 4, 2018.  During the months that followed, the DHS did not inform the Court of its change of position.  Instead, it permitted the Court to continue to labor on.

*Memorandum Opinion dated August 24, 2018*

In August 2018, the Court issued an Opinion, ECF #110. The Court noted that Ms. Eggleston had submitted a declaration in 2015, and then a supplemental declaration in May 2016.  Eggleston submitted "a second and third supplemental declaration" in June 2017.  ECF # 110, page 7 of 39.

After in camera review, the Court agreed with plaintiffs "that a number of factual introductory paragraphs in each assessment do not qualify for protection under Exemption 5."

*Id.* at 12.  The Court then granted summary judgment for the individual plaintiffs as to their requests.  *Id.* at 14.

The Court found that the evidence of Catholic Charities "demonstrates that in the nearly five-year period before the plaintiffs filed their amended complaint, the defendant denied over 40 FOIA requests for assessments, including the requests submitted by the individual plaintiffs in this case."  *Id.* at 26.

"And, notably, the defendant has not identified a single instance in which it voluntarily provided any part of an assessment to a FOIA requester during this period."  *Id.* at 26, [emphasis in original].

The evidence "clearly supports the existence of a policy or practice of the defendant to never provide any part of an assessment to FOIA requesters."  *Id.* at 27.

Not only that, but the Court determined that DHS has the policy and practice of not even *attempting* to determine if there are reasonably segregable portions of assessments.  *Id.* at 33.

The Court denied the individual plaintiffs' Motion for Class Certification under Civil Rule 23(b)(2), finding that they lacked standing.

The Court ordered DHS to release several paragraphs of the assessments of the eight individual plaintiffs.

August 2018: the DHS had changed its position several months earlier; however, it informed neither the Court nor the plaintiffs. Instead, DHS permitted plaintiffs to labor on.

Plaintiffs then filed four motions: a] summary judgment as to 8th cause of action, ECF # 111; b] Catholic Charities' Motion for Class Certification; ECF #112; c] Individual Plaintiffs' Motion for Class Certification, ECF # 113; and d] Plaintiffs' Motion to add 57 plaintiffs; ECF #115.

On October 15, 2018 plaintiffs' counsel received three undated, un-numbered pages from counsel for DHS. They apparently are new, revised instructions to FOIA requesters, that say, among other things, "Release the factual information." Plaintiffs furnished those pages to the Court, attached to ECF # 119, "Plaintiffs' Report to the Court." In that Report, plaintiffs asked, "HAS THE DHS CHANGED ITS POLICY?" Plaintiffs wrote: "Plaintiffs suggested that DHS had finally changed its policy, and that DHS now conceded that plaintiffs were correct: that of course, several paragraphs can be disclosed."

A status conference was held on November 1, 2018, at 2:00 pm. Plaintiff Ms. Gatore was seated at counsel table. Plaintiffs' counsel stated, in essence: "I believe that DHS has conceded in large part. DHS concedes that it can segregate out, and disclose, several paragraphs from all assessments." Counsel for DHS disagreed, and stated in essence, "We do not concede." Why didn't DHS inform the Court and plaintiffs that it had changed its policy several months earlier?

DHS filed a Motion to Dismiss, ECF # 125, on February 8, 2019. DHS states that USCIS has issued new guidance to its FOIA officers "in December 2017." *Id.* at page 12 of 31. DHS criticizes Catholic Charities for demanding "an advisory opinion on a claim that has been entirely mooted by USCIS's new guidance." *Id.* at 8. But Catholic Charities was not informed of the "new" guidance until February 2019.

Plaintiffs are pleased that DHS has stated in writing that it has changed its policy. This means that DHS concedes that plaintiffs have been correct for the past several years: all assessments have factual material that should be disclosed.

WHY WAS DHS SILENT FOR 14 MONTHS?

DHS apparently changed its position in December 2017. Why then, did it inform the Court one month later that it made no concession, and that the Court should read ECF #77-2,

which stated that it was the position of DHS that nothing could be segregated out of an assessment?  In ECF #99, filed on January 25, 2018, it stated: "DHS makes no such concession." *Id.* at 1 of 2.  The DHS referred to its earlier filing, ECF No. 77-2, wherein it "explained why it withheld the information it did from the assessments at issue here…It stands by that position and makes no concession to the contrary."  *Id.* at 2.

