UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICA GATORE, et al.,

Plaintiffs

v.                                    Civil Action No.  15-cv-459 [RBW]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## SUR-REPLY OF CATHOLIC CHARITIES TO DHS OPPOSITION TO MOTION OF CATHOLIC CHARITIES FOR CLASS CERTIFICATION

Plaintiff Catholic Charities now submits this Sur-Reply to the Opposition of DHS to the motion of Catholic Charities for class certification.

Catholic Charities filed a Motion for Class Certification, ECF #112. The DHS filed a Memorandum of Points and Authorities in Opposition, ECF #126.  Catholic Charities filed a Reply, ECF #129.

From 2009 through December 2017, the DHS wrongfully refused to disclose the first several paragraphs of assessments to a large number of FOIA requesters. These people deserve justice. All of them should be given their first several paragraphs.  A class action is a good vehicle to do this.  Eight of these requesters have been given their first several paragraphs; but what about the others?

In October 2018, plaintiffs filed a motion to add 57 plaintiffs. ECF #115.  The DHS opposed the motion in part, asserting that some of the 57 requesters were barred, for one reason or another. ECF # 126.  Yet, most of the 57 are clearly entitled to their first seven paragraphs. The DHS does not challenge them. ECF # 126-1, at pages 7-8 of 51.

4 of the 57: Mr. Lukusa, Ms. Mulangu, Mr. Mekouangori, and Mr. Dramou, [*see* Exhibit 1, attached hereto] are now ready to step in as new class representatives. *Borum v. Brentwood Associates,* 329 F.R.D. 90, 99 (D.D.C. 2019) (if one plaintiff can no longer represent the class, a substitute can be put forward). If Catholic Charities cannot be a class representative, these four requesters are available and willing.

Civil Rule 20(a) permits joinder. This rule should be "liberally construed in the interest of convenience and judicial economy." *Alexander v. Edgewood Mgmt Corp.* 321 F.R.D. 460, 462 (D.D.C. 2017). Related claims should "be tried in a single proceeding." *Id.* This rule promotes trial convenience and expedites the final resolution of disputes by preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it. *M.K. v. Tenet,* 216 F.R.D. 133, 137 (D.D.C. 2002). A named plaintiff in a purported class action may move for joinder of additional named plaintiffs who would otherwise be potential class members. *Tirone v. Calderone-Curran Ranches,* 26 Fed. R. Serv. 2d 261, (W.D.N.Y. 1978). In *Hawkins v. Groot Industries,* 210 F.R.D. 226 (N.D. Ill. 2002), African-American employees brought a class action against their employer. They sought to join Hispanic employees as plaintiffs. Held: motion granted: "Federal policy favors joinder." *Id.* at 230.

Where Congress has legislated, and provided some rights for litigants, the Court should strive to provide a remedy. Otherwise, the Court would be "allowing the unlawful agency action to continue. This Court 'should not assume that Congress left such a gap in its scheme.'" *Grace v. Whitaker,* 344 F. Supp. 3d 96, 142 (D.D.C. 2018) (quoting *Jackson v. Birmingham Bd. Of Educ.* 544 U.S. 167, 180 (2005). The large number of asylum applicant FOIA requesters from 2009 to 2017 should be given the first several paragraphs of their assessments.

ASYLUM APPLICANTS ARE A VULNERABLE POPULATION

Asylum applicants are newcomers to America: they suffered harm in their native lands; many do not speak English; almost none of them are sophisticated in U.S. law. In *Grace v. Whitaker,* 344 F. Supp. 3d 96, 104 (D.D.C. 2018), the Court noted the intent of Congress: to enforce the "historic policy of the United States to respond to the urgent needs of persons subject to persecution in their homelands." (quoting § 101(a) of the Refugee Act of 1980). Congress wanted to give statutory meaning to "our national commitment to human rights and humanitarian concerns," and "to afford a generous standard for protection in cases of doubt." *Id.* at 106. (citations omitted).

