UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RICA GATORE, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-459 (RBW) |
| | ) ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

The plaintiffs brought this Freedom of Information Act ("FOIA") action against the United States Department of Homeland Security (the "Department"), arising out of their FOIA requests for portions of documents termed "assessments to refer" ("assessments") prepared by asylum officers in connection with the individual plaintiffs' applications for asylum in the United States.  See Complaint for Declaratory and Injunctive Relief ("Am. Compl.") ¶ 1, ECF No. 60.[1] Currently pending before the Court is the portion of the Plaintiffs' Motion for an Award of Attorney Fees ("Pls.' Mot."), ECF No. 209, that the Court held in abeyance following the January 21, 2025 motion hearing, i.e., the portion regarding plaintiff Rica Gatore's eligibility for, and entitlement to, an award of attorney's fees.  See Order at 1–2 (Jan. 21, 2025), ECF No. 220.

---

[1] Although Catholic Charities was originally a plaintiff in this case, on November 9, 2020, the Court dismissed with prejudice "all claims and causes of action brought by . . . Catholic Charities[]" after the parties filed a stipulation of dismissal.  Minute ("Min.") Order (Nov. 9, 2020).  Accordingly, only the individual plaintiffs remain in this case.

Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must deny the plaintiffs' motion for attorney's fees as to Ms. Gatore.

## I.     BACKGROUND

The Court outlined the factual background of this case in its earlier Memorandum Opinion issued on August 24, 2018, see Gatore v. U.S. Dep't of Homeland Sec., 327 F. Supp. 3d 76, 81–85 (D.D.C. 2018) (Walton, J.), and, therefore, will not reiterate those facts again here. The Court will, however, briefly discuss the procedural posture of this case following the issuance of that earlier Memorandum Opinion.

On November 4, 2020, over two years after the Court entered "summary judgment for the [eight] individual plaintiffs on their requests for their assessments and order[ed] the defendant to release the assessments' factual introductory paragraphs to the [eight original] individual plaintiffs[,]" id. at 89, the plaintiffs filed a motion for leave to add thirty-eight additional plaintiffs to the Complaint, see Individual Plaintiffs' Second Amended Motion for Leave to Add Plaintiffs to the Complaint, and to File that Amended Complaint ("Pls.' 2d Am. Mot."), ECF No. 153.[3] The defendant determined that eight of these individuals could not properly be joined as plaintiffs, as they lacked valid claims—viz., three of them had not exhausted their administrative remedies, four had previously received parts of their Assessment, and one did not have an Assessment prepared. See Opposition to Plaintiffs' Motions to Amend and for Class

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Plaintiffs' Memorandum of Points and Authorities ("Pls.' Mem."), ECF No. 209; (2) Defendant's Opposition to Plaintiffs' Second Renewed Motion for Attorney's Fees ("Def.'s Opp'n"), ECF No. 212; (3) Plaintiffs' Reply to Opposition of DHS to Motion for an Award of Attorney Fees ("Pls.' Reply"), ECF No. 214; and (4) the defendant's second Notice of Supplemental Authority ("Def.'s 2d Notice of Suppl. Auth."), ECF No. 217.

[3] Although the plaintiffs stated in their motion that they sought to add only thirty-five plaintiffs, the plaintiffs actually sought to add thirty-eight plaintiffs. See Pls.' 2d Am. Mot., Exhibit ("Ex.") A (Second Amended Complaint for Declaratory and Injunctive Relief) at 2, 17–28, ECF No. 153-1 (adding thirty-eight new plaintiffs in causes of action 11 through 47).

Certification, Ex. 1 (Declaration of Terri J. White ("White Decl.")) ¶¶ 6–13, ECF No. 161. However, as to the remaining thirty individuals, the defendant produced to plaintiffs' counsel—David L. Cleveland—the non-exempt, segregable portions of their Assessments. Id., Ex. 1 (White Decl.) ¶ 14; see also Pls.' Mot. at 2 (noting that thirty-eight "individuals obtained their paragraphs" from the defendant).