[in ECF No. 77-2, at page 20 of 24, the DHS argued that "there is *no* segregable information" in any of the plaintiffs' assessments. [emphasis added]].

DHS should have informed the Court, and plaintiffs, in December 2017 that it had changed its position. DHS certainly should not have misled the Court and plaintiffs in January 2018 by arguing that nothing could be segregated.

The Court wrote a Memorandum Opinion, ECF # 96, on January 4, 2018. The Court expended considerable time on that project. DHS should have informed the Court of its December 2017 change in position.

The Court ordered DHS to submit declarations <u>in camera.</u>  The DHS should have informed the Court of its change in position; perhaps the Court need not have spent its time and energy studying the assessments.  Instead of giving assessments to the Court, DHS should have given the first several paragraphs to plaintiffs.

August 2018: the DHS is still silent, and keeps secrets from the Court and plaintiffs. The DHS allows the Court to spend its time writing another Memorandum Opinion.

Plaintiffs then file four motions with the Court: ECF # 111, 112, 113, and 115. [August and October 2018].

In open court, plaintiffs asked if DHS would concede anything, on November 1, 2018. That would have been a good time for DHS to have informed the Court: "Your Honor, we

changed our position several months ago, in December 2017." Instead, DHS told the Court it made no concession.

DHS changed its position in December 2017. Fourteen months later, in February 2019, DHS so informed the Court and plaintiffs. The DHS has not offered any explanation, or apologies, for its silence.

## A CLASS ACTION DOES NOT INEXORABLY BECOME MOOT BY THE INTERVENING RESOLUTION OF THE CONTROVERSY AS TO THE NAMED PLAINTIFFS

DHS changed its policy in December 2017. But still unresolved are the rights of the persons who made FOIA requests from March 2009 to 2017. These persons deserve justice, and the class action is the vehicle for that.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees Int'l Union,* 132 S. Ct. 2277, 2287 (2012).

In *Sosna v. Iowa,* 419 U.S. 393, 402-03 (1975), the Court declared that the mooting of a purported class representative's claim does not necessarily end a case. Carol Sosna moved to the State of Iowa, and then one month later, filed for divorce in that state. Her claim was dismissed because she had not lived there for one year. She then filed a class action complaint, arguing that the one-year residency requirement was unfair. By the time her case arrived at the Supreme Court, she had not only lived in Iowa for over a year, but she had obtained a divorce! Nonetheless, the Court declared that the case was not moot: "Although the controversy is no longer live as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent." 419 U.S. at 401.

In *DL v. District of Columbia,* 860 F.3d 713, 722 (D.C. Cir. 2017), plaintiffs aged three to five years old filed a class action complaint. Years later, they had "aged out" and no longer needed relief. Nonetheless, the Court ordered the case to continue as a class action, noting that this would be consistent with Rule 23's purpose. A class action offers a "convenient and economical means for disposing of similar lawsuits." *Id.*

*Ramirez v. US ICE,* 338 F Supp. 3d 1 (D.D.C. 2018) was a class action brought by three wrongfully-detained children. The case was certified as a class action, even though all the children were no longer detained. The Court noted that "*at the time this lawsuit was filed,"* the named plaintiffs had a real, unresolved claim. 338 F. Supp. 3d at 32. [emphasis added].  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot. *Campbell-Ewald Co,* 136 S. Ct. at 669." [additional citations omitted] Id.

The *Ramirez* court noted that the mootness doctrine "is riddled with exceptions," *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 404 n. 11 (1980), and that several Supreme Court precedents explain that a class action "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs, *Sosna,* 419 U.S. at 401.,"  338 F. Supp. 3d at 35.

Other courts are in accord:

*Holmes v. Pension Plan of Bethlehem Steel Corp.*  213 F.3d 124, 135 (3d Cir. 2000) ("So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot.").

*Bogor v. Trinity Heating,* 2018 U.S. Dist. LEXIS 197287 [D. Md. November 16, 2018] involved a robo-call, in in violation of the Telephone Consumer Protection Act.  Bogor had not yet filed a motion for class certification, when defendant Trinity paid $6,000 to the court, in full satisfaction. Trinity argued the case was now moot. The Court disagreed, noting that "a defendant should not be empowered to pick-off a class action plaintiff to "avoid a potential adverse decision . . . that could expose it to damages a thousand-fold larger…"   2018 U.S. Dist LEXIS 197287, *6 (quoting *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 672 (2016).