Asylum officer assessments are used against applicants in court. *Shi v. Sessions,* 751 Fed. Appx 684 (6th Cir. 2018). They are used to impeach and attack credibility. They "may have significant repercussions for [the applicant] if it is used at his immigration proceeding. Based on the potential significant impact that the document may have on [an applicant's] immigration status, as well as the strong likelihood that the Assessment will be introduced at [the applicant's] immigration proceeding, ….the Court encourages [DHS] to not delay in providing the Assessment [if certain conditions are met]." *Abtew v US DHS,* 47 F. Supp. 3d 98, 113, note 18 (D.D.C. 2014).

In the case *Li v. Holder,* 745 F.3d 336 (8th Cir. 2014) the name of asylum officer Kuriakose is mentioned 15 times.

Asylum officers sometimes make mistakes. They find some sources important; others are ignored. To avoid surprise in court, and to find out what the officer wrote, asylum applicants find assessments very useful.

THE REMEDIAL PURPOSES OF CLASS ACTIONS

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. Without class actions, many claims would go unaddressed. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. When considering a class action, courts should "look at practicalities and prudential considerations." *J.D. v. Azar,* 2019 U.S. App. LEXIS 17900, *32, 2019 WL 2479 436 (D.C. Cir. June 14, 2019) (citation omitted) (approving of class certification, allowing Jane Doe to represent a class of pregnant minors in government custody, even though she herself was no longer pregnant and was no longer in custody).

*Numerosity: Rule 23(a)(1)*

If the class is so large that joinder of all parties is impracticable, the prerequisite of numerosity is satisfied. The DHS does not claim to the contrary. DHS states that there are "likely hundreds of thousands of assessments to refer." ECF #126 at 29.

In *J.D. v. Azar,* 2019 U.S. App. Lexis 17900 (D.C. Cir. June 14, 2019), the government argued that class apparently had only 18 members. Numerosity was nonetheless established, in part because the class might include future members, and because considerations such as "fluidity of ORR custody, the dispersion of class members across the country, and their limited resources." *Id.* at *67. "Classes have been certified in like circumstances even if they have fewer than 20 members." *Id.*

*Commonality: Rule 23(a)(2)*

Commonality requires that a plaintiff raise claims which rest on questions of law or fact common to the class. Would it be "productive" and "economical" to consider the class's claim together? If so, this helps establish commonality. *J.D. v. Azar,* 2019 U.S. App. LEXIS 17900, *62, (D.C. Cir. June 14, 2019). In that case, the Court affirmed class certification of a group of pregnant alien children. There were certainly many differences among the girls: their age, stage of pregnancy, mental health, and ability to return to country of origin. Yet, because their claim to relief was "entirely unaffected by the myriad factual differences noted by the government," commonality was established. *Id.* at *63.

*Typicality: Rule 23(a)(3)*

In *J.D. v. Azar,* 2019 U.S. App. Lexis 17900, *64 (D.C. Cir. June 14, 2019), the Court again cited the concern of being "economical," when considering typicality. Is maintenance of the class "economical"? *Id.* Why should there be several lawsuits, if one will suffice?

*Catholic Charities is a particularly good class representative*

Catholic Charities has demonstrated its interest in assisting asylum applicants and FOIA requesters. It is a particularly good class representative. In *Westchester Indep. Living Ctr. v. State Univ of N.Y.,* 2019 U.S. Dist. LEXIS 99010 (S.D.N.Y., June 12, 2019), a class action was certified concerning access of disabled persons to a campus. The Westchester Independent Living Center, Inc., ("WILC") was a named plaintiff, and was a "community-based organization that helps people with disabilities to lead self-directed lives." *Id.* at *5. The WILC "has and continues to spend time and resources advocating for greater access to the programs [at the campus]. *Id.* at *38. It was held to have "associational standing" to sue. *Id.* at *41. The WILC has a "long and dedicated history of working to improve the lives of persons with

disabilities…and is committed to the common goal of improving the accessibility of [the campus]." *Id.* at 44. So, it is an "adequate class [representative]." *Id.* at 46.