In light of the defendant's productions, the Court dismissed the plaintiffs' motion to add additional plaintiffs as moot. See Order at 1 (May 4, 2021), ECF No. 170; Order at 1 (June 25, 2021), ECF No. 173. Furthermore, the Court noted that "[a]fter the District of Columbia Circuit's resolution of the plaintiffs' [ ] appeal, the plaintiffs may move to reopen the case, and . . . file a [ ] motion for attorney's fees." Order at 1 n.1 (June 25, 2021). On June 5, 2023, the Court reopened this case and ordered "that, on or before July 21, 2023, the plaintiffs shall file either a notice of voluntary dismissal or a motion for attorney['s] fees." Order at 1 (June 5, 2023), ECF No. 180. In compliance with the Court's order, on July 12, 2023, the plaintiffs, "pursuant to [Federal Rule of Civil Procedure] 54(d)(2), [ ] move[d] this Court to award them attorney['s] fees [in the amount] of $422,000." Plaintiffs' Motion for an Award of Attorney Fees at 1, ECF No. 181. In support of their requests, the plaintiffs stated that "[e]ight individual [p]laintiffs requested the first several paragraphs of their asylum officer assessments[, and] [l]ater, [thirty] more individuals requested their paragraphs [and] [a]ll of those individuals got their paragraphs." Id. Accordingly, the plaintiffs claimed that they "deserve[d] fees for their efforts" on behalf of these thirty-eight individuals. Id.

In response, on July 19, 2023, the defendant filed a motion to claw back records, or, in the alternative, conduct discovery on whether a genuine attorney-client privilege existed between plaintiffs' counsel and all of the sixty-five individuals whom he purported to represent in this

3

case.[4] See generally Motion to Claw Back Records, or, in the Alternative, Conduct Discovery on Whether Genuine Attorney-Client Relationships Exist Between "Plaintiffs' Counsel" and All/Any of the Sixty-Five Individuals Whom He Purports to Represent in This Case, ECF No. 182. More specifically, the defendant moved

> for (1) an order commanding the attorney identified on the docket as plaintiffs' counsel [i.e., David L. Cleveland] to promptly destroy and/or delete all records produced to him in the course of this case, return any hard copies of any such records, and make no derivative use of any such records, or, in the alternative, (2) discovery on whether genuine attorney-client relationships exist between that attorney and all or any of the sixty-five individuals whom he purports to represent in this case.

Id. at 1.

On January 4, 2024, the Court conducted a hearing on the parties' motions. During the hearing, the Court asked plaintiffs' counsel, "[D]id you provide any documentation to this particular lawyer representing the government regarding your representation of the[ purported plaintiffs]?" Transcript of Motions Hearing Before the Honorable Reggie B. Walton at 7:13–15, ECF No. 196. Plaintiffs' counsel responded, "No, I didn't. I didn't provide any." Id. at 7:16. The Court then stated, "I think you need to. I mean, you are asking [the government] to pay almost a half a million dollars for alleged legal representation. And I think before the taxpayers' money [is] shelled out to you for representation, they need to know, that, in fact, you do represent these individuals." Id. at 7:17–21. Accordingly, the Court denied both the plaintiffs' motion for attorney's fees and the government's motion to claw back records without prejudice in order to provide plaintiffs' putative counsel "a period of time to provide the proof that [he]

---

[4] Although the defendant only released Assessments to thirty-eight of the purported plaintiffs, see Motion to Claw Back Records, or, in the Alternative, Conduct Discovery on Whether Genuine Attorney-Client Relationships Exist Between "Plaintiffs' Counsel" and All/Any of the Sixty-Five Individuals Whom He Purports to Represent in This Case, Ex. A (Declaration of Cynthia Munita) ¶ 4, ECF No. 182-1, Mr. Cleveland claimed to represent a total of sixty-five individual asylum seekers throughout the course of this litigation, see Plaintiffs' Motion for an Award of Attorney Fees at 7–10, ECF No. 181.

4

say[s] shows that [he] represent[ed] these individuals in reference to this particular litigation." Id. at 8:17–19.