The *Bogor* court noted that a named plaintiff seeks two forms of relief: relief for himself, and "the opportunity to represent the class and seek relief on its behalf." 2018 U.S. Dist. Lexis 197287, *8.  A defendant should not be placed "in the driver's seat" and be allowed "to force a settlement." *Id.* at 11.  Allowing a defendant to "pick off" a named plaintiff would deny plaintiff "fair opportunity to pursue class claims" and would be "contrary to the spirit of *Campbell-Ewald."  Id.* at 14-15.

*Gayle v. Warden Monmouth Cnty. Corr. Inst.* 838 F.3d 297 (3d Cir. 2016) involved a statute concerning the detention of aliens. Four detained aliens brought a class action suit, challenging the practices of the defendant County detention facility. The four aliens were released from custody, and the district court issued an Order, granting injunctive relief. The aliens had filed three motions for class certification.  The district court denied class certification.

The four aliens were released from custody in 2013; their "individual claims for relief have been moot for nearly three years." 838 F.3d at 303.  There was no evidence that the four aliens would be detained in the future.

Nonetheless, the Third Circuit noted that in many circumstances, a plaintiff may "continue seeking class certification in certain circumstances even though his individual claim for relief has become moot." *Id.* at 305. [citation omitted]. "As relevant here, so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion. "Id. at 305.  "This is because a plaintiff's claim that he should represent the class is one that is "presented . . . in a concrete factual setting and [with] self-interested parties vigorously advocating opposing positions," and such a claim "remains as a concrete, sharply presented issue" even if the plaintiff's individual claims expire. *Geraghty,* 445 U.S. at 403-404.

"For the same reason, the named plaintiff may appeal the *denial* of a motion to certify the class, *Id.* at 404, as long as he "had a live claim when he filed for class certification" and "appellate review may reverse an erroneous denial of class certification that, 'if correctly decided, would have prevented the action from becoming moot."…because "the corrected ruling 'relates back' to the date of the original denial… Thus, the critical question is whether a plaintiff had a live claim at the time the operative motion to certify was filed." *Id.* at 305.

The Court noted that a "plaintiff who files a motion to certify a class prior to the expiration of his individual claims does not lose his "interest in accurate resolution of his legitimate efforts to serve as class representative." *Id.* at 307. [citation omitted.]. There may be circumstances where class certification is not appropriate because "there would be no meaningful additional benefit to prospective class members in ordering class wide relief." *Id.* at 310.

If class certification is denied, the "would-be class members continue to be subjected to injury; their only option may be to undertake the expense, burden, and risk of instituting their own litigation- barriers that in many cases will be prohibitive." *Id.* at 311.

Rule 23 was designed to avoid this unfair result. A defendant should not be placed "in the driver's seat." *Id.* at 311. Failure to certify a class may result in "allowing the defendant to, in essence, unilaterally prevent class wide relief." *Id.* at 311. *Cf. Stewart v. Cheek & Zeehandelar, LLP,* 252 F.R.D. 384, 386 (S.D. Ohio 2008) ("[T]reating pre-certification settlement offers as mooting the named plaintiffs' claims would have the disastrous effect of enabling defendants to essentially opt-out of Rule 23." (internal quotation marks and citation omitted)). *Richardson v. Dir. Fed. Bureau of Prisons,* 829 F.3d 273 (3d Cir. 2016) is in accord.

Catholic Charities seeks justice for persons who made FOIA requests from March 2009 to 2017. It is a "particularly good class representative." *National Veterans Legal Services Program v. USA,* 235 F. Supp. 3d 32, 42 (D.D.C. 2017). In that case, the Court noted that nonprofit organizations "make particularly good representatives." They will help and represent their constituents, and will "provide more vigilant and consistent representation than individual representatives."

CONCLUSION

DHS has discovered that it can disclose the first several paragraphs of assessments. The DHS should have known that in 2009. All requesters of assessments from March 2009 to 2017 should be given the first several paragraphs of their assessments. The DHS motion to dismiss should be denied.

February 15, 2019

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW  Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com