In *National Veterans Legal Services Program v. USA,* 235 F. Supp. 3d 32, 42 (D.D.C. 2017) a class was certified, concerning excessive fees charged for PACER, and the Court stated: "In fact, the nonprofit organizations who are named plaintiffs in this case make particularly good class representatives. They are interested in reducing PACER fees not only for themselves but also for their constituents. As nonprofit organizations, named plaintiffs exist to advocate for consumers, veterans, and other public interest causes."  In addition, "organizational representatives with experience" can "provide more vigilant and consistent representation than individual representatives."

*Mr. Lukusa, Ms. Mulangu, Mr. Mekouangori, and Mr. Dramou can be substitute class representatives*

Mr. Lukusa, Ms. Mulangu, Mr. Mekouangori, and Mr. Dramou, [*see* Exhibit 1, attached hereto] are now ready to step in as new class representatives. *Borum v. Brentwood Associates,* 329 F.R.D. 90, 99 (D.DC. 2019) (if one plaintiff can no longer represent the class, a substitute can be put forward).  If Catholic Charites cannot be a class representative, these four requesters are available and willing.

*Ms. Gatore can be a class representative even if her own claim is moot*

Plaintiffs with moot claims have been allowed to represent a class:

*Nielsen v. Preap,* 139 S. Ct. 954 (2019), involved a Legal Permanent Resident named Mr. Preap. He was found guilty of two crimes; he was released from criminal custody in 2006, and then put into immigration detention in 2013. He argued he deserved a bond hearing, and brought a class action lawsuit. At the time of class certification, he was not in detention, he had been

granted relief in his immigration case, and thus no longer needed a bond hearing. Nonetheless, the Court ruled the case was not moot.

> "Respondents claim that they would be harmed by detention without a hearing pending a decision on their removal. Because this type of injury ends as soon as the decision on removal is made, it is transitory. So the fact that the named plaintiffs obtained some relief before class certification does not moot their claims."   *Id.* at 963.

The D.C. Circuit quoted this last sentence in *J.D. v. Azar,* 2019 U.S. App. LEXIS 17900, *37 (D.C. Cir. June 14, 2019): "[T]he fact that the named plaintiffs obtained some relief before class certification does not moot their claims.") (quoting *Preap,* 139 S. Ct. at 963).  The D.C. Circuit also found this fact important: "The claims of numerous class members remain unaddressed."  2019 U.S. App. LEXIS 17900, *37-38.

Mr. Preap argued he would be harmed by detention without a hearing, "pending a decision" on his removal from the United States. The decision on his removal was made: he was not removed. So, his risk of injury ended. The Supreme Court said: "Because this type of injury ends as soon as the decision on removal is made, it is transitory. So the fact that [he] obtained some relief before class certification does not moot [his] claims." *Preap,* 139 S. Ct. at 963.

Ms. Gatore claims she was injured because she was not given the first several paragraphs of her assessment. Her injury ended when she was given the paragraphs; so, her claim was transitory. So, the fact that she obtained some relief before class certification does not moot her claims.

*J. D. v. Azar,* 2019 U. S. App. LEXIS 17900 (D.C. Cir. 2019) involved a pregnant alien child in the custody of the U.S. government. She demanded access to abortion; it was denied. So she brought a class action, on behalf of "pregnant unaccompanied minors, in government

custody." She soon had an abortion; thus she was no longer pregnant, and, she was released from custody. The Court ruled her case was not moot, citing *Preap.*

The Court in *J.D. v. Azar* instructs us to look "at practicalities and prudential considerations." *Id.* at *32. Are there some class members who "retain a live claim"? *Id.* at *34. D the "absent clients" have a "continuing live interest"? *Id.* at *34. Ms. Jane Doe had been granted relief. We find that to be "irrelevant." *Id.* at *37.

Ms. Gatore has been granted relief. But there are 57 known members of the class who "retain a live claim." These clients have a "continuing live interest."

CONCLUSION

Certification of the proposed class will advance the broad remedial purposes of FOIA and of Civil Rule 23. The asylum applicant-requesters deserve to be provided a portion of their assessments.

July 5, 2019

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com