In accordance with the Court's instruction, the plaintiffs filed (1) Plaintiffs' Motion to Deem that Genuine Attorney-Client Relationships Exist Between Plaintiffs' Counsel and 38 Individuals, ECF No. 197, and (2) a renewed Plaintiffs' Motion for an Award of Attorney Fees, ECF No. 198.  In response, the defendant filed Defendant's Renewed Motion to Claw Back Records, ECF No. 201.  At another motion hearing on April 24, 2024, the Court denied with prejudice in part and denied without prejudice in part the plaintiffs' attorney-client motion, "provid[ing the] plaintiffs' putative counsel with another opportunity to seek attorney's fees on behalf of some or all of the original eight named plaintiffs[,]" Order at 2 n.1 (Apr. 24, 2024), ECF No. 208, but denied with prejudice the motion "to the extent that it [sought] to deem that an attorney-client relationship exists between plaintiffs' putative counsel and the thirty additional individuals that counsel sought to add as plaintiffs on November 4, 2022[,]" id. at 1.  The Court further denied with prejudice in part and denied without prejudice in part the plaintiffs' motion for attorney's fees, ordering that, should the plaintiffs renew their motion, "[t]he new motion for attorney's fees shall be limited to fees sought on behalf of the original eight individuals named in the Complaint." Id. at 3.  Finally, the Court granted in part and denied without prejudice in part the defendant's renewed claw back motion.  Specifically, the Court granted the defendant's renewed claw back motion "to the extent that it [sought] to require plaintiffs' putative counsel to return to the defendant the assessments he received on behalf of the thirty additional individuals that plaintiffs' putative counsel sought to add as plaintiffs on November 4, 2022." Id. at 2.

Subsequently, on May 7, 2024, plaintiffs' putative counsel filed a new motion for attorney's fees for services provided to Ms. Gatore, one of the original eight plaintiffs, and

5

Mamadou Badiane, one of the thirty additional individuals that plaintiffs' putative counsel sought to add as plaintiffs on November 4, 2022. See Pls.' Mot at 1. On June 10, 2024, the defendant filed its opposition to the plaintiffs' motion, see Def.'s Opp'n at 1, and on June 16, 2024, the plaintiffs filed their reply, see Pls.' Reply at 1.

Separately, on June 10, 2024, the defendant filed a third motion to claw back records, see Defendant's Third Motion to Claw Back Records, ECF No. 211, which the plaintiffs opposed, see Plaintiffs' Opposition to Motion to Claw[ ]Back Records at 1, ECF No. 213. And, on June 24, 2024, the defendant filed its reply in support of its third motion to claw back records. See Reply in Support of Third Motion to Claw Back Records at 1, ECF No. 215.

Finally, on January 21, 2025, the Court conducted another motion hearing to determine whether plaintiffs' putative counsel had established a genuine attorney-client relationship with any of the original eight plaintiffs. Minute ("Min.") Entry (Jan. 21, 2025).[5] At that hearing, the Court concluded that plaintiffs' putative counsel had established that he had a genuine attorney-client relationship with one plaintiff—Rica Gatore—but had failed to present any evidence to establish such a relationship with the remaining seven individual plaintiffs. See Order at 1–2 (Jan. 21, 2025), ECF No. 220. Therefore, the Court denied the defendant's third motion to claw back records as to Ms. Gatore and granted the motion as to the other seven individual plaintiffs. See id. at 2. The Court also denied the plaintiffs' motion for attorney's fees as to the same seven plaintiffs but held in abeyance the portion of the request for services allegedly provided to Ms. Gatore. See id. at 1–2.

---

[5] Specifically, the Court required more information regarding the legal representation of Ms. Gatore by plaintiffs' putative counsel in light of "a significant discrepancy between the signature on the[] documents [provided by plaintiffs' putative counsel] and the signature purportedly belonging to Ms. Gatore included in prior filings in this case." Order at 2 (Jan. 3, 2025), ECF No. 218.

## II.   STANDARD OF REVIEW

### A.   Motion for Attorney's Fees

The FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs, which [District of Columbia Circuit] case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting Judicial Watch, Inc. v. U.S. Dep't of Com., 470 F.3d 363, 368–69 (D.C. Cir. 2006)). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." Id. (quoting Judicial Watch, 470 F.3d at 368). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees." Id. "Finally, '[a] plaintiff who has proven both eligibility for and entitlement to fees must submit his [or her] fee bill to the court for [the court's] scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.'" Judicial Watch, 470 F.3d at 369 (quoting Long v. Internal Revenue Serv., 932 F.2d 1309, 1313–14 (9th Cir. 1991)).

## III.   ANALYSIS

### A.   The Plaintiffs' Motion for Attorney's Fees

As indicated above, the plaintiffs seek $131,000 in attorney fees, as well as "fees on fees" in the amount of $17,000, see Pls.' Mot. at 1, and the Court has already denied the motion as to all plaintiffs other than Ms. Gatore, see Order at 1–2 (Jan. 21, 2025). In opposition, the defendant argues that the Court should deny the plaintiffs' motion as to Ms. Gatore in its entirety for three reasons: (1) she has not established that she is eligible for fees because she "fail[ed] to prove that [she] . . . obtained relief because [she] fail[s] to show that counsel actually gave [her]

the records that [United States Citizenship and Immigration Services ("USCIS")] produced to counsel[,]" Def.'s Opp'n at 11; (2) she has failed to show that she is entitled to attorney's fees under the District of Columbia Circuit's binding precedent, see id. at 12; and (3) even if she is both eligible for, and entitled to, attorney's fees, her fee request is unreasonable in light of plaintiffs' counsel's billing practices, see id. at 24.

### 1. Whether Ms. Gatore Is Eligible for, and Entitled to, an Award of Attorney's Fees

Ms. Gatore argues that she is eligible for, and entitled to, an award of attorney's fees because (1) she has "substantially prevailed[]" in this matter, Pls.' Mot. at 11; and (2) the balance of factors to be considered in this District weigh in favor of her entitlement to an award of attorney's fees, see id. at 17. The defendant argues that Ms. Gatore is neither eligible for, nor entitled to, an award because (1) she has "failed to prove that [she] [ ] obtained relief because [she] fail[s] to show that counsel actually gave [her] the records that USCIS produced to counsel[,]" Def.'s Opp'n at 11; and (2) the factors to be considered in this District "weigh firmly against any fees award[,]" id. at 12.

As discussed above, the FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs, which [District of Columbia Circuit] case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton, 641 F.3d at 524 (D.C. Cir. 2011) (quoting Judicial Watch, 470 F.3d at 368–69). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." Id. (quoting Judicial Watch, 470 F.3d at 368). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees." Id. "Four non-exclusive factors typically govern the entitlement inquiry: '(1) the public benefit derived from the case; (2) the

8

commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." McKinley v. Fed. Hous. Fin. Agency, 739 F.3d 707, 711 (D.C. Cir. 2014) (quoting Tax Analysts v. U.S. Dep't of Just., 965 F.2d 1092, 1093 (D.C. Cir. 1992)).

Here, in light of the Court's conclusion that the introductory paragraphs of Ms. Gatore's assessment must be produced, see Gatore, 327 F. Supp. 3d at 89, there is no doubt that Ms. Gatore has substantially prevailed in this litigation, and consequently, is eligible for attorney's fees.[6] Having concluded that Ms. Gatore is eligible for attorney's fees, the Court must generally determine whether she is entitled to an award of such fees. While the defendant urges the Court to conclude that Ms. Gatore is not entitled to attorney's fees under the District of Columbia's four-factor test, the Court need not conclusively determine whether she is entitled to attorney's fees because, even assuming arguendo that she is entitled to such fees, for the reasons explained below, the Court concludes that it must "decline to award [her] any fees because [her] request is patently unreasonable[,]" Louise Trauma Ctr. LLC v. Wolf, No. 20-cv-2348 (DLF), 2024 WL 4227617, at *3 (D.D.C. Sept. 18, 2024), based on plaintiffs' counsel's total lack of billing

---

[6] The defendant's arguments to the contrary are unpersuasive. Specifically, the defendant argues that Ms. Gatore is neither eligible for, nor entitled to, an award because she has "failed to prove that [she] [ ] obtained relief because [she] fail[s] to show that counsel actually gave [her] the records that USCIS produced to counsel." Def.'s Opp'n at 11. However, under the FOIA, "a plaintiff 'substantially prevail[s]' if a court order 'constitutes judicial relief on the merits resulting in a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'" Abtew v. U.S. Dep't of Homeland Sec., No. 13-cv-1566 (ABJ), 2016 WL 11897241, at *3 (D.D.C. Mar. 31, 2016) (emphasis omitted) (quoting Campaign for Responsible Transplantation v. Food & Drug Admin., 511 F.3d 187, 194 (D.C. Cir. 2007)). "A court order changes the legal relationship between the parties [where it] requires a party 'to do what the law required—something that it had theretofore been unwilling to do.'" Id. (quoting Campaign for Responsible Transplantation, 511 F.3d at 196). There is no doubt that the Court's order to produce the assessment constituted a "court-ordered change in the legal relationship between the plaintiff and the defendant[,]" Id. (quoting Campaign for Responsible Transplantation, 511 F.3d at 194), because, prior to the Court's order, the defendant had previously been "unwilling" to produce those assessments, id. (quoting Campaign for Responsible Transplantation, 511 F.3d at 196). Therefore, the Court sees no reason to question whether Ms. Gatore substantially prevailed in this case.

judgment in this case, as specified infra, despite repeated warnings from this Court and from other members in this District regarding the serious deficiencies of his billing practices.

2. **Whether Ms. Gatore's Requested Fee Award Is Reasonable**

Ms. Gatore argues that her requested fee award is reasonable because plaintiffs' counsel spent a reasonable number of hours on this case, see Pls.' Mem. at 19, and meets the requirements for an award at a rate determined by the relevant fee matrix, see id. at 21. The defendant argues that the Court "should award no fees due to counsel's highly unreasonable fee demand," Def.'s Opp'n at 25, or, at a minimum, a reduced fee award by: (1) "us[ing] the rates for the specific years in which counsel performed the work at issue, rather than the flat rate of $700 per hour across all years that counsel demands[,]" id. at 24;[7] (2) "exclud[ing] . . . all entries relating to twelve categories of work that are per se non-compensable," id.; (3) "apply[ing] three across-the-board reductions to account for additional defects in counsel's fees demand[,]" id. at 24–25; and (4) "apply[ing] a further fifty percent across-the-board reduction" due to "counsel's highly unreasonable fee demand," id. at 25. In reply, the plaintiffs merely reiterate that the requested fees are reasonable, while simultaneously noting that plaintiffs' counsel has further reduced his request—without providing to the Court any adjusted billing records indicating which hours counsel no longer claims and why he no longer claims those hours. See Pls.' Reply at 12–14.

"[A] plaintiff who has proven both eligibility for and entitlement to fees must submit his [or her] fee bill to the court for [the court's] scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." Judicial Watch, 470 F.3d at 369 (quoting Long,

---

[7] Because the Court ultimately concludes that it must deny in full the plaintiffs' request for a fee award based on the unreasonableness of the request in light of counsel's lack of billing judgment, the Court need not determine which rate would apply were the Court to award such fees.

10

...

932 F.2d at 1313–14). The party seeking fees "has the burden of establishing the reasonableness of [his or her] fee request," Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 970 (D.C. Cir. 2004), and must provide "contemporaneous, complete and standardized time records which accurately reflect the work done by [the] attorney[,]" Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982). "Supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" In re Olson, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam) (emphasis omitted) (quoting United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n Loc. 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 n.2 (6th Cir. 1984)).

In determining whether a plaintiff has requested a reasonable number of hours for the work performed in a case, the Court may reduce or eliminate "excessive, redundant, or otherwise unnecessary" billing entries, Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), including "vague time entries," Clark v. District of Columbia, 674 F. Supp. 2d 149, 159 (D.D.C. 2008) (listing cases). Further, a Court "may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." Env't Def. Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980)). "In a case of less egregious overbilling, [the Court] may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." Id. (citation omitted).
11

Other members of this Court who have found deficient the billing practices of counsel in this case have either significantly reduced counsel's fee requests—by between forty and fifty percent, see Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec., No. 21-cv-2371 (JDB), 2024 WL 3251225, at *2 (D.D.C. July 1, 2024) (ordering a fifty percent reduction "to account for the[] significant defects" in counsel's fee request); Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec., No. 20-cv-01128 (TNM), 2023 WL 3478479, at *7 (D.D.C. May 16, 2023) (ordering a forty percent reduction where "counsel's billing records teem[ed] with ambiguous entries[]"); Louise Trauma Ctr. LLC v. U.S. Dep't of Justice, No. 20-cv-3517 (RC), 2024 WL 4227635, at *8 (D.D.C. Sept. 18, 2024) (reducing the award by forty percent in light of counsel's "poor billing practices" and [ ] deficient billing records[]")—or denied fees in full, Louise Trauma Ctr., 2024 WL 4227617, at *3.  For the following reasons, the Court concludes that it must also "decline to award [her] any fees because [her counsel's] request is patently unreasonable[,]" id., considering the particular circumstances of this case.

There are at least three glaring deficiencies in the plaintiffs' billing request, two of which are consistent with counsel's deficient billing practices in other cases before other members of this Court.  First, counsel's "time records are vague, inadequately descriptive, or made in error[,]" id., at *4, and are therefore not "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended," In re Olson, 884 F.2d at 1428 (emphasis omitted) (quoting United Slate, 732 F.2d at 502 n.2).  For example:

- As in other cases involving plaintiffs' counsel, "[s]everal entries are plainly erroneous."  Louise Trauma Ctr., 2024 WL 4227617, at *4.  Counsel claims to have spent four hours reading the defendant's Answer, see Pls.' Mot., Ex. B-1

12

(Itemization of Hours) at 2, ECF No. 209-2 ("6/23 4 reading Answer")—a nine-page document, see generally Answer, ECF No. 16—which leaves the Court to assume, based on counsel's same errors and practices in other cases, that counsel conceivably omitted a decimal point, see Louise Trauma Ctr., 2024 WL 4227617, at *4 (noting that counsel had overbilled "by misplacing the decimal point in four separate time entries[]"). Elsewhere, counsel claims to have spent a total of 2.8 hours on June 1, 2017, "reading [ECF No.] 77]," see Pls.' Mot., Ex. B-1 (Itemization of Hours) at 6 ("6/1 1.3 reading #77"); id. ("6/1 1.5 reading #77")—i.e., the defendant's second motion for summary judgment, even though the motion was not filed on the docket until June 9, 2017, see Defendant's Renewed Motion for Summary Judgment at 1, ECF No. 77.

- Additionally, "[t]he overall number of hours claimed is also unclear[,]" Louise Trauma Ctr., 2024 WL 4227617, at *4, in light of the fact that in his motion for fees, counsel represents that he is seeking fees for 180.1 hours spent on this case, see Pls.' Mem. at 19, but the Court actually calculates a total of 196.05 hours based on his billing records. Further, in his reply, counsel claims to have "reduced those hours, and now claims 166 hours[,]" see Pls.' Reply at 13. However, as indicated above, counsel has not provided revised billing records, without which "[t]he Court cannot know which hours the [plaintiff] has chosen not to claim and is [therefore] left guessing." Louise Trauma Ctr., 2024 WL 4227617, at *4.

- Many of counsel's other billing records "teem with ambiguous entries." Louise Trauma Ctr., 2023 WL 3478479, at *7. Specifically, counsel claims at least ten

13

hours for various activities conferring with other lawyers and law students—most of whom are left unnamed and nondescript—regarding the strategy to employ in this case. See, e.g., Pls.' Mot., Ex. B-1 (Itemization of Hours) at 2 ("2/12 .4 conferring with other lawyers; getting advice"); id. ("7/28 .8 conferring with other lawyers; getting advice; strategizing"); id. at 3 ("8/5 .5 consulting with other lawyer; getting advice on strategy and law"); id. ("8/7 .5 conferring with, and preparing materials for other lawyer, to aid him in giving advice"); id. at 4 ("2/19 1.3 conferring with other lawyer; getting advice on law and strategy; clarifying matters in my own mind"); id. at 7 ("6/13 .1 conferring with Sam, law student"); id. ("6/19 .1 discussing law with other lawyer"). While ten hours is not an unreasonable sum, the Court has no information regarding the identity of these other lawyers and why it was necessary to confer with them—or with law students—regarding the strategies about which counsel sought advice and why that advice was necessary.

- Counsel also includes entries that appear to indicate that work was performed, but which do not bill any time for that work. See, e.g., id. at 8 ("12/21 0 R&R of [ECF No. ]93"); id. ("1/10 0 R&R of in camera submission"). As another member of this Court noted, "[i]f time was, in fact, expended, then the submission of [zero] hours casts further doubts on the consistency and accuracy of counsel's billing practices." Louise Trauma Ctr., 2024 WL 4227617, at *4.

- Other billing records appear for the first time in the most recent motion for attorney's fees—counsel's third such motion. See Pls.' Mot., Ex. B-1 (Itemization of Hours) at 2 ("7/29 .5 Receipt and Review [R&R] of ECF #22");

14

id. (".5 Receipt and Review [R&R] of ECF #23"). And, counsel offers no explanation for why these entries, which purportedly reflect work performed in 2015, were first introduced in counsel's third motion for fees in May 2024. Absent such explanation, these entries raise questions as to whether counsel has kept "contemporaneous, complete and standardized time records which accurately reflect the work done by" counsel in this case. Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327.

- Moreover, "[c]ounsel's handling of the Court's minute orders" continues to be inconsistent in cases before members of this Court. See Louise Trauma Ctr., 2024 WL 4227617, at *5. At various points, counsel billed time in six-minute increments for receipt and review of the defendant's motions for extensions of time and the Court's one-sentence minute orders granting those extensions. See Pls.' Mot., Ex. B-1 (Itemization of Hours) at 5 ("9/2 .1 receipt and review of DHS motion for extension of time and Order of Court"); id. ("9/9 .1 receipt and review of DHS motion [ECF No. ]50"); id. ("9/21 .1 receipt and review of Motion for extension [ECF No. ]51"); id. ("9/26 .1 receipt and review of motion for extension [ECF No. ]52"); id. ("9/26 .1 receipt and review of Order"). However, counsel did not consistently bill time for reviewing the Court's minute orders, and has provided no explanation for why he chose to bill time for reviewing some minute orders but not others.

Second, the plaintiffs' requests suffers from "grossly excessive billing[,]" Louise Trauma Ctr., 2024 WL 4227617, at *5, which runs counter to the Court's obligation to "exclude hours

15

that are excessive, redundant, or otherwise unnecessary[,]" Louise Trauma Ctr., 2023 WL 3478479, at *6.  For example:

- Counsel seeks an award of fees for performing work that is clearly clerical in nature, see, e.g., Pls.' Mot., Ex. B-1 (Itemization of Hours) at 2 ("3/31 .5 attempting to file complaint; talking to help desk"); id. ("4/9 .2 obtaining USPS printout; preparing and filing ECF #10"); id. at 7 ("6/21 .3 revising P's opposition; creating PDFs; filing with court ECF # 78: Opp to SJ") (emphasis added), and thus are not compensable, see Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them.").

- Counsel also appears to request fees for services covered by a previously granted request for fees.  Specifically, on December 21, 2017, the Court granted in part and denied in part Catholic Charities' request for attorney's fees and costs as set forth in Plaintiff Catholic Charities' Renewed Motion for Summary Judgment as to Ninth Cause of Action.  See Order at 1 (Dec. 21, 2017), ECF No. 93; see also Gatore v. U.S. Dep't of Homeland Sec., 286 F. Supp. 3d 25, 51 (D.D.C. 2017) (Walton, J.).  Then, on November 2, 2020, Catholic Charities withdrew from this case, agreeing to bear its own fees and costs.  See Stipulation of Dismissal at 1, ECF No. 151.  However, several entries in counsel's billing records were either already included in Catholic Charities' motion or otherwise relate to that motion.  Compare, e.g., Plaintiff Catholic Charities' Renewed Motion for Summary Judgment as to Ninth Cause of Action, Ex. B (Itemization of Hours) at 3, ECF No. 46-3 ("6/4 .9 review of ECF # 17, 23, and 25"), with Pls.' Mot., Ex. B-1

16

(Itemization of Hours) at 5 ("6/4 .9 review of ECF # 17, 23, and 25"); see also Pls.' Mot., Ex. B-1 (Itemization of Hours) at 5 (detailing other entries on that same date for "review of ECF #17; 23;[ ]25" and other pleadings relating to Catholic Charities' motion).

Third, and most troubling to the Court, plaintiffs' counsel continues to request a significant award despite having failed to provide any evidence of an attorney-client relationship with any of the plaintiffs in this case other than with Ms. Gatore. And, as indicated above, at the Court's most recent motion hearing, the Court denied the plaintiffs' pending motion for fees as to seven of the eight original individual plaintiffs, holding in abeyance the request for fees on behalf of Ms. Gatore alone. See Order at 1–2 (Jan. 21, 2025). However, plaintiffs' counsel has provided little to no information in his latest motion for fees specifying whether the services included in the motion relate alone to Ms. Gatore or also to other purported plaintiffs. See generally Pls.' Mot. Additionally, at least some of counsel's billing entries clearly relate not only to the other original plaintiffs, but to individuals whom counsel sought to have added as plaintiffs. See id., Ex. B-1 (Itemization of Hours), at 5 ("12/6 .5 conferring with co-counsel Amy Yergey about Ms. Lemus"); id. ("12/7 .1 email to Ms. Lemus"); id. ("12/9 .1 email to Ms. Lemus"); id. at 5–6 ("1/6 emails with Mr[.] Lin, Esq.[,] regarding Mr. Ventura-Vanegas"). Given the unambiguous indication that the plaintiffs' request extends beyond services provided to Ms. Gatore, and even the other original plaintiffs, the Court is left only to speculate regarding the full scope of the requested hours, despite having ordered plaintiffs' counsel to submit a motion only as to the original eight individual plaintiffs, and specifically those plaintiffs for whom he could establish a genuine attorney-client relationship. See Order at 2 (Apr. 24, 2024).

Therefore, any proportional fee reduction the Court would order instead of a full denial would be purely speculative.

The deficiencies described above continue to plague counsel's requests for attorney's fees despite multiple reprimands from other members of this Court, as well as this Court's own denial without prejudice of counsel's first two motions for attorney's fees. However, rather than responding meaningfully to the defendant's arguments, its notice of supplemental authority regarding the reprimands by other members of this Court, or the Court's own concerns, counsel has continued to file fee requests with the same glaring deficiencies. Considering the circumstances of this case, the Court concludes that the plaintiffs' motion is "outrageously unreasonable[,]" Env't Def. Fund, 1 F.3d at 1258 (quoting Brown, 612 F.2d at 1059), and therefore, must be denied. And, because the Court ultimately denies the plaintiffs' motion for fees in full and has granted the defendant's motion to claw back records as to all but one plaintiff, the Court concludes that it will not award the plaintiffs any of the requested fees on fees. See Louise Trauma Ctr., 2024 WL 3251225, at *9 (concluding that a reduction "parallel to the reduction ordered in the fees award, [was] appropriate"); Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation, 80 F. Supp. 3d 149, 163 (D.D.C. 2015) (doing the same).

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the remaining component of the plaintiffs' motion for attorney's fees.

**SO ORDERED** this 6th day of March, 2025.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.